Table of Contents

Page

ARTICLE I         DEFINITIONS.................................................................................................4
                  Section 1.1 -   Act........................................................................................4
                  Section 1.2 -   Administrator .......................................................................4
                  Section 1.3 -   Affiliate ..............................................................................4
                  Section 1.4 -   Alternate Payee ...................................................................4
                  Section 1.5 -   American Express Stock ......................................................4
                  Section 1.6 -   Applicable Plan Year ..........................................................4
                  Section 1.7 -   Basic Contributions ............................................................5
                  Section 1.8 -   Beneficiary..........................................................................5
                  Section 1.9 -   Black Out Period.................................................................5
                  Section 1.10 -  Board of Directors...............................................................5
                  Section 1.11 -  Catch-Up Contributions ......................................................5
                  Section 1.12 -  Code ...................................................................................5
                  Section 1.13 -  Committee...........................................................................5
                  Section 1.14 -  Company.............................................................................5
                  Section 1.15 -  Company Representative ......................................................5
                  Section 1.16 -  Company Stock ...................................................................6
                  Section 1.17 -  Compensation .....................................................................6
                  Section 1.18 -  Daily Valuation Effective Date...........................................8
                  Section 1.19 -  Date of Disability................................................................8
                  Section 1.20 -  Distributable Account ..........................................................8
                  Section 1.21 -  Effective Date .....................................................................8
                  Section 1.22 -  Employee ............................................................................8
                  Section 1.23 -  Employer.............................................................................9
                  Section 1.24 -  Employer Contributions ......................................................9
                  Section 1.25 -  Employment Date ................................................................9
                  Section 1.26 -  Employer Suspense Account ...............................................9
                  Section 1.27 -  Form W-2 Earnings.............................................................9
                  Section 1.28 -  Highly Compensated Employee .........................................10
                  Section 1.29 -  Hour of Service ..................................................................10
                  Section 1.30 -  Investment Fund.................................................................10
                  Section 1.31 -  Lehman Stock ....................................................................11
                  Section 1.32 -  Lehman Stock Fund ............................................................11
                  Section 1.33 -  Matching Contributions ......................................................11
                  Section 1.34 -  Maternity or Paternity Absence ..........................................11
                  Section 1.35 -  Member...............................................................................11
                  Section 1.36 -  Member's Account..............................................................11
                  Section 1.37 -  Merger Date .......................................................................12
                  Section 1.38 -  Participant ..........................................................................13
                  Section 1.39 -  Period of Severance ...........................................................13
                  Section 1.40 -  Plan ....................................................................................13
                  Section 1.41 -  Plan Year............................................................................13
                  Section 1.42 -  Qualified Domestic Relations Order.....................................13
                  Section 1.43 -  Reemployment Date............................................................13
                  Section 1.44 -  Roth Contribution ...............................................................14

i

Table of Contents
(continued)

Page

Section 1.45 - Section 401(k) Contributions.....................................................14
Section 1.46 - Severance Date...........................................................................14
Section 1.47 - Spinoff Date ...............................................................................15
Section 1.48 - Trust Agreement .........................................................................15
Section 1.49 - Trust Fund(s)...............................................................................15
Section 1.50 - Trustee........................................................................................15
Section 1.51 - Twelve Month Period of Service ...............................................15
Section 1.52 - Valuation Date ............................................................................17
Section 1.53 - Years of Vesting Service ............................................................17

ARTICLE II        ELIGIBILITY ........................................................................................18
                  Section 2.1 -   Eligibility for Participation ......................................18
                  Section 2.2 -   Effective Date of Participation.................................18
                  Section 2.3 -   Duration of Participation...........................................18
                  Section 2.4 -   Reemployment ..........................................................19

ARTICLE III       SECTION 401(K) CONTRIBUTIONS, ROLLOVER CONTRIBUTIONS
                  AND TRANSFERS .................................................................................20
                  Section 3.1 -   Section 401(k) Contributions...................................20
                  Section 3.2 -   Allocation to Participant's Account.........................22
                  Section 3.3 -   Participant's Election of Section 401(k) Contributions...........23
                  Section 3.4 -   Limitation on Section 401(k) Contributions ............24
                  Section 3.5 -   Contributions in Excess of Section 401(k) Limit ....26
                  Section 3.6 -   ACP Limitation on Matching Contributions............27
                  Section 3.7 -   Adjustment of Section 401(k) Contributions............29
                  Section 3.8 -   Special Rules.............................................................30
                  Section 3.9 -   Rollover Contributions and Other Transfers from
                                  Qualified Plans..........................................................31
                  Section 3.10 - Catch-Up Contributions ............................................32

ARTICLE IV        EMPLOYER CONTRIBUTIONS................................................................34
                  Section 4.1 -   Employer Contributions...........................................34
                  Section 4.2 -   Transfer to Trust Fund .............................................38
                  Section 4.3 -   Allocation to Participant's Account.........................38
                  Section 4.4 -   Qualified Military Service .......................................39

ARTICLE V         LIMITATIONS ON ANNUAL ADDITIONS TO PARTICIPANT'S
                  ACCOUNT .............................................................................................40
                  Section 5.1 -   Limitations on Annual Additions.............................40
                  Section 5.2 -   Application.................................................................40
                  Section 5.3 -   Ordering Rule for Multiple Plans .............................41
                  Section 5.4 -   Definitions.................................................................41
                  Section 5.5 -   Limitation Year .........................................................42

ARTICLE VI        INVESTMENT OF TRUST FUND AND MEMBERS' ELECTIONS.........44
                  Section 6.1 -   Investment of Employee Contributions ...................44

Table of Contents
(continued)

|  |  |  |
|---|---|---|
| | Section 6.2 - | Investment Transfers | 46 |
| | Section 6.3 - | Investment of Employer Contributions | 47 |
| | Section 6.4 - | Investing of Employer Suspense Account | 48 |
| | Section 6.5 - | Voting and Tender Offers | 48 |
| | Section 6.6 - | Rules Regarding Investment Instructions | 49 |
| ARTICLE VII | | VESTING, DISTRIBUTION TO MEMBERS | 50 |
| | Section 7.1 - | Vesting | 50 |
| | Section 7.2 - | Distribution Upon Termination of Employment or Disability | 53 |
| | Section 7.3 - | Distribution Upon Death | 56 |
| | Section 7.4 - | Timing of Distribution | 57 |
| | Section 7.5 - | Minimum Required Distributions | 57 |
| | Section 7.6 - | Direct Rollover of Eligible Rollover Distributions | 58 |
| | Section 7.7 - | Distributions in Cash and Stock | 60 |
| | Section 7.8 - | Withdrawal of Rollover Contributions and After-Tax Contributions | 60 |
| | Section 7.9 - | Withdrawals After Attainment of 59-1/2 | 61 |
| | Section 7.10 - | Hardship Withdrawals | 61 |
| | Section 7.11 - | Allocation Among Accounts and Investment Funds | 64 |
| | Section 7.12 - | Distributions to Alternate Payees | 64 |
| | Section 7.13 - | 30-Day Notice Waiver | 66 |
| | Section 7.14 - | Trust to Trust Transfers | 67 |
| ARTICLE VIII | | FINANCING | 68 |
| | Section 8.1 - | Trust Funds | 68 |
| | Section 8.2 - | Contributions to the Trust | 68 |
| | Section 8.3 - | Lehman Stock Fund | 68 |
| | Section 8.4 - | Non-Reversion | 70 |
| | Section 8.5 - | Expenses | 70 |
| | Section 8.6 - | Rights in the Trust Fund | 70 |
| | Section 8.7 - | Exclusive Benefit | 71 |
| ARTICLE IX | | ACCOUNTS AND RECORDS OF THE PLAN | 72 |
| | Section 9.1 - | Accounts and Records | 72 |
| | Section 9.2 - | Investment Funds | 72 |
| | Section 9.3 - | Valuation of Investment Funds | 73 |
| | Section 9.4 - | Election and Notice Procedures | 74 |
| ARTICLE X | | ADMINISTRATION | 75 |
| | Section 10.1 - | Employee Benefit Plans Committee | 75 |
| | Section 10.2 - | Committee Powers and Discretion | 75 |
| | Section 10.3 - | Suspension of Investment Transfer Elections | 77 |
| | Section 10.4 - | Claims Procedure | 77 |
| | Section 10.5 - | Action by Majority | 77 |
| | Section 10.6 - | Retention of Advisors | 77 |

Table of Contents
(continued)

Section 10.7 - Committee Member Compensation ..........................................78
Section 10.8 - Indemnification ..........................................................................78
Section 10.9 - Named Fiduciary and Plan Administrator ................................78
Section 10.10 -Service in Various Fiduciary Capacities .................................78
Section 10.11 -Power of Delegation .................................................................78
Section 10.12 -Named Fiduciary with Respect to Asset Management............78
Section 10.13 -Funding Policy..........................................................................79
Section 10.14 -Recovery of Overpayments .....................................................80

ARTICLE XI      BENEFICIARY DESIGNATION, INCOMPETENCY AND NON-
                ALIENATION ...........................................................................81
                Section 11.1 - Beneficiary Designation...........................................81
                Section 11.2 - Incompetence ..........................................................83
                Section 11.3 - Non-Alienation ........................................................83

ARTICLE XII     AMENDMENT AND TERMINATION .....................................85
                Section 12.1 - Amendment to Conform with Law ..........................85
                Section 12.2 - Other Amendment and Termination .........................85
                Section 12.3 - Limitations on Amendments....................................85
                Section 12.4 - Termination of the Plan ...........................................86
                Section 12.5 - Merger or Consolidation or Transfer ......................86

ARTICLE XIII    SPECIAL TOP-HEAVY RULES................................................87
                Section 13.1 - Application................................................................87
                Section 13.2 - Top-Heavy Plan .......................................................87
                Section 13.3 - Definitions.................................................................87
                Section 13.4 - Beneficiaries ............................................................89
                Section 13.5 - Present Value and Accounts ....................................89
                Section 13.6 - Minimum Contribution ............................................90
                Section 13.7 - Ceiling on Includable Compensation.......................91
                Section 13.8 - Exception for Collectively Bargained Plans............91
                Section 13.9 - Compliance with Section 416 of the Code ..............92

ARTICLE XIV     MISCELLANEOUS ..................................................................93
                Section 14.1 - Effect of Mistake......................................................93
                Section 14.2 - Inability to Locate Payee ........................................93
                Section 14.3 - Conclusiveness of Records .....................................93
                Section 14.4 - No Employment Rights.............................................94
                Section 14.5 - Gender; Headings.....................................................94
                Section 14.6 - Counterparts.............................................................94
                Section 14.7 - Illegality of Particular Provision.............................94
                Section 14.8 - Applicable Law ........................................................94
                Section 14.9 - Limitation of Liability..............................................95
                Section 14.10 -Doubt as to Right to Payment.................................95

KL3 2630220.9

Table of Contents
(continued)

| | | |
|---|---|---|
| ARTICLE XV | SPECIAL PROVISIONS APPLICABLE TO SLHMC EMPLOYEES | 96 |
| | Section 15.1 - Definitions | 96 |
| | Section 15.2 - Contributions | 96 |
| | Section 15.3 - Distributions | 97 |
| ARTICLE XVI | PARTICIPANT LOANS | 98 |
| | Section 16.1 - Loans to Parties in Interest | 98 |
| | Section 16.2 - Loan Requirements | 98 |
| | Section 16.3 - Funding of Member Loans | 100 |
| | Section 16.4 - Loan Payments | 101 |
| | Section 16.5 - Loan Expenses | 101 |
| | Section 16.6 - Disposition of Loan Upon Distribution | 101 |
| | Section 16.7 - Compliance with Applicable Law | 101 |
| | Section 16.8 - Default | 102 |
| ARTICLE XVII | Domestic Partner Treated as Spouse | 103 |
| | Section 17.1 - Effective Date | 103 |
| | Section 17.2 - Definition of Domestic Partner | 103 |
| | Section 17.3 - Treatment as Spouse | 103 |
| ARTICLE XVIII | Leased Employees | 104 |
| | Section 18.1 - Definitions | 104 |
| | Section 18.2 - Treatment of Leased Employees | 104 |
| | Section 18.3 - Exception for Employees Covered by Plans of Leasing Corporation | 104 |
| | Section 18.4 - Construction | 105 |
| ARTICLE XIX | Special Provisions Applicable to Non-Controlled Group Employers | 106 |
| | Section 19.1 - Separate Testing | 106 |
| | Section 19.2 - Maximum Limitations | 106 |
| | Section 19.3 - Affiliated NCGE's | 107 |
| | Section 19.4 - Participation and Nondiscrimination Requirements | 107 |
| | Section 19.5 - Investment Funds | 107 |
| ARTICLE XX | MODIFICATION OF TOP-HEAVY RULES | 108 |
| | Section 20.1 - Effective Date | 108 |
| | Section 20.2 - Determination of Top-Heavy Status | 108 |
| | Section 20.3 - Minimum Benefits | 109 |
| ARTICLE XXI | ROTH CONTRIBUTIONS | 110 |
| | Section 21.1 - General | 110 |
| | Section 21.2 - Electing Roth Contributions | 110 |
| | Section 21.3 - Pre-Tax Contributions | 110 |
| | Section 21.4 - Roth Contribution | 110 |
| | Section 21.5 - Distributions | 111 |
| | Section 21.6 - Loans | 111 |

Table of Contents
(continued)

Section 21.7 -  Ordering Rules for Loans and Distributions ..........................111
Section 21.8 -  Rollovers ..............................................................................111
Section 21.9 -  Operational Compliance .......................................................112

vi

KL3 2630220.9

LEHMAN BROTHERS

SAVINGS PLAN

(as amended and restated effective January 1, 2008)

## INTRODUCTION

The Lehman Brothers Savings Plan (the "Plan"), formerly known as the Lehman Brothers Holdings Inc. Tax Deferred Savings Plan, was adopted effective January 1, 1984 as the Shearson Lehman Brothers Holdings Inc. Tax Deferred Savings Plan.  The Plan was thereafter amended from time to time, and has been restated at various intervals, including a restatement effective January 1, 1988.  The Plan was further restated generally effective January 1, 1989, and again on November 15, 1998, to reflect, in each case amendments adopted since the prior restatement, to conform with applicable statutes and regulatory requirements, and to make other changes deemed desirable in order to effect the purposes of the Plan.

On March 29, 2001, the Plan was further restated to reflect amendments adopted since the prior restatement, to provide for daily valuation of Member Accounts, and to make further changes, including both changes intended to comply with subsequent regulatory and legislative requirements and changes desired as a matter of plan design, effective as of such dates as are expressly provided or are required by law.

On June 28, 2002, the Plan was amended and restated to make further changes deemed necessary or advisable to comply with changes in applicable law, including the Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA"), and other amendments determined by the Company to be appropriate to further the purposes of the Plan, effective as of the dates required by such provisions of law or as expressly set forth, provided that clarifications of existing provisions are effective as of the same dates as the provisions which they clarify.  On June 14, 2004, the Plan was further amended and restated to incorporate amendments adopted since the prior restatement, to provide for the merger of the Neuberger Berman, LLC Profit Sharing Plan and Neuberger Berman, LLC Pension Plan into the Plan effective June 14, 2004 (including special provisions for employees of Neuberger Berman, LLC and its subsidiaries), and to clarify the character of the Investment Funds established by the terms of the Plan and the authority of the Committee to establish additional Investment Funds (such clarification to be effective as of the original effective dates of the provisions to which they relate).

KL3 2630220.9

On December 29, 2005, the Plan was further amended and restated to set forth more fully the nondiscrimination testing rules for Section 401(k) and Matching Contributions following EGTRRA, effective January 1, 2002; to increase Basic and Matching Contributions and add an applicable vesting requirement, effective for contributions for Plan Years beginning on or after January 1, 2005; to limit automatic cashouts following termination of employment to amounts no more than $1,000, effective March 28, 2005; to reflect the final section 401(k) regulations, effective as of such dates as are expressly provided; to add Supplements reflecting the transition of employees of Finance American, LLC and BNC Mortgage, Inc, into the Plan; and to make additional changes required by law or for purposes of clarification and ease of administration.  Clarifying changes contained in the Plan were effective as of the effective dates of the provisions to which they relate.  In addition, certain provisions that ceased to have current applicability as of various dates on or prior to January 1, 2002 (and/or related effective date provisions) were eliminated on the basis that they may be found in predecessor plans where necessary.

On December 22, 2006 the Plan was further amended and restated to expand eligibility for Matching Contributions to otherwise eligible Participants who are employed by an Affiliate on the last day of the Plan Year, effective January 1, 2006, and to make additional changes deemed advisable, including changes to reflect the final regulations under EGTRRA's catch-up provisions.  The Plan is now hereby further restated effective January 1, 2008, (i) to revise the provisions governing Plan Investment Funds to reflect a review thereof  in connection with changes made by the Pension Protection Act of 2006 (the "PPA") and regulations thereunder, (ii) to add a Roth Section 401(k) Contribution feature and make related definitional or conforming changes (including elimination of references to After-Tax Contributions and redesignation of "Before-Tax Contributions" as "Section 401(k) Contributions"), (iii) to allow non-spouse beneficiaries to make direct rollovers of Plan death benefits in accordance with the PPA, and (iv) to reflect PPA provisions requiring offering of a Qualified 75% Joint and Survivor Annuity" where a QJSA form is applicable and eliminating gap period income from the calculation of required corrective distribution; to add additional Supplements to the Plan to reflect actions and changes effected in connection with certain recent acquisitions, effective as of the dates therein provided; and to include amendments adopted since the prior restatement. Where the context requires, references to Sections or Articles of the Plan as restated shall include

references to corresponding provisions of the Plan as previously in effect.  The Plan as so restated reads as follows:

ARTICLE I

DEFINITIONS

When used in this Plan, the following terms shall have the designated meaning, unless a different meaning is clearly required by the context.

Section 1.1 - Act.  The Employee Retirement Income Security Act of 1974, as amended from time to time.

Section 1.2 - Administrator.  Effective as of the Daily Valuation Effective Date, the contract administrator retained by the Committee to carry out the principal recordkeeping and other administrative responsibilities of the Plan as delegated to it by the Committee.

Section 1.3 - Affiliate.  Any of the following:

(a)     Any incorporated or unincorporated trade or business which at the time of reference is controlled by, or is under common control with an Employer within the meaning of Section 414(b) or (c) of the Code and for purposes of Article V, Section 415(h) of the Code (a "Controlled Group Affiliate").

(b)     Any (i) member of an affiliated service group, within the meaning of Section 414(m) of the Code, that includes an Employer, or (ii) organization aggregated with an Employer pursuant to Section 414(o) of the Code, to the extent required by such Sections.

Section 1.4 - Alternate Payee.  Any spouse, former spouse, child or other dependent of a Member who is named in a Qualified Domestic Relations Order as having a right to receive all, or a portion of, a Member's benefits under the Plan.

Section 1.5 - American Express Stock.  Common shares issued by American Express Company, which up until the Spinoff Date was the parent corporation of the Company.

Section 1.6 - Applicable Plan Year.  For purposes of nondiscrimination testing under Sections 3.4 and 3.6, the current Plan Year.

Section 1.7 - Basic Contributions.  Employer Contributions made for a Participant in accordance with Section 4.1 without regard to Section 401(k) Contributions.

Section 1.8 - Beneficiary.  The person or persons entitled to benefits following a Member's death in accordance with Section 11.1.

Section 1.9 - Black Out Period.  Any period during which trading in American Express Stock, Lehman Stock or any other Investment Fund is prohibited by applicable law or regulation.

Section 1.10 - Board of Directors.  The Board of Directors of the Company or any duly authorized committee thereof (such as the Compensation and Benefits Committee).

Section 1.11 - Catch-Up Contributions.  Section 401(k) Contributions designated and qualifying as Catch-Up Contributions pursuant to Section 3.10 or excess deferrals recharacterized as Catch-Up Contributions under Section 3.10(d) in order to satisfy ADP nondiscrimination testing.

Section 1.12 - Code.  The Internal Revenue Code of 1986, as amended from time to time.

Section 1.13 - Committee.  The Employee Benefit Plans Committee which administers the Plan in accordance with Article X.

Section 1.14 - Company.  Lehman Brothers Holdings Inc., a Delaware corporation (known as Shearson Lehman Brothers Holdings Inc. prior to August 2, 1993), and any successor thereto which adopts the Plan.

Section 1.15 - Company Representative.  The Board of Directors or any other person or persons entitled to act as the representative of the Company exercising the rights of the Company as settlor and plan sponsor.  The persons acting as the Committee or, to the extent determined by such persons, any member or members of the Committee designated by such persons, shall be the Company Representative, except to the extent the Board of Directors determines otherwise or designates other person(s) (by name or position) to be Company Representative for any or all of such purposes.  Individuals acting as Company Representative

- 5 -

shall not be deemed to be fiduciaries with respect to the Plan when carrying out responsibilities assigned to the Company Representative under the Plan, even though, where applicable, such persons may be fiduciaries when carrying out their responsibilities as members of the Committee.

Section 1.16 - Company Stock.  Lehman Stock (and in certain instances American Express Stock).

Section 1.17 - Compensation.  For any Plan Year in which a Participant is an Employee, the total Form W-2 Earnings paid by the Employer to such Employee in such Plan Year, determined before giving effect to any salary reduction agreement under this Plan, or under any cafeteria plan and/or medical reimbursement or dependent care assistance plan, or for purposes of receiving qualified transportation fringe benefits (collectively, "salary reduction amounts"); provided that, for purposes of Article III, Compensation shall not include:

(a)     Any imputed income;

(b)     Compensation deferred during such Plan Year under the terms of any nonqualified deferred compensation program;

(c)     Any amount which an Employer pays to an Expatriate Employee as a goods and services differential allowance, a housing allowance, or other reimbursement pursuant to the Company's U.S. Expatriate Assignment Policy.  For this purpose, the term "Expatriate Employee" means: (i) any Employee who is a United States citizen or a resident alien of the United States and relocates from the United States to another country at the request of his Employer in order to work for the Employer in that country and is paid through a United States payroll; and (ii) any other individual employed by an Employer outside of the United States whom the Committee designates as an Expatriate Employee for the purposes of the Plan;

(d)     Compensation paid in Company Stock, restricted stock units, stock options, forgivable loans, contributions to partnership accounts, other property, or, in the event that an Employer of a Member shall pay compensation both in United States currency and in foreign currency, any amounts paid in foreign currency;

(e)    Payments made for services to an Employer rendered other than as an Employee; and

(f)    Payments otherwise includible (such as accrued vacation pay or pay for an Employee's final payroll period), if made after the last day of the month in which the Employee terminates employment with the Employer (whether or not the Employee continues to be employed by an Affiliate other than an Employer), and salary continuation or other severance payments (whether periodic or made in a lump sum) paid after the actual day of such termination;

And provided further, that Compensation of each Participant taken into account under the Plan for Plan Years beginning on or after January 1, 2002 shall not exceed $200,000 as adjusted from time to time in accordance with Section 401(a)(17) of the Code (the "Compensation Limit"). If the period for determining Compensation is a short plan year (i.e., shorter than 12 months), the annual Compensation Limit is an amount equal to the otherwise applicable annual Compensation Limit multiplied by a fraction, the numerator of which is the number of months in the short plan year and the denominator of which is 12. Except in the case of a short plan year, the Compensation Limit shall be applied to the Participant's aggregate Compensation for the entire twelve months of the Plan Year, without regard to the percentage contribution elected by the Participant during any particular pay period, provided that the aggregate contributions for the benefit of a Participant for any Plan Year, whether Section 401(k) Contributions or Employer Contributions, shall not exceed the maximum amount determined by applying the contribution rate or rates in effect with respect to such contributions from time to time during the year to the total amount of such Compensation not in excess of such Compensation Limit.

For purposes of Sections 3.4 and 3.6, Compensation for any Plan Year shall (x) include an Employee's imputed income to the extent includible in Form W-2 Earnings, and (b) be reduced by the aggregate of any salary reduction amounts (as defined in the first paragraph of this Section 1.17) that would otherwise be includible under the foregoing provisions of this Section 1.17.

For purposes of Articles V and XIII, Compensation shall mean total Form W-2 Earnings before giving effect to any such salary reduction amounts.

KL3 2630220.9

Section 1.18 - Daily Valuation Effective Date.  March 29, 2001.

Section 1.19 - Date of Disability.  The date a Participant is determined to be eligible for long-term disability benefits under the Employer's Long-Term Disability Plan.

Section 1.20 - Distributable Account.  The portion of a Member's Account that is vested on and after his termination of employment under the Plan or death.

Section 1.21 - Effective Date.  January 1, 1984.

Section 1.22 - Employee.  Effective July 1, 1995, (i) Any individual employed by an Employer on a salaried, commission or hourly basis in the United States or outside of the United States if such person receives his Compensation in United States currency, and (ii) any other individual employed by an Employer as a common-law employee outside of the United States who is designated as an Employee by the Committee; provided, however, that such term shall not include (A) any individual not employed by an Employer as a common law employee, including without limitation any leased employee (as defined in Article XVIII), (B) any individual employed pursuant to special purpose programs (including, but not limited to, programs for employment of students, the disadvantaged, or rehabilitative employment), (C) any individual who performs services for an Employer under an agreement or arrangement (which may be written, oral and/or evidenced by the Employer's payroll practice) with such individual (or with another organization that provides the services of such individual to the Employer) pursuant to which such individual is treated as a consultant or an independent contractor (or as an employee of an entity other than the Employer), irrespective of whether he is treated as an employee of an Employer under common-law employment principles or pursuant to the provisions of Section 414(m), 414(n), or 414(o) of the Code, (D) any individual whose compensation or conditions of employment are determined by collective bargaining with a union unless an applicable collective bargaining agreement especially provides that such individual is eligible to participate in this Plan, and (E) effective January 1, 2004, any individual who has not provided a valid Social Security number in accordance with procedures established by the Committee.

Section 1.23 - Employer.  The Company, and any Affiliate that adopts the Plan as a participating employer by communication to its eligible employees of their right to participate (fully or solely by making rollover contributions), and/or by making contributions for their benefit.  Such adoption may be reflected directly or through action taken on behalf of such Affiliate by authorized employees of the Company or any other Affiliate.  As to any Employee, at any time of reference, "Employer" means his employer.

Any Affiliate or successor Employer that has adopted the Plan shall cease to be an Employer upon the occurrence of any transaction which causes it to cease to be a member of the Company's controlled group within the meaning of Section 414(b) or (c) of the Code, unless specifically provided otherwise by the Company Representative in connection with such transaction.  In addition, an entity that is not a member of such a controlled group (an "NCGE") may, with the approval of the Company Representative, adopt the Plan and thereby become an Employer, subject to the right at any time of such entity to withdraw as an Employer and the right of the Company Representative to terminate such entity's status as an Employer. Notwithstanding the foregoing, an NCGE may not participate in the Plan as an Employer if such participation would prevent the Plan from having the benefit of any prohibited transaction exemptions necessary to allow investment in all Investment Funds offered under the Plan.

Section 1.24 - Employer Contributions.  Basic and Matching Contributions made by the Employer in accordance with Article IV and, if applicable, qualified non-elective contributions made under Section 4.1(f).

Section 1.25 - Employment Date.  An employee's first paid working day for which he is credited with an Hour of Service under Section 1.29(a).

Section 1.26 - Employer Suspense Account.  The separate account established and maintained by the Trustee for Employer Contributions made to the Plan and for forfeitures under the Plan until such time as they are allocated to Member's Accounts.

Section 1.27 - Form W-2 Earnings.  Means such amount which is required to be reported by an Employer annually as wages and other compensation on Federal Form W-2 or, in the case of any Employee who is employed in Puerto Rico, such amount which is required to be

reported annually on such comparable form which is then in use for purposes of Puerto Rican income taxation.  In the case of an employee who, for a given Plan Year, receives income required to be reported on a Federal Form W-2, as well as income required to be reported on the comparable Puerto Rican tax form, such employee's Form W-2 Earnings for such Plan Year shall equal the sum of such two separately reportable amounts.

Section 1.28 - Highly Compensated Employee.  A "highly compensated employee" as defined in Section 414(q) of the Code and applicable regulations.  Effective December 31, 1997, "Highly Compensated Employee" means an employee who received compensation (as determined under Section 414(q) of the Code) for the calendar year beginning in the prior Plan Year in excess $80,000 (as adjusted pursuant to Section 414(q) of the Code) and was a member of the top-paid group of employees for such calendar year (as determined under Section 414(q)(3) of the Code), or who was a 5-percent owner (as described in Section 13.3(a)(iii)) at any time during the current or prior Plan Year.

Section 1.29 - Hour of Service.  Each hour (a) for which an employee is directly or indirectly compensated or entitled to compensation by the Employer or an Affiliate for the performance of duties; (b) for which an employee is directly or indirectly compensated or entitled to compensation by the Employer or an Affiliate (irrespective of whether the employment relationship has terminated) for reasons other than performance of duties (such as vacation, holiday, sickness, jury duty, disability, lay-off, military duty or leave of absence); or (c) for which back pay is awarded or agreed to by the Employer or an Affiliate without regard to mitigation of damages.  All Hours of Service will be counted in accordance with the provisions of Department of Labor Regulations 2530.200b-2(b) and (c).

Section 1.30 - Investment Fund.  (a) The Lehman Stock Fund established pursuant to Section 8.3, (b) until January 31, 2007, the "American Express Stock Fund", which shall be invested exclusively in American Express Stock except for such reserve invested in short-term fixed income investments or cash as shall be determined to be necessary or advisable for the purpose of maintaining appropriate liquidity, and (c) any other funds established by the Committee and held by the Trustee pursuant to Section 9.2.

KL3 2630220.9

Section 1.31 - Lehman Stock.  Common stock, par value $.10 per share, of the Company, or such other par value which may result from a change in the Company's capitalization.

Section 1.32 - Lehman Stock Fund.  The employee stock ownership (ESOP) component of the Trust Fund established and maintained pursuant to Section 8.3.

Section 1.33 - Matching Contributions.  The Employer Contribution made for a Participant in accordance with Section 4.1 based on the amount of his Section 401(k) Contributions.

Section 1.34 - Maternity or Paternity Absence.  An absence from work with an Employer or Affiliate for any period by reason of (A) an employee's pregnancy, (B) the birth of a child of the employee, (C) the placement of a child with the employee in connection with the adoption of such child by such employee, or (D) the caring for a natural or adopted child for a period beginning immediately following such birth or placement.

Section 1.35 - Member.  Either a Participant or a former Participant who has a Member's Account in the Plan.

Section 1.36 - Member's Account.  The separate account maintained for each Member which represents his total interest in the Trust Fund which consists of the sum of the following accounts:

(a)    "Section 401(k) Contributions Account."  That portion of the Member's Account which evidences the value of the contributions made by an Employer on his or her behalf to the Plan under Section 3.1 or 3.10, and the applicable amounts transferred to the Plan under Section 3.9, including the net worth of the Trust Fund attributable thereto.  Where applicable, the Section 401(k) Contributions Account shall include a subaccount for contributions made pursuant to Section 3.10 (which may be referred to as the "Catch-Up Contributions Account").

(b)    "Roth Contributions Account."  That portion of the Member's Account which evidences the value of contributions made by an Employer on his or her behalf to the

Plan under Article XXI, including any applicable amounts transferred to the Plan under Section 3.9, including the net worth of the Trust Fund attributable thereto. Where applicable, the Roth Contributions Account shall include a subaccount for Catch-Up Contributions made under Section 3.10 as modified by Article XXI.

(c)    "Employer Contributions Account." That portion of the Member's Account which evidences the value of the Employer Contributions made on his behalf to the Plan under Section 4.1 and the applicable amounts transferred to the Plan under Section 3.9, including the net worth of the Trust Fund attributable thereto. The Employer Contributions Account shall include such subaccount as the Committee shall deem necessary or advisable to reflect the vesting schedule applicable to Employer Contributions for Plan Years beginning on and after January 1, 2005, and the immediate and fully vested status of any qualified non-elective contributions made under Section 4.1(d).

(d)    "Rollover Account." That portion of the Member's Account which evidences the value of his applicable rollover contributions under Section 3.9, including the net worth of the Trust Fund attributable thereto. Where applicable, the Rollover Account shall include a subaccount for Rollover Contributions consisting of after-tax contributions (which may be referred to as the "After-Tax Rollover Account").

(e)    "After-Tax Contribution Account." That portion of the Member's Account which evidences the value of the contributions the Participant made to another employer tax-qualified plan on an after-tax basis (other than as Roth 401(k) Contributions described in Section 402A of the Code) and transferred to the Plan under Section 3.9 or an applicable Supplement, including the net worth of the Trust Fund attributable thereto.

A Member's Account shall also include, where applicable, such additional accounts or subaccounts as may be established pursuant to any Supplement to this Plan.

Section 1.37 - Merger Date. August 10, 1990, which was the effective date of the merger of Shearson Lehman Hutton Holdings Inc. with a subsidiary of American Express Company, determined in accordance with the merger agreement dated as of March 26, 1990.

KL3 2630220.9

Section 1.38 - Participant.  Any Employee who becomes eligible for and commences participation in the Plan as provided in Article II.

Section 1.39 - Period of Severance.  For purposes of determining Years of Vesting Service, the period of time commencing on an employee's Severance Date and ending on the date on which the employee again performs an Hour of Service; provided, that the period between the first and second anniversaries of the first day of an employee's Maternity or Paternity Absence shall (except to the extent that such employee is otherwise credited with a Year of Vesting Service during such period pursuant to Section 1.46(b)) be neither a Period of Severance nor included in the determination of such employee's Years of Vesting Service.  An employee's Period of Severance shall be measured in one-year increments, with each such one-year Period of Severance beginning on the employee's Severance Date and each such succeeding anniversary of such Severance Date, as the case may be.

Section 1.40 - Plan.  The Lehman Brothers Savings Plan embodied herein and as amended from time to time, previously known as the Lehman Brothers Holdings Inc. Tax Deferred Savings Plan, and known prior to August 2, 1993 as the Shearson Lehman Brothers Holdings Inc. Tax Deferred Savings Plan.

Section 1.41 - Plan Year.  The calendar year.

Section 1.42 - Qualified Domestic Relations Order.  Any judgment, decree or order, including approval of a property settlement agreement, which relates to the provision of child support, alimony payments or marital property rights to a spouse, former spouse, child or other dependent of a Member, is made pursuant to a state domestic relations law, and which satisfies the provisions of Section 414(p) of the Code.

Section 1.43 - Reemployment Date.  For purposes of determining Years of Vesting Service, an employee's first paid working day credited as an Hour of Service under Section 1.29(a) following a Period of Severance for which an employee is not credited with vesting service under Section 7.1.2.

KL3 2630220.9

Section 1.44 - Roth Contribution.  A Participant's elective deferrals that are includible in the Participant's gross income at the time deferred and have been irrevocably designated as Roth Contributions by the Participant in his or her deferral election.

Section 1.45 - Section 401(k) Contributions.  Contributions made by an Employer on a pre-tax basis for the benefit of a Participant, in the amount by which such Participant has chosen, pursuant to Section 3.3, to reduce compensation otherwise payable, or to the extent the Participant has so elected pursuant to Article XXI, Roth Contributions.

Section 1.46 - Severance Date.  For purposes of determining Years of Vesting Service:

(a)    The last day of the month in which occurs the earlier of:

(i)    the date on which an employee quits, is discharged by his Employer or an Affiliate, retires or dies; or

(ii)    the first anniversary of the date on which an employee begins an absence from service with the Employer or an Affiliate for reasons other than those described in (i) above, such as vacation, holiday, sickness, disability, leave of absence, layoff or maternity or paternity absence.

(b)    Notwithstanding the foregoing provisions of this Section 1.46, in the case of any employee who is absent from service with an Employer or an Affiliate on account of any paid or unpaid leave of absence (including an authorized leave of absence or a period for which a person is absent on account of a period of long-term disability) granted in accordance with an established nondiscriminatory policy:

(i)    if such person returns to employment with an Employer or an Affiliate upon the expiration of (and in accordance with the terms of) such leave of absence, (i) such person shall not be considered to have incurred a Severance Date on account of such period of leave of absence and (ii) such period of leave of absence shall, for purposes of determining such person's Years of Vesting Service be considered to be a period of employment; and

KL3 2630220.9

(ii)    if such person fails to return to employment with an Employer or an Affiliate upon the expiration of such leave of absence, such person's Severance Date shall be the later of the date determined under clause (ii) of Section 1.46(a) above or the date on which such person is, as a result of such failure to so return to employment, classified as terminated by the Employer or Affiliate by which such person was last employed prior to the commencement of such leave of absence.

Section 1.47 - Spinoff Date.  May 31, 1994, the date as of which American Express Company issued a special dividend to its common stockholders consisting of common shares of the Company and the Company and American Express Company ceased to be Affiliates.

Section 1.48 - Trust Agreement.  The agreement or agreements entered into between the Company and Trustee or Trustees to hold and administer the assets of the Plan.

Section 1.49 - Trust Fund(s).  The assets or any part thereof of every kind and description held under the Trust Agreement.

Section 1.50 - Trustee.  The trustee or trustees at any time holding the assets of the Plan as provided in Article VIII.

Section 1.51 - Twelve Month Period of Service.  For purposes of determining eligibility to share in Employer Contributions, the period beginning on an employee's Employment Date during which the employee has at least twelve months of service.  Service for this purpose shall continue until the employee incurs a severance from service date, as defined in paragraph (i) below.  Effective for Employer Contributions for the Plan Year beginning January 1, 2005, a month of service for this purpose means a calendar month during any part of which an employee completes an Hour of Service.  If an Employee has a severance from service date due to an event described in clause (A) of such paragraph before satisfying the twelve months of service requirement and then performs an Hour of Service before incurring a one-year period of severance (as defined in paragraph (ii) below), the period of severance will be taken into account in determining eligibility and will be deemed to be service.  If absence from service occurs due to an event described in clause (B) of paragraph (i) and a severance from service date described

such clause (A) occurs within the twelve consecutive month period commencing on the first day of such absence, service shall include the period of severance if an Hour of Service is performed within the twelve consecutive month period commencing on the first day of the absence from service described in such clause (B).  For purposes of the foregoing:

(i)     "Severance from service date" means the earlier of:  (A) the date on which the employee quits, retires or is discharged; or (B) the first anniversary of the date beginning a period of absence from service (with or without pay) with all Employers and Affiliates for any other reason (such as vacation, holiday, sickness, disability, leave of absence or layoff).  Notwithstanding the foregoing sentence, the severance from service date of an employee who is absent from service beyond the first anniversary of such absence by reason of a Maternity or Paternity Absence is the second anniversary of such absence.

(ii)    "One-year period of severance" means a 12-consecutive month period, beginning on the employee's severance from service date or on any anniversary of such date, during which the employee does not perform an Hour of Service.

(iii)   If a former employee of an Employer or an Affiliate (1) has not completed a Twelve Month Period of Service by his severance from service date as defined in paragraph (i) above, and (2) is reemployed by an Employer or Affiliate, all service during the prior period of employment will be aggregated with service following reemployment in determining when a Twelve Month Period of Service has been completed; provided, however, that any service before a period of consecutive one-year periods of severance (as defined in paragraph (ii) above) will not be taken into account in such determination if the number of consecutive one-year periods of severance equals or exceeds the greater of 5 or the aggregate number of years of service.

(iv)    An individual's Employment Date and Hours of Service (if applicable) shall be determined without regard to the provisions of  Article XVIII (i.e., only service as a common law employee shall be taken into account, and not service as a leased employee, whether or not such service is credited for other purposes under the Plan)

(v)    Notwithstanding anything in Section 1.3 or any other provision of the Plan to the contrary, an entity that is not an Employer shall be treated as an Affiliate for purposes of determining eligibility to share in the allocation of Employer Contributions by reason of completing a Twelve Month Period of Service only if such entity comes within the definition of "Affiliate" in Section 1.3(a) based solely on actual direct or indirect ownership of the requisite interests in such entity, and without regard to any constructive ownership attributed by reasons of options or otherwise (and which is therefore taken into account in determining Affiliate status for purposes of vesting).

Section 1.52 - Valuation Date.  Effective as of the Daily Valuation Effective Date, each business day on which the New York Stock Exchange is open for trading, and the last day of the Plan Year whether or not such a business day.

Section 1.53 - Years of Vesting Service.  Years of vesting service as determined under Section 7.1.2.

ARTICLE II

ELIGIBILITY

Section 2.1 - Eligibility for Participation

(a)     All Employees who were Participants on July 1, 1995 shall continue to participate in the Plan according to the provisions of the Plan in effect on and after July 1, 1995.

(b)     Each other Employee shall be eligible to become a Participant on the later of July 1, 1995 (if he is then an Employee) or his Employment Date (and the twelve-month waiting period formerly in effect shall cease to apply).

Section 2.2 - Effective Date of Participation

An eligible Employee must enroll in accordance with procedures established by the Committee in order to have the Employer begin making payroll deductions for Section 401(k) Contributions to the Plan.  Such Employee shall become a Participant as of the first day of the month in which payroll deductions begin  (or, if earlier, the date on which the Employee first makes a rollover contribution to the Plan, or any other amounts are transferred to the Plan for his benefit, pursuant to Section 3.9).  Notwithstanding the foregoing, an eligible Employee who does not enroll but who is entitled to receive an Employer contribution pursuant to Section 4.1, shall become a Participant as of the date the first such contribution is credited to his Employer Contributions Account.

At the election of the Employee pursuant to Section 3.3, payroll deductions hereunder shall commence at the percentage elected as soon as administratively practicable following the date on which the Employee enrolls.

Section 2.3 - Duration of Participation

An Employee who becomes a Participant shall continue to be a Participant until he ceases to be an Employee; provided, however, that such person shall continue to be a Member for as long as he has an undistributed Member's Account.

KL3 2630220.9

### Section 2.4 - Reemployment

In the event a Member, former Member, or former employee of an Employer or an Affiliate is reemployed, he shall be eligible to recommence (or commence) participation in the Plan on the date he again becomes an Employee (or, if earlier, the date on which the Employee first makes a rollover contribution to the Plan, or any other amounts are transferred to the Plan for his benefit, pursuant to Section 3.9). Such Employee shall again become (or first become) a Participant as of the earlier of the date he enrolls in accordance with procedures established by the Committee or the date a contribution made by the Employer pursuant to Section 4.1 is credited to the Participant's Employer Contributions Account.

KL3 2630220.9

ARTICLE III

SECTION 401(K) CONTRIBUTIONS, ROLLOVER CONTRIBUTIONS AND TRANSFERS

Section 3.1 - Section 401(k) Contributions

(a)     Section 401(k) Contributions.  Each Employee may elect to have the Employer contribute on his behalf Section 401(k) Contributions in an amount equal to a whole percentage of his Compensation otherwise payable in cash, not to exceed twenty-five percent (25%) of such Compensation effective January 1, 2002, and fifty percent (50%) of such Compensation effective January 1, 2004; provided, that a whole percentage shall not be required if deemed necessary or appropriate to comply with any applicable limitations on the amount of Section 401(k) Contributions permitted.  For all or part of any Plan Year, the Committee may, in its sole discretion, establish a lower maximum elective percentage with respect to Section 401(k) Contributions either for all Employees or for a specified group of Employees which does not discriminate in favor of Highly Compensated Employees.  The Committee shall decrease the amount of Section 401(k) Contributions made on behalf of an Employee for any payroll period to the extent the sum of such Section 401(k) Contributions, the amount of the Employee's deductions for such payroll period for welfare benefits sponsored by the Employer, any withholding from pay required by law, and any other deductions requested by the Employee which under the Employer's payroll procedure are treated as a priority claim relative to the contributions to this Plan exceeds the Employee's Compensation for such payroll period.

(b)     Elective Deferral Limit.

No Participant shall be permitted to have Section 401(k) Contributions during the Employee's taxable year (which shall be presumed to be the calendar year) in excess of the Elective Deferral Limit in effect at the beginning of such taxable year.  Section 401(k) Contributions during an Employee's taxable year shall be discontinued for the remainder of that year when the aggregate Section 401(k) Contributions for the Participant equals the Elective Deferral Limit for that year.

For purposes of this Article III, the Elective Deferral Limit means the amount set forth in the table below, reduced by the amount of "elective deferrals" (as defined in Section 402(g)(3) of the Code) made by the Participant during his taxable year under any plans or agreements maintained by an Employer or Controlled Group Affiliate (described in Section 1.3(a)) other than this Plan (and, in the sole discretion of the Committee, any plans or agreements maintained by any other employer, if reported to the Committee at such time and in such manner as the Committee shall prescribe).

**Elective Deferral Limit Effective January 1, 2002**

| Calendar Year | Amount |
|---|---|
| 2002 | $11,000 |
| 2003 | $12,000 |
| 2004 | $13,000 |
| 2005 | $14,000 |
| 2006 | $15,000 |
| Years subsequent to 2006 | $15,000, as adjusted in accordance with Section 402(g)(4) of the Code |

If the Elective Deferral Limit is exceeded for a Participant's taxable year, the excess of Section 401(k) Contributions (excluding amounts characterized or recharacterized as Catch-Up Contributions) made for such year over such limit may be distributed no later than April 15 following the close of the taxable year in the sole discretion of the Committee. Any amount so distributed shall be adjusted for income and loss for the Plan Year attributable thereto. The amount of excess contributions to be distributed for a taxable year shall be reduced by the amount of Section 401(k) Contributions previously distributed by the Plan on or after the beginning of such taxable year in order to comply with the limitations of Section 3.4. Such distribution shall be made on a pro rata basis from the Investment Fund or Funds in which such excess contributions were invested.

In order to receive such excess Section 401(k) Contributions, the Participant must make a claim therefore in accordance with procedures established by the Committee (but in no event later than March 1 of the year of distribution), which includes (a) a statement that the Participant's Elective Deferral Limit will be exceeded unless the excess Section 401(k)

Contributions are distributed, and (2) an agreement to forfeit (notwithstanding Section 7.1) any Matching Contributions made with respect to such excess Section 401(k) Contributions and allocated to his Employer Contributions Account.  Matching Contributions forfeited pursuant to this Section 3.1 shall be applied to reduce future Employer Contributions as provided in Section 4.1.

(c)     Optional Distribution of Excess Deferrals.  For purposes of this Section 3.1, "excess deferrals" means the excess of a Participant's Section 401(k) Contributions (excluding any amount designated as Catch-Up Contributions under Section 3.10) for a Plan Year over the Elective Deferral Limit applicable under Section 3.1(b), plus the excess of any Section 401(k) Contributions purportedly made as Catch-Up Contributions over the dollar limit on the amount of such contributions applicable under Section 3.10.  Excess Deferrals may, in the sole discretion of the Administrator, be distributed to the Participant no later than April 15 of the following Plan Year.

If the "elective deferrals" (as defined in Section 402(g)(3) of the Code) made by a Participant during his taxable year under this Plan and any other plans or agreements maintained by an Employer or Controlled Group Affiliate (described in Section 1.3(a)) shall exceed the Elective Deferral Limit (and where applicable, the catch-up limit of Section 3.10), the Committee shall deem such a claim to have been delivered by the Participant and make distribution in accordance with this Section 3.1 no later than such April 15.

Section 3.2 - Allocation to Participant's Account

Effective on and after the Daily Valuation Effective Date, contributions made in accordance with Section 3.1 shall be credited to the Section 401(k) Contributions Accounts of Participants on the date on which such contributions are received by the Trustee and the Administrator has received the information necessary to permit such crediting; provided, however, that all Section 401(k) Contributions for a Plan Year shall be allocated no later than the last day of such Plan Year, and provided further that such allocation shall not be taken into account for purposes of adjusting the Member's Accounts for investment gains or losses until such contributions have been credited as above-provided.  Contributions under Section 3.1 shall be transferred to the Trust Fund as soon as administratively practicable after they are deducted

from the Compensation of the Participant (and, except as may be occasionally required by bona fide administrative considerations, shall in no event be transferred before the applicable election is made, or before the performance of services with respect to which such Compensation is paid (or when such Compensation would be currently available, if earlier).

Section 3.3 - Participant's Election of Section 401(k) Contributions

(a)     General.  Each Employee shall have the right to elect, in accordance with procedures established by the Committee, to have the Employer make Section 401(k) Contributions on his behalf pursuant to Section 3.1.  Such election shall be made prior to and be effective upon becoming a Participant and shall thereafter remain in effect until changed.

(b)     Election Changes.  Effective as of the Daily Valuation Effective Date, a Participant may increase or decrease, discontinue, or resume, his Section 401(k) Contributions to the Plan (within the limits permitted by Section 3.1) by requesting such change in accordance with procedures established by the Committee.  The contribution rate in effect for Section 401(k) Contributions shall apply both to periodic payments of Compensation and to Compensation paid in a single sum.  Contribution rates and any suspension of contributions, including without limitation a suspension of contributions due to a hardship withdrawal or a cessation of contributions due to a Participant's termination of employment or transfer to employment other than as an Employee, shall remain in effect until changed or suspended or reactivated or any other new election is made (as the case may be) in accordance with this Section 3.3.  However, a reduction or cessation of Section 401(k) Contributions solely to reflect the Elective Deferral Limit (as defined in Section 3.1), or adjustments of the contribution rate made pursuant to Section 3.7 in order to avoid a violation of nondiscrimination requirements or maximum limits on permitted allocations, shall apply only for the remainder of the Plan Year in which first effected, and if the Participant continues as an Employee to January 1 of the following Plan Year, the contribution rate previously in effect shall be reinstated as of such January 1, except as otherwise timely elected by the Participant or determined by the Committee pursuant to Section 3.4, 3.6, or 3.7, or as may be required by an intervening hardship withdrawal.  A former Employee who returns to employment as an Employee may

KL3 2630220.9

elect to resume Section 401(k) Contributions to the Plan in accordance with the same procedures that apply to a new Employee.

### Section 3.4 - Limitation on Section 401(k) Contributions

(a)    Actual Deferral Percentage Test. Notwithstanding Section 3.1, Section 401(k) Contributions for any Plan Year for a Participant who is a Highly Compensated Employee for such year shall be reduced if and to the extent deemed necessary or advisable by the Committee in order to satisfy either (i) or (ii) below:

(i)    The Actual Deferral Percentage for Participants who are Highly Compensated Employees for the Plan Year shall not exceed the Actual Deferral Percentage for the Applicable Plan Year for Participants who are not Highly Compensated Employees multiplied by 1.25.

(ii)    The Actual Deferral Percentage for the Plan Year for Participants who are Highly Compensated Employees shall not exceed the Actual Deferral Percentage for the Applicable Plan Year for Participants who are not Highly Compensated Employees multiplied by 2, provided that the Actual Deferral Percentage for Participants who are Highly Compensated Employees is not more than 2 percentage points higher than the Actual Deferral Percentage for the Applicable Plan Year for Participants who are not Highly Compensated Employees.

The status of an individual as a non-Highly Compensated Employee for an Applicable Plan Year shall be determined based on the definition of Highly Compensated Employee in effect for such Applicable Plan Year

(b)    Calculation of Individual Ratios.  For purposes of this Article III, the "Actual Deferral Percentage" for any group of individuals for a Plan Year (including an Applicable Plan Year) means the average of the individual ratios, for each person in such group, of (a) his share of Section 401(k) Contributions for the Plan Year, excluding any such contributions characterized or recharacterized as Catch-Up Contributions under Section 3.10(d), (and amounts taken into account as Section 401(k) Contributions pursuant to Section 3.4(d) below) to (b) his Compensation for the Plan Year.  The individual ratios, and the Actual

KL3 2630220.9

Deferral Percentage for any group of individuals, shall be calculated to the nearest one-hundredth of one percent (0.01%).

(c)    <u>Contributions in Excess of Elective Deferral Limit</u>.  Section 401(k) Contributions by a non-Highly Compensated Employee that exceed the Elective Deferral Limit (as defined in Section 3.1) (and where applicable, the catch-up limit set forth in Section 3.10(c)) based solely on elective deferrals under this Plan and any similar plan of an Employer or Affiliate, and which are therefore required to be refunded pursuant to the last paragraph of Section 3.1(b), shall be disregarded in determining Actual Deferral Percentages.  However, Section 401(k) Contributions that exceed the Elective Deferral Limit by reason of elective deferrals under plans of any other employer shall be taken into account, even if so refunded; and all Section 401(k) Contributions by Highly Compensated Employees shall be taken into account without regard to such limit.

(d)    <u>QNECs and QMACs</u>.  For purposes of calculating the Actual Deferral Percentage for Plan Years prior to January 1, 2005, Employer Contributions may be treated as Section 401(k) Contributions in accordance with Treasury Reg. § 1.401(k)-1(b)(5) as then in effect, to the extent such contributions are not taken into account for purposes of determining the Contribution Percentage under Section 3.6.  For subsequent Plan Years, Employer Contributions made as QNECs under Section 4.1(f) may be so taken into account in accordance with applicable regulations, including Treasury Reg. § 1.401(k)-2(a)(6).

(e)    <u>Compliance Testing</u>.  The Committee shall determine, during and as of the end of each Plan Year, the Actual Deferral Percentages relevant for purposes of this Section 3.4, based on the actual rate of Compensation and Section 401(k) Contributions then in effect for Participants in light of their salary reduction agreements under Section 3.3 and their projected Compensation and Section 401(k) Contributions (and amounts taken into account as Section 401(k) Contributions pursuant to Section 3.4(d) above) for the remainder of the Plan Year.  If, based on such determination, the Committee concludes that a reduction in the Section 401(k) Contributions (and amounts taken into account as Section 401(k) Contributions) made for any Participant is necessary in order to comply with the limitations of this Section 3.4, it shall so notify each affected Participant and his Employer of the reduction it deems necessary

or desirable for this purpose.  In such event, Section 401(k) Contributions shall be reduced in accordance with the Committee's determination, and the salary reduction agreement of each Participant affected by such determination modified accordingly.  Any such reduction may apply either to all Participants, only to Participants who are Highly Compensated Employees, or to any other group as the Committee shall determine, and in such manner as the Committee shall determine.

(f)    Participants for ADP Purposes.  For purposes of performing the Actual Deferral Percentage test of this Section 3.4, an individual eligible to make Section 401(k) Contributions who fails to do so shall be treated as a Participant with a contribution percentage of zero.

Section 3.5 - Contributions in Excess of Section 401(k) Limit

For purposes of this Section 3.5, "Excess ADP Contributions" means, with respect to any Plan Year, the excess of (i) the aggregate amount of Section 401(k) Contributions (and any amounts taken into account as Section 401(k) Contributions pursuant to Section 3.4(d)) actually paid into the Plan on behalf of Highly Compensated Employees for such year, over (ii) the maximum amount of Section 401(k) Contributions (and amounts taken into account as Section 401(k) Contributions) permitted for such year under the limitations set forth in Section 3.4, determined by reducing the amount of Section 401(k) Contributions (and amounts so taken into account as Section 401(k) Contributions) to be permitted on behalf of Highly Compensated Employees in the order of their Actual Deferral Percentages (as defined in Section 3.4), beginning with the highest of such percentages.  The aggregate amount of any Excess ADP Contributions so determined for any Plan Year shall be distributed in cash to Highly Compensated Employees on the basis of the respective amounts of Section 401(k) Contributions (and amounts so taken into account as Section 401(k) Contributions) made on their behalf, reducing the largest amounts of deferrals first, and successively to the extent necessary until the entire amount of such excess is distributed.

The amount of Excess ADP Contributions to be distributed or recharacterized under the foregoing provisions shall be reduced by Section 401(k) Contributions in excess of the

Elective Deferral Limit (as defined in Section 3.1(b)) previously distributed for the taxable year of the Participant ending in the same Plan Year.

Any distribution of Excess ADP Contributions shall be made no later than March 15 of the following Plan Year if possible, and in any event no later than the close of such following Plan Year.  Any amount so distributed shall be adjusted for income and loss attributable thereto under the allocation rules of Section 9.3 in respect of the Plan Year in which such excess contributions were made, and, for the 2006 and 2007 Plan Years, the "gap period" income or loss for the period from the last day of the Plan Year to the date of distribution, as determined under the applicable safe harbor rule in Treasury Reg. § 1.401(k)-2(b)(2)(vi)(D). Such distribution shall be made pro rata from each account and pro rata from the Investment Fund or Funds in which such excess contributions were invested.

### Section 3.6 - ACP Limitation on Matching Contributions

(a)    In General.  Notwithstanding any other provision of this Plan, Matching Contributions for any Plan Year for a Participant who is a Highly Compensated Employee for that Plan Year shall be reduced if and to the extent deemed necessary or advisable by the Committee in order to satisfy either (i) or (ii) below:

(i)    The Contribution Percentage (as defined in Section 3.6(b)) for Participants who are Highly Compensated Employees for the Plan Year shall not exceed the Contribution Percentage for the Applicable Plan Year for Participants who are not Highly Compensated Employees multiplied by 1.25.

(ii)    The Contribution Percentage for Participants who are Highly Compensated Employees for the Plan Year shall not exceed the Contribution Percentage for the Applicable Plan Year for Participants who are not Highly Compensated Employees multiplied by 2, provided that the Contribution Percentage for Participants who are Highly Compensated Employees is not more than two percentage points higher than the Contribution Percentage for the Applicable Plan Year for Participants who are not Highly Compensated Employees.

(b)    Determination of Contribution Percentage.  For purposes of this Article III, the "Contribution Percentage" for any group of persons means the average of the individual

ratios, for each person in such group, of (x) such person's share of Matching Contributions (excluding Matching Contributions taken into account under Section 3.4 in determining the Actual Deferral Percentage) for the Plan Year (including an Applicable Plan Year) to (y) such person's Compensation for the Plan Year. The individual ratios, and the Contribution Percentage for any group of individuals, shall be calculated to the nearest one-hundredth of one percent (0.01%).

(c)    Contributions Treated as Matching Contributions.  For purposes of calculating the Contribution Percentage, (i) Basic Contributions under Section 4.1 may be taken into account as Matching Contributions for Plan Years prior to January 1, 2005 if the conditions of Treasury Reg. § 1.401(m)-1(b)(5) as then in effect are met, and (ii) Employer Contributions made as QNECs under Section 4.1(f) for subsequent Plan Years may be so taken into account if the conditions of such regulation or, effective January 1, 2006, Treasury Reg. § 1.401(m)-2(a)(6), are met, to the extent such contributions are not taken into account for purposes of the Actual Deferral Percentage test pursuant to Section 3.4.  In addition, Section 401(k) Contributions may be taken into account as Matching Contributions if the Average Deferral Percentage Test for the Plan Year is met both including and excluding the Section 401(k) Contributions so taken into account.

(d)    Compliance Testing.  If, based on a determination similar to that described in Section 3.4, the Committee shall conclude that a reduction in the Matching Contributions made for or by any Participant is necessary or advisable in order to comply with the limitations of this Section 3.6, such Matching Contributions, shall be reduced in accordance with the direction of the Committee, and the election of any affected Participant made under Section 3.3 shall be modified accordingly.  Any such reduction may be made applicable to all Participants, only to Participants who are Highly Compensated Employees, or to any other group as the Committee shall determine, in such manner as the Committee shall determine.

(e)    Treatment of Excess Contributions.  For purposes of this Section 3.6(e), "Excess 401(m) Contributions" means, with respect to any Plan Year, the excess of (x) the aggregate amount of Matching Contributions and Section 401(k) Contributions that the Committee elects to take into account in determining the Contribution Percentage, if any

("401(m) Contributions"), actually paid into the Plan by or for Highly Compensated Employees for such Plan Year, over (y) the maximum amount of such contributions permitted for such Plan Year under the limitations set forth in Section 3.6(a), determined by reducing the amount of such contributions by or for Highly Compensated Employees in the order of their individual ratios (as described in Section 3.6(b)) beginning with the highest of such ratios. The aggregate amount of any Excess 401(m) Contributions paid into the Plan for any such Plan Year shall be distributed to Highly Compensated Employees on the basis of their respective amounts of 401(m) Contributions first, and successively to the extent necessary until the entire amount of such Excess 401(m) Contributions is distributed. The amount of Excess 401(m) Contributions to be so distributed for any Plan Year shall be paid to the affected Highly Compensated Employees in cash no later than March 15 of the following Plan Year if possible, and in any event no later than the close of such following Plan Year. Any amount so distributed shall be adjusted for income and loss attributable thereto under the allocation rules of Section 9.3 in respect of the Plan Year in which such Excess 401(m) Contributions were made, and, for distributions for the 2006 and 2007 Plan Years, the "gap period" income or loss for the period from the last day of the Plan Year to the date of distribution, as determined under the applicable safe harbor rule in Treasury Reg. §1.401(m)-2(b)(2)(iv)(D). If a Member's Account from which such a distribution is to be made is invested in more than one Investment Fund, such distribution shall be made pro rata, to the extent practicable, from all such Investment Funds.

(f)    Participants for ACP Purposes. For purposes of performing the section ACP test of this Section 3.6, an individual eligible to make Section 401(k) Contributions who fails to do so shall be treated as a Participant with a contribution percentage of zero.

Section 3.7 - Adjustment of Section 401(k) Contributions

Notwithstanding any of the foregoing provisions to the contrary, a Participant may, at such time and in such manner as the Committee may prescribe, or the Committee may, on its own initiative, suspend or change the amount of reduction in Compensation, or payroll deduction, provided for under the foregoing provisions of this Article III in order to avoid an allocation of contributions to a Participant's Member's Account which would violate the limitations of Section 3.4 or 3.6, or Article V.

Section 3.8 - Special Rules

3.8.1      Employees Included in Testing; Disregard of NHCE's with Less than 1 Year of Service.  In applying the Actual Deferral Percentage test of Section 3.4 or the Contribution Percentage test of Section 3.6, an Employee shall be taken into account as a Participant from the date he becomes an Employee eligible to make contributions taken into account thereunder, whether or not he elects to contribute or otherwise becomes a Participant under Section 2.2.  Notwithstanding the foregoing, if the Plan applies Section 410(b)(4)(B) of the Code in determining whether the Plan provisions for Section 401(k) Contributions meet the requirements of Section 410(b) of the Code, Participants who are non-Highly Compensated Employees for the Applicable Plan Year who have not completed a Twelve Month Period of Service shall be disregarded for purposes of the Actual Deferral Percentage test.

3.8.2      Multiple Arrangements for Highly Compensated Employees Combined.  If more than one plan providing for a cash or deferred arrangement, or for matching contributions, or employee contributions (within the meaning of Sections 401(k) and 401(m) of the Code) is maintained by the Employer or an Affiliate, the individual ratios of any Highly Compensated Employee who participates in more than one such plan or arrangement shall, for purposes of determining the Actual Deferral Percentage (as defined in Section 3.4) and Contribution Percentage (as defined in Section 3.6), be determined in accordance with applicable regulations as if all such arrangements were a single plan or arrangement.

3.8.3      Aggregation of Plans.  In the event that this Plan satisfies the requirements of Section 410(b) of the Code only if aggregated with one or more other plans, then this Article III shall be applied by determining the Actual Deferral Percentage and Contribution Percentage of Participants as if all such plans were a single plan.  Plans may be aggregated under this Section 3.8.3 only if they have the same plan year.

3.8.4      Collective Bargaining Unit Employees.  The provisions of Section 3.4 shall be applied separately to employees in any collective bargaining unit participating in the Plan.  If employees in more than one bargaining unit are eligible under the Plan, the Committee, in its discretion, may apply such provisions separately to each separate collective bargaining unit, on an aggregate basis with respect to all collective bargaining units, or separately with

respect to such collective bargaining units or combinations of bargaining units as it determines, provided that such treatment is determined on a basis that is reasonable and reasonably consistent from year to year. Employees in a collective bargaining unit shall be disregarded in applying the provisions of Section 3.6.

Section 3.9 - Rollover Contributions and Other Transfers from Qualified Plans

(a)    Rollovers.  An Employee or a Participant may make a contribution, in cash or such other property as the Committee may permit, to the Plan of any amounts that qualify as rollover amounts under Sections 402(c), 403(a)(4), or 408(d)(3) of the Code, including eligible rollover distributions from a defined benefit plan, provided the Committee consents to the Employee's or the Participant's application to make such contributions following receipt of written certification from the Employee or Participant (or such other certification as the Committee may require) that such contribution is eligible for rollover into this Plan.  Any rollover contributions made to the Plan in accordance with this Section 3.9 shall be deposited in a Rollover Account established in the name of the Employee or the Participant.

(b)    Trust-to-Trust Transfers.  With the consent of the Company Representative, amounts may be transferred to the Plan on behalf of an Employee or Participant from other qualified plans, provided that the trust from which such funds are transferred permits the transfer to be made and, in the opinion of legal counsel for the Company, the transfer will not jeopardize the tax exempt status of the Plan or Trust or create adverse tax consequences for any Employer.  For purposes of this Section 3.9, amounts which may be transferred from another qualified plan are amounts transferred to the Plan directly from any tax qualified plan under Section 401(a) of the Code.  Prior to accepting any transfer to which this Section applies, the Committee may require the transferor plan to establish that the amounts to be transferred to this Plan meet the requirements of this Section and may also require the transferor plan to provide an opinion of counsel satisfactory to the Committee that the amounts to be transferred meet the requirements of this Section.  Any amounts transferred shall be deposited in an Employer Contributions Account, a Section 401(k) Contributions Account, After-Tax Contribution Account, and/or a Rollover Account, as applicable, established in the name of the Employee or the Participant.

(c)    Rollovers by Affiliate Employees.  An Affiliate may adopt this Plan and become an Employer hereunder solely for the purpose of authorizing its employees (excluding individuals described in clauses (A) through (E) of Section 1.22) to make Rollover Contributions to the Plan of eligible rollover distributions within the meaning of Section 3.9(a) above.  An employee of such an Employer who makes such a Rollover Contribution shall be a Participant solely with respect to his Rollover Account, and shall not be entitled to make or share in any other contributions under the Plan with respect to his employment by such Employer.

(d)    Prohibition of Transfers From Plans Requiring Life Annuity Forms.  With respect to transfers under Section 3.9(b), this Plan shall not accept any direct or indirect transfers from a defined benefit plan, money purchase plan (including a target benefit plan), stock bonus or profit sharing plan which would have provided for a life annuity form of payment to the Employee or Participant.

Section 3.10 - Catch-Up Contributions

(a)    Effective January 1, 2002 and thereafter, all employees who are eligible to make Section 401(k) Contributions under this Plan and who have attained age 50 before the end of the Plan Year (catch-up eligible employee) shall be eligible to make Catch-Up Contributions in accordance with, and subject to the limitations of, Section 414(v) of the Code.  Catch-Up Contributions shall not be taken into account for purposes of the provisions of the Plan implementing the required limitations of Section 402(g) of the Code (Section 3.1(b)) and Section 415 of the Code (Article V).  The Plan shall not be treated as failing to satisfy the provisions of the Plan implementing the requirements of Sections 401(k)(3), 410(b), or 416 of the Code (such as Section 3.4), as applicable, by reason of the making of Catch-Up Contributions.

(b)    Method of Contribution.  Catch-Up Contributions shall be made in accordance with such procedures as the Committee may specify from time to time.  Unless otherwise determined by the Committee, Section 401(k) Contributions intended to constitute Catch-Up Contributions may be made only by a separate election to have the Employer contribute on a Participant's behalf an additional amount equal to a whole percentage of his

Compensation otherwise payable in cash, not to exceed twenty-five percent (25%) of such Compensation, designating such amounts as Catch-up Contributions.  Catch-Up Contributions, and any amounts so designated (even if they fail to qualify as catch-up contributions in accordance with Section 414(v) of the Code and regulations thereunder), shall not be eligible for Matching Contributions.

        (c)    Limit on Catch-Up Contribution.  The total amount of Catch-Up Contributions allowed for any Plan Year for any Participant shall not exceed the limit applicable under the following table:

| Plan Year | Limit |
|---|---|
| 2002 | $1,000 |
| 2003 | $2,000 |
| 2004 | $3,000 |
| 2005 | $4,000 |
| 2006 | $5,000 |

The limit for 2007 and thereafter shall be the limit for 2006, as adjusted for cost of living increases in accordance with Section 414(v) of the Code.

        (d)    If Catch-up Contributions by a Catch-up eligible employee for a Plan Year described in paragraph (b) above are less than the limit on Catch-up Contributions for such Plan Year, Section 401(k) Contributions by the Participant that are determined as of the end of the Plan Year to exceed the ADP limit applicable to Highly Compensated Employees for the Plan Year shall be treated as Catch-up Contributions up to the remaining balance of such limit.

        (e)    Treatment of Catch-up Contributions.  A Participant's Catch-up Contributions shall be credited to his Section 401(k) Contributions Account and shall be treated as Section 401(k) Contributions except to the extent that a different treatment is specified in this Section 3.10.

ARTICLE IV

EMPLOYER CONTRIBUTIONS

Section 4.1 - Employer Contributions

(a)    Plan Years beginning prior to December 31, 1994.  Removed.  Consult prior restatements.

(b)    December 31, 1994 to December 31, 2004.  For Plan Years beginning on or after December 31, 1994 and ending on or before December 31, 2004, if and to the extent authorized by the Company, each Employer shall contribute to the Plan on behalf of individuals on the Employer's payroll as Employees on the last day of such Plan Year, the following amounts as applicable:

(1)    If the Employee is an Eligible Participant (as defined in paragraph (3) below) and has a Twelve Month Period of Service, (i) a Basic Contribution of four hundred dollars ($400) and (ii) a Matching Contribution equal to one hundred percent (100%) of the first six hundred dollars ($600) of his Section 401(k) Contributions made in accordance with Section 3.1 during the Plan Year, beginning with the Plan Year in which he has satisfied the Twelve Month Period of Service requirement.

(2)    To the extent funds remain after contributions are allocated under (1), for each Employee who is not an Eligible Participant as so defined, who has a Twelve Month Period of Service and whose Compensation (as modified by Subsection (d ) below) does not exceed $100,000, a Matching Contribution in a uniform amount up to one hundred percent (100%) of the first one thousand dollars ($1,000) of Section 401(k) Contributions made in accordance with Section 3.1 during the Plan Year, beginning with the Plan Year in which he has satisfied the Twelve Month Period of Service requirement.

(3)    For purposes of this Subsection (b), "Eligible Participant" means any Employee who is not (1) an hourly or salaried Employee whose

- 34 -

Compensation (as modified by Subsection (d) below) exceeds $37,800, (2) prior to December 31, 1996, a salaried Employee who receives more than $1,000 in commissions for the Plan Year, or (3) a Branch Manager, Financial Consultant, Financial Consultant Associate, Institutional Salesperson or, effective August 2, 1993, Investment Representative or Investment Representative trainee, or any successor position or any other position designated to be excluded (as such position is described in the Company's job classifications).

(4)     The amount of the total contribution under this Section 4.1(b) and the portion to be made by each Employer for each Plan Year shall be determined  by the Company; provided, however, that no contribution shall be made for the Plan Year beginning and ending on December 31, 2000.

(c)     <u>Effective January 1, 2005</u>.  For Plan Years beginning on or after January 1, 2005, if and to the extent authorized by the Company (where required, by action of the person or persons authorized to approve grants of equity compensation in accordance with rules of the New York Stock Exchange), each Employer shall make a contribution to the Plan, in the amounts set forth below, as applicable, on behalf of individuals who were (i) on the Employer's payroll for the Plan Year and (ii) who were employed on the last day of such Plan Year by (x) an Employer, or, (y) for Matching Contributions for Plan Years ending December 31, 2006 and thereafter, an Employer or an Affiliate,:

(1)     If the Employee is an Eligible Participant (as defined in paragraph (3) below) who has a Twelve Month Period of Service and an Employment Date no later than December 31 of the prior calendar year, (i) a Basic Contribution of five hundred dollars ($500) and (ii) a Matching Contribution equal to one hundred percent (100%) of the first three thousand five hundred dollars ($3,500) of his Section 401(k) Contributions made in accordance with Section 3.1 during the Plan Year, beginning with

the Plan Year in which he has satisfied the Twelve Month Period of Service requirement.

(2)     To the extent funds remain after contributions are allocated under (1), for each Employee who is not an Eligible Participant as so defined and who has (i) a Twelve Month Period of Service, (ii) an Employment Date no later than December 31 of the prior calendar year, and (iii) Compensation (as modified by Subsection (d) below) for the Plan Year that does not exceed $200,000, a Matching Contribution in a uniform amount up to one hundred percent (100%) of the first four thousand dollars ($4,000) of Section 401(k) Contributions made in accordance with Section 3.1 during the Plan Year, beginning with the Plan Year in which he has satisfied the Twelve Month Period of Service requirement.

(3)     For purposes of this Subsection (c), "Eligible Participant" means any Employee whose Compensation (as modified by Subsection (d) below) for the Plan Year does not exceed $50,000, and who is not a Branch Manager, Financial Consultant, Financial Consultant Associate, or Institutional Salesperson, or in any successor position or any other position designated to be excluded (as such position is described in the Company's job classifications).

(4)     Notwithstanding the discretion reserved to the Company to determine separately for each Plan Year whether and to what extent Employer Contributions shall be made for such Plan Year, the aggregate of the Basic Contributions and Matching Contributions to be made for each Plan Year shall not be less than the total amount of forfeitures during such Plan Year (as adjusted for earnings or other investment adjustments applicable to such amount) that were not applied prior to the end of such Plan Year to offset obligations for Employer Contributions under Section 4.1(c) or (f).

(5)     Unless otherwise determined by the Committee, in the event that an Employee is employed by more than one Employer during a Plan Year,

the contribution shall be made by the last Employer for whom the
individual performed services as an Employee during such Plan Year.

(d)    <u>Compensation for 4.1 Purposes</u>.  Solely for purposes of this Section 4.1,
Compensation shall mean W-2 earnings and (without duplication) Section 401(k) Contributions
and Catch-Up Contributions, and any amounts deferred under any nonqualified deferred
compensation plan of the Employer.

(e)    <u>Offset of Employer Contributions Obligation by Application of
Forfeitures</u>.  Employer contributions described in this Section 4.1 may be reduced by any
amount forfeited pursuant to Section 3.1, 7.1.3 or 14.2, or paid into the Plan and not allocable
by reason of Section 5.2 or Subsection 4.1(g), and effective December 31, 2003, by any interest
or other amounts earned on any such forfeited amounts prior to their application to offset such
Employer contributions.  Forfeitures for a Plan Year occurring prior to the making of all
Employer Contributions for the prior Plan Year shall be used first to offset such unpaid
Employer Contributions for the prior Plan Year, and (if any balance remains) then to offset
Employer Contributions for the year of forfeiture.

(f)    <u>QNEC's</u>.  The Company Representative may increase the amount of Basic
Contributions for any Plan Year prior to January 1, 2005, and for subsequent Plan Years may
create a new, additional class of Employer Contributions for such class of non-Highly
Compensated Employees as it may specify ("QNECs"), if and to the extent it deems necessary
or advisable in order to facilitate compliance within the Actual Deferral Percentage and Actual
Contribution Percentage tests of Sections 3.4 and 3.6.  Any such Employer Contributions shall
be nonforfeitable when made without regard to the age and service of the Members to whom
they are allocated, and for Plan Years beginning on or after January 1, 2006, shall not exceed
five percent of Compensation in the case of Members who are non-Highly Compensated
Employees (or, if greater, twice the Plan's representative contribution rate as defined in
Regulation § 1.401(k)-2(a)(6)(iv) or any successor regulations).

(g)    <u>Limit on Matching Contributions</u>.  No Matching Contributions shall be
made with respect to (v) Section 401(k) Contributions which exceed the Elective Deferral Limit
(as defined in Section 3.1), (w) Excess ADP Contributions (as defined in Section 3.5)

distributable pursuant to Section 3.5, (x) Catch-Up Contributions described in Section 3.10, or (y) Section 401(k) Contributions that the Participant elects to make on a basis that they are intended to constitute such Catch-Up Contributions, even though such contributions are ultimately determined not to qualify as Catch-Up Contributions.  Any amounts paid into the Trust Fund with the intention that they constitute Matching Contributions with respect to such amounts shall be retained in the Trust Fund and applied to meet the Employer's obligation to make other Employer Contributions pursuant to this Section 4.1.

### Section 4.2 - Transfer to Trust Fund

The Employer Contributions under Section 4.1 shall be transferred to the Trust Fund at such time as the Employer may determine, but in no event shall the Employer Contributions be paid over to the Trust Fund later than the time prescribed by law for the Employer to obtain a federal income tax deduction for the Plan Year for which the contribution is made.  Nothing contained herein shall prohibit the Employer Contributions in advance of that time, provided, however, that effective January 1, 2006, Matching Contributions shall not (except as may be occasionally required by bona fide administrative considerations) be made prior to performance of the services with respect to which such contributions are made or the date of the election to make the related Section 401(k) Contributions (or the date the Compensation to which such election relates would be currently available, if earlier), or the actual making of such Section 401(k) Contributions.

### Section 4.3 - Allocation to Participant's Account

The Employer Contributions made in accordance with Section 4.1 may be held in the Employer Suspense Account until such time as they are credited to the Employer Contributions Account of the respective Participants on whose behalf such contributions were made; provided, however, that Employer Contributions shall be credited to Participant's Employer Contributions Accounts no later than the last day of the Plan Year.  Contributions made after the close of a Plan Year in respect of that Plan Year shall be allocated as of the close of that Plan Year, but shall share in such valuation adjustment only for periods after they have been actually paid into the Trust Fund.

<u>Section 4.4 - Qualified Military Service</u>

Effective as of December 12, 1994, notwithstanding any provision of this Plan to the contrary, contributions shall be made with respect to a period in which an individual would have been an Employee eligible therefor but for his "qualified military service" as defined in Section 414(u) of the Code, and service for participation and vesting shall be credited for such qualified military service, to the extent required by Chapter 43 of Title 38 of the United States Code (USERRA). The amount of any Section 401(k) Contributions and Matching Contributions in respect thereof shall be based upon such individual's election made following his return to employment with the Employer following such military service (and within the time during which he had reemployment rights) in accordance with procedures established by the Committee; provided that no such Section 401(k) Contributions may exceed the amount the individual would have been permitted to elect to contribute had the individual remained continuously employed by the Employer throughout the period of such military service (and Matching Contributions shall be limited accordingly). Such contributions shall be taken into account as Annual Additions for purposes of Article V in the Limitation Year to which they relate, and for purposes of applying the Elective Deferral Limit in Section 3.1 in the calendar year to which they relate, rather than in the Limitation Year or calendar year in which made, and shall be disregarded for purposes of applying the limits described in Sections 3.4 and 3.6. Any such contribution shall be made no later than five years from the date of such return to employment or, if less, a period equal to three times the period of such military service.

KL3 2630220.9

ARTICLE V

LIMITATIONS ON ANNUAL ADDITIONS TO PARTICIPANT'S ACCOUNT

Section 5.1 - Limitations on Annual Additions

The "Annual Additions" (as hereinafter defined) allocated to a Participant in respect of any Plan Year beginning on or after January 1, 2002 shall not exceed in the aggregate the lesser of (a) $40,000 (as adjusted pursuant to section 415(d) of the Code) or (b) 100 percent of such Participant's Compensation.

Section 5.2 - Application

(a)    In the event that the Annual Additions allocated to a Participant under this Plan and all other Defined Contribution Plans maintained by an Employer exceed in the aggregate the limitations set forth in Section 5.1, the Employer shall first reduce the Annual Additions to such other Defined Contribution Plans to the extent necessary so that the aggregate Annual Additions to this Plan and to such other Defined Contribution Plans do not exceed such limitations for that Plan Year.

(b)    If the allocations to a Member's Account otherwise required under this Plan for any Plan Year would cause the limitations of this Article V to be exceeded for that Plan Year, contributions otherwise required with respect to such Participant under Articles III and IV shall be reduced to the extent necessary to comply with those limitations.  Such reductions shall be made first to Employer Contributions, and next to Section 401(k) Contributions.

If such reduction is not effected in time to prevent such allocations for any Plan Year from exceeding such limitations, any such reduction in Section 401(k) Contributions (adjusted for any gain attributable under the allocation rules of Section 9.3 to such excess contributions up to the last day of the Plan Year in which such contributions were made) shall be effected by distributing such excess Section 401(k) Contributions to the affected Participant. Distribution shall be made pro-rata from the Investment Fund or Funds in which such excess contributions were invested.

KL3 2630220.9

Any such distribution of excess contributions shall be limited to the extent such excess contributions were the result of a reasonable error in determining the amount of Section 401(k) Contributions permitted with respect to an individual under the limits of Section 415 of the Code after taking into consideration other Annual Additions for the year.

Excess Employer Contributions shall be used to reduce contributions for such Participant in the next Plan Year and each succeeding Plan Year if necessary; provided, that if the Participant is not covered by the Plan at the end of the current Plan Year, the portion exceeding the limitation of this Article V shall be held unallocated in a subaccount of the Employer Suspense Account for such Plan Year and shall be allocated and reallocated to the Member's Accounts of all Participants in the next Plan Year before any other contributions are allocated to the Member's Accounts of such Participants.  This subaccount of the Employer Suspense Account will reduce future contributions for all remaining Participants in the next Plan Year, and each succeeding Plan Year if necessary.

In the event of a termination of the Plan, unallocated amounts held in such subaccount of the Employer Suspense Account shall be allocated to the extent possible under this Article V for the Plan Year of termination.  Any amount remaining in such subaccount upon termination of the Plan shall then be returned to the Employer, notwithstanding any other provision of the Plan or Trust Agreement.

### Section 5.3 - Ordering Rule for Multiple Plans

Reductions in allocations under this Article V arising by reason of a Participant's participation in multiple plans shall be effected in the reverse order in which such contributions would otherwise accrue, except as any other such plan may otherwise expressly provide.

### Section 5.4 - Definitions

For purposes of this Article V, the following definitions shall apply:

(a)    "Annual Additions" shall mean the sum for any Plan Year of (1) employer contributions and forfeitures allocated to a Participant's Member's Account under this Plan for any Plan Year, (2) employer contributions and forfeitures allocated to his account under any

other Defined Contribution Plan (or portion thereof) of any Employer or Affiliate, (3) employee contributions under all such plans (or portions thereof), (4) amounts described in Section 419A(d)(2) of the Code (relating to post-retirement medical benefits of key employees) or allocated to a pension plan individual medical account described in Section 415(l) of the Code, to the extent includable for purposes of Section 415(c)(2) of the Code.  The employee contributions described in clause (3) hereof shall be determined without regard to (A) any rollover contributions, (B) any repayment of loans, (C) restoration of prior forfeitures following reemployment, or (D) Catch-Up Contributions.  Employer and employee contributions taken into account shall include "excess contributions" as defined in Section 401(k)(8)(B) of the Code, "excess aggregate contributions" as defined in Section 401(m)(6)(B) of the Code, and "excess deferrals" as described in Section 402(g) of the Code (to the extent such "excess deferrals" are not distributed to the Participant by the April 15th following the close of the taxable year of the Participant in which such deferrals were made), regardless of whether such amounts are distributed or forfeited.

(b)     "Defined Contribution Plan" shall mean a Retirement Plan that provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account (and any income, expenses, gains and losses attributable thereto) and any forfeitures of accounts of other participants that may be allocated to such participant's account.  For this purpose, employee contributions made pursuant to Retirement Plan maintained by an Employer or an Affiliate that is not otherwise a Defined Contribution Plan shall be treated as a separate Defined Contribution Plan.

(c)     "Retirement Plan" shall mean (1) any profit sharing, pension or stock bonus plan described in Sections 401(a) and 501(a) of the Code, (2) any annuity plan or annuity contract described in Section 403(a) or 403(b) of the Code, or (3) a simplified employee pension described in Section 408(k) of the Code.

### Section 5.5 - Limitation Year

All determinations under this Article V shall be made by reference to the Plan Year.  The limitations imposed by this Article V shall be administered in accordance with any

rulings and regulations that are issued by the Secretary of Treasury under Section 415 of the Code.

ARTICLE VI

INVESTMENT OF TRUST FUND AND MEMBERS' ELECTIONS

Section 6.1 - Investment of Employee Contributions.  Effective January 1, 2008, except as otherwise specified:

(a)    Section 401(k) Contributions.  Subject to the limitations relating to the Lehman Stock Fund set forth in Section 6.1(c), each Participant may elect to have his Section 401(k) Contributions invested in increments of one percent (1%) of the total in any one or more of the Investment Funds made available pursuant to Section 9.2 for the investment of such current contributions. A Participant may change his Investment Fund elections for such contributions by making new elections in accordance with procedures established by the Committee.

(b)    Failure to Elect. If a Participant initially fails to make an election pursuant to the provisions of this Section 6.1, his Member's Account shall be invested in the Investment Fund or Funds designated from time to time by the Committee.

(c)    Lehman Stock Fund Limitations. A Participant shall not be entitled to direct investment in  the Lehman Stock Fund  of (i) more than fifty percent (50%) of  his or her Section 401(k) Contributions prior to such pay date as of which the Committee determines that the procedures necessary to implement the reduced limit set forth in clause (ii) hereof are in place (the "New Limit Effective Date"),  or (ii) more than twenty percent (20%) of the total of his or her Section 401(k) Contributions as of any pay date on or  after the New Limit Effective Date (or after January 1, 2008, in the case of a Participant's initial election for the investment of Section 401(k) Contributions). In the event that a Participant's investment election for the allocation of  Section 401(k) Contributions  exceeded the 20% limit in clause (ii) prior to the New Limit Effective Date and the Participant  fails to make a new investment election compliant with such 20% limit by the deadline established by the Committee, the excess of his or her Section 401(k) Contributions for pay dates on and after the New Limit Effective Date shall be invested in such other Investment Fund as the Committee shall direct,  until such time as the Participant shall make a new election or new elections compliant with such 20% limit. The limitations of this Section 6.1(c) shall also apply to initial elections for the investment of

- 44 -

Rollover Contributions (and the date of such contribution shall be treated as a pay date in applying the New Limit Effective Date).

(d)    <u>Investment of Income</u>.  Dividends, interest, or other income or gains in respect of any Investment Fund shall be reinvested in such Investment Fund.

(e)    <u>Resumption of Contributions by a Participant who was an Employee during an intervening period of suspension</u>.  If –

(i)    a Participant's Section 401(k) Contributions are suspended for any reason during a period in which the Participant remains an Employee (such as may occur by reason of the Elective Deferral Limit as defined in Section 3.1(b), or in order to avoid a violation of nondiscrimination requirements, or by reason of an unpaid leave of absence or a hardship withdrawal, as well as pursuant to the Participant's election to suspend contributions) and

(ii)    the Participant fails to make a new or different election if and when such contributions resume (whether automatically, or by reason of an election by the Participant to resume contributions), his or her Section 401(k) Contributions shall be invested in accordance with the Participant's last election in effect under this Section 6.1 prior to such suspension of contributions.

If the Participant had no such election then in effect, and the Participant fails to make a timely election pursuant to the provisions of this Section 6.1 in connection with the resumption of such contributions, his or her Section 401(k) Contributions shall be invested in the Investment Fund or Funds designated from time to time by the Committee.

(f)    <u>Return to Employment as an Employee</u>.  If a Participant's Section 401(k) Contributions are suspended by reason of the Participant's termination of employment, transfer to employment with an Affiliate not participating in the Plan, or other cessation of employment as an Employee, and the Participant subsequently resumes employment as an Employee, Sections 6.1(a) and (b) shall apply as if the Participant were a new Employee who had never previously made any investment election under the Plan.

(g)    Rollover Contributions.  Each Participant who elects to make a Rollover Contribution to the Plan under Section 3.9 shall, in accordance with the Committee procedures established under Section 6.6 , direct the initial investment of  such contribution, in increments of one percent (1%) of the total, in any one or more of the Investment Funds made available pursuant to Section 9.2 for the investment of such contribution, subject to the limitations relating to the Lehman Stock Fund set forth in Section 6.1(c). No  purported Rollover Contribution shall be accepted on behalf of the Plan in the absence of or prior to the receipt of a timely and complete such investment direction.

Section 6.2 - Investment Transfers

(a)    Participant Directions.  Effective as of the Daily Valuation Effective Date, each Member, including a Participant who has terminated employment, and the Member's Beneficiary following the Member's death (with respect to the Beneficiary's proportionate share if there shall be more than one Beneficiary), may elect in accordance with procedures established by the Committee to have the assets of his Member's Account invested in any Investment Fund or Funds transferred in increments of one percent (1%) to any other Investment Fund or Funds.

(b)    Lehman Stock Fund Limitations.

(i)    Prior to January 1, 2008.  No transfer under this Section 6.2 prior to January 1, 2008 may result in more than fifty percent (50%) of the total amount in the Member's Account being invested in the Lehman Stock Fund, except as otherwise permitted under Section 6.2(c) in connection with the elimination of the American Express Stock Fund.

(ii)    Effective January 1, 2008.  No transfer under this Section 6.2 after January 1, 2008 may result in more than twenty percent (20%) of the total amount in the Member's Account being invested in the Lehman Stock Fund.

Nothing in this Section 6.2(b) shall require liquidation or transfer of any amount previously allocated in the Lehman Stock Fund if such prior allocation complied with the limitations of Section 6.1(c) (in the case of Section 401(k) Contributions) or with Sections 6.2(b) and (c)  at the time made.

(c)    Elimination of American Express Stock Fund. The American Express Stock Fund shall be discontinued after January 31, 2007. Member-directed transfers out of the American Express Stock Fund may be made in accordance with applicable procedures at any time up to the deadline established by the Committee for effecting the necessary transactions consistent with the above. Any amounts remaining in the American Express Stock Fund after the deadline for such Member-directed transfers shall be reallocated to a default Investment Fund selected by the Committee. Assets in the American Express Stock Fund may be transferred into the Lehman Stock Fund during the period from January 31, 2005 through such deadline, or reallocated to the Lehman Stock Fund upon expiration of such deadline, whether or not the amount of the Member's Account invested in the Lehman Stock Fund at the time of such transfer exceeds the 50% limit of Section 6.2(b) or will exceed such 50% limit as a result of such transfer. However, nothing in the foregoing shall permit transfers into the Lehman Stock Fund from any Investment Fund other than the American Express Stock Fund so long as the amount of the Member's Account invested in the Lehman Stock Fund exceeds the 50% limit of Section 6.2(b).

Section 6.3 - Investment of Employer Contributions

(a)    Basic and Matching Contributions. Effective for Plan Years ending on or after December 31, 2007, Basic and Matching Contributions for Plan Years ending after the Spinoff Date and prior to December 31, 2007 shall be invested in the Lehman Stock Fund, subject to the Member's right thereafter to elect transfers out of the Lehman Stock Fund in accordance with Section 6.2(a). Basic and Matching Contributions for Plan Years ending December 31, 2007 and thereafter shall be invested in accordance with the Participant's current election on file for the investment of Section 401(k) Contributions or, if no such election shall be on file, in the Investment Fund or Funds designated from time to time by the Committee.

(b)    Transfers. A Member may elect to transfer Basic and Matching Contributions made in Company Stock, which have been credited to his Employer Contributions Account, in accordance with the provisions of Section 6.2.

KL3 2630220.9

Section 6.4 - Investing of Employer Suspense Account

All amounts held in the Employer Suspense Account shall be invested as directed by the Committee.

Section 6.5 - Voting and Tender Offers

(a)    Voting.  All American Express Stock, Lehman Stock and any voting Fund interests, including fractional shares, held in the Trust Fund, shall be voted by the Trustee to the extent permitted by law.  To the extent permitted by law, the Trustee may elect to vote such Stock or interests as directed by the Participants. Notwithstanding the foregoing, effective as of the Daily Valuation Effective Date, shares of Lehman Stock reflecting a Member's proportionate interest in the Lehman Stock Fund and shares of American Express Stock reflecting a Member's proportionate interest in the American Express Stock Fund ("Members' Credited Shares"), including fractional shares, shall be voted by the Trustee in accordance with the directions of the Member (or, if applicable, the Member's Beneficiary).  Shares of Lehman Stock held in the Employer Suspense Account and Members' Credited Shares for which the Trustee received no timely voting directions shall be voted by the Trustee in the same proportion on each issue as the Trustee votes Members' Credited Shares for which it received voting directions from Members (or their Beneficiaries).

(b)    Tender Offers.  In the event of any tender or exchange offer for shares of Lehman Stock or American Express Stock, Members' Credited Shares in the Lehman Stock Fund or in the American Express Stock Fund (as the case may be) shall be tendered in accordance with the directions of the Member.  Members' Credited Shares for which the Trustee received no timely directions with respect to a tender or exchange offer shall not be tendered by the Trustee.  Shares of Lehman Stock held in the Employer Suspense Account shall be tendered by the Trustee in the same proportion as the total number of Members' Credited Shares of Lehman Stock for which it has received tender instructions from participants. A Member's direction to tender shares under this Subsection 6.5(b) shall not be viewed as an election to receive any form of distribution under Article VII.

KL3 2630220.9

Section 6.6 - Rules Regarding Investment Instructions

Each Member shall have a reasonable opportunity to give investment instructions with respect to the investment of his Member's Account, in accordance with rules, policies, and procedures established by the Committee in such manner as it shall determine in its sole discretion to be necessary or desirable for the purpose (and subject to such restrictions with respect to the Lehman Stock Fund as the Committee shall impose pursuant to Section 10.3, relating to Black Out Periods and similar periods). Without limiting the generality of the foregoing, the Committee may provide that investment elections shall not be given effect if they violate or are or may be viewed as inconsistent with such rules, policies, and procedures or the rules and policies of Investment Fund sponsors or regulatory agencies. Different rules and procedures, including trading restrictions, may be applied to one or more Members as the Committee, in its discretion, shall determine.

ARTICLE VII

VESTING, DISTRIBUTION TO MEMBERS

Section 7.1 - Vesting

7.1.1    Vesting Rules.  A Member's interest in (i) his Section 401(k) Contributions Account and Rollover Account, (ii) his Employer Contributions Account attributable to Basic and Matching Contributions for Plan Years beginning prior to January 1, 2005, and (iii) his Employer Contributions Account attributable to qualified nonelective contributions (QNECs) under Section 4.1(f), shall at all times be fully vested and nonforfeitable. A Member shall have a fully vested and nonforfeitable interest in the portion of his Employer Contributions Account attributable to Basic and Matching Contributions for Plan Years beginning on and after January 1, 2005 upon completion of three Years of Vesting Service, or death while employed by an Employer or Affiliate, and prior thereto shall have no vested, nonforfeitable interest in such portion of such Account (except as may be otherwise provided pursuant to Section 12.2, if the Member is affected by a complete or partial termination of the Plan within the meaning of Section 411(d)(3) of the Code, or a complete discontinuance of contributions under the Plan).

7.1.2    Vesting Service

(a)    A Member's Years of Vesting Service shall be the period commencing on his Employment Date or Reemployment Date, whichever is applicable, and ending on his Severance Date.  All such periods, commencing on either such applicable date, will be aggregated, and will be expressed in terms of whole and fractional years, on the basis of 1/12 of a year for each Month of Vesting Service falling within each such period.  For purposes of this Section 7.1.2(a), "Month of Vesting Service" means a calendar month during any part of which an employee completes an Hour of Service.

(b)    A Member's Years of Vesting Service will also include the following Periods of Severance, on the basis of 1/12 of a year for each calendar month or part thereof during such Periods of Severance:

KL3 2630220.9

(i)     If an employee incurs a Severance Date by reason of a quit, discharge or retirement (other than during an absence described in subparagraph (ii) below) and he then performs an Hour of Service within 12 months of such Severance Date, his Years of Vesting Service will include such Period of Severance;

(ii)     If an employee incurs a Severance Date by reason of a quit, discharge or retirement during an absence from service of 12 months or less for any reason other than a quit, discharge or retirement, and then performs an Hour of Service within 12 months of the date as of which he was first absent from service, his Years of Vesting Service will include such Period of Severance.

(iii)     The period between the first and second anniversaries of the first day of an employee's Maternity or Paternity Absence shall (except to the extent that such employee is otherwise credited with Years of Vesting Service during such period pursuant to paragraph (i) or (ii) above), be included in neither a Year of Vesting Service nor a Period of Severance.

(c)     Notwithstanding the foregoing provisions of this Section 7.1.2 (and except as otherwise provided to the contrary in an applicable Supplement hereto), in determining a Member's Years of Vesting Service:

(i)     his Employment Date or Reemployment Date, as the case may be, shall be determined by disregarding all periods prior to the date that his employer became a participating Employer (or, if earlier, the date that such employee's employer became an Affiliate); and

(ii)     his Severance Date shall, except to the extent that such employer remains a participating Employer, be deemed to occur on the date that his employer ceases to be an employer having one of the relationships to an Employer described under the definition of Affiliate.

(d)     An employee who has a Period of Severance and thereafter resumes employment with the Employer or an Affiliate shall aggregate all of his Years of Vesting Service, including that prior to his Reemployment Date; provided, however, that in the case of

an employee with no nonforfeitable interest in his Member's Account prior to his Reemployment Date, all Years of Vesting Service prior to his Reemployment Date shall be disregarded if his Period of Severance ending on his Reemployment Date equals or exceeds the greater of (A) his aggregate number of prior Years of Vesting Service or (B) five years.

If any Years of Vesting Service are disregarded under the foregoing sentence, such Years shall continue to be disregarded in again applying the provisions of this Section in the event of the reemployment of such employee following any subsequent Period of Severance.

(e)    In no event shall any employee be credited with multiple Months of Vesting Service or Years of Vesting Service with respect to any single period of time.

(f)    In the event a Participant is transferred to an Affiliate that is not an Employer or employment with an Employer other than as an Employee, he shall continue to accumulate service for purposes of determining his Years of Vesting Service so long as he continues employed by an Employer or Affiliate.

(g)    To the extent that the foregoing rules are the same as those applied for purposes of vesting under the Lehman Brothers Holdings Inc. Retirement Plan  (as is generally the case), the records of such Retirement  Plan showing the Participant's service for vesting purposes shall be used for determining Years of Vesting Service hereunder. In any other case (such as where prior service was disregarded under the Retirement Plan under the rule of parity but would not be so disregarded under this Plan because the Participant was vested in his benefits under the Plan at the conclusion of such service,) the Committee shall determine the Participant's vesting service based on such information as may be available to it, including information provided by the Participant where applicable.

7.1.3    Forfeitures of Non-vested Employer Basic and Matching Contributions.

(a)    Time of Forfeiture.  The portion of a Member's Account that is not vested at the Member's termination of employment shall be forfeited (i) as of the Valuation Date on which the Member receives distribution of the vested portion of his Member's Account (his "Distributable Account"), either  upon election by the Member, if distribution is made by the close of the second Plan Year following termination of employment, or pursuant to the small

benefit cashout provisions of Section 7.2(a)(i), or (ii) if earlier, the expiration of a Period of Severance of five years.  If the Member has no vested interest in any portion of his Member's Account upon his termination of employment, he shall be deemed to have received a distribution of the vested portion of his Member's Account in the amount of zero, and his entire Member's Account shall be forfeited as of the Valuation Date coincident with or next following such termination.

(b)    If a Member had an unvested balance in his Member's Account at his termination of employment and is later reemployed by an Employer or Affiliate before incurring a Period of Severance of five years, the amount previously forfeited by reason of such an actual or deemed distribution as described above shall be restored to his Employer Contributions Account, and, if applicable, credited to the subaccount therein for Employer Contributions that are not fully vested, if and only if the Member repays to the Plan the amount distributed on account of his termination of employment before the expiration of five (5) years from the date he again becomes so reemployed.  Upon such repayment, the Member shall resume vesting in his Employer Contributions Account according to the rules in this Article VII and shall retain credit for his prior Years of Vesting Service in determining when he becomes fully vested in the amount so restored, as well as in any future Employer Contributions.  Such restoration shall be made first from available forfeitures and, if necessary, by a special Employer contribution made for that purpose.

(c)    Irrevocable Forfeitures.  Notwithstanding anything to the contrary in this Article VII, the non-vested portion of a Member's Account shall be irrevocably forfeited if he incurs a Period of Severance which is greater than five years and shall thereafter not be restored for any reason, notwithstanding any subsequent reemployment.

(d)    Application of Forfeitures.  Forfeitures shall be applied to reduce Employer Contributions as provided in Section 4.1(e)

Section 7.2 -  Distribution Upon Termination of Employment or Disability

(a)    Effective as of the Daily Valuation Effective Date:

(i)    <u>Small Benefit Cashouts</u>.  The value of the Distributable Account of each Member who has terminated employment shall be reviewed by the Administrator upon such event and, if applicable, periodically thereafter until distribution thereof has been made. If the value on such review does not exceed $1,000 ($5,000 prior to March 28, 2005) and continues to be no more than $1,000 ($5,000 prior to March 28, 2005) on the first Valuation Date after (A) the Member is both notified of such fact and the proposed distribution thereof pursuant to this Subsection (a)(i), and (B) the Member elects whether or not to make a direct rollover under Section 7.6 or the period allowed for such election expires, distribution of such Distributable Account shall be made in an amount equal to the value on such Valuation Date.

(ii)    <u>Elective Distributions</u>.  If a Member's employment terminates and no small benefit cashout is made under Subsection (a)(i), distribution of his Distributable Account shall be made as soon as practicable (taking into account the administrative procedures of the Committee) after the date on which the Member elects to receive such distribution, in an amount which shall be based on the value of the Member's Distributable Account as of the date on which such distribution is processed.  A Member who is fully vested in his Accounts may elect to take such a distribution in one or more payments, subject to Section 7.5 if distribution has not been completed prior to the Required Beginning Date thereunder.  If more than one payment is to be made, each payment shall be made only upon the direction of the Member, provided, that the requirement of such direction shall not apply to the extent necessary to comply with Section 7.5.  A Member who is partially vested in his or her Account may elect to take a lump sum distribution of his or her Distributable Account.

(iii)    <u>Distribution Following Age 65</u>.  If a Member has both terminated employment and attained age 65 and has not elected to defer distribution in whole or in part to a date later than age 65 (and has not received a small benefit cashout under Subsection (a)(i) above), distribution of his Distributable Account shall be made in accordance with Subsection (a)(ii), provided that he makes a claim for distribution in accordance with procedures established by the Committee (which shall include providing elections available under Section 7.6 and 7.7). If the Member fails to make such a claim prior to the date on which distribution must be made or begin in accordance with Section 7.5, distribution shall thereupon be required in accordance with Section 7.5.

(iv)    $1,000 Minimum.  Prior to December 4, 2006, a partial distribution in respect of a fully vested Account shall be not less than $1,000, except that following the Member's Required Beginning Date under Section 7.5, distributions may be made in the amount of the Minimum Required Distribution as calculated thereunder without regard to this requirement.

(b)    "Termination of Employment."  In determining whether a Member is entitled to distribution by reason of his termination of employment:

(i)    Disability.  A Member who incurs a Date of Disability shall be treated as terminating his employment, whether or not he is otherwise treated as so terminated.

(ii)    Affiliate Employment.  A Member shall not be considered to have terminated his employment if he is employed by an Affiliate. A Member must actually terminate employment with all of the Company and any other Employer or Affiliate prior to entitlement to a distribution due to termination of employment.

(iii)    Sale or Disposition of Assets.  If a Member ceases to be employed by an Employer or Affiliate because of a sale or other disposition of all or part of the assets or business operations of such Employer or Affiliate but continues in the employ of a purchaser or affiliate thereof (or any of their successors) to whose plan the assets and liabilities attributable to such Member are (or are to be) transferred in a transaction described in Section 12.5, such Member shall not thereby be deemed to retire or terminate employment for purposes of this Plan.

(iv)    Sale of Subsidiary.  If a Member ceases to be employed by an Employer or Affiliate because of the withdrawal of such entity from membership in the Company's controlled group within the meaning of Section 414(b) or (c) of the Code (such as by reason of the sale or other disposition of the stock of such Employer or Affiliate), the Member shall be treated as terminating employment unless such entity or an affiliate thereof (or any of their successors) establishes or maintains a plan to which the assets and liabilities attributable to such Member are (or are to be) transferred in a transaction described in Section 12.5, in which event such Member shall not thereby be deemed to retire or terminate employment for purposes of this Plan.

Section 7.3 - Distribution Upon Death

Effective as of the Daily Valuation Effective Date:

(a)    Time and Form of Payment:  General Rules.  Upon the death of a Member, whether before or after his termination of employment or commencement of distribution to him following such termination, any remaining balance in his Distributable Account shall be distributed to his Beneficiary or Beneficiaries as soon as practicable thereafter (taking into account required administrative procedures, including the period necessary for elections under Section 7.6 (relating to direct rollovers) if the Beneficiary is eligible to elect a Direct Rollover thereunder, and Section 7.7 (relating to distributions in cash and Lehman Stock) and the time at which the Member's death is reported to the Committee); provided, however, that (subject to the small benefit cashout provisions of Subsection 7.3(b)) a Beneficiary may elect, in accordance with the procedures prescribed by the Committee, to receive distribution either as a single sum or in one or more payments, the last of which shall be made no later than five years after the death of the Member, in an amount based in each case on the value of the Distributable Account (or, if there shall be more than one Beneficiary, such Beneficiary's share thereof) as of the date on which such distribution is processed.  If more than one payment is to be made, each payment shall be made only upon the direction of the Beneficiary, provided, that the requirement of such direction shall not apply, and a final payment may be made automatically, if necessary to complete distribution by the fifth anniversary of the death of the Member.  A Beneficiary shall be entitled to change the investment of the Distributable Account (or if applicable, the Beneficiary's share thereof), pursuant to Section 6.2, between the date of the Member's death and distribution to such Beneficiary under this Section 7.3.

(b)    Small Benefit Cashout.  The value of the Distributable Account of a Beneficiary (or, if there shall be more than one Beneficiary, any Beneficiary's share thereof) shall be reviewed by the Administrator periodically until distribution thereof has been made.  If such value on any Valuation Date does not exceed $1,000 ($5,000 prior to March 28, 2005) and, if the Beneficiary is eligible to elect a Direct Rollover pursuant to Section 7.6, continues to be no more than $1,000 ($5,000 prior to March 28, 2005) on the first Valuation Date after (x)

the Beneficiary is notified of such fact and the proposed distribution thereof pursuant to this Paragraph (ii), and (y) such Beneficiary elects whether or not to make a direct rollover under Section 7.6 (if eligible), or the period allowed for such election has expired, distribution of such Distributable Account (or share thereof) shall be made in an amount equal to the value on such Valuation Date.

(c)     $1,000 Minimum.  Prior to December 4, 2006, a partial distribution in respect of a fully vested Account (or, if applicable, any Beneficiary's share thereof) shall be not less than $1,000.

## Section 7.4 - Timing of Distribution

Unless a Member elects to defer distribution (or fails to make the required claim for benefits described in Section 7.2(a)(iii), which failure shall be deemed an election to defer), distribution of his Distributable Account shall be made or commence not later than sixty (60) days after the latest of (a) the close of the Plan Year in which the Member's employment terminates, (b) the close of the Plan Year in which the Member attains age 65, (c) the earliest date on which the amount to be distributed can be determined, or (d) the date on which a Member, whose whereabouts were previously not reasonably ascertainable, has been located, subject to Section 7.5.

## Section 7.5 - Minimum Required Distributions

(a)     Time of Commencement.

(i)     If a Member has attained age 70-1/2, distribution of his Distributable Account shall commence no later than April 1 of the calendar year following the calendar year in which the Member retires (his "Required Beginning Date"), subject to paragraph (ii) below.

(ii)     If a Member is a five percent owner within the meaning of Section 13.3(a)(iii) for the Plan Year ending with or within the calendar year in which the Member reaches the age of 70-1/2, his Required Beginning Date is the April 1 following the calendar year in which the Member reaches the age of 70-1/2.

KL3 2630220.9

(b)      Section 401(a)(9) Compliance.  Notwithstanding any provision of the Plan to the contrary, no distribution under the Plan (including any Supplement to the Plan) shall be permitted that fails to comply with Section 401(a)(9) of the Code, including the incidental death benefit requirement, as set forth in the final regulations under Section 401(a)(9) as published on April 17, 2002 and modified June 14, 2004.

(c)      Methods of Distribution.  Effective as of the Daily Valuation Effective Date, distribution of a Member's Account pursuant to Section 7.5(a) shall be made in a single sum, unless the Member elects before the Required Beginning Date to receive partial payments, which in each year shall be not less than the minimum required distribution amount determined under Section 7.5(b) above, in accordance with the regulations under Section 401(a)(9) of the Code. Elections under this Section 7.5 shall be made in accordance with procedures prescribed by the Committee.

(d)      Distributions to Beneficiaries.  If a Member dies prior to distribution of his entire Account, such Account shall be completely distributed to the Member's Beneficiaries within five years of the Member's death, as set forth in Section 7.3(a).

### Section 7.6 - Direct Rollover of Eligible Rollover Distributions

(a)      Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election under this Section, a Distributee may elect, at the time and in the manner prescribed by the Committee, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.

(b)      For purposes of this Section 7.6, the following definitions shall apply effective January 1, 2002:

(1)      "Eligible Rollover Distribution" shall mean any distribution of all or any portion of the balance to the credit of the Distributee, except (1) any distribution to the extent such distribution is required under Section 401(a)(9) of the Code, or (2) hardship withdrawals.

(2)     "Eligible Retirement Plan" means an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, a qualified trust described in Section 401(a) of the Code, and an annuity contract described in Section 403(b) of the Code or an eligible deferred compensation plan described in Section 457(b) of the Code maintained by a state, a political subdivision of a State, or any agency or instrumentality of a State or political subdivision of a State, that accepts the Distributee's Eligible Rollover Distribution.  With respect to the portion of an Eligible Rollover Distribution, if any, that consists of a distribution from the Distributee's After-Tax Contribution Account, an Eligible Retirement Plan is only an individual retirement account or annuity described in Section 408(a) or (b) of the Code or a qualified defined contribution plan described in Section 401(a) or 403(a) of the Code that agrees to separately account for amounts so transferred, including separately accounting for the portion of such Eligible Rollover Distribution which is includible in gross income and the portion of such Eligible Rollover Distribution which is not so includible.

(3)     "Distributee" includes an employee or former employee.  In addition, the employee's or former employee's surviving spouse and the employee or former employee's spouse or former spouse who is the Alternate Payee under a Qualified Domestic Relations Order are distributees with regard to the interest of the spouse or former spouse.  Effective on or after January 1, 2008, "Distributee" shall include a Beneficiary, other than a surviving spouse, who is an individual or is treated as such under applicable regulations, but solely for purposes of a Direct Rollover to an individual retirement account or annuity described in Section 408 of the Code.

(4)     "Direct Rollover" means a payment by the Plan to the Eligible Retirement Plan specified by the Distributee in accordance with procedures established by the Committee.

(c)     No more than one Direct Rollover may be elected by a Distributee for each Eligible Rollover Distribution.

(d)     If (i) the value of a terminated Member's vested interest in his Member's Account does not exceed $1,000 ($5,000 prior to March 28, 2005), (ii) a Member receives a distribution following his Required Beginning Date under Section 7.5 in excess of his minimum required distribution amount (which thereby constitutes an Eligible Rollover Distribution), or (iii) distribution is to be made to a Beneficiary otherwise eligible to elect a Direct Rollover pursuant to this Section 7.6, and such Member or Beneficiary (as the case may be) does not make a timely election whether or not to directly roll over his Eligible Rollover Distribution, such distribution shall be made directly to the Member or Beneficiary, as applicable.

(e)     This Section 7.6 applies to all distributions under the Plan as described above whether made under this Article VII or under any other Article of the Plan.

Section 7.7 - Distributions in Cash and Stock

Effective as of the Daily Valuation Date, if a Member (or any Beneficiary or Beneficiaries) so elects in accordance with procedures established by the Committee, all distributions to be made pursuant to the provisions of this Article VII from the Lehman Stock Fund or the American Express Stock Fund shall be in whole shares of such Company Stock, provided that any fractional shares shall be paid in cash. If a Member (or Beneficiary) fails to so elect, the distribution shall be made in cash in lieu of Company Stock, the amount of such cash to be computed at the last reported sale price of such Company Stock on the principal national securities exchange on which shares of the stock are traded on the applicable Valuation Date.

Section 7.8 - Withdrawal of Rollover Contributions and After-Tax Contributions

(a)     Rollover Contributions.  Any Member employed by an Employer or Affiliate may elect to withdraw all or part of his Rollover Account upon application therefore made in accordance with procedures established by the Committee, provided that, prior to December 4, 2006, the amount withdrawn is not less than $1,000 (or 100% of the Rollover Account balance if less than $1,000).  Distribution of such withdrawals shall be made in a single lump sum payment by check or, subject to the provisions of Section 7.7, in Company

Stock.  The amount available for withdrawal shall, effective as of the Daily Valuation Effective Date, be determined as of the Valuation Date on which the withdrawal is processed.

(b)    After-Tax Contributions.  Any Member employed by an Employer or Affiliate may elect to withdraw all or part of his After-Tax Contribution Account at any time upon application therefor made in accordance with procedures established by the Committee, provided that, prior to December 4, 2006, the amount withdrawn is not less than $1,000 (or 100% of the After-Tax Contribution Account balance if less than $1,000).  Distribution of such withdrawals shall be made in cash in a single lump sum payment or, subject to the provisions of Section 7.7, in Company Stock.

### Section 7.9 - Withdrawals After Attainment of 59-1/2

Any Member employed by an Employer or Affiliate who has attained the age of 59-1/2 may elect to withdraw all or part of his Member's Account upon application therefor in accordance with procedures established by the Committee.  Prior to December 4, 2006, any withdrawal under this Section 7.9 made before the Member attains age 70-1/2 must be in an amount of not less than $1,000 (or 100% of the vested portion of the Member's Account balance if less than $1,000), or such larger amount as may be established by the Committee from time to time under nondiscriminatory rules.  Such withdrawal will be made from the Member's Account (and pro rata from the Investment Funds each such account is invested in) in the following order of priority:  (x) Rollover Account; (y) Section 401(k) Contributions Account; and (z) Employer Contributions Account (or vested portion thereof, if applicable).  Effective on or after the Daily Valuation Effective Date, there shall be no limit to the number of withdrawals allowed to be made under this Section 7.9, and distributions shall be made as of the Valuation Date on which they are processed in accordance with procedures established by the Committee.

### Section 7.10 - Hardship Withdrawals

(a)    General.  Any Member employed by an Employer or Affiliate may, by applying in accordance with procedures established by the Committee, withdraw so much of his Section 401(k) Contributions Account as the Committee shall in a uniform and nondiscriminatory manner determine to be necessary (based on such representations or other