information as the Committee may request in its discretion) to meet any condition of "financial hardship" described below affecting such Member, to the extent necessary to satisfy such financial hardship.  Such withdrawals shall be made only after all permitted withdrawals have been made from his Rollover Account.  Hardship withdrawals from a Member's Employer Contributions Account and of post-1988 investment earnings on Section 401(k) Contributions are not permitted.  Withdrawals shall be made pro rata from all Investment Funds in which the Member's Section 401(k) Contributions Account is invested.  A Member may not return any amounts withdrawn hereunder.

(b)     "Hardship" Definitions.  Effective as of the Daily Valuation Date:

(i)     The term "financial hardship" shall mean any one or more of the following needs:

(A)     Expenses for medical care described in Section 213(d) of the Code previously incurred for a Member or a Member's spouse or dependents (including a child of divorced parents who together provide over half the child's support) and for which a deduction would be available under Code Section 213 after disregarding the limitation of deductions to amounts in excess of 7.5% of adjusted gross income, or expenses necessary in order for such persons to obtain such care, provided that such expenses have not been and will not in the future be covered by insurance;

(B)     Payment of tuition, room and board and related educational fees (but not to include books) for the next 12 months of post-secondary education of a Member or a Member's spouse, children or dependents (as defined under applicable regulations);

(C)     Costs (other than mortgage payments) directly related to the purchase of the principal residence of a Member;

(D)     Payments necessary to prevent the eviction of a Member from, or a foreclosure on the mortgage of, the Member's principal residence;

(E)    Effective January 1, 2006, payments for funeral or burial expenses for the Member's deceased parent, spouse, child or dependent (as defined under applicable regulations); or

(F)    Effective January 1, 2006, expenses to repair damage to a Member's principal residence that would qualify for a casualty loss deduction under Section 165 of the Code (determined without regard to whether the loss exceeds 10 percent of adjusted gross income).

(ii)    The amount withdrawn under this Section 7.10 shall not exceed the amount necessary to meet the hardship plus the amount necessary to pay any federal, state or local income taxes or penalties that the Member reasonably anticipates will result from the withdrawal. Any withdrawal under this Section 7.10 must be in an amount of not less than $1,000 (or such larger amount as may be established by the Committee from time to time under nondiscriminatory rules).

(iii)    A withdrawal request shall be made in accordance with procedures established by the Committee which may, in the discretion of the Committee require that the spouse of the Member, if any, execute a notarized written consent thereto.  No withdrawal shall be made under this Section 7.10 unless the Member has already received all other amounts available to him as either a withdrawal or a loan under this Plan and all other plans maintained by any Employer or Affiliate. The Member's withdrawal request shall include an agreement by the Member to the suspension of Section 401(k) Contributions, and to a similar suspension of "elective deferrals" (as defined in Section 402(g)(3) of the Code) and of employee contributions under all other qualified and nonqualified plans of deferred compensation (excluding mandatory employee contributions under any defined benefit plan), or stock option, stock purchase, or similar plans, of any Employer or Affiliate for six months following the date of any such withdrawal, effective as of January 1, 2002.  Each such other plan shall be deemed amended by reason of this provision and the Member's execution of an agreement to such suspension.

(iv)    Distribution of a hardship withdrawal shall be made in cash in a single sum payment.

Section 7.11 - Allocation Among Accounts and Investment Funds

(a)    Allocation Among Investment Funds.  If a Member receives a partial distribution or withdrawal of his Member's Account (or vested portion thereof, if applicable) under any provision of this Article VII and his Member's Account is invested in more than one Investment Fund, then the amount withdrawn from his Member's Account shall be debited, on a pro-rata basis, against each Investment Fund in which such Member's Account is invested, provided, however, that effective as of the Daily Valuation Effective Date, the Member (or, if applicable, his Beneficiary with respect to his share of the Member's Account) may direct the proportions in which such distribution or withdrawal shall be allocated among Investment Funds, except for hardship withdrawal distributions under Section 7.10.  Withdrawal shall be made pro rata from all Investment Funds in the absence of such direction.

(b)    After-Tax Contributions.  A Member or his Beneficiary may direct the extent to which payment shall be made from the Member's After-Tax Contribution Account (or if applicable, such Beneficiary's share thereof).  In the absence of such direction, distributions that are not by their terms required to be made solely from other portions of the Member's Account, shall be made pro rata from the Member's After-Tax Contribution Account and the balance of his Member's Account (or vested portion thereof, if applicable).

(c)    Termination of Employment or Death.  Partial distributions to a Member or Beneficiary following the Member's termination of employment or death or his Required Beginning Date shall, except as otherwise provided in Subsection 7.11(b) above, be in the following order of priority:  (x) Rollover Account; (y) Section 401(k) Contributions Account; and (z) Employer Contributions Account.

Section 7.12 - Distributions to Alternate Payees

(a)    The Committee shall recognize and honor any judgment, decree or order entered on or after January 1, 1985 under a state domestic relations law which the Committee determines to be a Qualified Domestic Relations Order in accordance with reasonable procedures to determine such status as the Committee shall establish.

KL3 2630220.9

Without limitation of the foregoing, the Committee shall notify a Member and the Alternate Payee under a judgment, decree or order which purports to be a Qualified Domestic Relations Order of (1) the receipt thereof, (2) the Plan's procedures for determining whether such judgment, decree or order is a Qualified Domestic Relations Order, and (3) any determination made with respect to such status.

During any period which the Committee is determining whether any judgment, decree or order is a Qualified Domestic Relations Order, any amount which would have been payable to an Alternate Payee pursuant to such order shall be separately accounted for (and adjusted to reflect its appropriate share of the gains, losses or expenses of the Investment Funds pursuant to Section 9.3, but shall still be subject to the investment elections made by the Member pursuant to Section 6.2) pending payment to the proper recipient thereof.

If the Committee determines such judgment, decree or order to be a Qualified Domestic Relations Order within eighteen (18) full calendar months commencing with the date on which the first payment would be required to be made under such judgment, decree or order, the separately accounted for amount, as adjusted, shall be placed in a separate account ("Alternate Payee's Account") until such account is distributed to the Alternate Payee.

If the Committee is unable to make such a determination within the eighteen (18)-month time period, payment under the Plan shall be made as if such judgment, decree or order did not exist and any such determination made after such time period shall be applied prospectively only.

(b)    Distribution to an Alternate Payee under a Qualified Domestic Relations Order shall be made from the Alternate Payee's Account in accordance with the directions of the Qualified Domestic Relations Order, and to the extent not so designated, shall (effective as of the Daily Valuation Date) be allocated according to the direction of the Alternate Payee otherwise under rules comparable to those applicable to the Participant under Section 7.11.

(c)    If the Qualified Domestic Relations Order so specifies, distribution of benefits to the Alternate Payee under the order may be made (i) at any time after the date of the order, and (ii) as if the Participant had retired on the date on which such distribution is to begin

under such order, but shall in no event include any amounts in which the Member is not vested. Otherwise, distribution before the Earliest Retirement Date may be made of amounts attributable to the Participant's After-Tax Contribution Account or Rollover Account, to the extent the Participant could receive such a distribution.

(d)     Distributions after the Participant's Termination of Employment or Earliest Retirement Date may be made to the same extent that the Participant could have received such distribution (in one or more payments) after his termination of employment.

(e)     Notwithstanding the provisions of Subsection (c) above, if the value of the Alternate Payee's Account is $1,000 or less ($5,000 prior to March 28, 2005), payment shall be made as soon as practicable following the determination that an order is a Qualified Domestic Relations Order.

(f)     Until the Alternate Payee's Account is distributed to the Alternate Payee, it shall be adjusted to reflect its appropriate share of the gains, losses and expenses of the Investment Funds pursuant to Section 9.3 and shall be subject to the transfer elections (described in Section 6.2) made by the Alternate Payee as though he were a Member. Payment shall be made only after such Alternate Payee has consented to the payment, and in the absence of such consent, no later than the date as determined under Sections 7.2(b)(iii) and 7.5.

Section 7.13 - 30-Day Notice Waiver

Notices required for distributions under this Article VII pursuant to Section 402(f) of the Code and Treas. Reg. Section 1.411(a)-11(c) shall be given to the Member no less than thirty (30) days and no more than ninety (90) days prior to the date of distribution; provided, however, that such distribution may be made less than thirty (30) days after such notice is given, if (a) the Committee clearly informs the Member that the Member has a right to a period of at least thirty (30) days after receiving the notice to consider the decision of whether or not to elect a distribution, (and, if applicable, a particular distribution option), and (b) the Member, after receiving the notice, affirmatively elects a distribution.

KL3 2630220.9

Section 7.14 - Trust to Trust Transfers

With the consent of the Committee, amounts may be transferred from the Plan on behalf of a Member to other qualified plans, provided that the trust to which such funds are transferred permits the transfer to be made and, in the opinion of legal counsel for the Company, the transfer will not jeopardize the tax exempt status of the Plan or Trust or create adverse tax consequences for any Employer.

KL3 2630220.9

ARTICLE VIII

FINANCING

Section 8.1 - Trust Funds

All of the contributions to the Plan shall be held by a Trustee appointed from time to time by the Board of Directors or the Committee in one or more trusts, under a Trust Agreement approved or authorized by the Board of Directors or the Committee. Those portions of the Trust Agreement that relate to the establishment or maintenance of the trust or trusts under the Plan or the rights of Members and Beneficiaries in respect of the Trust Fund (but exclusive of provisions governing the services of the Administrator as distinguished from the Trustee) shall be deemed to form a part of this Plan, and any and all rights which may accrue to any person under this Plan shall be subject to such provisions of the Trust Agreement.

Section 8.2 - Contributions to the Trust

Each Employer shall make such contributions to the Trustee under the Trust Agreement as is required by the provisions of the Plan as long as the Plan is in effect.

If more than one Employer participates in this Plan during a particular Plan Year, each such Employer shall make its own contributions only for the benefit of its own Employees who are Participants in the Plan, unless and to the extent that a particular Employer is permitted to contribute for the benefit of the Employees of another Employer who are Participants pursuant to Section 404(a)(3)(B) of the Code, and such Employer agrees to do so.

The foregoing shall not preclude one Employer from making contributions on behalf of and as agent for another Employer.

Section 8.3 - Lehman Stock Fund

(a)     Character of the Fund.  The Company has provided for establishment of the Lehman Stock Fund under the provisions of this Section 8.3 and other applicable provisions of the Plan with the intent that such Fund, as distinguished from the Investment Funds established and maintained in the discretion of the Committee, constitute an employee stock ownership plan (ESOP) or fund, thereby qualifying the Plan as an "eligible individual account

- 68 -

plan" as defined Section 407(d)(3) of ERISA ("EIAP").  Pursuant to  Section 404(b) of ERISA (which applies equally to all EIAPs, whether or not the ESOP component contains the additional provisions required in order to leverage the acquisition of employer stock or enjoy the benefit of certain special tax incentives, neither of which additional features are currently desired for the Company and Plan purposes),  the Plan is exempt from, and the Lehman Stock Fund shall accordingly be maintained and administered without regard to (i)  the general prohibition against investment of more than ten percent of plan assets in employer securities and (ii) the diversification requirement and  prudence requirement to the extent that it requires diversification of Section 404(a)(1) of ERISA. Consequently, and in furtherance of such intent and the policy underlying the special treatment of such ESOPs  and EIAPs under Section 404(b) of ERISA (including the perceived desirability of giving employees an ownership stake in the Company, with the  attendant potential benefits as well as risks), the Lehman Stock Fund shall at all times be invested exclusively in Lehman Stock except for such reserve invested in short-term fixed income investments or cash as shall be determined to be necessary or advisable for the purpose of maintaining appropriate liquidity in order to satisfy daily Participant exchange, transfer,  withdrawal or distribution requests,  all as more fully provided in the Trust Agreement.

   (b) <u>Contributions to Lehman Stock Fund.</u>  Section 401(k) Contributions or Employer Contributions previously elected to be invested in the Lehman Stock Fund (or Employer Contributions previously invested automatically in the Lehman Stock Fund under the Plan as in effect through December 31, 2006) may, at the Employer's election, be made in cash to be applied to the purchase of  Lehman Stock on the open market or from the Company, or in-kind in shares of Lehman Stock, in which event the Trustee shall be required to accept such in-kind contributions.  If the Employer wishes to make such contributions in Lehman Stock, it may acquire such stock from the Company, which may as agent for the Employer transfer such stock to the Trustee.  However, if applicable securities or other laws prohibit the making of contributions in Lehman Stock for the benefit of one or more Participants, in whole or in part, such contributions shall be made in cash and applied to the purchase of Lehman Stock only after such purchase becomes permitted by applicable law.

### Section 8.4 - Non-Reversion

The Employers shall have no right, title or interest in the contributions made to the Trust Fund under the Trust and no part of the Trust Fund shall revert to the Employers, except that:

(a)    If a contribution is made to the Trust Fund by an Employer by mistake of fact, then such contributions may be returned to the Employer upon direction of the Company Representative within one year after the payment of the contribution; and

(b)    Every contribution by the Employer to the Trust Fund is conditioned on its current deductibility under Section 404 of the Code, and to the extent that the contribution is disallowed as a deduction, it may be returned to the Employer upon direction of the Company Representative within one year after the disallowance.

A contribution returned to an Employer pursuant to this Section 8.4 shall be adjusted to reflect its proportionate share of the Trust Fund's loss, if any, but not profit.

### Section 8.5 - Expenses

Unless paid by the Employer, the expenses of administering the Plan, other than compensation of persons on the payroll of the Employer, but including fees of the Trustee, independent investment managers or advisors, counsel, accountants or other experts appointed under the Plan, shall be paid out of the Trust Fund to the extent allowed by law.

### Section 8.6 - Rights in the Trust Fund

Persons eligible for benefits under the Plan are entitled to look only to the Trust Fund for the payment of such benefits and have no claim against an Employer, the Committee, or any other person.  No person shall have any right, title or interest in the Trust Fund except as expressly provided in the Plan.

KL3 2630220.9

Section 8.7 - Exclusive Benefit

The Trust Fund shall be used to provide the benefits and pay the expenses of this Plan and of the Trust Fund and, except as otherwise provided in Section 5.2 and Section 8.4, no part of the corpus or income shall be used for or diverted to purposes other than for the exclusive benefit of Participants, Members and their Beneficiaries and the payment of the expenses of this Plan.

KL3 2630220.9

ARTICLE IX

ACCOUNTS AND RECORDS OF THE PLAN

Section 9.1 - Accounts and Records

The Committee shall establish such account or subaccounts as it shall deem necessary for administration of the Plan, including without limitation the applicable components of each Member's Account referenced in the definition thereof or required pursuant to any Supplement hereto.  The accounts and records of the Plan shall be maintained by the Committee or its designee and shall be adjusted as more fully provided in Section 9.3 to reflect changes affecting the status of the accounts of each Member or his Beneficiary in the Plan.  For periods beginning on or after March 31, 2001, statements shall be made available regularly to each Member reflecting the status of his Member's Account and the portions thereof attributable to each separate account or subaccount included therein.

Section 9.2 - Investment Funds

(a)    The Trust Fund shall consist of the Lehman Stock Fund and, until January 31, 2007, the American Express Stock Fund, each as described more fully in Section 1.32, and such other Investment Funds as the Committee shall establish from time to time. The Committee shall have the right (i) to establish and disestablish such other Investment Funds from time to time to implement and carry out investment objectives and policies established by the Committee, and (ii) to eliminate or curtail investments in Lehman Stock (or, prior to January 31, 2007, American Express Stock) if and to the extent that the Committee determines that such action is required in order to comply with the fiduciary duty rules of section 404(a)(1) of ERISA, as modified by section 404(a)(2) of ERISA.

(b)    Each Member shall have an undivided interest in the Trust Fund consisting of the aggregate of his undivided proportionate interests in each Investment Fund in which such Member shall have an interest.  Each Member's undivided proportionate interest in each Investment Fund of the Trust Fund shall be measured by the proportion that the value of such part of his Member's Account as is invested in that Fund bears to the total of such parts of

all Member's Accounts as are invested in that Fund on the date that such interest is being determined.

(c)    The Trustee shall maintain in cash, without obligation to credit interest thereon, such part of the Trust Fund as the Committee specifies for the proper administration of the Plan.  At the Committee's direction, the Trustee shall invest such cash in short-term obligations as determined by the Trustee, which shall be treated as cash for purposes of the Plan.

Section 9.3 - Valuation of Investment Funds

(a)    Effective as of February 1, 2001, the Committee shall retain a recordkeeper for the Plan who shall be the Administrator.  The Administrator shall determine as of each Valuation Date thereafter, the value of each Member's (or Beneficiary's) interest in the Trust Fund, based on the fair market value of the assets of each Investment Fund in which such Member or Beneficiary has an interest and his proportionate interest therein, in accordance with such procedures as the Administrator shall adopt pursuant to authorization from the Committee as appropriate for the purpose and administratively practicable (the "Administrator's Procedures").  The Administrator shall adjust such interest as of each day the New York Stock Exchange is open for trading to reflect all transactions affecting such interest and such value, including contributions, distributions or withdrawals, transfers to or from other Investment Funds and loans and expenses properly chargeable against the Trust Fund, in accordance with the Administrator's Procedures.  In addition, if the last day of the Plan Year is not a day on which the New York Stock Exchange is open for trading, the Administrator may treat the valuation as of the last such day as the valuation for the last day of the Plan Year.  Based on such adjustments, the Administrator shall determine the value of Member's Accounts as of each Valuation Date.  In applying the foregoing requirements to daily valuation, it shall be recognized that daily valuation is dependent upon the Administrator receiving complete and accurate information from a variety of different sources on a timely basis.  Since events may occur that cause an interruption in this process, affecting a single Member or a group of Members (or their Beneficiary), there shall be no guarantee by the Plan that any given transaction will be processed at the anticipated time and day.  In the event of any such

- 73 -

interruption, any affected transaction will be processed as soon as administratively feasible, and no attempt will be made to reconstruct events as they would have occurred absent the interruption, regardless of the cause, unless the Committee in its sole discretion directs the Administrator to do so.

<u>Section 9.4 - Election and Notice Procedures</u>

Elections and directions provided to the Administrator in accordance with procedures adopted by the Administrator and approved by the Committee shall be considered provided to the Committee, effective on the date the Administrator has received such elections and directions.  Such elections and directions may, without limitation, be transmitted by electronic media (internet and e-mail), automated telephonic communication, and recorded conversations with customer service representatives, to the extent permitted in Treas. Reg. §§ 1.402(f)-1, 1.411(a)-11, and 35.3405-1 and corresponding successor guidance to the extent so authorized by the Administrator and Committee.

KL3 2630220.9

ARTICLE X

ADMINISTRATION

Section 10.1 - Employee Benefit Plans Committee

The complete authority and discretion to control and manage the operation and administration of the Plan shall be placed in the Employee Benefit Plans Committee of the Company.  The Committee shall consist of at least three members appointed from time to time by the Board of Directors or its delegate(s) to serve at the pleasure thereof.  Any member of the Committee may resign by delivering his written resignation to the Company.

Section 10.2 - Committee Powers and Discretion

The Committee shall have all powers and discretion necessary or helpful for the carrying out its responsibilities, including the discretion and exclusive right to determine any question arising in connection with the interpretation, application or administration of the Plan. Without limiting the generality of the foregoing, the Committee shall have the power and complete discretion to:

(a)    Determine all questions arising out of or in connection with the provisions of the Plan or its administration, including, without limitation, the power and discretion to resolve ambiguities, to determine relevant facts, to rectify errors, and to supply omissions;

(b)    Make rules and regulations for the administration of the Plan which are not inconsistent with the terms and provisions of the Plan;

(c)    Construe all terms, provisions, conditions and limitations of the Plan;

(d)    Determine all questions relating to the eligibility of persons to receive benefits hereunder, all other matters upon which the benefits or other rights of a Member or other person shall be based hereunder;

(e)    Determine all questions relating to the administration of the Plan (1) when disputes arise between an Employer and a Member or his Beneficiary, spouse or legal

KL3 2630220.9

representatives, and (2) in order to promote the uniform administration of the Plan for the benefit of all parties concerned;

     (f)    Direct the Trustee as to the method by which and persons to whom benefits will be paid;

     (g)    Establish procedures for determining whether a domestic relations order is a qualified domestic relations order ("QDRO") as described in Section 7.12 and for complying with any such QDRO;

     (h)    Determine the method of making corrections necessary or advisable as a result of operating defects in order to preserve qualification of the Plan under Section 401(a) of the Code pursuant to procedures of the Internal Revenue Service applicable in such cases (such as those set forth in Revenue Procedure 2006-27 and similar guidance);

     (i)    Compromise or settle claims against the Plan and direct the Trustee to pay amounts required in any such settlements or compromise;

     (j)    Appoint an Administrator and delegate to such Administrator those tasks of recordkeeping, Plan valuation, communication with Members, and other such ministerial and administrative tasks as the Committee deems appropriate; and

     (k)    Exercise, in its capacity as named fiduciary under the Plan all discretion that the Trust Agreement or any other contract with the Administrator provides shall or may be exercised by the Company.

     The foregoing list of powers and discretion is not intended to be either complete or exclusive, and the Committee shall, in addition, have such powers and discretion as it may determine to be necessary for the performance of its duties under the Plan and the Trust Agreement. The Committee's exercise of its discretion hereunder in good faith shall be conclusive and binding on all parties concerned, including without limitation, any and all Employees, Members, spouses, Beneficiaries, heirs, distributees, estates, executors, administrators, and assigns.

### Section 10.3 - Suspension of Investment Transfer Elections

In the event of a Black Out Period or other period for which the Committee determines that specific circumstances so require, no investment transfer elections with respect to the Lehman Stock Fund may be initiated until such period expires, as determined by the Committee (and any attempt to initiate such a transfer election during such period will be of no effect). Upon the expiration of such period, a Member may again make such elections in accordance with the provisions of Section 6.2.

### Section 10.4 - Claims Procedure

Any Member or Beneficiary who believes that he is then entitled to receive a benefit under the Plan, including one greater than that determined by the Committee, may file a claim in writing with the Committee in accordance with the claims review procedure established by the Committee.

### Section 10.5 - Action by Majority

Any act which the Plan authorizes or requires the Committee to do may be done by a majority of its members. The action of such majority, expressed from time to time by a vote at a meeting (at which members may be present in person or through telephonic or similar communication) or in writing without a meeting, shall constitute the action of the Committee and shall have the same effect for all purposes as if assented to by all members of the Committee at the time in office. The members of the Committee may authorize one or more of their number to execute or deliver any instrument, make any payment or perform any other act which the Plan authorizes or requires the Committee to do.

### Section 10.6 - Retention of Advisors

The Committee or any fiduciary designated by the Committee pursuant to Section 10.11 may employ counsel and other agents and may procure such clerical, accounting, actuarial and other services as they may require in carrying out the provisions of the Plan.

KL3 2630220.9

### Section 10.7 - Committee Member Compensation

No member of the Committee shall receive any compensation for his services as such.

### Section 10.8 - Indemnification

The Company shall indemnify and save harmless each member of the Committee against all expenses and liabilities arising out of membership on the Committee, excepting only expenses and liabilities arising from his own gross negligence or willful misconduct, as determined by the Board of Directors.

### Section 10.9 - Named Fiduciary and Plan Administrator

For purposes of the Act, the "Named Fiduciary" for operation and administration of the Plan and the "Plan Administrator" shall be the Committee, and the Committee is hereby designated as agent for service of legal process.

### Section 10.10 - Service in Various Fiduciary Capacities

Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan.

### Section 10.11 - Power of Delegation

The Committee may designate in writing other persons to carry out a specified part or parts of its responsibilities hereunder (including the power to designate other persons to carry out a part of such designated responsibility).

### Section 10.12 - Named Fiduciary with Respect to Asset Management

The Committee shall be the "Named Fiduciary" with respect to control or management of the assets of the Plan, and shall have authority (a) to appoint an investment manager or managers (within the meaning of Section 3(38) of the Act) to manage (including the power to acquire and dispose of) any assets of the Plan), and (b) to direct the Trustee with respect to the management of assets of the Plan not subject to the authority of such an investment

- 78 -

manager (including, without limitation, the selection of such mutual funds or other investment options as it may deem appropriate to carry out the investment objectives of each of the respective Investment Funds established by the Committee as provided in Section 9.2). Without limiting the generality of the foregoing, the Committee as such Named Fiduciary shall have exclusive responsibility for determining whether the Plan provisions requiring the establishment and maintenance of the Lehman Stock Fund (and the American Express Stock Fund until January 31, 2007) may continue to be given effect in accordance with their terms as required by Section 401(a)(1)(D) of the Act, or whether such provisions are to any extent inconsistent with applicable requirements of the Act, including in particular the fiduciary duty rules of Section 404(a)(1) of the Act as modified  by Section 404(a)(2) of the Act;  and no other fiduciary of the Plan shall have responsibility therefor.

Section 10.13 - Funding Policy

The Committee shall establish and carry out, or cause to be established and carried out by those persons (including, without limitation, any trustee) to whom responsibility or authority therefore has been allocated or delegated in accordance with the Plan or the Trust Agreement, a funding policy and method consistent with the objectives of the Plan and the requirements of ERISA.  Without limiting the generality of the foregoing, it is recognized that Members (and their Beneficiaries) have many differing individual financial situations, and the funding policy of the Plan is therefore to allow Members and their Beneficiaries to choose, from a broad range of diversified investment options (as well as the Lehman Stock Fund or American Express Stock Fund until its elimination, subject to the limitations of Section 6.1(c)), the Investment Fund or Investment Funds which they believe best suit their individual objectives.  In the event of the elimination of a preexisting Investment Fund option, or a merger or spin-off of assets from another plan into this Plan, the foregoing principle shall not preclude the adoption of mapping rules under which assets previously invested for the benefit of the Member or Beneficiary in one or more investment options that are no longer available are transferred to specific Investment Funds under this Plan, subject to the right of the Member or Beneficiary to then reallocate his Member's Account among Investment Funds in accordance with Section 6.2. To the extent permitted by law, none of the Company, any Employer, the Committee, the Trustee nor any other fiduciary of the Plan shall be liable for any loss resulting from a Member's (or

Beneficiary's) exercise of his right to direct the investment of his Member's Account or his failure to exercise such rights.

Section 10.14 - Recovery of Overpayments

Without limiting the generality of the Committee's power and discretion under Section 10.2 to rectify errors and correct omissions, in the event that the Committee determines that overpayments have been made to a Member or his spouse or Beneficiary, the Committee shall take such steps as it shall deem appropriate under the relevant facts and circumstances to recover such payments, with or without interest, and in case repayment is not otherwise made, to offset the amount to be recovered against subsequent payments otherwise becoming due to or in respect of such Member, spouse, or Beneficiary at such time and to such extent as it shall deem appropriate.

KL3 2630220.9

ARTICLE XI

BENEFICIARY DESIGNATION, INCOMPETENCY AND NON-ALIENATION

Section 11.1 - Beneficiary Designation

(a)    Each Member may designate, in accordance with procedures established by the Committee, a Beneficiary or Beneficiaries to receive his interest in the Plan in the event of his death, and may direct that payments be made in specific proportions to certain primary Beneficiaries if living at the date of his death, or if not so living, to certain secondary Beneficiaries, in specified portions, but such designation shall not be effective for any purpose unless it has been communicated by him during his lifetime nor until such communication has been received by the Committee.  He may, from time to time during his lifetime, in accordance with procedures established by the Committee, change the Beneficiary or Beneficiaries.

If more than one Beneficiary of a particular class (primary or secondary) is entitled to benefits, payments shall be made in equal shares to such Beneficiaries, unless some other specific proportions are clearly designated.  If more than one Beneficiary of a particular class (primary or secondary) is named, the interest of any deceased Beneficiary of that class shall pass to the surviving Beneficiary or Beneficiaries of that class except to the extent that the designation provides for payment to any secondary Beneficiary(s) upon the death of a primary Beneficiary.

(b)    Notwithstanding anything in this Section 11.1 to the contrary, for a Member who was legally married on the date of his death which occurs on or after August 23, 1984, and prior to distribution of his Distributable Account, the Beneficiary shall be his surviving spouse unless such Member designates some other Beneficiary and (i) the spouse waives the right to be the Member's Beneficiary, (ii) the Member establishes to the satisfaction of the Committee that the spouse cannot be located or has abandoned the Member within the meaning of local law, (iii) effective January 1, 2004, the spouse and the Member are legally separated and the Member has a court order to such effect, or (iv) the Member has no surviving spouse.  In such event, the designation of a Beneficiary other than the surviving spouse shall be made in accordance with procedures established by the Committee.

KL3 2630220.9

Any such designation may be revoked solely by the Member by written notice to the Committee in accordance with procedures established by the Committee; provided, however, the Member's spouse must consent in writing to any such change or revocation that does not designate such spouse as Beneficiary. Any consent by a Member's spouse to waive the rights provided under this Section 11.1 must be in writing, acknowledge the effect of such waiver, and be witnessed by a notary public. Further, a spouse's consent is irrevocable and must identify the designated non-spouse Beneficiary by name or class.

If a Member has failed effectively to designate a Beneficiary to receive the Member's death benefits, or a Beneficiary previously designated has predeceased the Member and no alternative designation has become effective, such benefits shall be distributed to the Member's surviving spouse, if any, or if no spouse survives the Member, to the Member's estate. In the event that the Committee determines, based on evidence satisfactory to it, that no executor or administrator has been appointed for the estate or is likely to be so appointed, the Committee may, in its discretion, distribute such benefits to such one or more of (i) the surviving child or children of the Member (who may include stepchildren) (ii) the surviving parent or parents of the Member, (iii) surviving siblings of the Member (who may include half-siblings), or (iv) surviving grandchildren of the Member. The decision of the Committee shall, in each case, be final and binding upon all parties, and any distribution made pursuant to the power herein conferred on the Committee shall, to the extent so made, be a complete discharge of the obligations under the Plan of the Employer, the Trustee, and the Committee in respect of such Member.

(c)    Before making distribution to a Beneficiary, the Committee may require such proof of death and such evidence of the right of any person to receive all or part of the death benefit of a deceased Member as the Committee may deem desirable. The Committee's determination of the fact of death of a Member and of the right of any person to receive distributions as a result thereof shall be conclusive upon such person or persons having or claiming any right in the Trust Fund on account of such Member.

(d)    If distribution in respect of any Member's Distributable Account is made to a person reasonably believed by the Committee or its delegate (taking into account any

KL3 2630220.9

document purporting to be a valid consent of the Member's spouse, or any representation by the Member that he is not married) to properly qualify as the Member's Beneficiary under the foregoing provisions of this Article XI, the Plan shall have no further liability with respect to such Member's Accounts (or the portion thereof distributed).

(e)    No purported designation of beneficiary (including change of designation) shall be valid or given effect unless it complies with the procedures established by the Committee, including use of such form or forms as the Committee has prescribed for the purpose.

Section 11.2 - Incompetence

Whenever and as often as any person entitled to receive a distribution under the Plan shall be under a legal disability or, in the sole judgment of the Committee, shall otherwise be unable to care for such distributions to his own best interest and advantage, the Committee, in the exercise of its discretion, may direct such distributions to be made in any one or more of the following ways:

(a)    To the spouse;

(b)    To the legal guardian or conservator; or

(c)    To any other person to be held and/or used for such person's benefit.

The decision of the Committee shall, in each case, be final and binding upon all parties, and any distribution made pursuant to the power herein conferred on the Committee shall, to the extent so made, be a complete discharge of the obligations under the Plan of the Employer, the Trustee, and the Committee in respect of such Member

Section 11.3 - Non-Alienation

(a)    Except as otherwise provided by applicable Federal law, the right to receive funds under the Plan may not be anticipated, alienated, sold, transferred, assigned, pledged, encumbered, or subjected to any charge or legal process; and if any attempt is made to do so, or a person eligible for any funds becomes bankrupt, the interest under the Plan of the

KL3 2630220.9

person affected may be terminated by the Committee, and such Committee may cause the same to be held or applied for the benefit of such person or one or more of his dependents in such manner as it deems proper.

(b)     The provisions of Subsection (a) shall not apply to a "qualified domestic relations order" as defined in Section 414(p) of the Code and any other domestic relations order permitted to be so treated by the Committee in accordance with Section 7.12.  The Committee shall establish a written procedure to determine the qualified status of domestic relations orders and to administer distributions under such qualified orders.

ARTICLE XII

AMENDMENT AND TERMINATION

### Section 12.1 - Amendment to Conform with Law

The Company, acting through the Company Representative, reserves the right to make by amendment such changes in, additions to, and substitutions for the provisions of this Plan, to take effect retroactively or otherwise, as is deemed necessary or advisable from time to time to qualify the Plan under Sections 401(a) and 401(k) of the Code, to continue the Plan as so qualified, or to comply with any other provision of law relating to trusts and plans of this or a similar nature, and administrative regulations promulgated thereunder.

### Section 12.2 - Other Amendment and Termination

The Company, acting through the Company Representative, also reserves the right to amend this Plan at any time, and from time to time, in any manner it deems desirable including, but not limited to, changing or modifying contributions under the Plan, or changing any provision relating to the distribution or withdrawal, or both, with respect to any account balances, to the maximum extent permitted by Section 411(d)(6) of the Code and regulations thereunder.  The Company further reserves the right to terminate this Plan at any time by resolution of the Board of Directors.

### Section 12.3 - Limitations on Amendments

The provisions of this Article XII are subject to and limited by the following restrictions:

(a)     No such amendment shall operate either directly or indirectly to give any Employer any interest whatsoever in any funds or property held by the Trustee under the terms hereof, or to permit corpus or income of the Trust to be used for or diverted to purposes other than the exclusive benefit of persons who are at any time on or after the date hereof, Members or Beneficiaries.

(b)     Except to the extent necessary to produce conformity to the laws and regulations described in Section 12.1, no such amendment shall operate either directly or

indirectly to deprive any Member of his nonforfeitable beneficial interest as it is constituted at the time of the amendment.

### Section 12.4 - Termination of the Plan

Upon complete or partial termination of the Plan (within the meaning of Section 411(d)(3) of the Code), the rights of all affected Members to their Member's Accounts as of the date of such termination shall be nonforfeitable.  If the Plan is completely terminated, the assets attributable to each Member's Account shall either be distributed to the Member (or his Beneficiary) to the extent permitted by applicable regulations (such as Treasury Regulation § 1.401(k)-1(d)(4), effective January 1, 2006), or transferred to a successor plan, as the Company Representative shall direct in accordance with applicable law.  Until all Member's Accounts are fully distributed or transferred, any remaining accounts held in the Trust Fund shall continue to be adjusted in accordance with Section 9.3, and to reflect their proportionate share of the expenses of termination to the extent such expenses are not paid by an Employer.

### Section 12.5 - Merger or Consolidation or Transfer

The Plan may be amended to provide for the merger of the Plan, in whole or in part, or a transfer of all or part of its assets, into or to any other qualified plan within the meaning of Section 401(a) of the Code, including such a merger or transfer in lieu of a distribution which might otherwise be required under the Plan.  No merger or consolidation of the Plan with, or any transfer of assets or liabilities of the Plan to or from any other plan, shall occur unless each Member in the Plan would be entitled to receive a benefit immediately after the merger, consolidation or transfer (if the Plan then terminated) which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation or transfer (if the Plan had then terminated).

ARTICLE XIII

SPECIAL TOP-HEAVY RULES

Section 13.1 - Application

If this Plan is or becomes a Top-Heavy Plan (as hereinafter defined) in any Plan Year, the provisions of this Article XIII shall apply notwithstanding any conflicting provisions of this Plan. For purposes of this Article XIII, the term "Employer" shall include all Affiliates.

The date for determining the applicability of this Article (the "Determination Date") is the last day of the preceding Plan Year.

Other plans shall be included in determining whether this Plan is "Top-Heavy" based on the determination date as defined in Section 416(g)(4)(C) of the Code for each such plan which occurs in the same calendar year as such Determination Date for this Plan.

Section 13.2 - Top-Heavy Plan

The Plan shall constitute a Top-Heavy Plan if, as of the Determination Date, (a) the Plan is not part of an Aggregation Group (as hereinafter defined) and the aggregate of the Accounts of Key Employees (as hereinafter defined) under the Plan exceeds sixty percent (60%) of the aggregate of the Accounts of all Employees under the Plan or (b) the Plan is included in an Aggregation Group and such Group is a Top-Heavy Group (as hereinafter defined).

Section 13.3 - Definitions

For purposes of this Article XIII, the following definitions shall apply:

(a)    "Key Employee" in this Plan means an employee (including a former employee, whether or not deceased) of an Employer or Affiliate who, at any time during a given Plan Year or any of the four (4) preceding Plan Years is one or more of the following --

(i)    An officer of an Employer or an Affiliate having Compensation greater than fifty percent (50%) of the dollar amount in effect under Section 415(b)(1)(A) of the Code for any such Plan Year; provided, however, that no more than the lesser of (A) fifty (50)

- 87 -

KL3 2630220.9

employees or (B) the greater of three (3) employees or ten percent (10%) of all employees are to be treated as officers (exclusive of employees described in Section 414(q)(5) of the Code);

(ii)    One of the ten (10) employees (A) having Compensation greater than the dollar limit described in Subsection 5.1, and (B) owning (or considered as owning, within the meaning of Section 416(i) of the Code), the largest percentage interest in value of an Employer or Affiliate, provided that such percentage interest exceeds one-half percent (0.5%) in value.  If two (2) employees have the same interest in an Employer or Affiliate, the employee having greater Compensation shall be treated as having a larger interest;

(iii)    A person owning (or considered as owning, within the meaning of Section 416(i) of the Code), more than five percent (5%) of the outstanding stock of an Employer or Affiliate, or stock possessing more than five percent (5%) of the total combined voting power of all stock of an Employer or Affiliate (or having more than five percent (5%) of the capital or profits interest in any Employer or Affiliate that is not a corporation, determined under similar principles); or

(iv)    A one percent (1%) owner of an Employer or Affiliate having Compensation of more than $150,000.  A "one percent (1%) owner" means any person who would be described in clause (iii) hereof if "one percent (1%)" were substituted for "five percent (5%)" in each place where it appears in clause (iii).

For each other plan included in the Aggregation Group, "Key Employee" is as defined in Section 416(i) of the Code.

(b)    "Aggregation Group" means the group of plans that includes (i) any plan maintained by an Employer or an Affiliate in which a Key Employee participates during the five (5)-year period ending on such plan's Determination Date, and (ii) each other plan of an Employer or Affiliate which, during such period, enables any plan in clause (i) of this sentence to meet the requirements of Sections 401(a)(4) and 410 of the Code.  Collectively bargained plans that cover a Key Employee shall be included for this purpose.  Aggregation Group may include terminated plans, frozen plans and, to the extent that benefits are provided with respect to service with an Employer or Affiliate, multiemployer plans (described in Section 414(f) of

the Code) and multiple employer plans (described in Section 413(c) of the Code) to which an Employer or Affiliate makes contributions. In any Plan Year, in testing for top-heaviness under Subsection (c) below, the Committee may in its discretion expand the Aggregation Group to take into account any other plan maintained by an Employer or Affiliate, but only if such expanded Aggregation Group does not as a result of such expansion, fail to meet the requirements of Sections 401(a)(4) and 410 of the Code. Collectively bargained plans that do not cover a Key Employee may be included for this purpose.

(c) The term "Top-Heavy Group" means an Aggregation Group as to which, as of the Determination Date, the sum of — (i) the present value of the cumulative accrued benefits for Key Employees under all defined benefit plans included in such Group (determined based on the actuarial assumptions set forth in the "top-heavy" provisions of such plans), and (ii) the aggregate of the accounts of Key Employees under all defined contribution plans included in such Group — exceeds sixty percent (60%) of a similar sum determined for all participants of such plans.

Section 13.4 - Beneficiaries

The terms "Key Employee" and "participant" include their Beneficiaries.

Section 13.5 - Present Value and Accounts

For purposes of Sections 13.2 and 13.3(c), the following rules shall apply in determining the present value of the cumulative accrued benefit for any employee and the amount of the account of any employee:

(a) The present value of accrued benefits and the value of accounts shall be determined as of the last day of the twelve (12)-month period ending on the Determination Date;

(b) Employer contributions and employee contributions, with the exception of accumulated deductible employee contributions, shall be taken into account;

(c) All amounts distributed to an employee within the five (5)-year period ending on the Determination Date shall be taken into account, including any amount distributed

from a terminated plan that would have been required to be included in the Aggregation Group had it not been terminated;

(d)    With respect to a transferee plan, any rollover contribution or similar transfer initiated by an employee and made after December 31, 1983, shall be disregarded (except to the extent provided in regulations issued by the Secretary of the Treasury);

(e)    If an employee ceases to be a Key Employee, such employee's accrued benefit and account shall be disregarded (for purposes of determining the present value of cumulative accrued benefits and the amount of the accounts of both Key Employees and all employees) for any Plan Year after the last Plan Year for which he was treated as a Key Employee; and

(f)    The benefits and accounts of persons who have not performed services for an Employer or Affiliate for the five (5)-year period ending on the Determination Date shall be disregarded.

Section 13.6 - Minimum Contribution

(a)    If this Plan is determined to be a Top-Heavy Plan in any Plan Year, then the Employer contribution for such Plan Year for each Participant who is employed by an Employer or Affiliate on the last day of the Plan Year and is not a Key Employee, exclusive of Section 401(k) Contributions shall be at least three percent (3%) of such Participant's Compensation.  The Employer contribution shall not, however, exceed the percentage of each Participant's Compensation that is equal to the highest percentage of Compensation at which contributions are made for the Plan Year for any Key Employee (i) under the Plan or (ii) if the Plan is part of an Aggregation Group, under any defined contribution plan in such Group; provided, however, that this sentence shall not apply if the Plan is required to be included in an Aggregation Group and enables a defined benefit plan to meet the requirements of Section 401(a)(4) or 410 of the Code.  For purposes of the preceding sentence, the percentage of Compensation at which contributions are made for a Key Employee shall be computed without regard to Compensation in excess of the ceiling on includable Compensation set forth in Section 13.7.

(b)    For purposes of this Section 13.6:

(1)    Contributions made pursuant to Chapter 21 of Title II of the Social Security Act shall be disregarded; and

(2)    For Plan Years beginning on or after January 1, 1989, (A) Employer Contributions attributable to a salary reduction or similar arrangement (which are made with respect to a Key Employee) shall be taken into account in determining the minimum contribution under this Section 13.6; and (B) Matching Contributions for a non-Key Employee that are taken into account to meet the minimum contribution requirements of this Section 13.6 shall be disregarded in applying the provisions of Section 3.4.

(c)    The provisions of Subsection (a) above shall apply without regard to Section 4.1.

(d)    The provisions of Subsection (a) above shall not apply with respect to any Participant who, for the Plan Year in question, receives the minimum contribution set forth in Subsection (a) above under another Defined Contribution Plan (as defined in Section 5.4(b)) maintained by the Employer or an Affiliate or receives the minimum benefit prescribed in Section 416(c) of the Code under a Defined Benefit Plan (any "Retirement Plan", as defined in Section 5.4(c) that is not a Defined Contribution Plan) maintained by the Employer or an Affiliate.

### Section 13.7 - Ceiling on Includable Compensation

If the Plan is determined to be a Top-Heavy Plan in any Plan Year, then only the Participant's Compensation up to the maximum amount described in Section 1.17, as adjusted from time to time, shall be taken into account in determining the allocation to the Member's Account of such Participant for the Plan Year.

### Section 13.8 - Exception for Collectively Bargained Plans

Section 13.6 shall not apply to any employee who is included in a collective bargaining unit if there is evidence that retirement benefits were the subject of good faith

bargaining between the representatives of such unit and the Employer or an Affiliate, except as to those employees who are Employees.

<u>Section 13.9 - Compliance with Section 416 of the Code</u>

The calculation of the "Top-Heavy" ratio, and the extent to which distributions, rollovers and transfers from this Plan or any other plan included in the Aggregation Group shall be taken into account, will be made in accordance with Section 416 of the Code and applicable regulations thereunder.

KL3 2630220.9

ARTICLE XIV

MISCELLANEOUS

### Section 14.1 - Effect of Mistake

In the event of a mistake or misstatement as to age or eligibility of any person, or the amount or kind of contributions, withdrawals or distributions made or to be made to a Member or other person, the Committee shall, to the extent it deems possible, make such adjustment as will in its judgment accord to such Member or other person the credits or distributions to which he is properly entitled under the Plan.

### Section 14.2 - Inability to Locate Payee

Notwithstanding Section 7.1, if any benefit becomes payable to any person, or to the executor or administrator of any deceased person, and if that person or his executor or administrator does not file a claim in writing with the Committee in accordance with the claims review procedure set forth in the Summary Plan Description of this Plan within two years after the Committee mails written notice of eligibility to his last known address, that benefit will be forfeited at such time as the Committee shall determine in its sole discretion (but in all events prior to the time such benefit would otherwise escheat under any applicable law).  However, the payee later may file a claim for that benefit under Section 10.4, provided the Plan has not been terminated.  If that claim is approved, the benefit will be restored; provided, however, that no interest or other earnings shall be paid with respect to such benefit.

Amounts forfeited pursuant to this Section 14.2 shall be used to reduce Employer contributions to the Plan under Section 4.1 or to pay expenses of the Plan.

### Section 14.3 - Conclusiveness of Records

In administering the Plan, the Committee may conclusively rely upon an Employer's payroll and personnel records maintained in the ordinary course of business.

### Section 14.4 - No Employment Rights

This Plan is not a contract to employ nor a consideration or inducement for the employment of any person and does not give to any person the right to be continued in employment, not shall it be construed as limiting in any way the right of any Employer or Affiliate to treat any person without regard to the effect which such treatment might have upon him as a Participant under the Plan.

### Section 14.5 - Gender; Headings

(a)    The masculine pronoun, wherever used herein, shall include the feminine pronoun, the singular as used herein shall include the plural, and the plural shall include the singular, unless the context clearly indicates a different meaning.

(b)    The headings of Sections and Subsections are included solely for convenience of reference and in no way define, limit, enlarge or describe the scope or intent of the Plan nor in any way shall affect the Plan or the construction of any provision thereof.

### Section 14.6 - Counterparts

This Plan may be executed in any number of counterparts, each of which shall be deemed to be an original.  All the counterparts shall constitute but one and the same instrument and may be sufficiently evidenced by any one counterpart.

### Section 14.7 - Illegality of Particular Provision

The illegality, invalidity or unenforceability of any particular provision of the Plan or Trust Agreement shall not affect any other provisions of the Plan or Trust Agreement, and the Plan and Trust Agreement shall be construed as if such provision had not been included therein.

### Section 14.8 - Applicable Law

The Plan shall be governed by and construed according to the laws of the State of New York (without regard to its choice of law principles) except to the extent pre-empted by the

KL3 2630220.9

Act or any other applicable federal law.  No action (whether at law, in equity or otherwise) shall be brought by or on behalf of any Member or Beneficiary for or with respect to benefits due under this Plan unless the person bringing such action has timely exhausted the Plan's claims review procedure.  Any action (whether at law, in equity or otherwise) must be commenced within three years from the earlier of (a) the date a final determination denying such benefit, in whole or in part, is issued under the Plan's claim review procedure and (b) the date such person's cause of action first accrued.

Section 14.9 - Limitation of Liability

Subject to Section 10.8, no liability shall attach to or be incurred by any stockholder, officer or director of an Employer or any Affiliate under or by reason of the terms, conditions and provisions contained in the Plan or Trust Agreement or for the acts or decisions taken or made thereunder or in connection therewith; and as a condition precedent to his participation in the Plan or the receipt of benefits thereunder, or both, such liability, if any, is expressly waived and released by each Member, spouse or Beneficiary, and by any and all persons claiming under or through such persons, such waiver and release to be conclusively evidenced by any act or participation in or the acceptance of benefits or the making of elections under the Plan.

Section 14.10 - Doubt as to Right to Payment

In the event that at any time any doubt exists as to the right of any person to any payment hereunder or the amount or time of such payment (including, without limitation, any case of doubt as to identity, or any case in which any notice has been received from any other person claiming any interest in amounts payable hereunder, or any case in which a claim from other persons may exist by reason of community property or similar laws), the Committee shall be entitled, in its discretion, to direct the Trustee to separately account for such sum or hold such sum as a segregated amount in trust until such right or amount or time is determined or until order of a court of competent jurisdiction, or to pay such sum into court in accordance with appropriate rules of law in such case then provided, or to make payment only upon receipt of a bond or similar indemnification (in such amount and in such form as is satisfactory to the Committee).

KL3 2630220.9

ARTICLE XV

SPECIAL PROVISIONS APPLICABLE TO SLHMC EMPLOYEES

Section 15.1 - Definitions

As used in this Article XV, the following terms shall have the meanings hereinafter set forth:

(a)    "Closing" shall mean the closing to take place on or about August 31, 1993 in accordance with, and pursuant to, the transactions contemplated by the Purchase Agreement.

(b)    "GE Capital" shall mean GE Capital Mortgage Services, Inc., a New Jersey corporation.

(c)    "Purchase Agreement" shall mean the stock purchase agreement dated as of July 29, 1993 wherein Shearson agreed to sell to GE Capital the issued and outstanding shares of SLHMC and certain subsidiaries of SLHMC.

(d)    "Shearson" shall mean Shearson Holdings, Inc., a Delaware corporation.

(e)    "SLHMC" shall mean Shearson Lehman Hutton Mortgage Corporation, a Delaware corporation, and its subsidiary companies immediately after the Closing.

Section 15.2 - Contributions

Notwithstanding anything in Section 4.1 to the contrary, any Employer contribution to be made on behalf of SLHMC employees under this Plan pursuant to Section 4.1 for the Plan Year beginning in 1993 shall be made with respect to each eligible Participant employed by SLHMC on the Closing and without regard to whether such Participant is employed on the last day of such Plan Year; provided, however, in determining the amount of the contribution to be allocated to each such Participant, the threshold dollar amounts of $37,800 and $100,000 set forth in Section 4.1(c) shall be multiplied by a fraction where the numerator shall equal the number of days in such Plan Year prior to the Closing and the denominator shall equal 365.

KL3 2630220.9

Section 15.3 - Distributions

Each Member who is employed by GE Capital or any member of the GE Capital controlled group, within the meaning of Section 414(b), (c), (m) or (o) of the Code, on the Closing (or within six months thereafter in accordance with the terms of the Purchase Agreement) shall be entitled to receive a lump sum distribution of his Member's Account in accordance with the applicable provisions of Section 7.2, provided the distribution otherwise satisfies the applicable requirements of Section 401(k)(10) of the Code and the regulations thereunder.

KL3 2630220.9

ARTICLE XVI

PARTICIPANT LOANS

### Section 16.1 - Loans to Parties in Interest

Upon the application of a Participant or other Member who is a "party in interest" with respect to the Plan (within the meaning of Section 3(14) of the Act), the Trustee shall make a loan to such Member from his Member's Account, provided that such loan meets the requirements of Section 16.2. No more than two loans may be outstanding at any given time. The loan request shall be made on such form and in such manner as the Committee or its delegee (the "Loan Administrator"), shall prescribe, together with such application fee (if any) as the Loan Administrator may authorize with the approval of the Committee. The Loan Administrator shall notify the Member in writing within a reasonable time of the approval (such notification may include the issuance of a check) or denial of such loan request, and such notification by the Loan Administrator shall be final. The status and rights under the Plan of a Member who obtains a loan under this Article XVI shall not be affected, except to the extent that the Member has assigned an interest in his Member's Account pursuant to the applicable provisions of Section 16.2. All loans shall be granted according to rules adopted by the Loan Administrator applicable to all Members who are parties in interest on a uniform basis that does not discriminate in favor of Highly Compensated Employees. A Member who has defaulted on a prior loan (as described in Section 16.8) shall not be eligible for future loans under this Section 16.1; provided, however, if a Member has terminated employment and the defaulted loan has been treated as distributed for both Plan and income tax purposes, such Member following rehire shall be eligible for future loans under this Article 16 without regard to the prior loan default, and the amount of such future loans shall be determined without regard to such defaulted loan (except for purposes of the limit in Section 16.2.1, if applicable). The Committee may at any time suspend authorization for future loans to Members, but no such suspension shall affect any loan then outstanding under this Article XVI.

### Section 16.2 - Loan Requirements

A loan to a Member shall not be made pursuant to Section 16.1 unless such loan meets all of the following requirements:

16.2.1  <u>Amount</u>.  Such loan must be in an amount no less than one thousand dollars ($1,000) and shall not exceed the lowest of:

(a)    fifty thousand dollars ($50,000) reduced by the highest amount outstanding during the preceding twelve (12) months on all loans to the Member from this and any other qualified employer plan (as described in Section 72(p)(4) of the Code) which is maintained by an Employer or Affiliate ("controlled group loans");

(b)    one-half of the vested balance of his Member's Account;

(c)    if there is a "controlled group loan" (other than a loan made under this Plan) currently outstanding, one-half of the value of the Member's vested interest under this Plan and any other plan from which such loan was made, less the current amount outstanding on all controlled group loans; or

(d)    such other amount as may be determined by the Loan Administrator in order to comply with any restrictions under an Investment Fund that limit the liquidation of investments to fund Member loans or otherwise.

16.2.2    <u>Adequate Security</u>.  All loans must be adequately secured.  For this purpose, the Member's vested interest in his Member's Account shall be assigned as collateral security to the extent of one-half the value of the Member's vested interest in such Member's Account at the time the loan is made.  If the Loan Administrator subsequently determines that the loan is no longer adequately secured, additional security may be required.

16.2.3    <u>Interest</u>.  All loans must bear interest, payable with each scheduled loan payment (and in no event less frequently than quarterly), at the prime rate published by the Wall Street Journal or such other source as the Loan Administrator shall employ for the purpose plus 1%.  The Loan Administrator shall at regular intervals (but no less frequently than quarterly) determine the applicable rate on the basis of a review of pertinent information.

16.2.4    <u>Repayment</u>.  Such loan must provide for substantially level amortization (within the meaning of Section 72(p)(2)(C) of the Code) with payments made at least quarterly for a fixed term of any number of months less than or equal to sixty (60), or if the

loan is for the purchase of the Member's principal residence, any number of months not to exceed one hundred and twenty (120). A Member shall have the right on any scheduled payment date to prepay the full outstanding balance of such loan and accrued interest without penalty. Partial prepayment shall not be permitted. The Member shall agree to a repayment procedure that gives the Loan Administrator satisfactory assurance that the loan will be repaid on schedule, similar to the assurances that a commercial lender would require, such as an agreement to repay the loan by means of deductions from an Employer's or an Affiliate's payroll made in U.S. dollars. Unless the Loan Administrator determines that it is impractical to do so, such loan shall be repaid by substantially level payroll deductions from pay in each pay period in which the loan is outstanding. Any outstanding loan shall be repaid within ninety days following a Member's termination of employment. A terminated Member who seeks a distribution in excess of the amount of his Distributable Account exclusive of the balance of an outstanding loan must repay the loan no later than the date of distribution of his Distributable Account. Notwithstanding the foregoing, loan repayments will be suspended under the Plan as permitted under Section 414(u)(4) of the Code.

      16.2.5   <u>Binding Obligation</u>. Such loan must be evidenced by legally binding documentation, either written or the legal equivalent thereof, containing such terms and provisions as the Loan Administrator shall determine, and which is agreed to by the Member in such manner as the Loan Administrator shall prescribe, so as to be binding on such Member, and, if the Loan Administrator shall so determine, must be executed or otherwise agreed to by the Member's spouse.

<u>Section 16.3 - Funding of Member Loans</u>

      16.3.1   <u>Source of Funds</u>. A Member's loan shall be funded solely by reduction of his Member's Account as of the effective date of the loan in the following order of priority: First, from his Employer Contributions Account, next from his Section 401(k) Contributions Account, and then from his Rollover Account (if any), and last from his After-Tax Contribution Account; provided, however, that the Member may, in accordance with procedures established by the Loan Administrator, direct that this order be reversed and that loans be taken first from his After-Tax Contribution Account. The loan obligation described in Section 16.2.4 of a Member

- 100 -

who receives a loan shall be held by the Trustee as an asset of the Trust Fund and allocated solely to the Member's Account from which the loan was made.  For all purposes hereunder, the value of such loan obligation shall be considered to be the outstanding unpaid principal amount of the loan plus accrued interest.

16.3.2    Allocation Among Investment Funds; Valuation.  A Member's loan will be funded pro-rata from among the Investment Funds in which the Member's Account (or portion thereof) from which the loan is taken are invested.

Section 16.4 - Loan Payments

Payments of principal and interest on a Member's loan shall be allocated among Investment Funds in accordance with rules adopted by the Loan Administrator.

Section 16.5 - Loan Expenses

The Loan Administrator may determine to charge any fees, taxes or other expenses incurred in connection with a loan to the Member's Account of the Member obtaining such loan or to the Member directly.  Such charges shall be imposed on a uniform and nondiscriminatory basis.

Section 16.6 - Disposition of Loan Upon Distribution

In the event that distribution of a Member's Account is required to be made under the terms of the Plan before the Member repays an outstanding loan, the Trustee shall offset the outstanding balance of any loan from such Account against the value of the Member's Account before making a distribution.

Section 16.7 - Compliance with Applicable Law

The Loan Administrator shall take such actions as are deemed appropriate in order to assure full compliance with all applicable laws and regulations relating to Member loans and the granting and repayment thereof.

KL3 2630220.9

Section 16.8 - Default

The outstanding principal amount and accrued interest of a loan made pursuant to Section 16.1 shall become immediately due and payable if the Member fails to make a scheduled loan payment by the required date and any grace period permitted by the Loan Administrator has expired.  In such event, the Loan Administrator may execute upon the Plan's security interest in his Member's Account to satisfy the debt; provided, however, that execution shall not occur until such time as the Member's Distributable Account could be distributed to the Member consistent with the requirements for qualification of the Plan under Section 401(a) of the Code.  The Loan Administrator may take any other action deemed appropriate to obtain payment of the outstanding amount of principal and accrued interest, which may include accepting payments of principal and interest that were not made on schedule and permitting the loan to remain outstanding under its original payment schedule.  Any costs incurred by the Loan Administrator in collecting, or attempting to collect, amounts in default shall be charged against the Member's Account.  If the Loan Administrator is unable to obtain payment of the outstanding principal and accrued interest (or, in the Loan Administrator's discretion, payment of only the overdue amount of such principal), the Loan Administrator shall take such further action as is deemed appropriate to prevent loss to the Plan as a result of the default.  Any discretion by the Loan Administrator in this regard shall be exercised in a uniform manner that does not discriminate in favor of Highly Compensated Employees.

ARTICLE XVII

Domestic Partner Treated as Spouse

Section 17.1 - Effective Date

The provisions of this Article XVII shall be effective June 1, 2000 with respect to individuals who are Members on or after that date.

Section 17.2 - Definition of Domestic Partner

An individual is a "Domestic Partner" with respect to a Member for purposes of this Plan if (i) such individual and the Member have a currently registered domestic partnership with a governmental body pursuant to state or local law authorizing such registration, or (ii) such individual and the Member are parties to a civil union or same-sex marriage that is lawful in the jurisdiction in which entered into.  In the absence of a formal registration, an Employee can register his or her domestic partnership with another individual by filing an affidavit with the Lehman Brothers Benefits Service Center, and such individual shall qualify as a Domestic Partner of such Employee for purposes of this Plan for so long as such domestic partnership shall remain in effect.  Notwithstanding the foregoing, an individual will not be regarded as a Domestic Partner of a Member if either such individual or the Member are married to another person (even if legally separated) or have a domestic partnership with another person.

Section 17.3 - Treatment as Spouse

An individual shall be treated as the spouse of a Member and as legally married to such Member for such period as such individual shall qualify as the Domestic Partner of such Member, but shall not by reason thereof qualify for direct rollover rights of a spouse under Section 7.6 (but effective January 1, 2008, shall qualify for the right of direct rollover to an individual retirement account or annuity there authorized for other individual beneficiaries), nor as a spouse or former spouse for purposes of Section 1.42.

ARTICLE XVIII

Leased Employees

Section 18.1 - Definitions

The term "Leased Employee" as used in the Plan means any person (a) who performs or performed services for an Employer or Affiliate (hereinafter referred to as the "Recipient") pursuant to an agreement between the Recipient and any other person (hereinafter referred to as the "Leasing Organization"), (b) who has performed such services for the Recipient or for the Recipient and related persons (within the meaning of Section 144(a)(3) of the Code) on a substantially full-time basis for a period of at least one year, and (c) whose services are performed under primary direction or control by the Recipient.

Section 18.2 - Treatment of Leased Employees

For purposes of this Plan, a Leased Employee shall be treated as an employee of an Affiliate whose service for the Recipient (including service during the one-year period referred to in Section 18.1) is to be taken into account in determining compliance with the service requirements of the Plan relating to participation and vesting (but not for any other purposes, such as, for example determining eligibility to share in Employer Contributions based on completion of a Twelve Month Period of Service.  However, the Leased Employee shall not be entitled to share in contributions or forfeitures under the Plan with respect to any service or compensation attributable to the period during which he is a Leased Employee, and shall not be eligible to become a Member eligible to accrue benefits under the Plan unless and except to the extent that he shall at some time, either before or after his service as a Leased Employee, qualify as an Eligible Employee without regard to the provisions of this Article XVIII (in which event, status as a Leased Employee shall be determined without regard to clause (b) of Section 18.1).

Section 18.3 - Exception for Employees Covered by Plans of Leasing Corporation

Section 18.2 shall not apply to any Leased Employee if such employee is covered by a money purchase pension plan of the Leasing Organization meeting the requirements of Section 414(n)(5)(B) of the Code and Leased Employees do not constitute more than twenty

KL3 2630220.9

percent (20%) of the aggregate "nonhighly compensated work force" (as defined in Section 414(n)(5)(C)(ii) of the Code) of all Employers and Affiliates.

Section 18.4 - Construction

The purpose of this Article XVIII is to comply with the provisions of Section 4l4(n) of the Code.  All provisions of this Article shall be construed consistently therewith, and, without limiting the generality of the foregoing, no individual shall be treated as a Leased Employee except as required under such Section.

ARTICLE XIX

Special Provisions Applicable to Non-Controlled Group Employers

Section 19.1 - Separate Testing

For Plan Years for which an NCGE (as defined in Section 1.23) is not controlled by or under common control with the Company within the meaning of Section 414(b) or (c) of the Code, and is not aggregated with the Company (or any other entity in such a controlled group with the Company) under Section 414(m) or (o) of the Code:

19.1.1     ADP/ACP Tests.  The limitations of Sections 3.4 and 3.6, shall be applied separately with respect to Participants of the NCGE and all other Participants in accordance with applicable regulations and guidance.  In the event that an Employer is an Affiliate for a portion of a Plan Year and an NCGE for another portion of the same Plan Year, the Committee may, in its discretion, apply the provisions of this Section 19.1.1 to such entity separately as if it were an NCGE for the entire Plan Year, or, in the alternative, apply such provisions solely for the portion of the Plan Year during which such entity is an NCGE.

19.1.2     HCE's.  Highly Compensated Employees of an NCGE shall be determined separately from those of other Employers.

19.1.3     Top-Heavy.  The determination of whether the Plan is "Top-Heavy" under Article XIII shall be made separately with respect to the portion of the Plan applicable to service with each NCGE and the balance of the Plan.  Accounts of Participants having service both with an NCGE and with other Employers shall be maintained in a manner that permits identification of the portion of their Accounts attributable to service with the NCGE to the extent necessary to make such determination.  If the portion of the Plan that applies to an NCGE (or the balance of the Plan) is Top-Heavy, the special provisions of Article XIII applicable by reason thereof shall apply only to that portion of the Plan (or that balance, as the case may be).

Section 19.2 - Maximum Limitations

The maximum limitations on the amount of compensation that may be taken into account for any purpose under the Plan, and the limitations of Article V, shall be applied on an

aggregate basis with respect to all Employers and Affiliates, including Employers that are NCGE's.

### Section 19.3 - Affiliated NCGE's

Two or more NCGE's that are affiliated with each other in a control or other relationship described in Section 19.1 shall be treated as a single NCGE in applying the provisions of this Article XIX.

### Section 19.4 - Participation and Nondiscrimination Requirements

An NCGE shall participate as an Employer only for so long as the Plan, as applied to the NCGE, separately meets the requirements of sections 410(b) and 401(a)(4) of the Code. If the requirements of such provisions shall not be met at any time, and such noncompliance is not remedied within the time permitted by law, the NCGE shall cease to participate in the Plan commencing with the initial Plan Year of such noncompliance, and the portion of the assets of the Plan allocable thereto shall be segregated and no longer be part of the Plan or the Trust Fund, but shall be transferred to a successor funding arrangement solely for such former portion of the Plan.

### Section 19.5 - Investment Funds

Members employed by an NCGE (and their Beneficiaries) shall not be eligible to participate in any Investment Fund in the event that the Committee determines that such participation could constitute a prohibited transaction for which no exemption is available, and may prohibit such Members and Beneficiaries from investing in the Lehman Stock Fund in any case in which Lehman Stock does not constitute a "qualifying employer security" with respect to such NCGE within the meaning of Section 407(d)(5) of the Act (such as in the case of an NHCE in which the Company has less than the 50% ownership interest required for it to be an "affiliate" of the Company within the meaning of Section 407(d)(7) of the Act).

KL3 2630220.9

ARTICLE XX

MODIFICATION OF TOP-HEAVY RULES

Section 20.1 - Effective Date

This Article shall apply for purposes of determining whether the plan is a top-heavy plan under Section 416(g) of the Code for plan years beginning after December 31, 2001, and whether the plan satisfies the minimum benefits requirements of Section 416(c) of the Code for such years.  This Article amends Article XIII of the Plan.

Section 20.2 - Determination of Top-Heavy Status

20.2.1     Key Employee.  Key employee means any employee or former employee (including any deceased employee) who at any time during the plan year that includes the determination date was an officer of the employer having annual compensation greater than $130,000 (as adjusted under Section 416(i)(1) of the Code for plan years beginning after December 31, 2002), a 5-percent owner of the employer, or a 1-percent owner of the employer having annual compensation of more than $150,000.  For this purpose, annual compensation means compensation within the meaning of Section 415(c)(3) of the Code.  The determination of who is a key employee will be made in accordance with Section 416(i)(1) of the Code and the applicable regulations and other guidance of general applicability issued thereunder.

20.2.2     Determination of Present Values and Amounts.  This Section 20.2.2 shall apply for purposes of determining the present values of accrued benefits and the amounts of account balances of employees as of the determination date.

(a)     Distributions during year ending on the determination date.  The present values of accrued benefits and the amounts of account balances of an employee as of the determination date shall be increased by the distributions made with respect to the employee under the plan and any plan aggregated with the plan under Section 416(g)(2) of the Code during the 1-year period ending on the determination date.  The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the plan under Section 416(g)(2)(A)(i) of the Code.  In the case of a

distribution made for a reason other than separation from service, death, or disability, this provision shall be applied by substituting "5-year period" for "1-year period."

(b)    Employees not performing services during year ending on the determination date.  The accrued benefits and accounts of any individual who has not performed services for the employer during the 1-year period ending on the determination date shall not be taken into account.

Section 20.3 - Minimum Benefits

20.3.1    Matching Contributions.  Employer matching contributions shall be taken into account for purposes of satisfying the minimum contribution requirements of Section 416(c)(2) of the Code and the plan.  The preceding sentence shall apply with respect to matching contributions under the plan or, if the plan provides that the minimum contribution requirement shall be met in another plan, such other plan.  Employer matching contributions that are used to satisfy the minimum contribution requirements shall be treated as matching contributions for purposes of the actual contribution percentage test and other requirements of Section 401(m) of the Code.

20.3.2    Contributions Under Other Plans.  The minimum benefit requirement may be met in another plan (including another plan that consists solely of a cash or deferred arrangement which meets the requirements of section 401(k)(12) of the code and matching contributions with respect to which the requirements of section 401(m)(11) of the Code are met).

KL3 2630220.9

ARTICLE XXI

ROTH CONTRIBUTIONS

Section 21.1 - General.  Effective January 1, 2008, Roth Contributions shall be permitted under the Plan in accordance with the provisions of this Article XXI.  Roth Contributions shall be treated in the same manner as traditional pre-tax Section 401(k) Contributions ("Pre-Tax Contributions") for all Plan purposes except as provided in the following provisions of this Article XXI.  The Committee may, in operation, implement such deferral election procedures for Roth Contributions as it determines is desirable to carry out the purpose of this Article XXI, provided such procedures are communicated to Participants and permit Participants to modify their elections prospectively at least once each Plan Year.

Section 21.2 - Electing Roth Contributions.  A Participant may elect to defer as a Roth Contribution under the Plan any percentage of his or her Compensation as the Participant may specify, up to 50% (or such lower percentage as the Committee may have established for traditional Pre-Tax Contributions pursuant to Section 3.1(a)), plus any additional amount he or she is eligible to contribute as Catch-Up Contributions under Section 3.10, not to exceed 25% of his Compensation. A Participant may for any pay period elect to make elective deferrals either as Pre-Tax Contributions or as Roth Contributions, but may not make both types of elective deferrals in the same pay period.

Section 21.3 - Pre-Tax Contributions.  A Participant's Pre-Tax Contributions will be separately accounted for, as will gains, losses and expenses attributable to those Pre-Tax Contributions.

Section 21.4 - Roth Contribution.  A Participant's Roth Contributions, including amounts rolled over pursuant to Section 21.8.1, will be separately accounted for, as will gains, losses and expenses attributable to those Roth Contributions, in a Roth Contributions Account. However, forfeitures may not be allocated to such account.  The Plan must also maintain a record of a Participant's investment in the contract (e.g., Roth Contributions that have not been distributed, including any such contributions received by rollover pursuant to Section 21.8.1). Roth Contributions are not considered employee contributions for Plan purposes.

Section 21.5 - Distributions.

21.5.1    Hardship Distributions.  Roth Contributions may be withdrawn for hardship prior to age 59-1/2 subject to the same conditions that apply to Pre-Tax Contributions.

21.5.2    In-Service Distributions.  A Participant may receive an in-service distribution from his or her Roth Contributions Account for reasons other than hardship, provided that the distribution satisfies the same conditions that apply to similar in-service distributions from other accounts under the Plan.

21.5.3    Corrective Distributions.  For any Plan Year in which a Participant may make both Roth Contributions and Pre-Tax Contributions, the Committee operationally may implement an ordering rule procedure for the distribution of excess deferrals under Code Section 402(g), excess contributions under Code Section 401(k), and excess annual additions under Code Section 415.  Such ordering rules may specify whether the Pre-Tax Contributions or Roth Contributions are distributed first, to the extent such type of elective deferrals were made for the year.

Section 21.6 - Loans.  Loans under Article XVI may be taken from and secured by a Participant's Roth Contributions Account.

Section 21.7 - Ordering Rules for Loans and Distributions.  The Committee operationally may implement an ordering rule procedure for withdrawals, distributions or loans from a Participant's Roth Contributions Account and the different sources thereof (such as elective deferrals made as such or rollovers as described in Section 21.8.1).

Section 21.8 - Rollovers.  A direct rollover of a distribution from a Participant's Roth Contributions Account of the Plan shall only be made to another Roth elective contribution account of an applicable retirement plan as described in Code Section 402A(e)(1) or to a Roth IRA as described in Code Section 408A, and only to the extent the rollover is permitted under the rules of Code Section 402(c).

21.8.1    The Plan shall accept a rollover contribution to a Participant's Roth Contributions Account only if it is a direct rollover from another Roth contribution account of an

applicable retirement plan as described in Code Section 402A(e)(1) and only to the extent the rollover is permitted under the rules of Code Section 402(c).

       21.8.2      The provisions of the Plan that allow a Participant to elect a direct rollover of only a portion of an eligible rollover distribution is applied by treating any amount distributed from a Participant's Roth Contributions Account as a separate distribution from any amount distributed from the Participant's other accounts in the Plan, even if the amounts are distributed at the same time.

       <u>Section 21.9 - Operational Compliance</u>.  The Committee will administer Roth Contributions in accordance with applicable regulations or other binding authority not reflected in this Article XXI.  Any applicable regulations or other binding authority shall supersede any contrary provisions of this Article XXI.

To record the amendment and restatement of this Plan by the Company and its subsidiaries participating therein, the Company has caused this amended and restated Plan to be executed by its duly authorized corporate officers this 27th day of December, 2007.

LEHMAN BROTHERS HOLDINGS INC.

By_____
                    Authorized Officer

ATTEST:

_____

KL3 2630220.9

## SUPPLEMENT A

### Special provisions applicable to
### residents of the Commonwealth of Puerto Rico

A-1    Purpose and Effect - This Supplement A was effective January 1, 1993 and has been amended in order to comply with the requirements of Section 1165(a) and (e) of the Puerto Rico Internal Revenue Code of 1994 (the "PRIRC"). The provisions of this Supplement A shall only apply to any resident of the Commonwealth of Puerto Rico ("Supplement A Participant") who is employed by the Company or any corporation, business association, partnership or proprietorship which shall be designated, by appropriate action of the Company Representative as a participating employer under the Plan (the "Employer").

A-2    Type of Plan - It is the intent of the Company that the Plan be a profit sharing plan as defined in Article 1165-1(b)(1)(ii) of the regulations promulgated under the PRIRC and that it include a qualified cash or deferred arrangement pursuant to Section 1165(e) of PRIRC.

A-3    Compensation - Compensation received from sources in Puerto Rico without regard to any exclusion from the gross income of a Supplement A Participant under Section 933 of the Code shall be considered Compensation under Section 1.17 of the Plan.

A-4    Section 401(k) Contributions - A Supplement A Participant's Section 401(k) Contributions under the Plan may not in any event exceed the lesser of ten percent (10%) of the Supplement A Participant's Compensation or $7,500, as adjusted under PRIRC ($8,000 as of January 1, 1998).

A-5    Actual Deferral Percentage Limits - In addition to the limitations described in Section 3.4 of the Plan, the "Actual Deferral Percentage" (as defined in Section 3.4 of the Plan) for "Highly Compensated Supplement A Participants" (as defined below) for each Plan Year shall not exceed the limitations of Section 3.4(a) and (b) of the Plan by substituting the terms "Highly Compensated Employees" and "not Highly Compensated Employees" with the terms "Highly Compensated Supplement A Participants" and "Not Highly

KL3 2630220.9

Compensated Supplement A Participants", respectively, and applying these limitations as so modified by treating the current Plan Year as the Applicable Plan Year.

For purposes of calculating the Actual Deferral Percentage under this Section A-5, Employer Contributions under Section 4.1 of the Plan shall be treated as Section 401(k) Contributions. The Actual Deferral Percentage under this Section A-5 shall be calculated without regard to the limitations of Section 401(a)(17) of the Code.

For purposes of this paragraph A-5, the term "Highly Compensated Supplement A Participant" means any Supplement A Participant who is eligible to participate in the Plan for the current Plan Year and is more highly compensated than two-thirds of all other Supplement A Participants eligible to participate in the Plan and employed by the same Employer for the current Plan Year. Any other Supplement A Participant is a "Not Highly Compensated Supplement A Participant."

For purposes of this paragraph A-5, if more than one plan providing a cash or deferred arrangement (within the meaning of Section 1165(e) of PRIRC) is maintained by the Employer or an Affiliate, the "Actual Deferral Percentage" (as defined in Section 3.4 of the Plan) of any Highly Compensated Supplement A Participant who participates in more than one such plan or arrangement shall be determined as if all such arrangements were a single plan or arrangement.

If two or more plans are aggregated for purposes of Sections 1165(a)(3) or 1165(a)(4) of PRIRC, such plans shall be aggregated for purposes of determining the "Actual Deferral Percentage" of Supplement A Participants as if all such plans were a single plan.

A-6    <u>Distribution of Puerto Rico Excess Contributions</u> - Puerto Rico Excess Contributions shall be determined by reducing the amount of Section 401(k) Contributions (and amounts taken into account as Section 401(k) Contributions) to be permitted on behalf of Highly Compensated Supplement A Participants in the order of the Actual Deferral Percentages, beginning with the highest of such percentages. To the extent permitted under applicable laws and regulations, Puerto Rico Excess Contributions for a Plan Year, plus any income or minus any loss allocable thereto, shall be distributed no later than the

close of the following Plan Year.  For purposes of this paragraph A-6, the term "Puerto Rico Excess Contributions" means the Section 401(k) Contributions by Highly Compensated Supplement A Participants in excess of the limitations of Section 3.4(a) and (b) of the Plan.

A-7    Matching Contributions Only for Permissible Section 401(k) Contributions - To the extent permitted by applicable laws and regulations, no Matching Contributions shall be made with respect to Puerto Rico Excess Contributions distributable pursuant to paragraph A-6 or Section 401(k) Contributions in excess of the limitations of paragraph A-4.

A-8    Contributions May Not Exceed Amount Deductible - In no event shall Employer contributions under Article IV of the Plan for Supplement A Participants for any taxable year exceed the maximum amount (including amounts carried forward) deductible for that taxable year under Section 1023(n) of PRIRC.

A-9    Contributions Conditioned on Deductibility and Savings Plan Qualification - Each contribution by an Employer under Article IV of the Plan is conditioned on the deductibility of such contribution under Section 1023(n) of PRIRC for the taxable year for which contributed, and on the initial qualification of the Plan under Section 1165(a) of PRIRC.

A-10    Rollover Contributions - Contributions by a Supplement A Participant under Section 3.9 of the Plan are limited to amounts distributed from an employee retirement plan that also qualifies under Section 1165(a) of PRIRC.

A-11    Payment of Contributions - Contributions to the Plan by an Employer engaged in business in Puerto Rico shall be paid to the Trustee not later than the due date for filing its Puerto Rico Income Tax Return for the taxable year in which such payroll period falls, including any extension thereof.

A-12    Use of Terms - All terms and provisions of the Plan shall apply to this Supplement A, except that where the terms and provisions of the Plan and this Supplement A conflict, the terms and provisions of this Supplement A shall govern.

A-13    Catch-Up Contributions - Effective January 1, 2002 and thereafter, Catch-Up Contributions may be made by Supplement A Participants in accordance with Section 3.10, and applicable provisions of the PRIRC, for such purpose, the limits set forth in this Supplement A shall be treated as plan limits within the meaning of Section 414(v) of the Code and the regulations thereunder.

A-14    Roth 401(k) Contributions. Article XXI of the Plan as added effective January 1, 2008 shall not apply to Participants subject to this Supplement A until such time as the Committee shall determine upon advice of counsel that substantially similar provisions and treatment to that afforded Roth 401(k) contributions under the United States Internal Revenue Code are available to such Participants under the tax laws of the Commonwealth of Puerto Rico.

KL3 2630220.9

## SUPPLEMENT B

Special provisions applicable to
certain employees of Lehman Brothers Bank FSB

B-1    Purpose and Effect - The purpose of this Supplement B is to amend the Plan in order to
provide for the participation in the Plan of certain employees of Lehman Brothers Bank,
FSB, including any affiliate thereof ("Lehman Brothers Bank").

B-2    Eligibility - Lehman Brothers Bank shall be an Employer as of January 1, 2000 and each
employee of Lehman Brothers Bank who is not a participant in the Delaware Savings
Bank and Subsidiaries 401(k) Plan ("Bank Eligible Employee") shall be eligible to
participate in the Plan as of January 1, 2000.

B-3    Past Service Credit - With respect to each Bank Eligible Employee employed by
Delaware Savings Bank ("Delaware Bank") on June 29, 1999 who became an employee
of Lehman Brothers Bank on June 30, 1999, for purposes of calculating such individual's
Twelve Month Period of Service and Years of Vesting Service, such individual's
Employment Date shall be the date he began his last continuous period of service with
Delaware Bank.

KL3 2630220.9

SUPPLEMENT C

Special provisions applicable to
certain former employees of SG Cowen

C-1    Purpose and Effect - The purpose of this Supplement C is to provide for prior service credit for certain employees of SG Cowen ("Cowen") who become employees of Lehman Brothers Inc. ("Lehman Brothers") on October 13, 2000.

C-2    Past Service Credit - With respect to each individual employed by Cowen on October 12, 2000 who becomes an employee of Lehman Brothers on October 13, 2000 (a "Cowen Employee"), for purposes of calculating such individual's Twelve Month Period of Service and Years of Vesting Service, such individual's Employment Date shall be the date he began his last continuous period of service with Cowen (and Societe Generale, if the individual previously transferred to employment with Cowen from Societe Generale).

C-3    Employer Contributions -  If a Cowen Employee has completed a Twelve-Month Period of Service on or before December 30, 2000 (determined after giving effect to Section C-2 above), his or her eligibility for (a) Basic Contributions for the Plan Year ending December 30, 2000 and (b) Matching Contributions for the period from October 13 (or later date of completion of such service requirement) to December 30, 2000, shall be determined by annualizing his or her Compensation for the period from October 13 to December 30, 2000.

KL3 2630220.9

SUPPLEMENT D

Merger of the E.F. Hutton & Company Inc. Universal Savings Account Plan and
the Lehman Brothers Savings Plan For Former Employees Of E.F. Hutton & Company Inc.

D-1    Purpose and Effect.  This Supplement D provides for the merger of the E.F. Hutton & Company Inc. Universal Savings Account Plan and the Lehman Brothers Savings Plan For Former Employees Of E.F. Hutton & Company Inc. (individually or collectively, as the context may require, the "USA Plans") into this Plan (the "Merger").

D-2    Special Definitions.  For purposes of this Supplement D:

D-2.1    "USA Plans Account" means an account maintained under either of the USA Plans immediately prior to the Merger.

D-2.2    "USA Plans Member" means a participant in either of the USA Plans who had an undistributed account thereunder immediately prior to the Merger.

D-3    Merger.  Effective June 19, 2001, the USA Plans and the trusts thereunder are merged into this Plan and the trust thereunder respectively, and the terms of this Plan supersede the terms of the USA Plans.  All persons (including current and former employees and their beneficiaries) having an interest under either of the USA Plans immediately prior to the Merger shall, on and after the Merger, be entitled to benefits solely from the Plan (including this Supplement D), in lieu of any and all interest which they had or may have had under the USA Plans.

D-4    Transfer of Trust Funds.  The assets held by the trustees of the USA Plans shall be transferred to the Trustee on June 19, 2001 or as soon as practicable thereafter.  If and to the extent that such transfer is not completed on June 19, 2001, such trustees shall hold such assets, as adjusted for investment gain or loss thereon and expenses attributable thereto, as additional trustees under this Plan until such transfer is completed.

D-5    Allocation of Transferred Accounts.  Funds transferred to the Trustee in respect of a Member's USA Plans Account shall be allocated under the Plan to such Member's

Section 401(k) Contributions Account, notwithstanding that a portion thereof may be attributable to after-tax contributions.

D-6    <u>Investment of Transferred Assets</u>.  Funds transferred to the Trustee pursuant to Section D-4 shall be invested in accordance with Section D-7.  Thereafter, a Member may change the portion of his Member's Account that is invested in each Investment Fund in accordance with Section 6.2 of the Plan.

D-7    <u>Fund Mapping</u>.  Assets invested in an Investment Fund available under the Plan immediately prior to the transfer shall remain invested in such Investment Fund upon the transfer.  Transferred assets invested in the Fidelity Freedom Income Fund shall be invested in the Primco Stable Value Fund.

D-8    <u>USA Plans Amended</u>.  The provisions of this Supplement D shall be treated as an amendment to and a part of each of the USA Plans to the extent necessary to give full effect to this Supplement.  The provisions of this Plan, in its capacity as a continuation and amendment of the USA Plans, shall apply and be effective with respect to the USA Plans for periods prior to June 19, 2001 to the extent necessary for the USA Plans to meet applicable requirements of all provisions of law that became effective since the last determination letter with respect to the USA Plans, including, without limitation, the Uruguay Round Agreements Act (also referred to as GATT), the Uniformed Services Employment and Reemployment Rights Act, the Small Business Job Protection Act of 1996, the Taxpayer Relief Act of 1997, the IRS Restructuring and Reform Act of 1998, and the Community Renewal Tax Relief Act of 2000, effective as of their respective effective dates; such Plan provisions include, without limitation, the following:

(a)    Section 7.6, relating to the exclusion of hardship distributions described in section 401(k)(2)(B)(i)(IV) of the Code from the definition of eligible rollover distribution in accordance with section 402(c)(4) of the Code effective January 1, 1999.

<u>SUPPLEMENT E</u>

Special Provisions Applicable to Former Participants in
<u>the Lehman Brothers Bank FSB Employee 401(k) Plan</u>

Effective January 2, 2002, the Lehman Brothers Bank FSB Employee 401(k) Plan (the
"Lehman Bank Plan") shall merge into this Plan.  This Supplement E provides for such merger
("Merger") and sets forth special provisions that apply to current and former participants in the
Lehman Bank Plan on or after the adoption of this Plan by Lehman Brothers Bank FSB effective
January 2, 2002.

E-1.    <u>Special Definitions</u>.  For purposes of this Supplement E:

E-1.1    "<u>Lehman Bank</u>" means Lehman Brothers Bank FSB.

E-1.2    "<u>Lehman Bank Account</u>" means an account maintained under the Lehman
Bank Plan immediately prior to the Merger containing elective deferrals,
matching contributions, and rollover contributions (as applicable) for a
Lehman Bank Participant.

E-1.3    "<u>Lehman Bank Contract</u>" means the group annuity contract maintained
under the Lehman Bank Plan immediately prior to the Merger.

E-1.4    "<u>Lehman Bank Participant</u>" means a participant in the Lehman Bank Plan
who had an undistributed account thereunder immediately prior to the
Merger.

E-2.    <u>Participation in Plan Effective January 2, 2002</u>.  Each Lehman Bank Participant
who is employed by an Employer on January 2, 2002 shall become a Participant of the Plan on
that date.  Any other employee of Lehman Bank who is employed by an Employer on such date
shall become a Participant in accordance with Supplement B.  Each Lehman Bank Participant
who is not then employed by an Employer shall become a Member on January 2, 2002, but
solely with respect to his Lehman Bank Account unless he otherwise qualifies as a Participant in
the Plan.

KL3 2630220.9

E-3.    <u>Merger</u>.  Effective January 2, 2002, the Lehman Bank Plan and the Lehman Bank Contract are merged into this Plan, and the terms of this Plan supersede the terms of the Lehman Bank Plan.  All persons (including current and former employees and their beneficiaries) having an interest under the Lehman Bank Plan prior to January 2, 2002 shall, on and after January 2, 2002, be entitled to benefits solely from the Plan (including this Supplement E), in lieu of any and all interest which they had or may have had under the Lehman Bank Plan.

E-4.    <u>Transfer of Lehman Bank Contract</u>.  The assets held under the terms of the Lehman Bank Contract shall be transferred to the Trustee on January 2, 2002 or as soon as practicable thereafter.  If and to the extent that such transfer is not completed on January 2, 2002, the Lehman Bank Contract shall be treated as an asset of this Plan until such transfer is completed.

E-5.    <u>Allocation of Transferred Assets</u>.  Funds transferred to the Trustee in respect of a Member's Lehman Bank Account shall be allocated under the Plan to such Member's Section 401(k) Contribution, Employer Contribution, and Rollover Accounts as applicable.

E-6.    <u>Investment of Transferred Assets</u>.  Funds transferred to the Trustee pursuant to Section E-4 shall be invested in accordance with Section E-7.  Thereafter, a Member may change the portion of his Member's Account that is invested in each Investment Fund in accordance with Section 6.2 of the Plan.

E-7.    <u>Fund Mapping</u>.  The following fund mapping shall become effective upon the transfer pursuant to Section E-4:

KL3 2630220.9

| From the Lehman Bank Plan Funds | Into Investment Fund |
| --- | --- |
| Guaranteed Fund 1 | PRIMCO Stable Value |
| Guaranteed Fund 2 | PRIMCO Stable Value |
| Mass Mutual Institutional Core Bond | PIMCO Total Return |
| Mass Mutual Institutional Balanced | Fidelity Asset Manager |
| Mass Mutual Institutional Value Equity | Fidelity Equity Income |
| Mass Mutual Institutional | |
| Small Cap Value | Fidelity Low Priced Stock |
| Oppenheimer Discovery | Dreyfus Founders Discovery |
| Fidelity Contrafund | Fidelity Large Cap Stock |
| Mass Mutual Institutional | |
| International Equity | Putnam International Growth |

E-8.    <u>Vesting and Forfeiture of Matching Account</u>.  The portion of a Participant's Employer Contributions Account consisting of matching contributions made under the Lehman Bank Plan (and investment earnings allocable thereto) shall be fully vested and nonforfeitable upon such Participant's employment with an Employer.  The portions of Employer Contributions Accounts of all other Lehman Bank Participants consisting of matching contributions made under the Lehman Bank Plan (and investment earnings allocable thereto) shall remain subject to the forfeiture rules of section 15.1 of the Lehman Bank Plan.

E-9.    <u>Alternative Forms of Payment Preserved to March 20, 2002</u>.  Any individual who is a Lehman Bank Participant at the time of his termination of employment with an Employer or Affiliate, and any other Lehman Bank Participant who is not employed by an Employer or Affiliate, who has vested Member's Accounts exceeding $5,000 and who elects in accordance with procedures established by the Committee to receive a distribution commencing as of a date on or before March 20, 2002 may elect one of the forms of benefit available under Section 9.2 of

the Lehman Bank Plan prior to the Merger with respect to the vested amounts held in his Section 401(k) Contribution, Employer Contribution, and Rollover Contribution Accounts attributable to such individual's Lehman Bank Account.

    E-10.   <u>Withdrawals During Employment</u>.

        E-1.1   <u>Withdrawals During Employment Irrespective of Age</u>.  A Lehman Bank Participant who is employed by an Employer or Affiliate may elect to withdraw all or any portion of his Rollover Account (including investment earnings allocable thereto).

        E-1.2   <u>Withdrawals During Employment After Age 59½</u>.  After attaining age 59½, a Lehman Bank Participant who is employed by an Employer or Affiliate may elect to withdraw from the Plan all or any portion of any of his Section 401(k) Contribution and Employer Contributions Accounts (including investment earnings allocable thereto).

    E-11.   <u>Outstanding Loans For a Lehman Bank Participant</u>.  Loans held under the Lehman Bank Plan shall be transferred to this Plan to be held by the Trustee as assets of the Plan and shall be governed by the terms of such loans in effect immediately preceding the Merger.  A Lehman Bank Participant shall be entitled to additional loans in accordance with Article XVI, provided, however, that any loan transferred to the Plan that is still outstanding shall be taken into account in determining eligibility for future loans.

    E-12.   <u>Transfer of Forfeitures</u>.  Assets held in the forfeiture account of the Lehman Bank Plan as of the Merger shall be transferred to the Employer Suspense Account to be invested as directed by the Committee and shall be applied as soon as practicable to reduce Employer Contributions under the Plan and when so applied shall be allocated in the same manner as the Employer Contributions that they offset.

    E-13.   <u>Lehman Bank Plan Amended</u>.  The provisions of this Supplement E shall be treated as an amendment to and a part of the Lehman Bank Plan to the extent necessary to give full effect to this Supplement.  The provisions of this Plan, in its capacity as a continuation and

amendment of the Lehman Bank Plan, shall apply and be effective with respect to the Lehman Bank Plan for periods prior to January 2, 2002 to the extent necessary for the Lehman Bank Plan to meet applicable requirements of all provisions of law that became effective since the last determination letter with respect to the Lehman Bank Plan, including, without limitation, the Uruguay Round Agreements Act (also referred to as GATT), the Uniformed Services Employment and Reemployment Rights Act, the Small Business Job Protection Act of 1996, the Taxpayer Relief Act of 1997, the IRS Restructuring and Reform Act of 1998, and the Community Renewal Tax Relief Act of 2000, effective as of their respective effective dates; such Plan provisions include, without limitation, the following Sections as in effect on January 2, 2002:

(a)     Section 1.17, relating to the determination of compensation for purposes of (i) applying the limitation on annual additions under section 415 of the Code, (ii) determining who is a key employee and the amount of any required minimum contribution under section 416 of the Code, and (iii) making elective deferrals, all before giving effect to any salary reductions under section 132(f)(4) of the Code effective January 1, 2001;

(b)     Section 1.28, relating to the definition of highly compensated employee effective July 1, 1997;

(c)     Section 3.5, relating to the distributions of aggregate excess deferrals based on the amount of contribution by or on behalf of each highly compensated employee and attributable first to the highly compensated employee with the greatest dollar amount of elective deferrals effective July 1, 1997;

(d)     Section 4.5, relating to contributions in respect of periods of qualified military service as required under section 414(u) of the Code effective December 12, 1994;

(e)     Section 5.1, relating to the limit on annual additions under section 415(c) of the Code effective July 1, 1995;

(f)     Sections 5.4 and 13.9, relating to limiting the application of section 415(e) of the Code to limitation years beginning before January 1, 2000;

(g)    Section 7.6, relating to the exclusion of hardship distributions described in section 401(k)(2)(B)(i)(IV) of the Code from the definition of eligible rollover distribution in accordance with section 402(c)(4) of the Code effective January 1, 1999;

(h)    Section 14.9, relating to the repeal of the family aggregation rules effective July 1, 1997;

Section 13.3(a)(i), relating to determination of the number of officers taken into account as a key employee under section 416(1)(A) of the Code, effective July 1, 1997;

(i)    Section 18.1, relating to the definition of "leased employee" as defined under section 414(n) of the Code effective July 1, 1997;

(j)    Section 5.1, relating to the limitation on contributions under section 415(c) of the Code, effective July 1, 1995; and

(k)    Section 7.6(d), relating to the increase in the small benefit cashout limit under section 411(a)(11) of the Code from $3,500 to $5,000, effective for distributions on or after July 1, 1998.

KL3 2630220.9

SUPPLEMENT F

Special provisions applicable to certain former
employees of Cohane Rafferty Securities, LLC

F-1    With respect to each individual employed by Cohane Rafferty Securities, LLC
("Cohane") immediately prior to January 11, 2002 who became an employee of the Company on
January 11, 2002, for purposes of calculating such individual's Twelve Month Period of Service
and Years of Vesting Service, such individual's Employment Date shall be the date he began his
last continuous period of service with Cohane.

SUPPLEMENT G

Special provisions applicable to certain former
employees of Lincoln Capital Management, LLC

G-1    Past Service Credit - With respect to each individual employed by
Lincoln Capital Management, LLC ("Lincoln") immediately prior
to January 31, 2003 who became an employee of Lehman Brothers
on February 2, 2003, (a "Lincoln Employee"), for purposes of
calculating such individual's Twelve Month Period of Service and
Years of Vesting Service, such individual's Employment Date
shall be the date he began his last continuous period of service with
Lincoln.

G-2    Employer Contributions - If a Lincoln Employee has completed a
Twelve-Month Period of Service on or before December 31, 2003
(determined after giving effect to Section G-1 above), his or her
eligibility for (a) Basic Contributions for the Plan Year ending
December 31, 2003 and (b) Matching Contributions for the period
from February 2, 2003 (or later date of completion of such service
requirement) to December 31, 2003, shall be determined by
annualizing his or her Compensation for the period from February
2, 2003 to December 31, 2003.

KL3 2630220.9