SUPPLEMENT H

Special provisions applicable to certain
former employees of The Crossroads Group

H-1    Past Service Credit - With respect to each individual employed by
        The Crossroads Group ("Crossroads") immediately prior to
        October 9, 2003 who became an employee of Lehman Brothers on
        October 9, 2003 (a "Crossroads Employee"), for purposes of
        calculating such individual's Twelve Month Period of Service and
        Years of Vesting Service, such individual's Employment Date
        shall be the date he began his last continuous period of service with
        Crossroads.

H-2    Employer Contributions - If a Crossroads Employee has completed
        a Twelve-Month Period of Service on or before December 31,
        2003 (determined after giving effect to Section H-1 above), his or
        her eligibility for (a) Basic Contributions for the Plan Year ending
        December 31, 2003 and (b) Matching Contributions for the period
        from October 9, 2003 (or later date of completion of such service
        requirement) to December 31, 2003, shall be determined by
        annualizing his or her Compensation for the period from October
        9, 2003 to December 31, 2003.

SUPPLEMENT I

Special Provisions Relating to Neuberger Berman

Effective October 31, 2003, a new Supplement I was added to the Plan containing special provisions relating to eligibility and past service credit for employees of Neuberger Berman, Inc. and its subsidiaries.  Supplement I is now amended and restated in its entirety to revise such provisions effective as of October 31, 2003, and to provide for the merger of the Neuberger Berman, LLC Pension Plan and the Neuberger Berman, LLC Profit Sharing Plan into this Plan, effective June 14, 2004.

## 30.   Definitions

30.1   Special Definitions.  For purposes of this Supplement I:

30.1.1   "Merger" means the merger of the Neuberger Berman, LLC Pension Plan and the Neuberger Berman, LLC Profit Sharing Plan into the Plan, effective June 14, 2004.

30.1.2   "Neuberger" means Neuberger Berman, Inc. or any of its subsidiaries.

30.1.3   "Neuberger Account" means an account maintained under a Neuberger Plan for a Neuberger Member as of June 11, 2004 and thereafter up to the Merger.

30.1.4   "Neuberger Employee" means an individual who is employed by Neuberger immediately prior to October 31, 2003 and who as of October 31, 2003 remains so employed or transfers to the employ of an Employer.

30.1.5   "Neuberger Member" means a participant in a Neuberger Plan with an undistributed Neuberger Account immediately prior to the Merger

30.1.6   "Neuberger Pension Plan" means the Neuberger Berman, LLC Pension Plan, as in effect prior to the Merger.

30.1.7   "Neuberger Plan" means the Neuberger Berman, LLC Pension Plan or the Neuberger Berman, LLC Profit Sharing Plan, as applicable.

30.1.8   "Neuberger Profit Sharing Plan" means the Neuberger Berman, LLC Profit Sharing Plan, as in effect prior to the Merger.

30.1.9   "Neuberger Trust Fund" means the trust funds maintained under each of the Neuberger Plans immediately prior to the Merger.

30.1.10   "Pension Account" means an account within a Member's Account reflecting amounts transferred from the Neuberger Pension Plan.

KL3 2630220.9

30.1.11    "Profit Sharing Account" means an account within a Member's Account reflecting amounts transferred from the Neuberger Profit Sharing Plan.

30.1.12    "Profit Sharing After-Tax Subaccount" means a subaccount within a Profit Sharing Account reflecting after-tax contributions made to the Neuberger Profit Sharing Plan.

30.1.13    "Profit Sharing Rollover Subaccount" means a subaccount within a Profit Sharing Account reflecting rollover contributions made to the Neuberger Profit Sharing Plan.

## 31.    Eligibility, Participation, and Past Service Credit

31.1    Neuberger a Participating Employer.  Neuberger and the following subsidiaries shall each become an Employer under the Plan effective June 18, 2004 (but each of them shall remain an Employer only so long as it remains a member of a controlled group, within the meaning of Section 414 (b) or (c) of the Code and regulations thereunder, of which the Company is the common parent, and subject to the right reserved to the Company Representative to terminate its status as an Employer under Section 1.23):

Neuberger Berman, LLC
Neuberger Berman Management Inc.
Neuberger Berman Trust Company of Delaware
Neuberger Berman Trust Company, N.A.
Executive Monetary Management Inc.

31.2    Eligibility to Participate.  A Neuberger Employee shall be eligible to become a Participant upon the earlier of (i) the date he transfers to the employ of an Employer other than Neuberger, or (ii) the date Neuberger becomes an Employer, provided he is then an Employee.

31.3    Membership in Plan Effective June 14, 2004.  Neuberger Members who have not previously become Participants shall become Members of the Plan effective June 14, 2004.

31.4    Past Service Credit.  The "Employment Date" used to calculate a Neuberger Employee's Twelve Month Period of Service and Years of Vesting Service shall be the date he began his last continuous period of service with (i) Neuberger prior to October 31, 2003, and (ii) a predecessor employer that the Committee in its discretion determines to take into account.

31.5    Eligibility to Receive Employer Contributions.  In determining whether a Participant employed by Neuberger during 2004 and prior to June 14, 2004, is eligible for an Employer Contribution under Section 4.1(b) for the 2004 Plan Year, such Participant's Compensation shall include all compensation otherwise includible in the term "Compensation" as defined in Section 1.17 (as modified by Section 4.1(d)) that is paid by an Employer or an Affiliate to the Participant at any time during the 2004 Plan Year.  The amount of any Employee Contribution to be made for such a Participant for the 2004 Plan Year shall be reduced by the amount of any Matching Contribution to which such Participant is entitled under section 4.3 of the Neuberger Profit Sharing Plan for the plan year beginning January 1, 2004.

**32.    Merger, Investment of Transferred Assets, and Neuberger Plan Accounts**

32.1    <u>Vesting</u>.  All Neuberger Accounts shall be fully vested and nonforfeitable effective June 11, 2004.

32.2    <u>Merger</u>.  Effective as of June 14, 2004, the Neuberger Plans and Neuberger Trust Fund are merged into this Plan and the trust thereunder, respectively, and the terms of this Plan supersede in all respects the terms of the Neuberger Plans with respect to the Neuberger Accounts.  All persons (including current and former employees and their beneficiaries, and alternate payees under a Qualified Domestic Relations Order) having an undistributed interest under a Neuberger Plan immediately prior to June 14, 2004 shall, on and after June 14, 2004, be entitled to benefits provided solely from this Plan (including this Supplement I), in lieu of any and all interest which they had or may have had under the Neuberger Plan.

32.3    <u>Transfer of Neuberger Trust Fund</u>.  The assets held by the trustees of the Neuberger Trust Fund shall be transferred to the Trustee on June 14, 2004 or as soon as practicable thereafter.  If and to the extent that such transfer is not completed on June 14, 2004, such trustees shall hold such assets, as adjusted for investment gain or loss thereon and expenses attributable thereto, as an additional trustee under this Plan, until such transfer is completed.

32.4    <u>Allocation to Accounts</u>.  Funds transferred to the Trustee in respect of a Member's Neuberger Account shall be allocated under the Plan to such Member's existing Member's Account (if any), and otherwise to a Member's Account created for such Member as of the date of transfer, which shall in either case include a Profit Sharing and a Pension Account, as applicable.

32.5    <u>Investment of Transferred Accounts</u>.  Funds transferred to the Trustee in respect of a Member's Neuberger Account pursuant to Section 32.3 shall initially be invested in accordance with Section 32.6 and shall remain so invested until the end of the blackout period established under the Neuberger Plans in connection with the Merger. Thereafter, the Member may change such investments incident to a change made in the investment of his Member's Account in accordance with Section 6.2 of the Plan.

32.6    <u>Fund Mapping</u>:  The following fund mapping shall become effective upon the transfer pursuant to Section 32.3:

| From the Following Neuberger Plan Funds | Into Investment Fund |
| --- | --- |
| Neuberger Berman Value Equity Fund | Neuberger Berman Value Equity Fund |
| Neuberger Berman Genesis Fund | Neuberger Berman Genesis Fund |
| Neuberger Berman Socially Responsive Fund | Neuberger Berman Socially Responsive Fund |
| Neuberger Berman High Income Bond Fund | Neuberger Berman High Income Bond Fund |
| Neuberger Berman International Fund | Neuberger Berman International Fund |

KL3 2630220.9

| | |
|---|---|
| Vanguard Index 500 Fund | Vanguard Institutional Index Fund |
| Neuberger Berman Fasciano Fund | Neuberger Berman Fasciano Fund |
| Neuberger Berman Focus Fund | Neuberger Berman Focus Fund |
| Neuberger Berman Partners Fund | Neuberger Berman Partners Fund |
| Neuberger Berman Cash Reserves | Primco Stable Value Fund |
| Neuberger Berman Century Fund | Fidelity Large Cap Stock Fund |
| Neuberger Berman Guardian Fund | Neuberger Berman Partners Fund |
| Neuberger Berman Limited Maturity Bond Fund | Primco Stable Value Fund |
| Neuberger Berman Manhattan Fund | Calamos Growth Fund |
| Neuberger Berman Millennium Fund | Neuberger Berman Fasciano Fund |
| Neuberger Berman Real Estate Fund | Primco Stable Value Fund |
| Neuberger Berman Regency Fund | T. Rowe Price Mid Cap Value Fund |
| Vanguard Mid-Cap Index Fund | Vanguard Total Stock Market Index Fund |
| Vanguard Small-Cap Index Fund | Vanguard Total Stock Market Index Fund |

32.7    Outstanding Loans.  Loans outstanding under the Neuberger Profit Sharing Plan as of the date of Merger shall (i) be held by the Trustee as assets of this Plan, (ii) be governed by the terms of such loans in effect immediately preceding the Merger, and (iii) be treated as loans under this Plan in determining eligibility for future loans under Article XVI.

32.8    Contributions.  Prior to the filing deadline for its 2004 federal income tax return, Neuberger shall make a matching contribution to the Neuberger Profit Sharing Plan with respect to each Neuberger Member who was eligible to share in such a contribution under section 4.3 of the Neuberger Profit Sharing Plan, by paying such contribution into the Plan as the continuation of the Neuberger Profit Sharing Plan by reason of the Merger.  Such contribution shall be allocated among such Neuberger Members in accordance with the provisions of the Neuberger Profit Sharing Plan governing contributions for the 2004 plan year and credited to the Member's Profit Sharing Account (and the portion thereof reflecting matching contributions).

32.9    Use of Forfeitures.  Forfeitures, if any, transferred from a Neuberger Plan in connection with the Merger shall be used first to pay reasonable administrative expenses of the Plan, and to the extent forfeitures remain, shall be used to reduce Employer Contributions under Section 4.1(b) and matching contributions under Section 32.8.

32.10    Restoration of Forfeitures.  If a former participant in a Neuberger Plan who had received his entire vested interest thereunder is reemployed by an Employer before he has a Break in Service as defined in such Neuberger Plan, he may repay to the Plan an amount equal to the distribution, disregarding any portion thereof derived from after-tax or rollover contributions, at any time within five years from the date of such reemployment.  Any amount so repaid shall

be credited to the individual's Profit Sharing or Pension Account, as the case may be (whether already existing or created by reason of such repayment), plus an additional amount equal to the portion of his account in such Neuberger Plan that was previously forfeited. The amount so restored shall be funded by available forfeitures, if any, and otherwise by a special contribution by his Employer. For this purpose, a former participant in a Neuberger Plan who terminated with no vested interest thereunder shall be deemed to have repaid his entire vested interest on the date of his reemployment by an Employer.

32.11  Neuberger Plan Amended. The provisions of this Supplement I shall be treated as an amendment to and part of the Neuberger Plans, effective June 11, 2004, to the extent necessary to give full effect to this Supplement.

## 33.    Special Distribution Rules

Distributions in respect of a Neuberger Member, including distribution in respect of his Pension Account or Profit Sharing Account, shall be made in the form and manner prescribed generally for his Member's Account under applicable provisions of Article VII of the Plan, except as provided in this Section 33.

33.1  Annuity Presumptive Payment Form for Pension Accounts. If the balance of the Member's Account of a Neuberger Member at the time of a distribution in respect thereof exceeds $5,000, then unless the Member otherwise duly elects (with Spousal Consent if the Member is married at such distribution date), any such distribution in respect of his Pension Account shall be made by purchase of a nontransferable annuity contract from a reputable insurer providing --

> (a)    If the Neuberger Member is not married on the annuity starting date under such contract, an immediate monthly life annuity for the life of the Neuberger Member, under which the last payment shall be made for the month of the Neuberger Member's death and no payments shall be made thereafter to any other person (a "Single Life Annuity"); and

> (b)    If a Neuberger Member is married on such annuity starting date, (i) a "Qualified Joint and 50% Surviving Spouse Annuity," consisting of an immediate monthly annuity for the life of the Member and, if the Member shall die survived by the spouse to whom he was married at such annuity starting date, a continuing annuity for the life of such spouse in a monthly amount equal to fifty percent of the amount of the annuity payable during the joint lives of the Neuberger Member and his spouse, or (ii) if the Member shall so elect with Spousal Consent, a Single Life Annuity described in clause (a) above.

> For benefits with an annuity starting date on or after January 1, 2008, such annuity contract shall permit a Neuberger Member who is married on his annuity starting date to elect to receive, in lieu of a Single Life Annuity or a Qualified Joint and 50% Surviving Spouse Annuity, a "Qualified Joint and 75% Surviving Spouse Annuity," consisting of an immediate monthly

annuity for the life of the Member and, if the Member shall die survived by the spouse to whom he was married at such annuity starting date, a continuing annuity for the life of such spouse in a monthly amount equal to seventy-five percent of the amount of the annuity payable during the joint lives of the Neuberger Member and his spouse.

33.2     Spousal Consent.  The "Spousal Consent" required for any election under this Section 33 (i) must be in writing and witnessed by a notary public, (ii) must acknowledge the effect of the election, and (iii) must explicitly provide either that the Beneficiary designated by the Neuberger Member pursuant to Section 11.1 with respect to his Pension Account, or his Profit Sharing Account, as applicable, and payment form may not subsequently be changed by the Neuberger Member without the spouse's further consent, or that they may be changed without such consent.  Notwithstanding the foregoing, Spousal Consent shall be deemed provided if (i) the Neuberger Member establishes to the Committee's satisfaction that his spouse may not be located or has abandoned the Neuberger Member within the meaning of local law, or (ii) the Neuberger Member and his spouse are legally separated, and the Neuberger Member has a court order to such effect.

33.3     Election Notice.  The Committee shall furnish to a Neuberger Member with a Pension Account at least 30 days (or less than 30 days but at least seven days, if the Neuberger Member is clearly advised that he has 30 days to consider the election, he consents to waiving the 30-day election period, and payments do not begin until seven days after the Neuberger Member receives the explanation) and not more than 90 days before the benefit commencement date, a written explanation in nontechnical language of the benefit forms available with respect to such Pension Account under this Section 33 or otherwise, a notification of the Neuberger Member's right to elect a form and revoke an election at any time until the date benefits begin, a statement that any annuity will be provided by purchasing an annuity contract from an insurance company with the Neuberger Member's Pension Account balance, and that the Neuberger Member may request additional information regarding the amounts that may be payable in the form of an annuity.  If the Neuberger Member is married, the written explanation shall describe the need for the Neuberger Member's spouse to consent to the election of any benefit form other than a Qualified Joint and 50% or 75% Surviving Spouse Annuity.

33.4     Withdrawals During Employment.  A Neuberger Member who is employed by an Employer or Affiliate may elect the following withdrawals upon application therefor in accordance with procedures established by the Committee:

33.4.1     After-Tax Contributions and Rollover Accounts.  Withdrawal of all or any portion of his Profit Sharing After-Tax Subaccount, and Profit Sharing Rollover Subaccount.

33.4.2     Profit Sharing Account Withdrawals After Age 59½.  After attaining age 59½, withdrawal of all or any portion of his Profit Sharing Account.

33.4.3     Pension Account Withdrawals After Age 65.  After attaining age 65, withdrawal of all or any portion of his Pension Account.  The date as of which such withdrawal is made shall be treated as the Member's annuity starting date with respect to his Pension Account, and a Member's election to waive the annuity form of payment in respect thereof

(including Spousal Consent, if applicable) shall apply to all subsequent distributions from such Account or any benefit form other than a Qualified Joint and 50% Surviving Spouse Annuity (if the Neuberger Member so elects).

33.5    Additional Distribution Forms Available Prior to October 1, 2004.  If distribution following termination of employment commences on or before September 30, 2004 in respect of a Member's Account exceeding $5,000, a Neuberger Member may elect in accordance with procedures established by the Committee to receive --

33.5.1    Distribution in respect of his Pension Account (with Spousal Consent if the Member is married) in annual installments of at least $1,000 each for a period not exceeding his life expectancy or, if the Member's Beneficiary is his spouse, the joint and last survivor life expectancy of the Neuberger Member and his spouse, or by purchase of an annuity contract providing survivor benefits for a contingent annuitant (whether or not the surviving spouse) or benefits involving a fixed or minimum number of payments, and

33.5.2    Distribution in respect of his Profit Sharing Account in any form available for his Pension Account under Section 33.1 or Section 33.5.1.

## 34.    Payment of Pension Account Upon Death

34.1    Beneficiary of Pension Account.  Prior to the first day of the Plan Year in which a Neuberger Member attains age 35 or the date of his termination of employment if earlier, the Member's spouse as of the date of his death shall be his Beneficiary with respect to one-half of his Pension Account (the "QPSA Portion"), notwithstanding any contrary election by the Member under Section 11.1 or such spouse's consent thereto.  After such date, a Member may designate a Beneficiary other than such spouse with respect to such QPSA Portion with the consent of the Spouse as described in Section 33.2, but only if the spouse has been provided with a notice of his or her right to (i) otherwise receive an annuity providing monthly payments for the remainder of his or her life in the amount that can be purchased with such QPSA Portion, (ii) consent to the designated Beneficiary and payment form for such QPSA Portion, and (iii) indicate in his or her consent whether the designated Beneficiary and payment form may subsequently be changed without his or her further consent.

34.2    Form of Payment.  If a Member's surviving spouse shall be his Beneficiary with respect to any portion of his Pension Account, payment of benefits in respect thereof following death of the Member shall be made by purchase of an annuity contract providing a monthly life annuity for the life of the spouse unless the spouse elects a different form authorized by Section 7.3(b) of the Plan or Section 34.5 of this Supplement I.

34.3    Time of Payment.  Payment of the Member's Account of a Neuberger Member shall be made or begin by December 31 of the year following the year in which the death of the Member occurred, unless the Member or his Beneficiary elects to have such payments made in accordance with Section 7.3(b) of the Plan.

34.4    Pre-Merger Elections and Designations.  Notwithstanding any other provision of this Plan, (a) elections as to timing or form of benefit made, (b) designations of beneficiaries made, and (c) provisions that became applicable based on a failure to make an available election

or designation under the Neuberger Plans before June 14, 2004, shall be given effect with respect to Neuberger Members who retired or terminated employment under the terms of the Neuberger Plan, or died, before June 14, 2004, and distribution shall be made in respect of such Members in accordance with the applicable provisions of the Neuberger Plan as in effect at the relevant time or times prior to such date.  Beneficiary designations made under the Neuberger Plan before June 14, 2004 by Neuberger Members shall not be given effect after such date, and distribution shall be made in respect of such Members in accordance with the applicable provisions of this Plan.

34.5    Payments on Death.  A Neuberger Member whose Member's Account exceeds $5,000 may elect to have his Beneficiary receive all or any portion of the benefits attributable to his Neuberger Account in one of the following forms of payment:

34.5.1    An immediate annuity for the Beneficiary, with or without a minimum number of payments guaranteed, in which case the Neuberger Account (or applicable portion thereof) shall be used to purchase and distribute to the Beneficiary one or more nontransferable annuity contracts from reputable insurers providing for such benefits.

34.5.2    Annual installments of at least $1,000, payable for five or fewer years, or, if the Beneficiary is the Neuberger Member's spouse (or a trust which primarily benefits the spouse) for a period not longer than the spouse's life expectancy as of the Participant's death, or, if the Beneficiary is any individual other than the spouse (or a trust which primarily benefits such individual, or a custodial account for such individual established under a state Uniform Transfers to Minors Act or similar statute) for a period not to exceed 15 years or the individual's life expectancy as of the Neuberger Member's death, whichever is less.  For purposes of the preceding sentence, the term "trust" shall mean a trust created by a written trust agreement or will.  Each installment shall be equal to (i) the balance credited to the Neuberger Member's Account, divided by (ii) the number of annual installments which remain to be paid (including the current payment being computed); provided, however, that where the benefits are payable to a trust for the benefit of a spouse and the Neuberger Member's executor has elected to treat the trust and the benefits as "qualified terminable interest property", each installment shall be increased, if necessary, so that it is not less than all of the income earned on the unpaid account balance in the current year.

The foregoing elections shall also be available to the Beneficiary of any deceased Neuberger Member who had not either (i) made an election under which benefit payments either had begun before his death, or had been provided for under an annuity contract purchased before his death, or (ii) made an election as to the form of death benefits which was not to be changed by the Beneficiary.  Any election shall be made by the Beneficiary not later than 60 days after benefits become payable.

KL3 2630220.9

SUPPLEMENT J

Special provisions applicable to certain former employees of
SIB Mortgage Corp.

J-1    Past Service Credit - With respect to each individual employed by
       SIB Mortgage Corp. ("SIB") immediately prior to March 1, 2004
       who became an employee of Aurora Loan Services, Inc., a
       subsidiary of the Company, on March 1, 2004 and remained
       employed by an Employer on December 31, 2004 (an "SIB
       Employee"), for purposes of calculating such individual's Twelve
       Month Period of Service and Years of Vesting Service, such
       individual's Employment Date shall be the date he began his last
       continuous period of service with SIB.

J-2    Employer Contributions - If an SIB Employee has completed a
       Twelve-Month Period of Service on or before December 31, 2004
       (determined after giving effect to Section J-1 above), his or her
       eligibility for (a) Basic Contributions for the Plan Year ending
       December 31, 2004 and (b) Matching Contributions for the period
       from March 1, 2004 (or later date of completion of such service
       requirement) to December 31, 2004, shall be determined by
       annualizing his or her Compensation for the period from March 1,
       2004 to December 31, 2004.

KL3 2630220.9

SUPPLEMENT K

Special provisions applicable to certain former employees of
CNL Commercial Finance, Inc.

K-1    Past Service Credit - With respect to each individual employed by
CNL Commercial Finance, Inc. ("CNL") immediately prior to
December 18, 2004 who became an employee of Lehman Brothers
Bank, FSB on December 18, 2004 (a "CNL Employee"), for purposes
of calculating such individual's Twelve Month Period of Service and
Years of Vesting Service, such individual's Employment Date shall
be the date he began his last continuous period of service with CNL.

K-2    Employer Contributions - If a CNL Employee has completed a
Twelve-Month Period of Service on or before December 31, 2004
(determined after giving effect to Section K-1 above), his or her
eligibility for (a) Basic Contributions for the Plan Year ending
December 31, 2004 and (b) Matching Contributions for the period
from December 18, 2004 (or later date of completion of such
service requirement) to December 31, 2004, shall be determined by
annualizing his or her Compensation for the period from
December 18, 2004 to December 31, 2004.

SUPPLEMENT L

Special provisions applicable to certain former employees of
Tradepipe, Inc.

L-1    Past Service Credit - With respect to each individual employed by
       Tradepipe, Inc. ("Tradepipe") immediately prior to August 22,
       2005 who became an employee of Lehman Brothers Inc. on
       August 22, 2005 (an "Eligible Tradepipe Employee"), for purposes
       of calculating such individual's Twelve Month Period of Service
       and Years of Vesting Service, such individual's Employment Date
       shall be the date he began his last continuous period of service with
       Tradepipe.

L-2    Employer Contributions - If an Eligible Tradepipe Employee has
       completed a Twelve-Month Period of Service on or before
       December 31, 2005 (determined after giving effect to Section L-1
       above), his or her eligibility for (a) Basic Contributions for the
       Plan Year ending December 31, 2005 and (b) Matching
       Contributions for the period from August 22, 2005 (or later date of
       completion of such service requirement) to December 31, 2005,
       shall be determined by annualizing his or her Compensation for the
       period from August 22, 2005 to December 31, 2005.

KL3 2630220.9

SUPPLEMENT M

Special Provisions Relating to Finance America LLC
(including amendment of Finance America 401(k) Retirement Savings Plan)

This Supplement M (i) provides past service credit for service with Finance America LLC ("Finance America") for purposes of eligibility to share in Employer Contributions and for vesting, effective for the Plan Year ending December 31, 2005, and (ii) provides for the merger of the Finance America 401(k) Retirement Savings Plan ("Finance America Plan") into this Plan, effective February 1, 2006. Supplement M shall constitute an amendment to the Finance America Plan to the extent necessary to give full effect thereto, as well as part of the Lehman Brothers Savings Plan.

**40.    Definitions**

40.1    Special Definitions. For purposes of this Supplement M:

40.1.1 "Finance America" means Finance America, LLC.

40.1.2 "Finance America Account" means an account maintained under the Finance America Plan for a Finance America Account Holder as of December 31, 2005 and thereafter up to the Merger.

40.1.3 "Finance America Employee" means an individual who is employed by Finance America as of December 31, 2005 or any applicable earlier date during 2005 on which he transfers to the employ of an Employer.

40.1.4 "Finance America Account Holder" means a participant or beneficiary in the Finance America Plan with an undistributed Finance America Account immediately prior to the Merger

40.1.5 "Finance America Plan" means the Finance America 401(k) Retirement Savings Plan as in effect prior to the Merger.

40.1.6 "Finance America Trust Fund" means the trust funds maintained under the Finance America Plan immediately prior to the Merger.

40.1.7 "Merger" means the merger of the Finance America 401(k) Retirement Savings Plan into the Plan, effective February 1, 2006.

**41.     Past Service Credit, Transfer of Accounts and Discontinuance of Finance America Plan Contributions**

41.1.     <u>Vesting  Service Credit</u>.  In the case of a Finance America Employee who transferred to the employ of an Employer during the Plan Year ending December 31, 2005, the most recent continuous period of service with Finance America immediately preceding the date of such transfer (or if greater, his or her service with Finance America on or after June 1, 2004) shall be treated as service with the Company for purposes of determining his or her Years of Vesting Service.

41.2     <u>Eligibility for Employer Contributions</u>.  In the case of a Finance America Employee who transferred to the employ of an Employer during the Plan Year ending December 31, 2005, the most recent continuous period of service with Finance America immediately preceding the date of such transfer shall be treated as service with the Company in establishing the date he or she completes a Twelve Month Period of Service for purposes of eligibility to share in Employer Contributions for such Plan Year.  If a Finance America Employee has completed a Twelve-Month Period of Service on or before December 31, 2005 (determined after giving effect to the preceding sentence), his or her eligibility for (a) Basic Contributions for the Plan Year ending December 31, 2005, and (b) Matching Contributions for the portion of such Plan Year beginning with the period for which he made Section 401(k) Contributions hereunder (or if, later, the period from the date he completed such service requirement) to December 31, 2005, shall be determined by annualizing his or her Compensation from the date he first became an Employee to December 31, 2005.

41.3     <u>Membership based on Transfer of Plan Accounts</u>.  Finance America Account Holders who have not previously become Participants shall become Members, or if deceased, shall become Beneficiaries, under the Plan effective February 1, 2006.

41.4     <u>Finance America Plan Contributions Discontinued</u>.  Effective January 1, 2006, all contributions under the Finance America Plan shall be discontinued.

KL3 2630220.9

**42.    Merger, Investment of Transferred Assets, and Finance America Plan Accounts**

42.1    <u>Vesting</u>.  All Finance America Accounts shall be fully vested and nonforfeitable effective January 31, 2005.

42.2    <u>Merger</u>.  Effective as of February 1, 2006, the Finance America Plan and Finance America Trust Fund shall be merged into this Plan and the trust thereunder, respectively, and the terms of this Plan shall thereupon supersede in all respects the terms of the Finance America Plan with respect to the Finance America Accounts.  All persons (including current and former employees and their beneficiaries, and alternate payees under a qualified domestic relations order) having an undistributed interest under the Finance America Plan immediately prior to February 1, 2006 shall, on and after February 1, 2006, be entitled to benefits provided solely from this Plan (including this Supplement M), in lieu of any and all interest which they had or may have had under the Finance America Plan.

42.3    <u>Transfer of Finance America Trust Fund</u>.  The assets held by the trustees of the Finance America Trust Fund shall be transferred to the Trustee on February 1, 2006 or as soon as practicable thereafter.  If and to the extent that such transfer is not completed on February 1, 2006, such trustees shall hold such assets, as adjusted for investment gain or loss thereon and expenses attributable thereto, as an additional trustee under this Plan, until such transfer is completed.

42.4    <u>Allocation to Accounts</u>.  Funds transferred to the Trustee pursuant to Section 42.3 in respect of a Member's Finance America Account shall be allocated under the Plan to such Member's existing Member's Account (if any) and otherwise to a Member's Account created for such Member (including, if applicable, his or her Beneficiary) as of the date of transfer.  Within each Member's Account, the portion so transferred attributable to elective deferrals under Section 401(k) of the Code shall be allocated to the Member's Section 401(k) Contributions Account, the portion allocable to matching contributions shall be allocated to the Member's Employer Contributions Account, and the portion allocable to rollover contributions shall be allocated to the Member's Rollover Account.

KL3 2630220.9

42.5    Investment of Transferred Accounts.  Funds transferred to the Trustee in respect of a Member's Finance America Account pursuant to Section 42.3 shall initially be invested in accordance with Section 42.6 and shall remain so invested until the end of the blackout period established under Section 42.11 in connection with the Merger ("Blackout Period").  Thereafter, the Member may change such investments incident to a change made in the investment of his Member's Account in accordance with Section 6.2 of the Plan.

42.6    Fund Mapping:  The following fund mapping shall become effective upon the transfer pursuant to Section 42.3:

| Your Current Investment Options | | New Investment Options |
|---|---|---|
| Principal Fixed Income | ➔ | PRIMCO Stable Value Fund |
| Principal Investors Bond & Mortgage Secs Adv Sel Fund | ➔ | PIMCO Total Return Fund – Administrative Class |
| Russell LifePoints® Conservative Strategy D Fund | ➔ | PRIMCO Stable Value Fund |
| Russell LifePoints® Moderate Strategy D Fund | ➔ | Fidelity Freedom 2010 Fund® |
| Russell LifePoints® Aggressive Strategy D Fund | ➔ | Fidelity Freedom 2030 Fund® |
| Russell LifePoints® Balanced Strategy D Fund | ➔ | Fidelity *Asset Manager*$^{SM}$ |
| Russell LifePoints® Equity Aggressive D Fund | ➔ | Fidelity Freedom 2040 Fund® |
| American Funds Investment Company of America R3 Fund | ➔ | MFS Value Fund – Class A |
| Principal Investors Partners LargeCap Value Adv Sel Fund | ➔ | Fidelity Equity-Income Fund |
| Principal Investors LargeCap S&P 500 Index Adv Sel Fund | ➔ | Vanguard Institutional Index Fund – Institutional Class |
| Principal Investors Partners LargeCap Blend Adv Sel Fund | ➔ | Vanguard Institutional Index Fund – Institutional Class |

| Your Current Investment Options | | New Investment Options |
|---|---|---|
| Principal Investors Partners LgCap Growth I Adv Sel Fund | ➔ | Fidelity Large Cap Stock Fund |
| Principal Investors Partners LgCap Growth II Adv Sel Fund | ➔ | Fidelity Large Cap Stock Fund |
| Principal Investors Partners MidCap Value Adv Sel Fund | ➔ | T. Rowe Price Mid-Cap Value Fund |
| Fidelity Advisor Mid Cap T Fund | ➔ | CALAMOS Growth Fund – Class A |
| Fidelity Advisor Value Strategies T Fund | ➔ | Neuberger Berman Genesis Fund – Investor Class |
| Principal Investors MidCap S&P 400 Index Adv Sel Fund | ➔ | T. Rowe Price Mid-Cap Value Fund |
| Principal Investors SmallCap Value Adv Sel Fund | ➔ | Neuberger Berman Genesis Fund – Investor Class |
| Principal Investors SmallCap S&P 600 Index Adv Self Fund | ➔ | Neuberger Berman Fasciano Fund – Investor Class |
| Fidelity Advisor Small Cap T Fund | ➔ | Century Small Cap Select Fund |
| Principal Investors International Growth Adv Sel Fund | ➔ | Fidelity Diversified International Fund |

42.7    Outstanding Loans.  Loans outstanding under the Finance America Plan as of the date of Merger shall (i) be held by the Trustee as assets of this Plan, (ii) be governed by the terms of such loans in effect immediately preceding the Merger, and (iii) be treated as loans under this Plan in determining eligibility for future loans under Article XVI.  Notwithstanding the foregoing, repayments of such loans shall be suspended from January 1, 2006 until the end of the Blackout Period, at which time the outstanding loan balance shall be reamortized based on the number of loan repayments remaining and the payroll cycle applicable to the Member.

42.8    Restoration of Forfeitures.  If a former participant in the Finance America Plan who had received his entire vested interest thereunder is reemployed by an Employer before he has a break in service of five or more years as defined in such plan, he may repay to the Plan an

amount equal to the distribution, disregarding any portion thereof derived from rollover contributions, at any time within five years from the date of such reemployment. Any amount so repaid shall be credited to the individual's Member's Account (whether already existing or created by reason of such repayment), plus an additional amount equal to the portion of his account in the Finance America Plan that was previously forfeited. The amount so restored shall be funded by available forfeitures, if any, and otherwise by a special contribution by his Employer. For this purpose, a former participant in the Finance America Plan who terminated with no vested interest thereunder and is reemployed within the applicable period described above shall be deemed to have repaid his entire vested interest on the date of his reemployment by an Employer.

42.9    Contributions. Finance America shall make a matching contribution to the Finance America Plan with respect to each Finance America Account Holder who was eligible to share in such a contribution under the Finance America Plan. If such contribution is not made prior to the Merger, it shall be made, no later than the filing deadline for its 2005 federal income tax return, by paying such contribution into the Plan as the continuation of the Finance America Plan by reason of the Merger. Such contribution shall be allocated among the Members' Accounts of such Finance America Account Holders in accordance with the provisions of the Finance America Plan governing contributions for the 2005 plan year.

42. 10    Pre-Merger Elections and Designations. Notwithstanding any other provision of this Plan, (a) elections as to timing or form of benefit made, (b) designations of beneficiaries made, and (c) provisions that became applicable based on a failure to make an available election or designation under the Finance America Plan on or before February 1, 2006, shall be given effect with respect to Finance America Account Holders who retired or terminated employment under the terms of the Finance America Plan, or died, on or before February 1, 2006, and distribution shall be made in respect of such Members in accordance with the applicable provisions of the Finance America Plan as in effect at the relevant time or times prior to such date. Beneficiary designations made under the Finance America Plan on or before February 1, 2006 by Finance America Account Holders shall not be given effect after such date, and distribution shall be made in respect of such Members in accordance with the applicable provisions of this Plan.

KL3 2630220.9

42.11   <u>Blackout Period and Notice</u>.  To facilitate the Merger and related transactions described above, the Committee shall establish such blackout period or periods as it shall deem necessary or advisable, which may  differ as among the various functions to which such periods apply, and shall give such notice or notices as shall be required by Section 101(i) of ERISA and Department of Labor Regulation section 2520.1-101-3.

42.12   <u>Waiver of $1,000 Minimum for In-Service Distributions</u>.  The requirement of Section 7.8 that partial in-service distributions from the Rollover Account prior to age 59-1/2 be at least $1,000 is waived for Finance America Account Holders who become Members.

42.13   <u>Final MRD Regulations</u>.  Section 7.5(b) shall apply retroactively to the Finance America Plan effective for periods from the 2002 calendar year to the date of the Merger.

KL3 2630220.9

<u>SUPPLEMENT N</u>

Special Provisions Relating to BNC Mortgage, Inc. and Finance America, LLC after its merger
into BNC Mortgage, Inc.
<u>(including amendment of BNC Mortgage, Inc. 401(k) Plan)</u>

This Supplement N (i) provides past service credit for service with BNC Mortgage, Inc.,
("BNC") and Finance America, LLC ("Finance America") for purposes of eligibility to share in
Employer Contributions and for vesting, effective commencing with the Plan Year ending
December 31, 2005, (ii) records the adoption of the Plan by BNC effective January 1, 2006, and
(iii) provides for the merger of the BNC Mortgage, Inc. 401(k) Plan into this Plan, effective
February 1, 2006. Supplement N shall constitute an amendment to the BNC  Plan to the extent
necessary to give full effect thereto, as well as part of the Lehman Brothers Savings Plan.

**43.    Definitions**

43.1    <u>Special Definitions</u>.  For purposes of this Supplement N:

43.1.1  "<u>BNC</u> " means BNC Mortgage, Inc.

43.1.2  "<u>BNC  Account</u>" means an account maintained under the BNC  Plan for a BNC
Account Holder as of December 31, 2005 and thereafter up to the Merger.

43.1.3  "<u>BNC  Employee</u>" means an individual who is employed by BNC as of January 1,
2006, including  a former employee of Finance America  who became such an employee by
reason of the merger of Finance America into BNC on January 1, 2006, or who was employed by
BNC on any applicable earlier date during 2005 immediately preceding his transfer to the
employ of an Employer.

43.1.4  "<u>BNC Account Holder</u>" means a participant or beneficiary in the BNC Plan with
an undistributed BNC Account immediately prior to the Merger

43.1.5  "<u>BNC Plan</u>" means the BNC Mortgage, Inc. 401(k) Plan as in effect prior to the
Merger.

43.1.6  "<u>BNC Trust Fund</u>" means the trust funds maintained under the BNC Plan
immediately prior to the Merger.

43.1.7  "<u>Finance America</u>" means Finance America, LLC.

43.1.9 "<u>Finance America Plan</u>" means the Finance America 401(k) Retirement Savings Plan as in effect prior to the Merger.

43.1.10 "<u>Merger</u>" means the merger of the BNC Mortgage, Inc. 401(k) Plan into the Plan, effective February 1, 2006.

## 44. Participation, Past Service Credit and Discontinuance of BNC Plan Contributions

44.1 <u>BNC a Participating Employer</u>. BNC shall become an Employer under the Plan effective January 1, 2006 (and shall remain an Employer so long as it remains a member of a controlled group, within the meaning of Section 414 (b) or (c) of the Code and regulations thereunder, of which the Company is the common parent, subject to the right reserved to the Company Representative to terminate its status as an Employer under Section 1.23).

44.2 <u>Eligibility to Participate</u>. A BNC Employee shall be eligible to become a Participant as of January 1, 2006 (or, if applicable, any earlier date during 2005 on which he transfers to the employ of an Employer), provided he is then an Employee. Notwithstanding the foregoing, any such individual who has made a hardship withdrawal of elective deferrals from the BNC Plan or the Finance America Plan within six months prior to the date of such initial eligibility shall not be entitled to make Section 401(k) Contributions under this Plan until six months have elapsed from the date of such hardship withdrawal.

44.3 <u>Membership Based on Transfer of Plan Accounts</u>. BNC Account Holders who have not previously become Participants shall become Members, or if deceased, shall become Beneficiaries, under the Plan effective February 1, 2006.

44.4 <u>Vesting Service Credit</u>. In the case of a BNC Employee who (i) transferred to the employ of an Employer during the Plan Year ending December 31, 2005, or (ii) is employed by BNC on January 1, 2006, his or her most recent continuous period of service with BNC and/or Finance America immediately preceding the date of such transfer or January 1, 2006, as the case may be, shall be treated as service with the Company for purposes of determining his or her Years of Vesting Service; provided, however, that the service thereby so credited shall not be less than the BNC Employee's aggregate service to such date with BNC after July 26, 2000 or with Finance America after June 1, 2004.

44.5    Eligibility for Employer Contribution.  In the case of a BNC Employee who (i) transferred to the employ of an Employer during the Plan Year ending December 31, 2005, or (ii) is employed by BNC on January 1, 2006, his or her most recent continuous period of service with BNC and/or Finance America immediately preceding the date of such transfer or January 1, 2006, as the case may be,  shall be treated as service with the Company in establishing the date he or she completes a Twelve Month Period of Service for purposes of  eligibility to share in Employer Contributions for Plan Years ending on or after December 31, 2005. If a BNC Employee has completed a Twelve-Month Period of Service on or before December 31, 2005 (determined after giving effect to the preceding sentence), his or her eligibility for (a) Basic Contributions for the Plan Year ending December 31, 2005, and (b) Matching Contributions for the portion of such Plan Year beginning with the period for which he made Section 401(k) Contributions hereunder (or if, later, the period from the date he completed such service requirement) to December 31, 2005, shall be determined by annualizing his or her Compensation from the date he first became an Employee to December 31, 2005.

44.6    BNC Plan Contributions Discontinued.  Effective January 1, 2006, all contributions under the BNC Plan shall be discontinued.

**45.    Merger, Investment of Transferred Assets, and BNC Plan Accounts**

45.1    Vesting.  All BNC Accounts shall be fully vested and nonforfeitable effective January 31, 2005.

45.2    Merger.  Effective as of February 1, 2006, the BNC Plan and BNC Trust Fund shall be merged into this Plan and the trust thereunder, respectively, and the terms of this Plan shall thereupon supersede in all respects the terms of the BNC Plan with respect to the BNC Accounts.  All persons (including current and former employees and their beneficiaries, and alternate payees under a qualified domestic relations order) having an undistributed interest under the BNC Plan immediately prior to February 1, 2006 shall, on and after February 1, 2006, be entitled to benefits provided solely from this Plan (including this Supplement N), in lieu of any and all interest which they had or may have had under the BNC Plan.

45.3    Transfer of BNC Trust Fund.  The assets held by the trustees of the BNC Trust Fund shall be transferred to the Trustee on February 1, 2006 or as soon as practicable thereafter. If and to the extent that such transfer is not completed on February 1, 2006, such trustees shall hold such assets, as adjusted for investment gain or loss thereon and expenses attributable thereto, as an additional trustee under this Plan, until such transfer is completed.

45.4    Allocation to Accounts.  Funds transferred to the Trustee pursuant to Section 45.3 in respect of a Member's BNC Account shall be allocated under the Plan to such Member's existing Member's Account (if any) and otherwise to a Member's Account created for such Member (including, if applicable, Beneficiary) as of the date of transfer. Within each Member's Account, the portion so transferred attributable to elective deferrals under Section 401(k) of the Code shall be allocated to the Member's Section 401(k) Contributions Account, the portion allocable to matching contributions shall be allocated to the Member's Employer Contributions Account, and the portion allocable to rollover contributions shall be allocated to the Member's Rollover Account.

45.5    Investment of Transferred Accounts.  Funds transferred to the Trustee in respect of a Member's BNC Account pursuant to Section 45.3 shall initially be invested in accordance with Section 45.6 and shall remain so invested until the end of the blackout period established under Section 45.11 in connection with the Merger ("Blackout Period").  Thereafter, the Member may change such investments incident to a change made in the investment of his Member's Account in accordance with Section 6.2 of the Plan.

45.6    Fund Mapping.  The following fund mapping shall become effective upon the transfer pursuant to Section 45.3:

| Your Current Investment Options | | New Investment Options |
|---|---|---|
| Fidelity Retirement Money Market Portfolio | ➔ | PRIMCO Stable Value Fund |
| Fidelity Intermediate Bond Fund | ➔ | PIMCO Total Return Fund – Administrative Class |
| Fidelity U.S. Bond Index Fund | ➔ | PIMCO Total Return Fund – Administrative Class |

| Fidelity Freedom Income Fund® | ➜ | PRIMCO Stable Value Fund |
|---|---|---|
| Fidelity Freedom 2000 Fund® | ➜ | PRIMCO Stable Value Fund |
| Fidelity Freedom 2005 Fund® | ➜ | PRIMCO Stable Value Fund |
| Fidelity Freedom 2015 Fund® | ➜ | Fidelity Freedom 2010 Fund® |
| Fidelity Freedom 2025 Fund® | ➜ | Fidelity Freedom 2020 Fund® |
| Fidelity Freedom 2035 Fund® | ➜ | Fidelity Freedom 2030 Fund® |
| Fidelity Dividend Growth Fund | ➜ | Fidelity Equity-Income Fund |
| Spartan® U.S. Equity Index Fund | ➜ | Vanguard Institutional Index Fund – Institutional Class |
| Fidelity Blue Chip Growth Fund | ➜ | Fidelity Large Cap Stock Fund |
| Fidelity OTC Portfolio | ➜ | CALAMOS Growth Fund – Class A |
| Janus Mid Cap Value Fund | ➜ | T. Rowe Price Mid-Cap Value Fund |
| Fidelity Mid-Cap Stock Fund | ➜ | CALAMOS Growth Fund – Class A |
| Ariel Fund | ➜ | Neuberger Berman Genesis Fund – Investor Class |
| Fidelity Real Estate Investment Portfolio | ➜ | PRIMCO Stable Value Fund |
| Fidelity Small Cap Retirement Fund | ➜ | Century Small Cap Select Fund |

45.7    <u>Outstanding Loans</u>.  Loans outstanding under the BNC Plan as of the date of Merger shall (i) be held by the Trustee as assets of this Plan, (ii) be governed by the terms of such loans in effect immediately preceding the Merger, and (iii) be treated as loans under this Plan in determining eligibility for future loans under Article XVI. Notwithstanding the foregoing, repayments of such loans shall be suspended from January 1, 2006 until the end of the Blackout Period, at which time the outstanding loan balance shall be reamortized based on the number of loan repayments remaining and the payroll cycle applicable to the Member.

45.8    <u>Restoration of Forfeitures</u>.  If a former participant in the BNC Plan who had received his entire vested interest thereunder is reemployed by an Employer before he has a break in service of five or more years as defined in such plan, he may repay to the Plan an amount equal to the distribution, disregarding any portion thereof derived from rollover contributions, at any time within five years from the date of such reemployment.  Any amount so repaid shall be credited to the individual Member's Account (whether already existing or created

by reason of such repayment), plus an additional amount equal to the portion of his account in the BNC Plan that was previously forfeited.  The amount so restored shall be funded by available forfeitures, if any, and otherwise by a special contribution by his Employer.  For this purpose, a former participant in the BNC Plan who terminated with no vested interest thereunder and is reemployed within the applicable period described above shall be deemed to have repaid his entire vested interest on the date of his reemployment by an Employer.

45.9    Contributions.  BNC shall make a matching contribution to the BNC Plan with respect to each BNC Account Holder who was eligible to share in such a contribution under the BNC Plan.  If such contribution is not made prior to the Merger, it shall be made, no later than the filing deadline for its 2005 federal income tax return, by paying such contribution into the Plan as the continuation of the BNC Plan by reason of the Merger.  Such contribution shall be allocated among the Members' Accounts of such BNC Account Holders in accordance with the provisions of the BNC Plan governing contributions for the 2005 plan year.

45. 10    Pre-Merger Elections and Designations.  Notwithstanding any other provision of this Plan, (a) elections as to timing or form of benefit made, (b) designations of beneficiaries made, and (c) provisions that became applicable based on a failure to make an available election or designation under the BNC Plan on or before February 1, 2006, shall be given effect with respect to BNC Account Holders who retired or terminated employment under the terms of the BNC Plan, or died, on or before February 1, 2006, and distribution shall be made in respect of such Members in accordance with the applicable provisions of the BNC Plan as in effect at the relevant time or times prior to such date.  Beneficiary designations made under the BNC Plan on or before February 1, 2006 by BNC Account Holders shall not be given effect after such date, and distribution shall be made in respect of such Members in accordance with the applicable provisions of this Plan.

45.11    Blackout Period and Notice.  To facilitate the Merger and related transactions described above, the Committee shall establish such blackout period or periods as it shall deem necessary or advisable, which may differ as among the various functions to which such periods apply, and shall give such notice or notices as shall be required by Section 101(i) of ERISA and Department of Labor Regulation section 2520.1-101-3.

45.12   Waiver of $1,000 Minimum for In-Service Distributions from the Rollover Account.  The requirement of Section 7.8 that partial in-service distributions from the Rollover Account prior to age 59-1/2 be at least $1,000 is waived for BNC Account Holders who become Members.

45.13   Final MRD Regulations.  Section 7.5(b) shall apply retroactively to the BNC Plan effective for periods from the 2002 calendar year to the date of the Merger.

SUPPLEMENT O

Special Provisions Relating to Townsend Analytics LTD
(including amendment of the Townsend Analytics, LTD 401(k) Plan )

This Supplement O (i) provides past service credit for service with Townsend Analytics LTD ("TAL") for purposes of eligibility to share in Employer Contributions and for vesting, effective for Plan Years beginning on or after January 1, 2007, and (ii) provides for the merger of the Townsend Analytics, LTD 401(k) Plan (the "TAL Plan") into this Plan, effective January 2, 2007. Supplement O shall constitute an amendment to the TAL Plan to the extent necessary to give full effect thereto, as well as part of the Lehman Brothers Savings Plan.

**46.   Definitions**

46.1   <u>Special Definitions</u>.  For purposes of this Supplement O:

46.1.1  "<u>TAL</u>" means Townsend Analytics, LTD.

46.1.2  "<u>TAL Account</u>" means an account maintained under the TAL Plan for a TAL Account Holder as of December 31, 2006 and thereafter up to the Merger.

46.1.3  "<u>TAL Employee</u>" means an individual who is employed by TAL as of January 1, 2007 or any applicable earlier date during 2005 or 2006 on which he transfers to the employ of an Employer.

46.1.4  "<u>TAL Account Holder</u>" means a participant or beneficiary in the TAL Plan with an undistributed TAL Account immediately prior to the Merger

46.1.5  "<u>TAL Plan</u>" means the Townsend Analytics, LTD 401(k) Plan as in effect prior to the Merger.

46.1.6  "<u>TAL Trust Fund</u>" means the trust fund maintained under the TAL Plan immediately prior to the Merger.

46.1.7  "<u>Merger</u>" means the merger of the TAL Plan into the Plan, effective January 2, 2007.

KL3 2630220.9

**47.    Past Service Credit, Transfer of Accounts and Discontinuance of TAL Plan Contributions**

47.1.    <u>Vesting Service</u>.  In the case of a TAL Employee who transferred to the employ of an Employer during the Plan Year ending December 31, 2005 or the Plan Year ending December 31, 2006 or was employed by TAL on January 1, 2007, the most recent continuous period of service with TAL immediately preceding January 1, 2007 or the date of such transfer shall be treated as service with the Company for purposes of determining his or her Years of Vesting Service.

47.2    <u>Eligibility for Employer Contributions</u>.  In the case of a TAL Employee who transferred to the employ of an Employer during the Plan Year ending December 31, 2005 or the Plan Year ending December 31, 2006, or who was employed by TAL on January 1, 2007, the most recent continuous period of service with TAL immediately preceding January 1, 2007 or the date of such transfer shall be treated as service with the Company in establishing the date he or she completes a Twelve Month Period of Service for purposes of eligibility to share in Employer Contributions for the Plan Year ending December 31, 2005, December 31, 2006 or December 31, 2007, as applicable.

47.3    <u>Membership based on Transfer of Plan Accounts</u>.  TAL Account Holders who have not previously become Participants shall become Members, Beneficiaries, or Alternate Payees, as applicable, under the Plan effective January 2, 2007.

47.4    <u>TAL Plan Contributions Discontinued</u>.  Effective January 1, 2007, all contributions under the TAL Plan shall be discontinued.

KL3 2630220.9

**48.    Merger, Investment of Transferred Assets, and TAL Plan Accounts**

48.1    Vesting.  TAL Accounts of TAL Employees who are employed by an Employer or an Affiliate on January 1, 2007 shall be fully vested and nonforfeitable as of such date.

48.2    Merger.  Effective as of January 2, 2007, the TAL Plan and TAL Trust Fund shall be merged into this Plan and the trust thereunder, respectively, and the terms of this Plan shall thereupon supersede in all respects the terms of the TAL Plan with respect to the TAL Accounts. All persons (including current and former employees and their beneficiaries, and alternate payees under a qualified domestic relations order) having an undistributed interest under the TAL Plan immediately prior to January 2, 2007 shall, on and after January 2, 2007, be entitled to benefits provided solely from this Plan (including this Supplement O), in lieu of any and all interest which they had or may have had under the TAL Plan.

48.3    Transfer of TAL Trust Fund.  The assets held by the trustees of the TAL Trust Fund shall be transferred to the Trustee on January 2, 2007 or as soon as practicable thereafter. If and to the extent that such transfer is not completed on January 2, 2007, such trustees shall hold such assets, as adjusted for investment gain or loss thereon and expenses attributable thereto, as an additional trustee under this Plan, until such transfer is completed.

48.4    Allocation to Accounts.  Funds transferred to the Trustee pursuant to Section 48.3 in respect of a Member's TAL Account shall be allocated under the Plan to such Member's existing Member's Account (if any) and otherwise to a Member's Account created for such Member (including, if applicable, his or her Beneficiary) as of the date of transfer.  Within each Member's Account, the portion so transferred attributable to elective deferrals under Section 401(k) of the Code shall be allocated to the Member's Section 401(k) Contributions Account, the portion allocable to matching contributions shall be allocated to the Member's Employer Contributions Account, and the portion allocable to rollover contributions shall be allocated to the Member's Rollover Account.

48.5    Investment of Transferred Accounts.  Funds transferred to the Trustee in respect of a Member's TAL Account pursuant to Section 48.3 shall initially be invested in accordance with Section 48.6 and shall remain so invested until the end of the blackout period established

- 158 -

under Section 48.11 in connection with the Merger ("Blackout Period"). Thereafter, the Member may change such investments incident to a change made in the investment of his Member's Account in accordance with Section 6.2 of the Plan.

48.6    Fund Mapping. The following fund mapping shall become effective upon the transfer pursuant to Section 48.3:

| TAL Plan Current Investment Options | | New Investment Options |
|---|---|---|
| AllianceBernstein Global Technology Fund – Class A | → | Fidelity Select Technology Portfolio |
| AllianceBernstein International Value Fund – Class A | → | Neuberger Berman International Fund Investor Class |
| AllianceBernstein Small/Mid Cap Value Fund – Class A | → | T. Rowe Price Mid-Cap Value Fund |
| Calvert Income Fund – Class A | → | PIMCO Total Return Fund – Admin. Class |
| Calvert Large Cap Growth Fund – Class A | → | Fidelity Large Cap Stock Fund |
| Davis New York Venture Fund – Class A | → | Vanguard Institutional Index Fund |
| Davis Opportunity Fund – Class A | → | T. Rowe Price Mid-Cap Value Fund |
| Dreyfus Premier New Leaders Fund, Inc. – Class T | → | Calamos Growth Fund Class A |
| Eaton Vance Income Fund of Boston – Class A | → | Neuberger Berman High Income Bond Fund Investor Class |
| Eaton Vance Worldwide Health Sciences Fund – Class A | → | Fidelity Select Healthcare Portfolio |
| Evergreen Special Values Fund – Class A | → | Neuberger Berman Genesis Fund Inv. Class |
| Morgan Stanley Equally-Weighted S&P 500 Fund – Class A | → | Vanguard Institutional Index Fund |
| Morgan Stanley Nasdaq-100 Index Fund – Class A | → | Vanguard Institutional Index Fund |
| Morgan Stanley Stable Value Fund | → | PRIMCO Stable Value Fund[*] |
| Oppenheimer Global Fund – Class A | → | American Funds Capital World Growth and Income Fund Class R4 |
| Oppenheimer International Bond Fund – Class A | → | PIMCO Total Return Fund – Admin. Class |

| TAL Plan Current Investment Options | | New Investment Options |
| --- | --- | --- |
| Oppenheimer Real Asset Fund® - Class A | → | PRIMCO Stable Value Fund[*] |
| Oppenheimer Small- & Mid- Cap Value Fund Class A | → | Neuberger Berman Genesis Fund Inv. Class |
| SSgA S&P 500 Index Fund | → | Vanguard Institutional Index Fund |
| Van Kampen Comstock Fund | → | MFS Value Fund Class A |
| Van Kampen Equity and Income Fund – Class A | → | Fidelity Asset Manager 50% |
| Van Kampen Real Estate Securities Fund – Class A | → | T. Rowe Price Mid-Cap Value Fund |

48.7    Outstanding Loans.  Loans outstanding under the TAL Plan as of the date of Merger shall (i) be held by the Trustee as assets of this Plan, (ii) be governed by the terms of such loans in effect immediately preceding the Merger, and (iii) be treated as loans under this Plan in determining eligibility for future loans under Article XVI.  Notwithstanding the foregoing, repayments of such loans shall be suspended from January 1, 2007 until the end of the Blackout Period, at which time the outstanding loan balance shall be reamortized based on the number of loan repayments remaining and the payroll cycle applicable to the Member.

48.8    Restoration of Forfeitures.  If a former participant in the TAL Plan who had received his entire vested interest and forfeited his unvested interest thereunder is reemployed by an Employer before he has a break in service of five or more years as defined in such plan, he may repay to the Plan an amount equal to the distribution, disregarding any portion thereof derived from rollover contributions, at any time within five years from the date of such reemployment.  Any amount so repaid shall be credited to the individual's Member's Account (whether already existing or created by reason of such repayment), plus an additional amount equal to the portion of his account in the TAL Plan that was previously forfeited.  The amount so restored shall be funded by available forfeitures, if any, and otherwise by a special contribution by his Employer.  For this purpose, a former participant in the TAL Plan who terminated with a vested interest thereunder of zero percent and is reemployed within the applicable period described above shall be deemed to have repaid his entire vested interest on the date of his reemployment by an Employer.

- 160 -

48.9    <u>Contributions</u>.  TAL shall make any contributions owed to the TAL Plan and not made prior to the Merger by paying such contribution into the Plan as the continuation of the TAL Plan by reason of the Merger.  Such contribution shall be allocated among the Members' Accounts of such TAL Account Holders in accordance with the provisions of the TAL Plan governing contributions for the 2006 plan year.

48.10    <u>Pre-Merger Elections and Designations</u>.  Notwithstanding any other provision of this Plan, (a) elections as to timing or form of benefit made, (b) designations of beneficiaries made, and (c) provisions that became applicable based on a failure to make an available election or designation under the TAL Plan on or before January 2, 2007, shall be given effect with respect to TAL Account Holders who retired or terminated employment under the terms of the TAL Plan, or died, on or before January 2, 2007, and distribution shall be made in respect of such Members in accordance with the applicable provisions of the TAL Plan as in effect at the relevant time or times prior to such date.  Beneficiary designations made under the TAL Plan on or before January 2, 2007 by TAL Account Holders shall not be given effect after such date, and distribution shall be made in respect of such Members in accordance with the applicable provisions of this Plan.

48.11    <u>Blackout Period and Notice</u>.  To facilitate the Merger and related transactions described above, the Committee shall establish such blackout period or periods as it shall deem necessary or advisable, which may  differ as among the various functions to which such periods apply, and shall give such notice or notices as shall be required by Section 101(i) of ERISA and Department of Labor Regulation section 2520.1-101-3.

SUPPLEMENT P

Special Provisions Relating to Campus Door
(including amendment of the Campus Door 401(k) Plan )

This Supplement P (i) provides past service credit for service with Campus Door Inc. ("Campus Door") for purposes of eligibility to share in Employer Contributions and for vesting, effective for Plan Years beginning on or after January 1, 2007, and (ii) provides for the merger of the Campus Door 401(k) Plan (the "Campus Door Plan") into this Plan, effective January 16, 2007.  Supplement P shall constitute an amendment to the Campus Door Plan to the extent necessary to give full effect thereto, as well as part of the Lehman Brothers Savings Plan.

## 49.    Definitions

49.1    <u>Special Definitions</u>.  For purposes of this Supplement P:

49.1.1  "<u>Campus Door</u>" means Campus Door Inc.

49.1.2  "<u>Campus Door Account</u>" means an account maintained under the Campus Door Plan for a Campus Door Account Holder as of December 31, 2006 and thereafter up to the Merger.

49.1.3  "<u>Campus Door Employee</u>" means an individual who is employed by Campus Door as of January 1, 2007 or any applicable earlier date during 2006 on which he transfers to the employ of an Employer.

49.1.4  "<u>Campus Door Account Holder</u>" means a participant or beneficiary in the Campus Door Plan with an undistributed Campus Door Account immediately prior to the Merger

49.1.5  "<u>Campus Door Plan</u>" means the Campus Door 401(k) Plan as in effect prior to the Merger.

49.1.6  "<u>Campus Door Trust Fund</u>" means the trust fund maintained under the Campus Door Plan immediately prior to the Merger.

49.1.7  "<u>Merger</u>" means the merger of the Campus Door Plan into the Plan, effective January 16, 2007.

**50.    Past Service Credit, Transfer of Accounts and Discontinuance of Campus Door Plan Contributions**

50.1.    <u>Vesting Service</u>.  In the case of a Campus Door Employee who transferred to the employ of an Employer during the Plan Year ending December 31, 2006 or was employed by Campus Door on January 1, 2007, the most recent continuous period of service with Campus Door immediately preceding January 1, 2007 or the date of such transfer shall be treated as service with the Company for purposes of determining his or her Years of Vesting Service.

50.2    <u>Eligibility for Employer Contributions</u>.  In the case of a Campus Door Employee who transferred to the employ of an Employer during the Plan Year ending December 31, 2006, or who was employed by Campus Door on January 1, 2007, the most recent continuous period of service with Campus Door immediately preceding January 1, 2007 or the date of such transfer shall be treated as service with the Company in establishing the date he or she completes a Twelve Month Period of Service for purposes of eligibility to share in Employer Contributions for the Plan Year ending December 31, 2006 or December 31, 2007 as applicable.

50.3    <u>Membership based on Transfer of Plan Accounts</u>. Campus Door Account Holders who have not previously become Participants shall become Members, Beneficiaries, or Alternate Payees, as applicable, under the Plan effective January 16, 2007.

50.4    <u>Campus Door Plan Contributions Discontinued</u>.  Effective January 1, 2007, all contributions under the Campus Door Plan shall be discontinued.

**51.    Merger, Investment of Transferred Assets, and Campus Door Plan Accounts**

51.1    <u>Merger</u>.  Effective as of January 16, 2007, the Campus Door Plan and Campus Door Trust Fund shall be merged into this Plan and the trust thereunder, respectively, and the terms of this Plan shall thereupon supersede in all respects the terms of the Campus Door Plan with respect to the Campus Door Accounts.  All persons (including current and former employees and their beneficiaries, and alternate payees under a qualified domestic relations order) having an undistributed interest under the Campus Door Plan immediately prior to January 16, 2007 shall, on and after January 16, 2007, be entitled to benefits provided solely

from this Plan (including this Supplement P), in lieu of any and all interest which they had or may have had under the Campus Door Plan.

     51.2    <u>Transfer of Campus Door Trust Fund</u>.  The assets held by the trustees of the Campus Door Trust Fund shall be transferred to the Trustee on January 16, 2007 or as soon as practicable thereafter.  If and to the extent that such transfer is not completed on January 16, 2007, such trustees shall hold such assets, as adjusted for investment gain or loss thereon and expenses attributable thereto, as an additional trustee under this Plan, until such transfer is completed.

     51.3    <u>Allocation to Accounts</u>.  Funds transferred to the Trustee pursuant to Section 51.2 in respect of a Member's Campus Door Account shall be allocated under the Plan to such Member's existing Member's Account (if any) and otherwise to a Member's Account created for such Member (including, if applicable, his or her Beneficiary) as of the date of transfer.  Within each Member's Account, the portion so transferred attributable to elective deferrals under Section 401(k) of the Code shall be allocated to the Member's Section 401(k) Contributions Account and the portion allocable to rollover contributions shall be allocated to the Member's Rollover Account.

     51.5    <u>Investment of Transferred Accounts</u>.  Funds transferred to the Trustee in respect of a Member's Campus Door Account pursuant to Section 51.2 shall initially be invested in accordance with Section 51.5 and shall remain so invested until the end of the blackout period established under Section 51.9 in connection with the Merger

("Blackout Period").  Thereafter, the Member may change such investments incident to a change made in the investment of his Member's Account in accordance with Section 6.2 of the Plan.

     51.6    <u>Fund Mapping</u>.  The following fund mapping shall become effective upon the transfer pursuant to Section 51.2:

| Campus Door Plan Current Investment Options | | New Investment Options |
| --- | --- | --- |
| Legg Mason Diversified Strategic Income | → | PIMCO Total Return Fund – Administrative |

| Campus Door Plan Current Investment Options | | New Investment Options |
|---|---|---|
| Fund | | Class |
| Legg Mason Partners Exchange Reserve Fund | → | PRIMCO Stable Value Fund* |
| Legg Mason Partners Aggressive Growth Fund | → | Fidelity Large Cap Stock Fund |
| Legg Mason Partners Appreciation Fund | → | Vanguard Institutional Index Fund – Institutional Shares |
| Legg Mason Partners Capital and Income Fund | → | Fidelity Asset Manager® 50% |
| Legg Mason Partners Fundamental Value Fund | → | Vanguard Institutional Index Fund – Institutional Shares |
| Legg Mason Partners Investment Grade Bond Fund | → | Fidelity U.S. Bond Index Fund |
| Legg Mason Partners Large Cap Growth Fund | → | Fidelity Large Cap Stock Fund |
| Legg Mason Partners Mid Cap Core Fund | → | T. Rowe Price Mid-Cap Value Fund |
| Legg Mason Partners Small Cap Growth Fund | → | Century Small Cap Select Fund – Institutional Shares |
| Legg Mason Partners U.S. Government Securities Fund | → | PRIMCO Stable Value Fund* |
| Legg Mason Partners International All Cap Growth Fund | → | Neuberger Berman International Fund – Investor Class |

51.7    Outstanding Loans.  Loans outstanding under the Campus Door Plan as of the date of Merger shall (i) be held by the Trustee as assets of this Plan, (ii) be governed by the terms of such loans in effect immediately preceding the Merger, and (iii) be treated as loans under this Plan in determining eligibility for future loans under Article XVI.  Notwithstanding the foregoing, repayments of such loans shall be suspended from January 1, 2007 until the end of the Blackout Period, at which time the outstanding loan balance shall be reamortized based on the number of loan repayments remaining and the payroll cycle applicable to the Member.

51.8    Contributions.  Campus Door shall make any contribution owed to the Campus Door Plan and not made prior to the Merger by paying such contribution into the Plan as the continuation of the Campus Door Plan by reason of the Merger.  Such contribution shall be allocated among the Members' Accounts of such Campus Door Account Holders in accordance with the provisions of the Campus Door Plan governing contributions for the 2006 plan year.

- 165 -

KL3 2630220.9

51.9    <u>Pre-Merger Elections and Designations</u>.  Notwithstanding any other provision of this Plan, (a) elections as to timing or form of benefit made, (b) designations of beneficiaries made, and (c) provisions that became applicable based on a failure to make an available election or designation under the Campus Door Plan on or before January 16, 2007, shall be given effect with respect to Campus Door Account Holders who retired or terminated employment under the terms of the Campus Door Plan, or died, on or before January 16, 2007, and distribution shall be made in respect of such Members in accordance with the applicable provisions of the Campus Door Plan as in effect at the relevant time or times prior to such date.  Beneficiary designations made under the Campus Door Plan on or before January 16, 2007 by Campus Door Account Holders shall not be given effect after such date, and distribution shall be made in respect of such Members in accordance with the applicable provisions of this Plan.

51.10    <u>Blackout Period and Notice</u>.  To facilitate the Merger and related transactions described above, the Committee shall establish such blackout period or periods as it shall deem necessary or advisable, which may  differ as among the various functions to which such periods apply, and shall give such notice or notices as shall be required by Section 101(i) of ERISA and Department of Labor Regulation section 2520.1-101-3.

51.11    <u>Final 401(k) Regulations</u>.  Revisions to the Plan to reflect the elimination of bottom-up QNECs, and the requirement for the distribution of gap period earnings in accordance with final regulations under section 401(k) of the Code, shall apply retroactively to the Campus Door Plan effective January 1, 2006.

KL3 2630220.9

SUPPLEMENT Q

Special Provisions Relating to Capital Crossing Inc.
(including amendment of Capital Crossing Inc. 401(k) Plan)

This Supplement Q (i) provides past service credit for certain employees for service with Capital Crossing Inc. for purposes of eligibility to share in Employer Contributions and for vesting, effective commencing July 1, 2007, and (ii) provides for the spinoff of a portion of the Capital Crossing Inc. 401(k) Plan into this Plan, effective August 1, 2007.  This Supplement, in addition to constituting part of the Lehman Brothers Savings Plan, shall constitute an amendment to the Capital Crossing Plan 401(k) Plan to the extent necessary to give full effect thereto,

## 52.    Definitions

52.1    <u>Special Definitions</u>.  For purposes of this Supplement Q:

52.1.1    "<u>Bank</u>" means Lehman Brothers Bank, FSB.

52.1.2    "<u>Capital Crossing</u>" means Capital Crossing Inc., a corporation all of whose capital stock was acquired by the Bank on February 15, 2007.

52.1.3    "<u>Capital Crossing Account</u>" means an account maintained under the Capital Crossing Plan for a Capital Crossing Employee as of July 31, 2007.

52.1.4    "<u>Capital Crossing Plan</u>" means the Capital Crossing Inc. 401(k) Plan.

52.1.5    "<u>Capital Crossing Trust Fund</u>" means the trust funds maintained under the Capital Crossing Plan immediately prior to August 1, 2007.

52.1.6    <u>Capital Crossing Employee</u>" means an individual who (i) is employed by the Bank as of July 1, 2007 in the division comprising the business formerly conducted by Capital Crossing (other than Dolphin), or (ii) who transferred from Capital Crossing to the employ of  any other Employer between February 15, 2007 and July 1, 2007 and remained in the employ of such Employer on July 1, 2007[1].

52.1.7    "<u>Spinoff</u>" means the transfer to the Plan of the portion of the net assets of the Capital Crossing Plan attributable to Capital Crossing Employees.

---

[1] We assume no such transferees came from the Dolphin division.

52.1.8    "Transferred Accounts" means the Capital Crossing Plan Accounts transferred to the Plan pursuant to the Spinoff.

## 53.    Participation, and Past Service

53.1    Eligibility to Participate.  A Capital Crossing Employee shall be eligible to become a Participant as of July 1, 2007 (or, if applicable, any earlier date during 2007 on which he transfers to the employ of an Employer other than the Bank and is enrolled in the Plan in accordance with the Committee's enrollment procedures), provided he is then an Employee. Notwithstanding the foregoing, any such individual who has made a hardship withdrawal of elective deferrals from the Capital Crossing Plan within six months prior to the date of such initial eligibility shall not be entitled to make Section 401(k) Contributions under this Plan until six months have elapsed from the date of such hardship withdrawal.

53.2    Membership Based on Transfer of Plan Accounts.  Capital Crossing Employees who have accounts under the Capital Crossing Plan on July 31, 2007 and who have not previously become Participants shall become Members under the Plan effective August 1, 2007.

53.3    Vesting Service Credit.  A Capital Crossing Employee's most recent continuous period of service with Capital Crossing immediately preceding February 15, 2007 shall be treated as service with the Company for purposes of determining such Capital Crossing Employee's Years of Vesting Service.

53.4    Eligibility for Employer Contribution.  A Capital Crossing Employee's most recent continuous period of service with Capital Crossing immediately preceding February 15, 2007 shall be treated as service with the Company in establishing the date he or she completes a Twelve Month Period of Service for purposes of  eligibility to share in Employer Contributions for  Plan Years ending on or after December 31, 2007.

53.5    Compensation for Employer Contribution.  Compensation of a Capital Crossing Employee for purposes of determining his or her eligibility for an Employer Contribution for the 2007 Plan Year shall be annualized in accordance with such procedures as the Committee shall establish, and shall be based on such data as is available to the Committee.

53.6    Capital Crossing Plan Contributions Discontinued. The Bank, as successor to Capital Crossing with respect to the business and assets comprising the Bank's Capital Crossing division, shall continue contributions under the Capital Crossing Plan (and in accordance with Section 12.10 thereof) for eligible employees of such Division for the period from February 15, 2007 through June 30, 2007.  Effective June 30, 2007, all contributions by the Bank under the Capital Crossing Plan shall be discontinued.

## 54.    Spinoff, Investment of Transferred Assets, and Capital Crossing Accounts

54.1    Vesting.  All Transferred Accounts shall be fully vested and nonforfeitable effective August 1, 2007.

54.2    Spinoff.  Effective as of August 1, 2007, the portion of the net assets of the Capital Crossing Trust Fund attributable to Capital Crossing Employees shall be transferred to this Plan and the trust thereunder, respectively, and the terms of this Plan shall thereupon supersede in all respects the terms of the Capital Crossing Plan with respect to such Capital Crossing Accounts.  All persons (including current and former employees and their beneficiaries, and alternate payees under a qualified domestic relations order) having an undistributed interest in the Transferred Accounts immediately prior to August 1, 2007 shall, on and after August 1, 2007, be entitled to benefits provided solely from this Plan (including this Supplement Q), in lieu of any and all interest which they had or may have had under the Capital Crossing Plan.  Without limiting the generality of the foregoing, beneficiary designations under the Capital Crossing Plan shall not apply to the Transferred Accounts, and the Beneficiary with respect thereto shall be determined on and after August 1, 2007 based on designations made by the Member under this Plan (or this Plan's default rules in the absence of such a designation).

54.3    Transfer of Capital Crossing Trust Fund.  The portion of the Capital Crossing Trust Fund attributable to the Transferred Accounts held by the trustees of the Capital Crossing Trust Fund shall be transferred to the Trustee on August 1, 2007 or as soon as practicable thereafter.  If and to the extent that such transfer is not completed on August 1, 2007, such trustees shall hold such assets, as adjusted for investment gain or loss thereon and expenses attributable thereto, as an additional trustee under this Plan, until such transfer is completed.

KL3 2630220.9

54.4    <u>Allocation to Accounts</u>.  Funds transferred to the Trustee pursuant to Section 54.3 in respect of a Member's Transferred Account shall be allocated under the Plan to such Member's existing Member's Account (if any) and otherwise to a Member's Account created for such Member (including, if applicable, Beneficiary) as of the date of transfer. Within each Member's Account, the portion so transferred attributable to elective deferrals under Section 401(k) of the Code shall be allocated to the Member's Section 401(k) Contributions Account, the portion allocable to matching contributions shall be allocated to the Member's Employer Contributions Account, and the portion allocable to rollover contributions shall be allocated to the Member's Rollover Account.

54.5    <u>Investment of Transferred Accounts</u>.  Funds transferred to the Trustee in respect of a Member's Transferred Account pursuant to Section 54.3 shall initially be invested in accordance with Section 54.6 and shall remain so invested until the end of the blackout period established under Section 54.8 in connection with the Spinoff ("Blackout Period").  Thereafter, the Member may change such investments incident to a change made in the investment of his Member's Account in accordance with Section 6.2 of the Plan.

54.6    <u>Fund Mapping</u>.  The <u>following</u> fund mapping shall become effective upon the transfer pursuant to Section 54.3:

| Your Current Investment Options | | New Investment Options |
|---|---|---|
| Merrill Lynch Retirement Preservation Trust | ➔ | PRIMCO Stable Value Fund |
| Van Kampen Equity & Income – Class A | ➔ | PRIMCO Stable Value Fund |
| Calvert Income Fund | ➔ | PIMCO Total Return Fund – Administrative Class |
| BlackRock Fundamental Growth Fund – Class A | ➔ | Fidelity Large Cap Stock Fund |
| Massachusetts Investors Growth Stock Fund – Class A | ➔ | Fidelity Large Cap Stock Fund |
| BlackRock S&P 500 Index – Class I | ➔ | Vanguard Institutional Index Fund – Institutional Class |
| Davis NY Venture Fund – Class A | ➔ | Vanguard Institutional Index Fund – Institutional Class |
| Lord Abbett Mid Cap Value – Class P | ➔ | T. Rowe Price Mid Cap Value Fund |
| Loomis Sayles Mid Cap Growth – Class F | ➔ | Calamos Growth Fund – Class A |

| | | |
|---|---|---|
| BlackRock Aurora – Class A | ➔ | T. Rowe Price Mid Cap Value Fund |
| John Hancock Small Cap Equity – Class A | ➔ | Century Small Cap Select Fund – Institutional Class |
| Delaware Group Trend Fund | ➔ | Century Small Cap Select Fund – Institutional Class |
| ING International Value Fund – Class A | ➔ | Neuberger Berman International Fund – Investor Class |
| BlackRock Global Allocation – Class A | ➔ | PRIMCO Stable Value Fund |
| Oppenheimer Global Fund | ➔ | American Funds Capital Growth & Income Fund – Class R4 |

54.7    Outstanding Loans.  Loans with respect to the Transferred Accounts outstanding under the Capital Crossing Plan as of the date of Spinoff shall be (i) held by the Trustee as assets of this Plan, (ii) governed by the terms of such loans in effect immediately preceding the Spinoff, and (iii) treated as loans under this Plan in determining eligibility for future loans under Article XVI.  Notwithstanding the foregoing, repayments of such loans shall be suspended from June 30, 2007 until the end of the Blackout Period, at which time the outstanding loan balance shall be reamortized based on the number of loan repayments remaining and the payroll cycle applicable to the Member.

54. 8 Blackout Period and Notice.  To facilitate the Spinoff and related transactions described in above, the Committee shall establish such blackout period or periods as it shall deem necessary or advisable, which may  differ as among the various functions to which such periods apply, and shall give such notice or notices as shall be required by Section 101(i) of ERISA and Department of Labor Regulation section 2520.1-101-3.

<u>Supplement R</u>

<u>TO THE</u>

<u>LEHMAN BROTHERS SAVINGS PLAN</u>

**(Articles 55-57)**

Special Provisions Relating to Eagle Energy Partners LLP
<u>(including amendment of Eagle Energy Partners LLP 401(k) Plan)</u>

      This Supplement R (i) provides past service credit for certain employees for service with Eagle Energy Partners LLP for purposes of eligibility to share in Employer Contributions and for vesting, effective commencing October 1, 2007, and (ii) provides for the merger of the Eagle Energy Partners LLP 401(k) Plan into this Plan, effective December 12, 2007. This Supplement, in addition to constituting part of the Lehman Brothers Savings Plan, shall constitute an amendment to the Eagle Energy Partners LLP 401(k) Plan to the extent necessary to give full effect thereto,

**55.    Definitions**

55.1    <u>Special Definitions</u>.  For purposes of this Supplement R:

    55.1.1  "<u>Lehman Brothers</u>" means Lehman Brothers Inc.

    21.9.2    55.1.2    "<u>Eagle Energy</u>" means Eagle Energy Partners LLP, a corporation all of whose capital stock was acquired by Lehman Brothers on June 25, 2007.

    55.1.3  "<u>Eagle Energy Account</u>" means an account maintained under the Eagle Energy Plan for a participant (or deceased participant's beneficiary) therein immediately prior to December 12, 2007.

    55.1.4  "<u>Eagle Energy Plan</u>" means the Eagle Energy Partners LLP 401(k) Plan as in effect prior to the Merger.

    55.1.5  "<u>Eagle Energy Trust Fund</u>" means the trust fund maintained under the Eagle Energy Plan immediately prior to December 12, 2007.

    55.1.6  "<u>Eagle Energy Employee</u>" means an individual who (i) is employed by Eagle Energy as of October 1, 2007, or (ii) transferred from Eagle Energy to the employ of any other Employer between June 25, 2007 and October 1, 2007 and remained in the employ of an Employer on October 1, 2007.

    55.1.7  "<u>Eagle Energy Account Holder</u>" means a participant (or deceased participant's beneficiary) in the Eagle Energy Plan with an undistributed Eagle Energy Account immediately prior to December 12, 2007.

55.1.8 "<u>Merger</u>" means the merger of the Eagle Energy Plan into the Plan, effective December 12, 2007.

55.1.9 "<u>Transferred Accounts</u>" means the Eagle Energy Accounts transferred to the Plan pursuant to the Merger.

## 56.  Participation, Past Service Credit, Transfer of Accounts, and Discontinuance of Eagle Energy Contributions

56.1    <u>Eligibility to Participate</u>.  An Eagle Energy Employee shall be eligible to become a Participant as of October 1, 2007 (or, if applicable, any earlier date between June 25, 2007 and October 1, 2007 on which he or she transfers to the employ of an Employer other than Eagle Energy and is enrolled in the Plan in accordance with the Committee's enrollment procedures), provided he or she is then an Employee.

56.2    <u>Membership Based on Transfer of Plan Accounts</u>.  Eagle Energy Account Holders who have not previously become Participants shall become Members (or, if applicable, Beneficiaries) under the Plan effective December 12, 2007.

56.3    <u>Vesting Service Credit</u>.  An Eagle Energy Employee's most recent continuous period of service with Eagle Energy immediately preceding June 25, 2007 shall be treated as service with the Company for purposes of determining such Eagle Energy Employee's Years of Vesting Service.

56.4    <u>Eligibility for Employer Contribution</u>.  An Eagle Energy Employee's most recent continuous period of service with Eagle Energy immediately preceding June 25, 2007, shall be treated as service with the Company in establishing the date he or she completes a Twelve Month Period of Service for purposes of eligibility to share in Employer Contributions for Plan Years ending on or after December 31, 2007.

56.5    <u>Compensation Limit for 2007 Employer Contribution Eligibility</u>. Eligibility of an Eagle Energy Employee for an Employer Contribution for the 2007 Plan Year shall be determined based on the aggregate amount of his or her compensation from Eagle Energy or any other Employer during 2007, including compensation prior to the date of initial eligibility under the Plan.

56.6    <u>Eagle Energy Plan  Superseded</u>.  Effective September 30 2007, contributions by Eagle Energy in respect of elective deferrals and matching contributions by its employees shall be made solely in accordance and subject to all the terms and conditions of the Lehman Brothers Savings Plan (including this Supplement R) in lieu of the Eagle Energy Plan.

## 57.  Merger and Investment of Transferred Eagle Energy Accounts

57.1    <u>Vesting</u>.  All Transferred Accounts shall be fully vested and nonforfeitable effective December 12, 2007.

57.2    <u>Merger</u>.  Effective as of December 12, 2007, all net assets of the Eagle Energy Trust Fund shall be transferred to this Plan and the trust thereunder, respectively, and the

KL3 2630220.9

terms of this Plan shall thereupon supersede in all respects the terms of the Eagle Energy Plan with respect to the Eagle Energy Accounts. All persons having an undistributed interest in any such Account immediately prior to December 12, 2007 shall, on and after December 12, 2007, be entitled to benefits provided solely from this Plan (including this Supplement R), in lieu of any and all interest which they had or may have had under the Eagle Energy Plan. Without limiting the generality of the foregoing, beneficiary designations under the Eagle Energy Plan shall not apply to the Transferred Accounts, and the Beneficiary with respect thereto shall be determined on and after December 12, 2007 based on designations made by the Member under this Plan (or this Plan's default rules in the absence of such a designation).

      57.3   <u>Transfer of Eagle Energy Trust Fund</u>. The net assets of the Eagle Energy Trust Fund held by the trustees of the Eagle Energy Trust Fund shall be transferred to the Trustee on December 12, 2007 or as soon as practicable thereafter. If and to the extent that such transfer is not completed on December 12, 2007, such trustees shall hold such assets, as adjusted for investment gain or loss thereon and expenses attributable thereto, as an additional trustee under this Plan, until such transfer is completed.

      57.4   <u>Allocation to Accounts</u>. Funds transferred to the Trustee pursuant to Section 57.3 in respect of a Member's Transferred Account shall be allocated under the Plan to such Member's existing Member's Account (if any) and otherwise to a Member's Account created for such Member as of the date of transfer. Within each Member's Account, the portion so transferred attributable to elective deferrals under Section 401(k) of the Code shall be allocated to the Member's Section 401(k) Contributions Account, the portion allocable to matching contributions shall be allocated to the Member's Employer Contributions Account, and the portion allocable to rollover contributions shall be allocated to the Member's Rollover Account.

      57.5   <u>Investment of Transferred Accounts</u>. Funds transferred to the Trustee in respect of a Member's Transferred Account pursuant to Section 57.3 shall initially be invested in accordance with Section 57.6 and shall remain so invested until the end of the blackout period established under Section 57.8 in connection with the Merger. Thereafter, the Member may change such investments incident to a change made in the investment of his Member's Account in accordance with Section 6.2 of the Plan.

      57.6   <u>Fund Mapping</u>. The following fund mapping shall become effective upon the transfer pursuant to Section 57.3:

| Current Investment Options | | New Investment Options |
|---|---|---|
| American Funds® Capital World Growth and Income Fund[SM] – Class R4 | → | American Funds® Capital World Growth and Income Fund[SM] – Class R4[5] |
| American Funds® Fundamental Investors [SM] – Class R4 | → | MFS Value Fund – Class A |
| American Funds® Growth Fund of America® -- Class R4 | → | Fidelity Large Cap Stock Fund |
| American Funds® New Perspective Fund® -- Class R4 | → | American Funds® Capital World Growth and Income Fund® -- Class R4 |
| BlackRock Health Sciences Opportunities Portfolio – Service Class Shares[1] | → | Fidelity Select Health Care Portfolio |

- 174 -

| Current Investment Options | | New Investment Options |
| --- | --- | --- |
| Fidelity Advisor Diversified International Fund[2] -- Class A | → | Fidelity Diversified International Fund[6] |
| Neuberger Berman Partners Fund® -- Advisor Class | → | Neuberger Berman Partners Fund® Investor Class[6] |
| North Track NYSE Arca Tech 100 Index – Fund A | → | Fidelity Select Technology Portfolio |
| SSgA S&P Index 500 | → | Vanguard Institutional Index Fund – Institutional Shares |
| T.Rowe Price Equity Income | → | MFS Value Fund – Class A |
| T.Rowe Price International Equity Index[3] | → | Fidelity Diversified International Fund |
| T.Rowe Price New Era | → | Neuberger Berman Partners Fund® -- Investor Class |
| Third Avenue Value | → | T.Rowe Price Mid-Cap Value Fund |
| Vanguard Inflation Protected Securities | → | INVESCO Stable Value Trust Fund |
| Vanguard Intermediate Bond Index | → | Fidelity U.S. Bond Index Fund |
| Vanguard Mid Cap Index | → | T.Rowe Price Mid-Cap Value Fund |
| Vanguard Prime Money Market | → | INVESCO Stable Value Trust Fund |
| Vanguard REIT Index[4] | → | T.Rowe Price Mid-Cap Value Fund |
| Vanguard Short-Term Bond Index | → | INVESCO Stable Value Trust Fund |
| Vanguard Short-Term Federal Fund | → | INVESCO Stable Value Trust Fund |
| Vanguard Small Cap Growth Index | → | Century Small Cap Select Fund – Institutional Class |
| Vanguard Small Cap Index | → | Neuberger Berman Genesis Fund – Investor Class |
| Vanguard Total Bond Market Index | → | Fidelity U.S. Bond Index Fund |
| Vanguard Total Stock Market Index | → | Vanguard Total Stock Market Index Fund Signal™ Shares |

57.7    Outstanding Loans.  Loans with respect to the Transferred Accounts outstanding under the Eagle Energy Plan as of the date of the Merger shall be (i) held by the Trustee as assets of this Plan, (ii) governed by the terms of such loans in effect immediately preceding the Merger, and (iii) treated as loans under this Plan in determining eligibility for future loans under Article XVI.  Notwithstanding the foregoing, repayments of such loans shall be suspended from October 1, 2007 until the first pay date in 2008, at which time the outstanding loan balance shall be reamortized based on the number of loan repayments remaining and the payroll cycle applicable to the Member.

57. 8    Blackout Period and Notice.  To facilitate the Merger and related transactions described above, the Committee shall establish such blackout period or periods as it shall deem necessary or advisable, which may differ as among the various functions to which such periods apply, and shall give such notice or notices as shall be required by Section 101(i) of ERISA and Department of Labor Regulation section 2520.1-101-3.

Supplement S

TO THE

LEHMAN BROTHERS SAVINGS PLAN

**(Articles 58-60)**

Special Provisions Relating to LightPoint Capital Management, LLC
(including amendment of LightPoint Capital Management, LLC 401(k) Plan)

      This Supplement S (i) provides past service credit for certain employees for service with LightPoint Capital Management, LLC for purposes of eligibility to share in Employer Contributions and for vesting, effective commencing August 26, 2007, and (ii) provides for the merger of the LightPoint Capital Management, LLC 401(k) Plan into this Plan, effective December 10, 2007.  This Supplement, in addition to constituting part of the Lehman Brothers Savings Plan, shall constitute an amendment to the LightPoint Capital Management, LLC 401(k) Plan to the extent necessary to give full effect thereto,

## 58.   Definitions

58.1   Special Definitions.  For purposes of this Supplement S:

      58.1.1  "Lehman Asset Management" means Lehman Brothers Asset Management, LLC.

      58.1.2  "LightPoint" means LightPoint Capital Management, LLC a corporation all of whose capital stock was acquired by Lehman Asset Management on August 26, 2007.

      58.1.3  "LightPoint Account" means an account maintained under the LightPoint Plan for a participant (or deceased participant's beneficiary) therein immediately prior to December 10, 2007.

      58.1.4  "LightPoint Plan" means the LightPoint Management, LLC 401(k) Plan as in effect prior to the Merger.

      58.1.5  "LightPoint Trust Fund" means the trust funds maintained under the LightPoint Plan immediately prior to December 10, 2007.

      58.1.6  "LightPoint Employee" means an individual who is employed by LightPoint immediately prior to  August 26, 2007. and is employed by LightPoint or another Employer on August 26, 2007.

      58.1.7  "LightPoint Account Holder" means a participant (or deceased participant's beneficiary) of the LightPoint Plan with an undistributed LightPoint Account immediately prior to December 10, 2007.

      58.1.8  "Merger" means the merger of the LightPoint Plan into the Plan, effective December 10, 2007.

58.1.9 "Transferred Accounts" means the LightPoint Plan Accounts transferred to the Plan pursuant to the Merger.

## 59. Participation, Past Service Credit, Transfer of Accounts, and Discontinuance of LightPoint Contributions

59.1    Eligibility to Participate.  A LightPoint Employee shall be eligible to become a Participant as of August 26, 2007, provided he or she is then an Employee.

59.2    Membership Based on Transfer of Plan Accounts.  LightPoint Account Holders who have not previously become Participants shall become Members (or, if applicable, Beneficiaries) under the Plan effective December 10, 2007.

59.3    Vesting Service Credit.  A LightPoint Employee's most recent continuous period of service with LightPoint immediately preceding August 26, 2007 shall be treated as service with the Company for purposes of determining such LightPoint Employee's Years of Vesting Service.

59.4    Eligibility for Employer Contribution.  A LightPoint Employee's most recent continuous period of service with LightPoint immediately preceding August 26, 2007, shall be treated as service with the Company in establishing the date he or she completes a Twelve Month Period of Service for purposes of eligibility to share in Employer Contributions for Plan Years ending on or after December 31, 2007.

59.5    Compensation Limit for 2007 Employer Contribution Eligibility. Eligibility of a LightPoint Employee for an Employer Contribution for the 2007 Plan Year shall be determined based on the aggregate amount of his or her compensation from LightPoint or any other Employer during 2007, including compensation prior to the date of initial eligibility under the Plan.

59.6    LightPoint Plan Superseded.  Effective August 26, 2007, contributions by LightPoint  in respect of elective deferrals and matching contributions by its employees shall be made solely in accordance and subject to all the terms and conditions of the Lehman Brothers Savings Plan (including this Supplement S), in lieu of the LightPoint Plan.

## 60. Merger and Investment of Transferred LightPoint Accounts

60.1    Vesting.  All Transferred Accounts of LightPoint Employees who are employed by an Employer or an Affiliate on December 10, 2007 shall be fully vested and nonforfeitable as of such date.

60.2    Merger.  Effective as of December 10, 2007, all net assets of the LightPoint Trust Fund shall be transferred to this Plan and the trust thereunder, respectively, and the terms of this Plan shall thereupon supersede in all respects the terms of the LightPoint Plan with respect to the LightPoint Accounts.  Persons having an undistributed interest in the LightPoint Accounts immediately prior to December 10, 2007 shall, on and after December 10, 2007, be entitled to benefits provided solely from this Plan (including this Supplement S), in lieu

- 177 -

of any and all interest which they had or may have had under the LightPoint Plan. Without limiting the generality of the foregoing, beneficiary designations under the LightPoint Plan shall not apply to the Transferred Accounts, and the Beneficiary with respect thereto shall be determined on and after December 10, 2007 based on designations made by the Member under this Plan (or this Plan's default rules in the absence of such a designation).

60.3    Transfer of LightPoint Trust Fund.  The net assets of the LightPoint Capital Fund attributable to the Transferred Accounts held by the trustees of the LightPoint Trust Fund shall be transferred to the Trustee on December 10, 2007 or as soon as practicable thereafter.  If and to the extent that such transfer is not completed on December 10, 2007, such trustees shall hold such assets, as adjusted for investment gain or loss thereon and expenses attributable thereto, as an additional trustee under this Plan, until such transfer is completed.

60.4    Allocation to Accounts.  Funds transferred to the Trustee pursuant to Section 60.3 in respect of a Member's Transferred Account shall be allocated under the Plan to such Member's existing Member's Account (if any) and otherwise to a Member's Account created for such Member as of the date of transfer.  Within each Member's Account, the portion so transferred attributable to elective deferrals under Section 401(k) of the Code shall be allocated to the Member's Section 401(k) Contributions Account, the portion allocable to matching contributions shall be allocated to the Member's Employer Contributions Account, and the portion allocable to rollover contributions shall be allocated to the Member's Rollover Account.

60.5    Investment of Transferred Accounts.  Funds transferred to the Trustee in respect of a Member's Transferred Account pursuant to Section 60.3 shall initially be invested in accordance with Section 60.6 and shall remain so invested until the end of the blackout period established under Section 60.8 in connection with the Merger.  Thereafter, the Member may change such investments incident to a change made in the investment of his Member's Account in accordance with Section 6.2 of the Plan.

60.6    Fund Mapping.  The following fund mapping shall become effective upon the transfer pursuant to Section 60.3:

| Current Investment Options | | New Investment Options |
|---|---|---|
| American Funds® American Balanced Fund | → | INVESCO Stable Value Trust Fund |
| American Funds® EuroPacific Growth Fund | → | Fidelity Diversified International Fund |
| American Funds® Growth Fund of America | → | Fidelity Large Cap Stock Fund |
| DWS RREEF Real Estate Securities Fund[1] | → | T.Rowe Price Mid Cap Value |
| John Hancock Classic Value – Class A | → | MFS Value – Class A |
| John Hancock Lifestyle Fund – Aggressive Portfolio | → | Fidelity Freedom 2040 Fund® |
| John Hancock Lifestyle Fund – Balanced Portfolio | → | Fidelity Freedom 2010 Fund® |
| John Hancock Lifestyle Fund – Conservative Portfolio | → | INVESCO Stable Value Trust Fund |
| John Hancock Lifestyle Fund – Growth Portfolio | → | Fidelity Freedom 2020 Fund® |
| John Hancock Lifestyle Fund – Moderate | → | INVESCO Stable Value Trust Fund |

| Current Investment Options | | New Investment Options |
|---|---|---|
| Portfolio | | |
| John Hancock Mid Cap Index Trust | → | Vanguard Total Stock Market Index |
| John Hancock Stable Value Fund | → | INVESCO Stable Value Trust Fund |
| Legg Mason Partners Global High Yield Bond Fund | → | Lehman Brothers High Income Bond Fund – Investor Class |
| Oppenheimer Developing Markets Fund | → | Templeton Developing Markets Trust |
| PIMCO Total Return Fund – Administrative Class | → | PIMCO Total Return Fund – Administrative Class[2] |
| T.Rowe Price Health Sciences Fund | → | Fidelity Select Biotechnology Portfolio |
| Vanguard Energy Fund | → | Neuberger Berman Partners Fund – Investor Class |
| Vanguard Explorer Fund | → | Century Small Cap Select Fund – Institutional Class |

60.7    Outstanding Loans.  Loans with respect to the Transferred Accounts outstanding under the LightPoint Plan as of the date of the Merger shall be (i) held by the Trustee as assets of this Plan, (ii) governed by the terms of such loans in effect immediately preceding the Merger, and (iii) treated as loans under this Plan in determining eligibility for future loans under Article XVI.  Notwithstanding the foregoing, repayments of such loans shall be suspended as of August 26, 2007 until the first pay date in 2008, at which time the outstanding loan balance shall be reamortized based on the number of loan repayments remaining and the payroll cycle applicable to the Member.

60. 8    Blackout Period and Notice.  To facilitate the Merger and related transactions described above, the Committee shall establish such blackout period or periods as it shall deem necessary or advisable, which may differ as among the various functions to which such periods apply, and shall give such notice or notices as shall be required by Section 101(i) of ERISA and Department of Labor Regulation section 2520.1-101-3.

## TRUST, RECORDKEEPING

## AND ADMINISTRATIVE SERVICES AGREEMENT

Between

---

## LEHMAN BROTHERS HOLDINGS INC. AND

## FIDELITY MANAGEMENT TRUST COMPANY

---

## LEHMAN BROTHERS SAVINGS PLAN TRUST

*Restatement effective as of January 1, 2006*

Page

Section 1. Definitions ...........................................................................................................2

Section 2. Services in General ...............................................................................................6

Section 3. Trust ....................................................................................................................7

Section 4. Disbursements ......................................................................................................7

    (a) Administrator or Recordkeeper Directed Disbursements .................................................7

    (b) Participant Withdrawal Requests ...................................................................................7

    (c) Limitations ..................................................................................................................8

Section 5. Investment of Trust .............................................................................................8

    (a) Selection of Investment Options ....................................................................................8

    (b) Available Investment Options ........................................................................................8

    (c) Participant Direction ....................................................................................................9

    (d) Mutual Funds ............................................................................................................10

    (e) Company Stock and American Express Stock ...............................................................11

    (f) Participant Loans ......................................................................................................20

    (g) Participant Loans for the Purchase of a Primary Residence ...........................................21

    (h) PRIMCO Stable Value Fund .......................................................................................21

    (i) Reliance of Trustee on Directions ................................................................................22

    (j) Trustee Powers .........................................................................................................23

    (k) Accounts ..................................................................................................................25

    (l) Inspection and Audit ..................................................................................................25

    (m) Allocation of Plan Interests .......................................................................................25

Section 6. Recordkeeping and Administrative Services .......................................................26

    (a) Recordkeeping Services in General .............................................................................26

    (b) Plan Administrative Manual ........................................................................................26

    (c) Investment Options ...................................................................................................27

    (d) Compliance ..............................................................................................................27

    (e) Updates ...................................................................................................................27

    (f) System and Business Recovery ...................................................................................28

    (g) Errors .....................................................................................................................28

    (h) Client Satisfaction. ....................................................................................................28

Page

(i) Access to the Company's Auditors ................................................................................. 29

(j) On-Site Visits ................................................................................................................ 29

(k) Technology ................................................................................................................... 29

(l) Fiduciary Status ............................................................................................................ 29

(m) Insurance .................................................................................................................... 30

(n) Investment Advice ....................................................................................................... 30

(o) Retention of Records ................................................................................................... 30

(p) Access to Records ........................................................................................................ 30

(q) Compliance with Applicable Laws.. ............................................................................ 30

(r) Additional Recordkeeping Services. ............................................................................ 30

(s) Fees and Expenses. ...................................................................................................... 30

(t) Plan Data. ..................................................................................................................... 31

(u) Plan Amendments. ....................................................................................................... 32

(v) Confidentiality. ............................................................................................................ 32

(w) Recording System. ...................................................................................................... 34

(x) Returns, Reports and Information ................................................................................ 35

**Section 7.  Compensation and Expenses ................................................................................. 37**

**Section 8.  Directions and Indemnification. ............................................................................ 38**

(a) Identity of Administrator and Named Fiduciaries ....................................................... 38

(b) Directions from Administrator ..................................................................................... 38

(c) Directions from Named Fiduciary ................................................................................ 38

(d) Co-Fiduciary Liability .................................................................................................. 39

(e) Indemnification of Trustee ........................................................................................... 39

(f) Indemnification of the Company ................................................................................... 39

(g) Indemnification of the Recordkeeper ........................................................................... 40

(h) Option to Defend .......................................................................................................... 40

(i) Standard of Care ........................................................................................................... 41

Page

(j) Survival ............................................................................................................................41

**Section 9. Resignation or Removal of Trustee..........................................................................41**

(a) Resignation .......................................................................................................................41

(b) Removal.............................................................................................................................41

(c) Duties of Resigning or Removed Trustee..........................................................................41

**Section 10. Successor Trustee. ..................................................................................................42**

(a) Appointment ......................................................................................................................42

(b) Acceptance ........................................................................................................................42

(c) Corporate Action ...............................................................................................................42

**Section 11. Termination of Recordkeeping Services. ...............................................................42**

(a) Renewal .............................................................................................................................42

(b) Breach................................................................................................................................42

(c) Post-Notice Quality Maintenance.....................................................................................43

(d) Termination Assistance .....................................................................................................43

(e) Survival..............................................................................................................................44

**Section 12. Resignation, Removal, and Termination Notices ...................................................44**

**Section 13. Duration of Trust....................................................................................................44**

**Section 14. Amendment or Modification ..................................................................................45**

**Section 15. Electronic Services.................................................................................................45**

**Section 16. General. ..................................................................................................................47**

(a) Performance by Trustee, its Agents or Affiliates .............................................................47

(b) Delegation by Employer....................................................................................................47

(c) Entire Agreement...............................................................................................................47

(d) Waiver ...............................................................................................................................47

(e) Successors and Assigns .....................................................................................................48

(f) Partial Invalidity................................................................................................................48

(g) Section Headings ...............................................................................................................48

(continued)

Page

**Section 17.  Governing Law.** ..........................................................................................................**50**

(a) Massachusetts Law Controls ............................................................................................50

(b) Trust Agreement Controls ...............................................................................................50

**Section 18.  Plan Qualification** ....................................................................................................**51**

**Section 19.  Data Protection**........… ……………………………………………………...**52**

**Section 20.  Force Majeure**…………………………………………….……………….…..**53**

**SCHEDULES**

**Schedule A – Recordkeeping and Administrative Services**

**Schedule B – Fee Schedule**

**Schedule C – Investment Options**

**Schedule D – Operational Guidelines for the Primco Stable Value Fund**

**Schedule E - GICs**

**Schedule F – Exchange Guidelines**

**Schedule G – Operating Procedures for Non-Fidelity Mutual Funds**

**Schedule H – Available Liquidity**

**Schedule I – Operating Procedures for Participant Loans**

**Schedule J – Form 5500 Services**

**Schedule K – Operational Procedures for Hardship Withdrawals by Phone**

**Schedule L – Section 404(c) Compliance**

**TRUST, RECORDKEEPING AND ADMINISTRATIVE SERVICES AGREEMENT**, originally dated as of the first day of February, 2001, and subsequently amended from time to time, and hereby restated in its entirety effective as of January 1, 2006, between **LEHMAN BROTHERS HOLDINGS INC.**, a Delaware corporation, having an office at 745 Seventh Avenue,, , New York, New York 10019 (the "Company"), and **FIDELITY MANAGEMENT TRUST COMPANY**, a Massachusetts trust company ("Trustee" and/or "Recordkeeper", as applicable), having an office at 82 Devonshire Street, Boston, Massachusetts 02109.

## WITNESSETH:

**WHEREAS**, the Company sponsors the Lehman Brothers Savings Plan (the "Plan") for the benefit of its eligible employees and eligible employees of its participating subsidiaries and affiliates; and

**WHEREAS**, the Company desires to establish a trust to hold and invest the assets of the Plan for the exclusive benefit of participants in the Plan and their beneficiaries; and

**WHEREAS**, certain affiliates and subsidiaries of the Company maintain , or may in the future maintain, qualified defined contribution plans for the benefit of their eligible employees ("Other Plans"); and

**WHEREAS**, the Company may from time to time request the Trustee to serve as trustee for all or a portion of the assets of one or more such Other Plans, upon which event such Other Plan shall be treated as a Plan hereunder, subject to such additional or other provisions as may be agreed upon by the Company and the Trustee in connection with such treatment; and

**WHEREAS**, in the event that the Trustee shall thus serve as such under more than one Plan hereunder, the Trustee shall maintain a separate account reflecting the equitable share of each Plan in the Trust and in all investments, receipts, disbursements and other transactions hereunder, and shall report the value of such equitable share at such times as may be mutually agreed upon by the Trustee and the Company. Such equitable share shall be used solely for the payments of benefits, expenses and other charges properly allocable to each such Plan and shall not be used for the payment of benefits, expenses or other charges properly allocable to any other Plan; and

**WHEREAS**, the Trustee is willing to hold and invest the applicable plan assets in trust pursuant to the provisions of this Trust Agreement, which trust shall as applicable constitute a continuation, by means of an amendment and restatement, of each of the prior trusts from which plan assets are transferred to the Trustee; and

**WHEREAS**, the Trustee is willing to hold and invest the aforesaid plan assets in trust among several investment options selected by the Named Fiduciary (or, in the case of the Company Stock Fund, established pursuant to the terms of the Plan); and

**WHEREAS**, the Employee Benefit Plans Committee of the Company ("Committee), in its capacity as Named Fiduciary and Administrator of the Plan (as defined below), desires the Trustee and the Recordkeeper to perform certain recordkeeping and administrative services for the Plan that are ministerial in nature, and the Trustee and Recordkeeper is willing to perform such services in accordance with this Agreement and the Plan Administrative Manual,

**NOW, THEREFORE**, in consideration of the foregoing premises and the mutual covenants and agreements set forth below, the Company, on its own behalf with respect to its responsibilities in the capacity of Plan sponsor (as distinguished from Plan fiduciary) and, with respect to matters that are the responsibility of the named fiduciary of the Plan, solely as agent for the Committee (and not in the capacity of Plan fiduciary), and the Trustee and the Recordkeeper agree as follows:

**Section 1. Definitions**. The following terms as used in this Trust Agreement have the meaning indicated unless the context clearly requires otherwise:

(a) "Administrator" shall mean the Company's Employee Benefit Plans Committee (which may act hereunder directly or through its agents, who may include employees of the Company and its subsidiaries and affiliates).

(b) "Agreement" shall mean this Trust, Recordkeeping and Administrative Services Agreement, as the same may be amended and in effect from time to time.

(c) "American Express Stock" shall mean common stock of American Express Company.

(d) "American Express Stock Fund" shall mean the investment fund maintained pursuant to the terms of the Plan prior to the discontinuance of such fund effective January 31, 2007,

2

which is invested in American Express Stock subject to the provisions of Section 5(e) of this Agreement.

(e)     "Business Day" shall mean each day the New York Stock Exchange (NYSE) is open. The closing of a Business Day shall mean the NYSE's normal closing time of 4:00 p.m.(ET), however, in the event the NYSE closes before such time or alters its closing time, all references to the NYSE closing time shall meant the actual or altered closing time of the NYSE.

(f)     "Code" shall mean the Internal Revenue Code of 1986, as it has been or may be amended from time to time, and applicable regulations thereunder.

(g)     "Company" shall mean Lehman Brothers Holdings Inc., a Delaware corporation, or any successor to all or substantially all of its businesses which, by agreement, operation of law or otherwise, assumes the responsibility of the Company under this Agreement.

(h)     "Company Stock" shall mean the common stock of the Company, par value $.10 per share, or such other par value which may result from a change in the Company's capitalization, or any other stock which in the future constitutes"Lehman Stock" as defined in the Plan and meets the requirements of section 407(d)(5) of ERISA with respect to the Plan.

(i)     "Company Stock Fund" shall mean the investment fund established and maintained pursuant to the terms of the Plan which is invested in Company Stock subject to the provisions of Section 5(e) of this Agreement.

(j)     "Confidential Information" shall mean (individually and collectively) proprietary information of the parties to this Agreement, including but not limited to, their inventions, know how, trade secrets, business affairs, prospect lists, product designs, product plans, business strategies, finances, fee structures, etc.

(k)     "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as it has been or may be amended from time to time, and applicable regulations thereunder.

3

(k)  "FBSLLC" shall mean Fidelity Brokerage Services LLC.

(l)  "Fidelity Mutual Fund" shall mean any registered investment company advised by Fidelity Management & Research Company or any of its affiliates.

(m)  "FIIOC" shall mean Fidelity Investments Institutional Operations Company, Inc.

(n)  "GICs" shall mean the guaranteed investment contracts entered into by the Company, any other employer, investment manager, the Trustee or any predecessor trustee, with respect to the Plan.

(o)  "Mutual Fund" shall refer both to Fidelity Mutual Funds and Non-Fidelity Mutual Funds.

(p)  "Named Fiduciary" shall mean the Company's Employee Benefit Plans Committee acting in the capacity of named fiduciary for the Plan as defined in section 402(a) of ERISA.(including, without limitation, for purposes of section 402(c) of ERISA).

(q)  "Non-Fidelity Mutual Fund" shall mean certain investment companies not advised by Fidelity Management & Research Company or any of its affiliates.

(r)  "Participant" shall mean, with respect to the Plan, any employee (or former employee) with an account under the Plan, which has not yet been fully distributed and/or forfeited, and shall include the beneficiary(ies) with respect to the account of any deceased employee (or deceased former employee) until such account has been fully distributed and/or forfeited.

(s)  "Participant Recordkeeping Reconciliation Period" shall mean the period beginning on the date of the initial transfer of assets to the Trust with respect to any Plan and ending on the date of the completion of the reconciliation of Participant records.

(t)  "PIN" shall mean personal identification number.

(u)  "Plan" shall mean the Lehman Brothers Savings Plan and such other tax-qualified, defined contribution plans which are maintained by the Company or any of its subsidiaries or affiliates for the benefit of their eligible employees as may be designated by the Company in writing to the Trustee as a Plan hereunder.

(v)  "Plan Administrative Manual" shall mean a written manual and any other policies, procedures or documents developed and maintained by the Company and Recordkeeper pursuant

4

to this Agreement which describes in detail processes and functions integral to the administration of the Plan that are to be performed by the Recordkeeper pursuant to this Agreement.

(w)     "Plan Data" shall mean (i) all records, data and information provided to the Recordkeeper by the Company or the Plan's previous recordkeeper and (ii) all data and information created by the Recordkeeper by processing the records, data, and information provided by the Company or its agent or as a result of providing the Recordkeeping Services.

(x)     "Recordkeeper" shall mean Fidelity Management Trust Company,  its agents or affiliates, in their capacity as recordkeeper for the Plan, including but not limited to FIIOC and  FLSLLC, as described in Section 16 (a) of this Agreement.

(y)     "Recordkeeping Services" shall mean those recordkeeping and administrative services as may be reasonably necessary to assure administration of the Plan in accordance with its terms and applicable law that Recordkeeper has agreed to perform pursuant to Section 6 and Schedule A of this Agreement and those services described in the Plan Administrative Manual.

(z)     "Reporting Date" shall mean the last day of each calendar quarter and, if not on the last day of a calendar quarter, the date as of which the Trustee resigns or is removed pursuant to Section 9 hereof or the date as of which this Agreement terminates pursuant to Section 11 hereof.

(aa)    "Stock" shall mean American Express Stock and Company Stock.

(bb)    "Trust" shall mean the Lehman Brothers Savings Plan Trust, being the trust established by the Company and the Trustee pursuant to the provisions of this Agreement.

(cc)    "Trustee" shall mean Fidelity Management Trust Company, a Massachusetts trust company and any successor to all or substantially all of its trust business as described in Section 10(c). The term Trustee shall also include any successor trustee appointed pursuant to Section 10 to the extent such successor agrees to serve as Trustee under this Agreement.

5

## Section 2. Services in General.

The trustee services provided under this Agreement shall be performed by the Trustee, and the administrative and recordkeeping functions performed for the Plan shall be provided by the Recordkeeper (either by itself or through its affiliates). To the extent reasonably possible, the provisions of this Agreement distinguish the trustee services provided by the Trustee from the recordkeeping and administrative services provided by the Recordkeeper. Nevertheless, the parties hereto recognize that certain Plan services involve both trustee and recordkeeping functions. General provisions of this Agreement apply collectively to the Trustee and Recordkeeper.

## Section 3. Trust.

The Company hereby establishes the Lehman Brothers Savings Plan Trust with the Trustee. The Trust shall consist of an initial contribution of money or other property acceptable to the Trustee in its sole discretion, made by the Company or transferred from a previous trustee under the Plan, such additional sums of money as shall from time to time be delivered to the Trustee under a Plan, all investments made therewith and proceeds thereof, and all earnings and profits thereon, less the payments that are made by the Trustee as provided herein, without distinction between principal and income. The Trustee hereby accepts the Trust on the terms and conditions set forth in this Agreement. In accepting this Trust, the Trustee shall be accountable for the assets received by it, subject to the terms and conditions of this Agreement. Except as provided under applicable law and the terms of the Plan, no part of the Trust allocable to a Plan may be used for, or diverted to, purposes other than the exclusive benefit of the Participants in the Plan or their beneficiaries or the reasonable expenses of Plan administration.

## Section 4. Disbursements.

(a)     Administrator or Recordkeeper Directed Disbursements. The Trustee shall make disbursements in the amounts and in the manner that the Administrator or the Recordkeeper directs from time to time in writing or such other electronic means as mutually agreed upon by the Company and Trustee, in accordance with the provisions of the Plan Administrative Manual. Except as required by ERISA, the Trustee shall have no responsibility to ascertain such direction's compliance with the terms of the Plan (except to the extent set forth in the Plan Administrative Manual) or any applicable law or the direction's effect for tax

6

purposes or otherwise; nor shall the Trustee have any responsibility to see to the application of any disbursement.

(b)    Participant Withdrawal Requests.  The Company hereby directs that, pursuant to the Plan, a Participant withdrawal request (whether in-service or post-termination, full or partial) may be made by the Participant to the Recordkeeper by telephone or such other electronic means as mutually agreed upon by Company, Recordkeeper and Trustee, and the Recordkeeper and Trustee shall process such request only after the identity of the Participant is verified by use of a PIN and social security number.  The Recordkeeper and the Trustee shall process such withdrawal in accordance with the Plan Administrative Manual.  In the case of a hardship withdrawal request, the Recordkeeper shall forward the withdrawal document to the Participant for execution and submission for processing to the Recordkeeper and the Trustee in accordance with the guidelines attached hereto as Schedule "K".

(c)    Limitations.  The Trustee shall not be required to make any disbursement in excess of the net realizable value of the assets of the Trust at the time of the disbursement. The Trustee shall be required to make all disbursements in cash or in Stock in accordance with the hierarchy of investments to be converted to cash or distributed in Stock as detailed in the Plan Administrative Manual unless the Administrator has provided written directions to the contrary.

## Section 5.  Investment of Trust.

(a)    Selection of Investment Options.  The Trustee shall have no responsibility for the selection of investment options under the Trust and shall not render investment advice to any person in connection with the selection of such options.

(b)    Available Investment Options.  The Named Fiduciary shall instruct the Trustee as to the investment options offered under the Plan (whether pursuant to the terms of the Plan or established by the Named Fiduciary pursuant to the authority vested in it pursuant to the Plan) in which the Trust shall be invested during the Participant Recordkeeping Reconciliation Period and in which Participants may invest in following the Participant Recordkeeping Reconciliation Period.  Such investment options shall be limited to (i) Stock, (ii) notes evidencing loans to Participants in accordance with the terms of the Plan, and (iii) such additional investment options as the Named Fiduciary may determine to offer, provided that such additional investment options may consist only of (i) Mutual Funds, (ii) a stable value fund maintained by PRIMCO including the GICs as set forth on Schedule "E" (which list of GICs are

7

subject to change, from time to time, upon direction of the Named Fiduciary, or an investment manager appointed by it, as in the cases of GICs in a separate account managed by Invesco and custodied by Trustee), and in accordance with the procedures set forth on Schedule "D", and (iii) portfolios of assets managed by an investment manager as defined in Section 3(38) of ERISA not affiliated with the Trustee (to be established as an outside managed separate investment funds subject to the provisions of Section 5(i)).

The investment options offered under the Plan from time to time shall be identified on Schedules "A" and "C" attached hereto. The Named Fiduciary shall give the Trustee advance notice of any change in the investment options offered under the Plan, and the Trustee and/or the Recordkeeper shall have the right to decline providing trustee and/or recordkeeping services for any investment option, provided that neither the Trustee nor Recordkeeper shall unreasonably decline providing such services. In the event of any such change, this Agreement and the Schedules hereto shall be amended by the parties to reflect such change.

The Trustee shall have no responsibility for (i) the determination of the investment options offered under the Plan, or (ii) for determining (as more specifically provided in Section 5(e)(ii)(A)) whether and to what extent the Plan provisions requiring the establishment and maintenance of the Company Stock Fund and American Express Stock Fund may continue to be given effect in accordance with their terms or are to any extent inconsistent with the fiduciary duty rules of section 404(a)(1) of ERISA as modified by section 404(a)(2) of ERISA.


(c) Participant Direction. As authorized under the Plan, each Participant shall direct the Trustee in which investment option(s) to invest the assets in the Participant's individual accounts. Such directions may be made by Participants by use of the telephone exchange system, the internet or in such other manner as may be agreed upon from time to time by the Administrator, the Recordkeeper and the Trustee, maintained for such purposes by the Recordkeeper or its agent, in accordance with written Exchange Guidelines attached hereto as Schedule "F". In the event that the Trustee fails to receive a proper direction the assets shall be invested in the securities of the investment option set forth for such purpose on Schedule "C," until the Trustee receives a proper direction.

8

(d) Mutual Funds. The Company hereby acknowledges that it has received from the Trustee a copy of the prospectus for each Fidelity Mutual Fund selected by the Named Fiduciary as a Plan investment option. All transactions involving Non-Fidelity Mutual Funds shall be done in accordance with the Operational Guidelines attached hereto as Schedule "G". Trust investments in Mutual Funds shall be subject to the following limitations:

(i) Execution of Purchases and Sales. Purchases and sales of Mutual Funds (other than for exchanges) shall be made on the Business Day on which the information, documentation and instructions (including wire transfer of funds (if applicable) necessary to accurately effect same is received in good order by the Trustee from the Administrator, if received prior to the close of such Business Day, and , otherwise on the next Business Day; Provided however, that each Business Day that the Fidelity Select Funds are open for business as set forth in the Funds' then current prospectuses, the Named Fiduciary hereby directs the Trustee to submit for processing all instructions for purchases and redemptions, but not exchanges, of shares of Fidelity Select Funds as designated on Schedule C only once each Business Day immediately prior to the last time on such Business Day at which the Fidelity Select Funds' net asset values are calculated on such Business Day as specified in the Fidelity Select Funds' then current prospectuses. Exchanges of Mutual Funds shall be made in accordance with the Exchange Guidelines attached hereto as Schedule "F".

(ii) Voting. At the time of mailing of notice of each annual or special stockholders' meeting of any mutual fund, the Trustee shall send a copy of the notice and all proxy solicitation materials to each Participant who has shares of the mutual fund credited to the Participant's accounts, together with a voting direction form for return to the Trustee or its designee. The Participant shall have the right to direct the Trustee as to the manner in which the Trustee is to vote the shares credited to the Participant's accounts (both vested and unvested). The Trustee shall vote the shares as directed by the Participant. The Trustee shall not vote shares for which it has received no directions from the participant.

During the Participant Recordkeeping Reconciliation Period, the Named Fiduciary shall have the right to direct the Trustee as to the manner in which the Trustee is to vote the shares of the Mutual Funds in the Trust. Following the Participant Recordkeeping Reconciliation Period the Named Fiduciary shall continue to have the right to direct the Trustee

9

as to the manner in which the Trustee is to vote the Mutual Fund shares held in a short-term liquidity reserve for a unitized investment option.

With respect to all rights other than the right to vote, the Trustee shall follow the directions of the Named Fiduciary or, to the extent provided in Section 5(c) of this Agreement, Participants. The Trustee shall have no duty to solicit directions from Participants or the Named Fiduciary.

In the event that a Mutual Fund is organized in noncorporate form (such as a unit investment trust), and any matter is to be voted on by the holders of interests therein, the Trustee shall follow procedures with respect thereto similar to those described above with respect to Mutual Funds organized in corporate form.

(e)    Company Stock and American Express Stock. Trust investments in Company Stock and American Express Stock shall be made via the Company Stock Fund and the American Express Stock Fund (collectively, the "Stock Funds"). Investments in the Company Stock Fund and American Express Stock Fund shall consist exclusively of (i) shares of, respectively, Company Stock and American Express Stock, and (ii) such cash or short-term fixed income investments, as shall be determined to be necessary or advisable for the purpose of maintaining appropriate liquidity in accordance with this paragraph, in order to satisfy daily Participant exchange or withdrawal requests. Such holdings will include Colchester Street Trust: Money Market Portfolio: Class I or such other Mutual Fund or commingled money market pool as agreed to in writing by the Named Fiduciary and Trustee. The Named Fiduciary shall, after consultation with the Trustee, establish and communicate to the Trustee in writing a target percentage and drift allowance for such short-term liquid investments. Subject to its ability to execute open-market trades in Company Stock and/or American Express Stock or to otherwise trade with the Company, the Trustee shall be responsible for ensuring that the short-term investments held in each of the Stock Funds fall within the agreed-upon range over time. Each Participant's proportional interest in the Stock Funds shall be measured in units of participation, rather than shares of Company Stock or American Express Stock. Such units shall represent a proportionate interest in all of the assets of each of the Stock Funds, which includes shares of Company Stock and American Express Stock, as applicable, and short-term investments and at times, receivables and payables (such as receivables and payables arising out of unsettled stock

10

trades). The Trustee shall determine a daily net asset value ("NAV") for each unit outstanding of each of the Stock Funds. Valuation of each of the Stock Funds shall be based upon: (i) the New York Stock Exchange ("NYSE") closing price of the stock or (ii) if unavailable, the latest available price as reported by the principal national securities exchange on which the Stock is traded (the "Closing Price") or (iii) if neither is available, the price determined in good faith by the Trustee. The NAV shall be adjusted for gains or losses realized on sales of Company Stock or American Express Stock, appreciation or depreciation in the value of those shares owned, dividends paid on such shares to the extent not used to purchase additional units of the Company Stock Fund for affected participants, and interest on the short-term investments held by each of the Stock Funds, payables and receivables for pending stock trades, receivables for dividends not yet distributed, and payables for other expenses of each of the Stock Funds, including principal obligations, if any, and expenses that, pursuant to Company direction, the Trustee accrues or pays from either of the Stock Funds. At the direction of the Company, the NAV may also be adjusted for commissions on purchases and sales of Company Stock or American Express Stock.

(i)     Acquisition Limits. Pursuant to the Plan and subject to the further provisions of this Section 5(e), contributions identified to the Trustee as employer contributions, and dividends or other distributions in respect of Company Stock held in the Company Stock Fund, shall be initially invested in Company Stock and shall remain so invested except to the extent otherwise specified in investment directions for exchanges out of the Company Stock Fund given in accordance with this Agreement, and other contributions shall be invested in Company Stock to the extent necessary to comply with investment directions in accordance with this Agreement, as implemented in accordance with the terms of the Plan Administration Manual (PAM), applicable in the absence of such investment directions. The Company shall be responsible for providing specific direction on any acquisition limits on stock required by the Plan or applicable law. Notwithstanding the foregoing, the American Express Stock Fund shall be frozen to new investment, including reinvestment of dividends (so that, without limitation, no additional American Express Stock may be purchased for such fund at the direction of a Participant) and shall be discontinued in its entirety no later than January 31, 2007.

(ii)    Fiduciary Duty.

(A)     The Named Fiduciary shall have full and exclusive responsibility (and the Trustee shall have no responsibility) for monitoring, with the requisite prudence, diligence, skill and care required thereby, the suitability under the fiduciary duty rules

11

of section 404(a)(1) of ERISA (as modified by section 404(a)(2) of ERISA) of acquiring and holding Company Stock and American Express Stock.

(B)    Each Participant with an interest in either or both of the Company Stock Fund and the American Express Stock Fund (or, in the event of the Participant's death, his beneficiary) is, for purposes of this Section 5(e)(ii), hereby designated as a "named fiduciary" (within the meaning of section 403(a)(1) of ERISA), with respect to the shares allocated to his or her account that were not purchased at his or her direction, and shall have the right to direct the Trustee as to the manner in which the Trustee is to vote or tender such shares, including the right to direct the Trustee's conduct, in accordance with disclosed rules, by his or her failure to respond within the required timeframe.

(iii)    Purchases and Sales of Company Stock. Unless otherwise directed by the Company in writing pursuant to directions that the Trustee can administratively implement, the following provisions shall govern purchases and sales of Company Stock and American Express Stock.

(A)    Open Market Purchases and Sales. Purchases and sales of Company Stock and American Express Stock shall be made on the open market in accordance with the Trustee's standard trading guidelines, as they may be amended by the Trustee from time to time, as necessary to honor exchange and withdrawal activity and to maintain the target cash percentage and drift allowance for each of the Stock Funds, provided that:

(1)    If the Trustee is unable to purchase or sell the total number of shares required to be purchased or sold on such day as a result of market conditions; or

(2)    If the Trustee is prohibited by the Securities and Exchange Commission, the New York Stock Exchange or principal exchange on which the Company Stock or American Express Stock is traded, or any other regulatory body from purchasing or selling any or all of the shares required to be purchased or sold on such day.

(3)    Then the Trustee shall purchase or sell such shares as soon thereafter as administratively feasible.

(B)    Purchases and Sales from or to Company. If directed by the Company in writing prior to the trading date, the Trustee may purchase or sell Company

12

Stock from or to the Company if the purchase or sale is for adequate consideration (within the meaning of section 3(18) of ERISA) and no commission is charged. If Company contributions (employer) or contributions made by the Company on behalf of the Participants (employee) under the Plan are to be invested in Company Stock, the Company may transfer Company Stock in lieu of cash to the Trust. In either case, the number of shares to be transferred will be determined by dividing the total amount of Company Stock to be purchased or sold by the Closing Price of the Company Stock on the trading date.

(C)     Use of an Affiliated Broker. The Company hereby directs the Trustee to use Fidelity Capital Markets, a division of National Financial Services LLC ("Capital Markets") to provide brokerage services in connection with any purchase or sale of Company Stock or American Express Stock on the open market, except in circumstances where the Trustee has determined, in accordance with its standard trading guidelines or pursuant to Company direction, to seek expedited settlement of the trades. Capital Markets shall execute such directions directly or through its affiliates. The provision of brokerage services shall be subject to the following:

(1)     As consideration for such brokerage services, the Company agrees that Capital Markets shall be entitled to remuneration under this direction provision in an amount of no more than three and one-fifth cents ($.032) commission on each share of Stock. Any change in such remuneration may be made only by written agreement between Company and Trustee.

(2)     Any successor organization of Capital Markets, through reorganization, consolidation, merger or similar transactions, shall, upon consummation of such transaction, become the successor broker in accordance with the terms of this direction provision.

(3)     The Trustee and Capital Markets shall continue to rely on this direction provision until notified to the contrary. The Company reserves the right to terminate this direction upon written notice to Capital Markets (or its successor) and the Trustee.

(iv)     Execution of Purchases and Sales of Units. Unless otherwise directed in writing pursuant to directions that the Trustee can administratively implement, purchases and sales of units shall be made as follows:

13