# Exhibit 46 - Document Filed Under Seal

# Exhibit 47

ERNST & YOUNG

Ernst & Young LLP
5 Times Square
New York, New York 10036-6530

Phone: (212) 773-3000
www.ey.com

2/27/08

May 15, 2007

Lehman Brothers Holdings Inc.
Attention: Mr. Christopher O'Meara

Dear Mr. O'Meara:

1. This will confirm the engagement of Ernst & Young LLP ("we", "us", or "E&Y") by the Audit Committee of Lehman Brothers Holdings Inc. (the "Company") to perform an audit of the Company's financial statements and its internal control over financial reporting (referred to hereinafter as the "integrated audit") as well as ~~additional audits listed in~~ Appendix I. As part of the integrated audit, we will audit and report on the consolidated financial statements of the Company for the year ended November 30, 2007 (the "audit of the financial statements"). In connection with our audit of the consolidated financial statements of the Company, we will review the Company's unaudited interim financial information before the Company files its quarterly reports on Form 10-Q and we will issue a report to the Audit Committee that provides negative assurance as to conformity with U.S. generally accepted accounting principles. We also will audit and report on management's assessment of the effectiveness of the Company's internal control over financial reporting and on the effectiveness of internal control over financial reporting as of November 30, 2007 (the "audit of internal control"). All of the services described in this paragraph may hereafter be referred to as either "Audit Service" or "Audit Services."

**Integrated Audit Responsibilities and Limitations**

2. The objective of our audit of the consolidated financial statements is to express an opinion on whether the consolidated financial statements are presented fairly, in all material respects, in conformity with U.S. generally accepted accounting principles. The objectives of our audit of internal control are to express an opinion on (1) whether management's assessment of the effectiveness of internal control over financial reporting is fairly stated, in all material respects, based on suitable control criteria, and (2) the effectiveness of internal control over financial reporting. Should conditions not now anticipated preclude us from completing either our audit of the financial statements or our audit of internal control and issuing our reports thereon, we will advise the Audit Committee and management promptly and take such action as we deem appropriate.

3. We will conduct our integrated audit in accordance with the standards of the Public Company Accounting Oversight Board (the "PCAOB"). Those standards require that we obtain reasonable, rather than absolute, assurance that the consolidated financial statements are free of material misstatement, whether caused by error or fraud, and that the Company maintained, in all material respects, effective internal control over financial reporting as of the date specified in management's assessment. As the Company is aware, there are inherent limitations in the audit process, including, for example, selective testing and the

LBHI ENGAGEMENT LETTER

2/25/08
GS4

EXHIBIT
1628
9/19/13
PENGAD 800-631-6989

EY-PCAOB-LBHI-WP-07 006951
CONFIDENTIAL PURSUANT TO SARBANES-OXLEY
ACT SECTION 105 & RULE 5108

possibility that collusion or forgery may preclude the detection of material error, fraud, and illegal acts. Accordingly, there is some risk that a material misstatement of the financial statements or a material weakness in internal control over financial reporting would remain undetected. Also, an audit of the financial statements is not designed to detect error or fraud that is immaterial to the consolidated financial statements. Similarly, an audit of internal control is not designed to detect deficiencies in internal control over financial reporting that, individually or in combination, are less severe than a material weakness.

4. We will consider the Company's internal control over financial reporting in determining the nature, timing, and extent of our audit procedures for the purpose of expressing our opinion on: (1) the consolidated financial statements; (2) management's assessment of the effectiveness of internal control over financial reporting; and (3) the effectiveness of internal control over financial reporting. Our report on item (2) above relates to whether management's assessment process, including documentation, provides a reasonable basis for its assessment. Our report on item (3) above relates to the effectiveness of the entity's internal control taken as a whole, and not to the effectiveness of each individual internal control component.

5. In accordance with the standards of the PCAOB, we will communicate certain matters related to the conduct and results of the audit to the Company's Audit Committee. Such matters include, when applicable, disagreements with management, whether or not resolved; serious difficulties encountered in performing the audit; our level of responsibility under PCAOB auditing standards for the financial statements, for internal control, and for other information in documents containing the audited financial statements; unadjusted audit differences that were determined by management to be immaterial, both individually and in the aggregate, to the financial statements as a whole; changes in the Company's significant accounting policies and methods for accounting for significant unusual transactions or for controversial or emerging areas; our judgments about the quality of the Company's accounting principles; our basis for conclusions as to sensitive accounting estimates; and management's consultations, if any, with other accountants.

6. In accordance with the rules of the Securities and Exchange Commission (the "SEC") implementing the requirements of Section 204 of the Sarbanes-Oxley Act of 2002, we will communicate to the Audit Committee all critical accounting policies and practices used by the Company, and all alternative treatments within generally accepted accounting principles for policies and practices related to material items that have been discussed with management, including ramifications of the use of such alternative disclosures and treatments along with the treatment preferred by us. We also will advise the Audit Committee of other material written communications between management and us.

7. We will obtain pre-approval from the Company's Audit Committee for any services we are to provide to the Company pursuant to the Audit Committee's pre-approval process, policies, and procedures. We also will communicate annually with the Audit Committee on independence matters as required by the independence standards of the PCAOB. We will communicate annually with the Audit Committee and provide a report on certain matters as specified in the Final Corporate Governance Rules of the New York Stock Exchange. We

will inform the Chair of the Audit Committee and management if the Audit Services are selected for inspection by the PCAOB and also will communicate any information of which we become aware as a result of such inspection that has a material effect on the financial statements previously reported on by us or that could result in a significant modification to an audit report previously issued by us. Upon your request, we will provide the Audit Committee and the Company with a copy of any publicly available inspection reports on E&Y issued by the PCAOB, but we will not provide any confidential inspection reports issued by the PCAOB to E&Y, the confidentiality of which is provided for in the Sarbanes-Oxley Act of 2002 and the PCAOB's inspection rules.

8. We will conduct our audit in accordance with auditing standards generally accepted in the United States and when applicable the standards for financial audits contained in *Government Auditing Standards* issued by the Comptroller General of the United States, and the *Consolidated Audit Guide for Audits of HUD Programs* (the "HUD Guide"). The scope of our audit and the contents of the various financial reports will meet the requirements of the HUD Guide. Those standards require that we obtain reasonable, rather than absolute, assurance that the consolidated financial statements are free of material misstatement, whether caused by error or fraud. As you are aware, there are inherent limitations in the audit process, including, for example, selective testing and the possibility that collusion or forgery may preclude the detection of material error, fraud, and illegal acts.

9. If we determine that there is evidence that fraud or possible illegal acts may have occurred, we will bring such matters to the attention of an appropriate level of management. If we become aware of fraud involving senior management or fraud (whether by senior management or other employees) that causes a material misstatement of the consolidated financial statements, we will report this matter directly to the Audit Committee. We will ensure that the Audit Committee is adequately informed of illegal acts that come to our attention unless they are clearly inconsequential. In addition, we will inform the Audit Committee and appropriate members of management of significant audit adjustments noted during our audit procedures.

10. We will also ensure that all significant deficiencies and material weaknesses in internal control over financial reporting that we identify during the course of our integrated audit are communicated in writing to management and the Audit Committee. The identification of a material weakness that remains uncorrected as of the date of management's assessment will cause us to express an adverse opinion on the effectiveness of the Company's internal control over financial reporting. We also will communicate to management in writing all internal control deficiencies (that is, those deficiencies in internal control over financial reporting that are of a lesser magnitude than significant deficiencies) identified during the integrated audit and not previously communicated by us or by others. We also will communicate to the Board of Directors the existence of any significant deficiency or material weakness as a result of ineffective oversight by the Audit Committee of the Company's external financial reporting and internal control over financial reporting.

**Reviews of Unaudited Interim Financial Information**

11. Our review of the Company's unaudited interim financial information will be performed in accordance with relevant PCAOB auditing standards.

12. A review of interim financial information consists principally of performing analytical procedures and making inquiries of management responsible for financial and accounting matters. It involves a review of the condensed financial information included in the filing on Form 10-Q and does not include any earlier earnings releases or other such communications. A review is substantially less in scope than an audit conducted in accordance with the standards of the PCAOB, the objective of which is the expression of an opinion regarding the financial statements taken as a whole. Accordingly, we will not express an opinion on the interim financial information.

13. A review includes obtaining sufficient knowledge of the entity's business and its internal control as it relates to the preparation of both annual and interim financial information to identify the types of potential material misstatements in the interim financial information and consider the likelihood of their occurrence; and select the inquiries and analytical procedures that will provide us with a basis for communicating whether we are aware of any material modifications that should be made to the interim financial information for it to conform with U.S. generally accepted accounting principles.

14. A review is not designed to provide assurance on internal control or to identify significant deficiencies. However, we will communicate to the Audit Committee any significant deficiencies noted during our review procedures.

15. If, during our review procedures, we determine that there is evidence that fraud or possible illegal acts may have occurred, we will bring such matters to the attention of the appropriate level of management. If we become aware of fraud involving senior management or fraud (whether caused by senior management or other employees) that causes a material misstatement of the interim financial information, we will report this matter directly to the Audit Committee. We will ensure that the Audit Committee is adequately informed of illegal acts that come to our attention unless they are clearly inconsequential. We also will inform the Audit Committee and appropriate members of management of significant unadjusted differences noted during our review procedures.

**Management's Responsibilities and Representations**

16. The consolidated financial statements, unaudited interim financial information, and management's assessment of the effectiveness of internal control over financial reporting are the responsibility of the Company's management. Management is responsible for establishing and maintaining effective internal control over financial reporting, for properly recording transactions in the accounting records, for safeguarding assets, and for the overall fair presentation of the consolidated financial statements and unaudited interim financial information. Management of the Company is also responsible for the identification of, and for the Company's compliance with, laws and regulations applicable to its activities.



EY-PCAOB-LBHI-WP-07_006954

17. Management is responsible for adjusting the consolidated financial statements and unaudited interim financial information to correct material misstatements and for affirming to us in its representation letter that the effects of any unadjusted differences accumulated by us during the applicable Audit Service and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the consolidated financial statements and unaudited interim financial information taken as a whole.

18. Management is responsible for apprising us of all allegations involving financial improprieties received by management or the Audit Committee (regardless of the source or form and including, without limitation, allegations by "whistle-blowers"), and providing us full access to these allegations and any internal investigations of them, on a timely basis. Allegations of financial improprieties include allegations of manipulation of financial results by management or employees, misappropriation of assets by management or employees, intentional circumvention of internal controls, inappropriate influence on related party transactions by related parties, intentionally misleading us, or other allegations of illegal acts or fraud that could result in a misstatement of the financial statements or otherwise affect the financial reporting of the Company. If the Company limits the information otherwise available to us under this paragraph (based on the Company's claims of attorney/client privilege, work product doctrine, or otherwise), the Company will immediately inform us of the fact that certain information is being withheld from us. Any such withholding of information could be considered a restriction on the scope of our Audit Services and may prevent us from opining on the Company's financial statements or internal control over financial reporting; alter the form of report we may issue on such financial statements or internal control over financial reporting; prevent us from consenting to the inclusion of previously issued auditor's reports in future Company filings or otherwise affect our ability to continue as the Company's independent registered public accounting firm. The Company and we will disclose any such withholding of information to the Audit Committee.

19. Management is responsible for evaluating the effectiveness of the Company's internal control over financial reporting using suitable control criteria and for supporting its assessment with sufficient evidence, including documentation. Management also is responsible for presenting a written assessment of the effectiveness of the Company's internal control over financial reporting as of the end of the Company's most recent fiscal year. In connection with its assessment of internal control over financial reporting, management will affirm to us in its representation letter that it has: (1) disclosed to us all significant deficiencies in the design or operation of internal control over financial reporting, and (2) identified those that it believes to be material weaknesses.

20. As required by PCAOB auditing standards, we will make specific inquiries of management about the representations contained in the consolidated financial statements and unaudited interim financial information and management's assessment of the effectiveness of internal control over financial reporting. Those standards also require that, at the conclusion of the applicable Audit Service, we obtain representation letters from certain members of management about these matters. The responses to those inquiries, the written



EY-PCAOB-LBHI-WP-07_006955

representations, and the results of our procedures comprise the evidential matter we will rely upon in completing the applicable Audit Service. Management is responsible for providing us with all financial records and related information and making available to us all internal control documentation and records necessary to complete our Audit Services on a timely basis. Management's failure to do so may cause us to delay our reports, as applicable, modify our procedures, or even terminate our engagement.

21. Management agrees to cause all of the Company's consolidated foreign subsidiaries and affiliates to provide any authorization, to the fullest extent permissible under applicable law, necessary to permit compliance by an Auditor with requests from the SEC or the PCAOB for production of Audit Documents. In addition, the Company hereby waives, to the fullest extent permissible under applicable law, the rights provided under any laws, regulations, professional standards, or other provisions that might restrict the ability of any Auditor to comply with requests by the SEC or the PCAOB for production of Audit Documents and consents, to the fullest extent permissible under applicable law, to action taken in furtherance of the foregoing by any Auditor. For purposes of this Section 21, "Auditor" means E&Y or a foreign public accounting firm or associated person participating in the Audit Services. For purposes of this Section 21, "Audit Documents" means documents or information in an Auditor's possession, custody or control that was obtained in the conduct of the Audit Services by the Auditor.

22. Management of the Company is responsible for the Company's process for surveying officers and directors, and for requesting that persons known by the Company to be the beneficial owners of more than 5% of the Company's common stock ("substantial stockholders"), officers, and directors disclose matters to the Company for communication to E&Y regarding the nature of any direct or material indirect business relationships (as such terms are defined in Regulation S-X) that the substantial stockholder, officer, or director, or any member of their immediate family (i.e., a person's spouse, spousal equivalent, and dependents), has with E&Y or any of its affiliates, or an ownership interest of five percent or more in, or situations where they serve as an officer or director of any Company (public or private) that has a direct or material indirect business relationship with E&Y or any of its affiliates. We will advise the Audit Committee and management if we become aware of any direct or material indirect business relationship that may relate to our performance of Audit Services for the Company.

**Fees and Billings**

23. Our fee estimate for fiscal 2007 services will be discussed at a later date. All additional services that management may engage Ernst & Young to perform must comply with the pre-approval policy for Independent Auditor Services. Our fees also will depend on the Company's documentation of internal control, the procedures the Company performs to support management's assertion of the effectiveness of internal control over financial reporting, and on the results of our examination procedures.

24. Our estimated fees and schedule of performance are based upon, among other things, our



EY-PCAOB-LBHI-WP-07_006956

preliminary review of the Company's records and the representations Company personnel have made to us, the Company's documentation of internal control over financial reporting, the procedures the Company performs to support management's assessment of the effectiveness of internal control over financial reporting, and the results of our audit procedures to date. They also are dependent upon the Company's personnel providing a reasonable level of assistance during our integrated audit. Should our assumptions with respect to these matters be incorrect or should the documentation of internal control, results of our procedures, condition of the records, degree of cooperation, extent of procedures performed by the Company to support management's assessment, or other matters beyond our reasonable control require additional commitments by us beyond those upon which our estimated fees are based, we may adjust our fees and planned completion dates. In addition, fees for any special audit-related projects, such as the issuance of financial statements for certain subsidiaries, proposed business combinations or research and/or consultation on special business or financial issues, will be billed separately from the fees referred to above and may be the subject of written arrangements supplemental to those in this letter.

25. In the event we are requested or authorized by the Company or are required by government regulation, subpoena, or other legal process to produce our documents or our personnel as witnesses with respect to our engagements for the Company, the Company will, so long as we are not a party to the proceeding in which the information is sought, reimburse us for our professional time and expenses, as well as the fees and expenses of our counsel, incurred in responding to such requests.

**Other Matters**

26. We also will perform Audit Services that have been pre-approved by the Audit Committee and opine on separate audit reports for the Company and its consolidated subsidiaries as described at Appendix I.

27. From time to time, and depending upon the circumstances, personnel from any affiliate of E&Y, any other member of the global Ernst & Young network or any of their respective affiliates other than E&Y, and from independent third-party service providers (including independent contractors), may participate in providing the Audit Services.

28. The Secretary of Housing and Urban Development, the HUD Inspector General, and the General Accounting Office or their representatives will be permitted access to the relevant audit working papers or other documents in the event that they elect to perform a review of our audit procedures. In connection with their review of the working papers, we will make photocopies of the working papers, if so requested

29. The Company shall not, during the term of the Agreement and for 12 months following its termination for any reason, solicit for employment, or hire, any E&Y personnel involved in the performance of the Audit Services; provided that the Company shall not breach its obligation hereunder by generally advertising available positions or hiring E&Y personnel who either respond to such advertisements or come to the Company on their own initiative



EY-PCAOB-LBHI-WP-07_006957

without direct or indirect encouragement from the Company.

30. In addition, the Company shall not, without the prior written consent of E&Y, solicit for employment or for a position on its Board of Directors, or hire, any current or former partner, principal, or professional employee of E&Y, any affiliate thereof, or any other member of the global Ernst & Young network or any of their respective affiliates, a) if such partner, principal, or professional employee has been involved in the performance of any audit, review, or attest service for or relating to the Company at any time since the date of filing of the Company's most recent periodic annual report with the SEC (or, if the Company has not previously filed such a report, since the beginning of the most recent fiscal year to be covered by the Company's first such report) or in the 12 months preceding that date and b) unless such partner, principal, or professional employee does not influence E&Y's operations or financial policies and has no capital balances or any other financial arrangement with E&Y.

31. By your signature below, you confirm that the Company, through its Board of Directors, has authorized the Audit Committee to enter into this agreement with us on the Company's behalf and that you have been authorized by the Audit Committee to execute this agreement.

32. Subject to the provisions of Section 21, in the event that a party (the "Requested Party") is required by law or governmental regulation (by oral questions, interrogatories, requests for information or documents subpoena, civil investigative demand or similar process) to disclose any confidential information the Requested Party shall provide the other party with prompt notice of such request(s), to the extent permitted by applicable law or regulation, so that such party may seek an appropriate protective order and/or waive the Requested Party's compliance with the provisions in this engagement letter and will cooperate with such party in protecting the confidential or proprietary nature of the information which must be so disclosed. It is further agreed that if, in the absence of a protective order or the receipt of a waiver hereunder, the Requested Party is nonetheless, in the opinion of its counsel (who may be its employee), compelled to disclose any confidential information, it may disclose such information without liability hereunder, provided that it shall exercise commercially reasonable efforts to obtain assurance from the recipient that confidential treatment will be accorded such information.

33. Except for claims seeking exclusively non-monetary or equitable relief, any controversy or claim arising out of or relating to services covered by this letter or hereafter provided by us for the Company or at its request (including any such matter involving any parent, subsidiary, affiliate, successor in interest, or agent of the Company or of E&Y, or involving any person or entity for whose benefit the services in question are or were provided), shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Schedule I to this letter. Judgment on any arbitration award may be entered in any court having jurisdiction.

34. If any portion of this letter is held to be void, invalid, or otherwise unenforceable, in whole

or part, the remaining portions of this letter shall remain in effect.

We will perform the Audit Services described herein for each of the Company's subsequent fiscal years based on the terms and conditions set forth in this agreement until either the Audit Committee or E&Y terminates the agreement. Changes in the scope of our Audit Services and estimated fees for such services in subsequent fiscal years will be communicated in supplemental letters.

If these arrangements are acceptable, please sign one copy of this agreement and return it to us.

We very much appreciate the opportunity to serve as the Company's independent registered public accounting firm and would be pleased to furnish any additional information you may request concerning our responsibilities and functions. We trust that our association will be a long and mutually beneficial one.

Yours very truly,

Ernst + Young LLP

Lehman Brothers Holdings Inc.

By: ______________________

Christopher O'Meara
Chief Financial Officer

______________________
Date

## Schedule I

### Dispute Resolution Procedures

Except as otherwise expressly set forth therein, the following procedures shall be used to resolve any controversy or claim ("dispute") as provided in this engagement letter. If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law. Nothing in these procedures is intended to preclude either party from applying to any court of competent jurisdiction exclusively for non-monetary or equitable relief.

### Mediation

A dispute shall be submitted to mediation by written notice to the other party or parties. The mediator shall be selected by agreement of the parties. If the parties cannot agree on a mediator, a mediator shall be designated by the CPR Institute for Dispute Resolution at the request of a party. Any mediator so designated must be acceptable to all parties.

The mediation shall be conducted as specified by the mediator and agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and therefore shall be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. No recording or transcript shall be made of the mediation proceedings.

Each party shall bear its own costs in the mediation. The fees and expenses of the mediator shall be shared equally by the parties.

### Arbitration

If a dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. The arbitration will be conducted in accordance with the procedures in this document and the Rules for Non-Administered Arbitration of the CPR Institute for Dispute Resolution ("Rules") as in effect on the date of the engagement letter, or such other rules and procedures as the parties may designate by mutual agreement; provided, however, that any such rules and procedures shall (1) not serve to limit the liability of the parties, (2) apply equally to all parties, and (3) provide a fair process (e.g., neutral decision-makers and appropriate hearing procedures). In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, two of whom are to be designated by the parties from the CPR Panels of Distinguished Neutrals using the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is



EY-PCAOB-LBHI-WP-07_006960

subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator shall be appointed unless he or she has agreed in writing to abide and be bound by these procedures.

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort or to make an award or impose a remedy that (1) is inconsistent with the agreement to which these procedures are attached or any other agreement relevant to the dispute, or (2) could not be made or imposed by a court deciding the matter in the same jurisdiction.

Discovery shall be permitted in connection with the arbitration only in accordance with the Rules. All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only as provided in the Rules, to the extent required by law, or as the other parties, in good faith, shall agree. Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary for the disclosing party to comply with applicable law or regulatory requirements.

The result of the arbitration will be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

**Appendix I**

**Consolidated Subsidiaries**

| | |
|---|---|
| Lehman Brothers Holdings Inc. | November 30, 2007 |
| Lehman Brothers Inc. | November 30, 2007 |
| Lehman Brothers Derivative Products Inc. | November 30, 2007 |
| Lehman Brothers Financial Products Inc. | November 30, 2007 |
| Lehman Brothers Commercial Corporation | November 30, 2007 |
| Lehman Brothers OTC | November 30, 2007 |
| Brasstown Mansfield I | December 31, 2007 |
| Brasstown Entrada I | December 31, 2007 |
| Wharf Re | December 31, 2007 |
| Lehman Re Ltd. | December 31, 2007 |
| NL Funding, L.P. | December 31, 2007 |
| Neuberger Berman Management Inc. | November 30, 2007 |
| Neuberger Berman, LLC | November 30, 2007 |
| Lehman Brothers Trust Co. of Delaware | December 31, 2007 |
| Lehman Brothers AIM Holdings LLC | December 31, 2007 |
| Lehman Brothers Futures Asset Management Corp. | November 30, 2007 |
| Lehman Brothers Management LLC | December 31, 2007 |
| Lehman Brothers Bank | December 31, 2007 |
| SFJV 2003-1, LLC | December 31, 2007 |
| Long Point Funding Pty Limited | November 30, 2007 |
| Pindar Funding Pty Limited | November 30, 2007 |
| Lehman Brothers Trust Company, N.A. | December 31, 2007 |
| Lehman Brothers Inc. – Puerto Rico Branch | December 31, 2007 |
| Lehman Brothers Commercial Bank | December 31, 2007 |
| Ivanhoe Lane Pty Limited | November 30, 2007 |
| Serafino Investments Pty Limited | November 30, 2007 |

**Other Audits**

| | |
|---|---|
| The Lehman Brothers Foundation | December 31, 2007 |
| Lehman Brothers 401(K) Plan | December 31, 2007 |
| Lehman Brothers Pension Plan | December 31, 2007 |
| Lehman Brothers U.K. Pension Plans | December 31, 2007 |
| Lehman Brothers Holdings E-Capital LLC I | December 31, 2007 |
| Lehman Brothers Holdings E-Capital Trust I | December 31, 2007 |


CONFIDENTIAL PURSUANT TO SARBANES-OXLEY
ACT SECTION 105 & RULE 5108

EY-PCAOB-LBHI-WP-07_006962

# Exhibit 48

PCAOB
Public Company Accounting Oversight Board

Stay Connected:

# AU Section 110

## Responsibilities and Functions of the Independent Auditor

(.01)
(.02 - .03) Distinction Between Responsibilities of Auditor and Management
(.04 - .05) Professional Qualifications
[.06 - .09] Detection of Fraud
(.10) Responsibility to the Profession

**Source: SAS No. 1, section 110; SAS No. 78; SAS No. 82.**
**Issue date, unless otherwise indicated: November, 1972.**

**.01**

The objective of the ordinary audit of financial statements by the independent auditor is the expression of an opinion on the fairness with which they present, in all material respects, financial position, results of operations, and its cash flows in conformity with generally accepted accounting principles. The auditor's report is the medium through which he expresses his opinion or, if circumstances require, disclaims an opinion. In either case, he states whether his audit has been made in accordance with generally accepted auditing standards. These standards require him to state whether, in his opinion, the financial statements are presented in conformity with generally accepted accounting principles and to identify those circumstances in which such principles have not been consistently observed in the preparation of the financial statements of the current period in relation to those of the preceding period.

### DISTINCTION BETWEEN RESPONSIBILITIES OF AUDITOR AND MANAGEMENT

**.02**

The auditor has a responsibility to plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether caused by error or fraud. [fn 1] Because of the nature of audit evidence and the characteristics of fraud, the auditor is able to obtain reasonable, but not absolute, assurance that material misstatements are detected. [fn2] The auditor has no responsibility to plan and perform the audit to obtain reasonable assurance that misstatements, whether caused by errors or fraud, that are not material to the financial statements are detected. [Paragraph added, effective for audits of financial statements for periods ending on or after December 15, 1997, by Statement on Auditing Standards No. 82.]

**.03**

The financial statements are management's responsibility. The auditor's responsibility is to express an opinion on the financial statements. Management is responsible for adopting sound accounting policies

and for establishing and maintaining internal control that will, among other things, initiate, record, process, and report transactions (as well as events and conditions) consistent with management's assertions embodied in the financial statements. The entity's transactions and the related assets, liabilities, and equity are within the direct knowledge and control of management. The auditor's knowledge of these matters and internal control is limited to that acquired through the audit. Thus, the fair presentation of financial statements in conformity with generally accepted accounting principles [fn3] is an implicit and integral part of management's responsibility. The independent auditor may make suggestions about the form or content of the financial statements or draft them, in whole or in part, based on information from management during the performance of the audit. However, the auditor's responsibility for the financial statements he or she has audited is confined to the expression of his or her opinion on them. [Revised, April 1989, to reflect conforming changes necessary due to the issuance of Statement on Auditing Standards Nos. 53 through 62. As amended, effective for audits of financial statements for periods beginning on or after January 1, 1997, by Statement on Auditing Standards No. 78. Paragraph renumbered by the issuance of Statement on Auditing Standards No. 82, February 1997. Revised, April 2002, to reflect conforming changes necessary due to the issuance of Statement on Auditing Standards No. 94.]

## PROFESSIONAL QUALIFICATIONS

### .04

The professional qualifications required of the independent auditor are those of a person with the education and experience to practice as such. They do not include those of a person trained for or qualified to engage in another profession or occupation. For example, the independent auditor, in observing the taking of a physical inventory, does not purport to act as an appraiser, a valuer, or an expert in materials. Similarly, although the independent auditor is informed in a general manner about matters of commercial law, he does not purport to act in the capacity of a lawyer and may appropriately rely upon the advice of attorneys in all matters of law. [Paragraph renumbered by the issuance of Statement on Auditing Standards No. 82, February 1997.]

### .05

In the observance of generally accepted auditing standards, the independent auditor must exercise his judgment in determining which auditing procedures are necessary in the circumstances to afford a reasonable basis for his opinion. His judgment is required to be the informed judgment of a qualified professional person. [Paragraph renumbered by the issuance of Statement on Auditing Standards No. 82, February 1997.]

## DETECTION OF FRAUD

### [.06–.09]

[Superseded January 1977 by Statement on Auditing Standards No. 16, as superseded by Statement on Auditing Standards No. 53, as superseded by section 316. Paragraphs renumbered by the issuance of Statement on Auditing Standards No. 82, February 1997.]

## RESPONSIBILITY TO THE PROFESSION

**.10**

The independent auditor also has a responsibility to his profession, the responsibility to comply with the standards accepted by his fellow practitioners. In recognition of the importance of such compliance, the American Institute of Certified Public Accountants has adopted, as part of its Code of Professional Conduct, rules which support the standards and provide a basis for their enforcement. [Paragraph renumbered by the issuance of Statement on Auditing Standards No. 82, February 1997.]

---

**Footnotes (AU Section 110 — Responsibilities and Functions of the Independent Auditor):**

*[The following footnote is effective for audits of fiscal years beginning on or after December 15, 2010. See PCAOB Release No. 2010-004. For audits of fiscal years beginning before December 15, 2010, click here.]*

fn1 See Auditing Standard No. 11, Consideration of Materiality in Planning and Performing an Audit. The auditor's consideration of illegal acts and responsibility for detecting misstatements resulting from illegal acts is defined in section 317, Illegal Acts by Clients. For those illegal acts that are defined in that section as having a direct and material effect on the determination of financial statement amounts, the auditor's responsibility to detect misstatements resulting from such illegal acts is the same as that for error or fraud.

fn2 See section 230, Due Professional Care in the Performance of Work, paragraphs .10 through .13. [Footnote added, effective for audits of financial statements for periods ending on or after December 15, 1997, by Statement on Auditing Standards No. 82.]

fn3 The responsibilities and functions of the independent auditor are also applicable to financial statements presented in conformity with a comprehensive basis of accounting other than generally accepted accounting principles; references in this section to financial statements presented in conformity with generally accepted accounting principles also include those presentations. [Footnote added, effective for audits of financial statements for periods beginning on or after January 1, 1997, by Statement on Auditing Standards No. 78. Footnote renumbered by the issuance of Statement on Auditing Standards No. 82, February 1997.]

Copyright © 2002, American Institute of Certified Public Accountants, Inc.

© Copyright 2003 - 2014 Public Company Accounting Oversight Board.  All Rights Reserved.

# Exhibit 49

# AU Section 722

## *Interim Financial Information*

(Supersedes SAS No. 71.)

**Source: SAS No. 100; SAS No. 116; SAS No. 121.**

**Effective for interim periods beginning after December 15, 2002, unless otherwise indicated.**

## Introduction

**.01** The purpose of this section is to establish standards and provide guidance on the nature, timing, and extent of the procedures to be performed by an independent accountant when conducting a review of *interim financial information* (as that term is defined in paragraph .02 of this section) when the conditions in paragraph .05 are met. The three general standards discussed in section 150, *Generally Accepted Auditing Standards*, paragraph .02, are applicable to a review of interim financial information conducted in accordance with this section. This section provides guidance on the application of the field work and reporting standards to a review of interim financial information, to the extent those standards are relevant. [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.02** For purposes of this section, the term *interim financial information* means financial information or statements covering a period less than a full year or for a 12-month period ending on a date other than the entity's fiscal year end. Interim financial information may be condensed or in the form of a complete set of financial statements. Additionally, the term *applicable financial reporting framework* means a set of criteria used to determine measurement, recognition, presentation, and disclosure of all material items appearing in the financial statements; for example, accounting principles generally accepted in the United States of America (also known as U.S. GAAP), International Financial Reporting Standards (IFRS) issued by the International Accounting Standards Board (IASB), or comprehensive bases of accounting other than GAAP. [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.03** An entity may be required or otherwise desire to engage an independent accountant to perform a review of the entity's interim financial information.[1] Although this section generally does not require an accountant to issue a written report on a review of interim financial information, an accountant's review report should accompany the interim financial information if, in a report; document; or written communication containing the reviewed interim financial information, the entity states that the interim financial information has been reviewed by an independent public accountant or makes other reference to the accountant's association. In other situations, the accountant may determine it

---

[1] [Footnote deleted, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116.]

EXHIBIT
PENGAD 800-631-6989
1928
4.24.14 SL

appropriate to issue a written report to address the risk that a user of interim financial information may associate the accountant with the interim financial information and, in the absence of a review report, inappropriately assume a higher level of assurance than that obtained. Paragraphs .37–.46 of this section provide reporting guidance for a review of interim financial information. [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.04** Section 315, *Communications Between Predecessor and Successor Auditors*, requires a successor auditor to contact the entity's predecessor auditor and make inquiries of the predecessor auditor in deciding whether to accept appointment as an entity's independent auditor. Such inquiries should be completed before accepting an engagement to perform an initial review of an entity's interim financial information.

## Applicability

**.05** An accountant may conduct, in accordance with this section, a review of interim financial information[3], [4] if

*a.* the entity's latest annual financial statements have been audited by the accountant or a predecessor;

*b.* the accountant has been engaged to audit the entity's current year financial statements, or the accountant audited the entity's latest annual financial statements and expects to be engaged to audit the current year financial statements;*

---

[3] [Footnote deleted, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116.]

[4] [Footnote deleted, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116.]

* In February 2011, the Auditing Standards Board issued Statement on Auditing Standards (SAS) No. 121, *Revised Applicability of Statement on Auditing Standards No. 100,* Interim Financial Information. SAS No. 121 is effective for interim reviews of interim financial information for periods beginning after December 15, 2011, with early application permitted. SAS No. 121 revises the conditions in paragraph .05 of this section as follows (new language is shown in boldface italics; deleted language is shown by strikethrough):

An accountant may conduct, in accordance with this section, a review of interim financial information[3] [4] if

*a.* the entity's latest annual financial statements have been audited by the accountant or a predecessor;

*b.* the accountant ***either***

*i.* has been engaged to audit the entity's current year financial statements, or

*ii.* ~~the accountant~~ audited the entity's latest annual financial statements and***, when it is expected that the current year financial statements will be audited,*** ~~expects to be engaged~~ ***the appointment of another accountant*** to audit the current year financial statements ***is not effective prior to the beginning of the period covered by the review***;

*c.* the ~~client~~ ***entity*** prepares its interim financial information in accordance with the same financial reporting framework as that used to prepare the annual financial statements; and

*d.* ~~if~~ ***when*** the interim financial information is condensed information, all of the following conditions are met:

i. The condensed interim financial information purports to conform with an appropriate financial reporting framework, which includes appropriate form and content of interim financial statements; for example, Financial Accounting Standards Board (FASB) *Accounting Standards Codification* (ASC) 270, *Interim Reporting*, and Article 10 of SEC Regulation S-X with respect to accounting principles generally accepted in the United

*(continued)*

*c.* the client prepares its interim financial information in accordance with the same financial reporting framework as that used to prepare the annual financial statements; and

*d.* if the interim financial information is condensed information, all of the following conditions are met:

i. The condensed interim financial information purports to conform with an appropriate financial reporting framework, which includes appropriate form and content of interim financial statements; for example, Financial Accounting Standards Board (FASB) *Accounting Standards Codification* (ASC) 270, *Interim Reporting*, and Article 10 of SEC Regulation S-X with respect to accounting principles generally accepted in the United States of America[5] or International Accounting Standard 34, *Interim Financial Reporting*, with respect to IFRS issued by the IASB may be appropriate financial reporting frameworks for interim financial information.

ii. The condensed interim financial information includes a note that the financial information does not represent complete financial statements and should be read in conjunction with the entity's latest annual audited financial statements.

iii. The condensed interim financial information accompanies the entity's latest audited annual financial statements or such audited annual financial statements are made readily available by the entity. The financial statements are deemed to be readily available if a third party user can obtain the financial statements without any further action by the entity (for example, financial statements on an entity's website may be considered readily available, but being available upon request is not considered readily available).

---

*(footnote continued)*

States of America[5] or International Accounting Standard 34, *Interim Financial Reporting*, with respect to IFRS issued by the IASB may be appropriate financial reporting frameworks for interim financial information.

ii. The condensed interim financial information includes a note that the financial information does not represent complete financial statements and should be read in conjunction with the entity's latest annual audited financial statements.

iii. The condensed interim financial information accompanies the entity's latest audited annual financial statements or such audited annual financial statements are made readily available by the entity. The financial statements are deemed to be readily available if a third party user can obtain the financial statements without any further action by the entity (for example, financial statements on an entity's website may be considered readily available, but being available upon request is not considered readily available).

[5] Financial Accounting Standards Board (FASB) *Accounting Standards Codification* (ASC) 270, *Interim Reporting*, outlines the application of U.S. generally accepted accounting principles (GAAP) to the determination of income when interim financial information is presented, provides for the use of estimated effective income tax rates, and specifies certain disclosure requirements for summarized interim financial information issued by public companies. In addition to FASB ASC 270, other FASB ASC guidance also includes disclosure requirements for interim financial information. [Footnote revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. Footnote revised, June 2009, to reflect conforming changes necessary due to the issuance of FASB ASC. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

[Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. Revised, June 2009, to reflect conforming changes necessary due to the issuance of FASB ASC. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**[.06]** [Deleted, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116.]

## Objective of a Review of Interim Financial Information

**.07** The objective of a review of interim financial information pursuant to this section is to provide the accountant with a basis for communicating whether he or she is aware of any material modifications that should be made to the interim financial information for it to conform with the applicable financial reporting framework. The objective of a review of interim financial information differs significantly from that of an audit conducted in accordance with generally accepted auditing standards. A review of interim financial information does not provide a basis for expressing an opinion about whether the interim financial information is presented fairly, in all material respects, in conformity with the applicable financial reporting framework. A review consists principally of performing analytical procedures and making inquiries of persons responsible for financial and accounting matters, and does not contemplate (*a*) tests of accounting records through inspection, observation, or confirmation; (*b*) tests of controls to evaluate their effectiveness; (*c*) the obtainment of corroborating evidence in response to inquiries; or (*d*) the performance of certain other procedures ordinarily performed in an audit. A review may bring to the accountant's attention significant matters affecting the interim financial information, but it does not provide assurance that the accountant will become aware of all significant matters that would be identified in an audit. Paragraph .22 of this section provides guidance to the accountant if he or she becomes aware of information that leads him or her to believe that the interim financial information may not be in conformity with the applicable financial reporting framework. [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

## Establishing an Understanding With the Client

**.08** The accountant should establish an understanding with the client regarding the services to be performed in an engagement to review interim financial information[6] and should document the understanding through a written communication with the client. Such an understanding reduces the risk that either the accountant or the client may misinterpret the needs or expectations of the other party. The understanding should include the objectives of the engagement, the limitations of the engagement, management's responsibilities, and the accountant's responsibilities. The understanding should also include the expected form of the communication upon completion of the engagement (that is, whether as a written or oral report). Additionally, prior to accepting the engagement, the accountant should, through inquiry and, if applicable, information obtained during the course of the previous or current annual audit or during other engagements, assess management's ability to acknowledge their responsibility to establish and maintain controls that are sufficient to provide a

---

[6] See paragraph .28 of QC section 10B, *A Firm's System of Quality Control*. [Footnote amended due to the issuance of SQCS No. 7, December 2008.]

reasonable basis for the preparation of reliable interim financial information in accordance with the applicable financial reporting framework. If management does not have the ability to make such an acknowledgement of its responsibility, the independent accountant should not accept the engagement. [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.09** An understanding with the client regarding a review of interim financial information generally includes the following matters.

**Objectives of the engagement**

- The objective of a review of interim financial information is to provide the accountant with a basis for communicating whether he or she is aware of any material modifications that should be made to the interim financial information for it to conform with the applicable financial reporting framework.[7]
- A review includes obtaining sufficient knowledge of the entity's business and its internal control as it relates to the preparation of both annual and interim financial information to
  - — identify the types of potential material misstatements in the interim financial information and consider the likelihood of their occurrence.
  - — select the inquiries and analytical procedures that will provide the accountant with a basis for communicating whether the accountant is aware of any material modifications that should be made to the interim financial information for it to conform with the applicable financial reporting framework.

**Limitations of the engagement**

- A review does not provide a basis for expressing an opinion about whether the financial information is presented fairly, in all material respects, in conformity with the applicable financial reporting framework.
- A review does not provide assurance that the accountant will become aware of all significant matters that would be identified in an audit.
- A review is not designed to provide assurance on internal control or to identify significant deficiencies and material weaknesses in internal control; however, the accountant is responsible for communicating to management and those charged with governance any significant deficiencies or material weaknesses in internal control that the accountant identified.

**Management's responsibilities**

- Management is responsible for
  - — the entity's interim financial information.
  - — establishing and maintaining effective internal control over financial reporting.

---

[7] Paragraph .05 of this section addresses the selection of the applicable financial reporting framework for interim financial information. [Footnote added, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

— identifying and ensuring that the entity complies with the laws and regulations applicable to its activities.

— making all financial records and related information available to the accountant.

— providing the accountant, at the conclusion of the engagement, with a letter confirming certain representations made during the review.

— adjusting the interim financial information to correct material misstatements. Although a review of interim financial information is not designed to obtain reasonable assurance that the interim financial information is free from material misstatement, management also is responsible for affirming in its representation letter to the accountant that the effects of any uncorrected misstatements aggregated by the accountant during the current engagement and pertaining to the current-year period(s) under review are immaterial, both individually and in the aggregate, to the interim financial information taken as a whole.

**The accountant's responsibilities**

- The accountant is responsible for conducting the review in accordance with standards established by the AICPA. A review of interim financial information consists principally of performing analytical procedures and making inquiries of persons responsible for financial and accounting matters. It is substantially less in scope than an audit conducted in accordance with auditing standards generally accepted in the United States of America, the objective of which is the expression of an opinion regarding the financial information taken as a whole. Accordingly, the accountant will not express an opinion on the interim financial information.

**Expected form of the communication**

- A description of the expected form of the accountant's communication upon completion of the engagement, (that is, whether as a written or oral report) and a statement that if the entity states in any report, document, or written communication containing the interim financial information that the information has been reviewed by the accountant or makes other reference to the accountant's association, that the accountant's review report will be included in the document.

[Revised, May 2006, to reflect conforming changes necessary due to the issuance of SAS No. 112. Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

## The Accountant's Knowledge of the Entity's Business and Its Internal Control

**.10** To perform a review of interim financial information, the accountant should have sufficient knowledge of the entity's business and its internal control[8] as they relate to the preparation of both annual and interim financial information to

---

[8] Paragraph .08 establishes a presumptively mandatory requirement that the accountant assess, through inquiry and, if applicable, information obtained during the course of the previous or current

*(continued)*

- identify the types of potential material misstatements in the interim financial information and consider the likelihood of their occurrence.
- select the inquiries and analytical procedures that will provide the accountant with a basis for communicating whether he or she is aware of any material modifications that should be made to the interim financial information for it to conform with the applicable financial reporting framework.

[Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.11** In planning a review of interim financial information, the accountant should perform procedures to update his or her knowledge of the entity's business and its internal control to (*a*) aid in the determination of the inquiries to be made and the analytical procedures to be performed and (*b*) identify particular events, transactions, or assertions to which the inquiries may be directed or analytical procedures applied. Such procedures should include

- reading documentation of the preceding year's audit and of reviews of prior interim period(s) of the current year and corresponding interim period(s) of the prior year to the extent necessary, based on the accountant's judgment, to enable the accountant to identify matters that may affect the current-period interim financial information. In reading such documents, the accountant should specifically consider the nature of any (*a*) corrected material misstatements; (*b*) matters identified in any summary of uncorrected misstatements;[9] (*c*) identified risks of material misstatement due to fraud, including the risk of management override of controls; and (*d*) significant financial accounting and reporting matters that may be of continuing significance, such as significant deficiencies and material weaknesses.
- reading the most recent annual and comparable prior interim period financial information.
- considering the results of any audit procedures performed with respect to the current year's financial statements.
- inquiring of management about changes in the entity's business activities.
- inquiring of management about whether significant changes in internal control, as it relates to the preparation of interim financial information, have occurred subsequent to the preceding annual audit or

---

*(footnote continued)*

annual audit or during other engagements, management's ability to acknowledge their responsibility to establish and maintain controls that are sufficient to provide a reasonable basis for the preparation of reliable interim financial information in accordance with the applicable financial reporting framework as a precondition to performing a review under this section. [Footnote added, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

[9] Section 312, *Audit Risk and Materiality in Conducting an Audit*, paragraphs .69 and .70, requires the auditor to document the nature and effect of misstatements that the auditor aggregates as well as the auditor's conclusion as to whether such misstatements, individually or in the aggregate, cause the audited financial statements to be materially misstated. Paragraphs .25 and .26 of this section describe the accountant's consideration of such misstatements in a review of interim financial information. [Footnote revised, March 2006, to reflect conforming changes necessary due to the issuance of SAS No. 107. Footnote renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

prior review of interim financial information, including changes in the entity's policies, procedures, and personnel, as well as the nature and extent of such changes.

[Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.12** In an initial review of interim financial information, the accountant should perform procedures that will enable him or her to obtain sufficient knowledge of the entity's business and its internal control to address the objective discussed in paragraph .07 of this section. As part of the procedures to obtain this knowledge, the accountant performing an initial review of interim financial information makes inquiries of the predecessor accountant and reviews the predecessor accountant's documentation for the preceding annual audit and for any prior interim periods in the current year that have been reviewed by the predecessor accountant if the predecessor accountant permits access to such documentation. [10] In doing so, the accountant should specifically consider the nature of any (*a*) corrected material misstatements; (*b*) matters identified in any summary of uncorrected misstatements; (*c*) identified risks of material misstatement due to fraud, including the risk of management override of controls; and (*d*) significant financial accounting and reporting matters that may be of continuing significance, such as significant deficiencies or material weaknesses. However, the inquiries made and analytical procedures performed or other procedures performed in the initial review and the conclusions reached are solely the responsibility of the successor accountant. If the successor accountant is reporting on the review, the successor accountant should not make reference to the report or work of the predecessor accountant as the basis, in part, for the successor accountant's own report. If the predecessor accountant does not respond to the successor accountant's inquiries, or does not allow the successor accountant to review the predecessor accountant's documentation, the successor accountant should use alternative procedures to obtain knowledge of the matters discussed in this paragraph. [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.13** The accountant who has audited the entity's financial statements for one or more annual periods would have acquired sufficient knowledge of an entity's internal control as it relates to the preparation of annual financial information and may have acquired such knowledge with respect to interim financial information. If the accountant has not audited the most recent annual financial statements, the accountant should perform procedures to obtain such knowledge. Knowledge of an entity's internal control, as it relates to the preparation of both annual and interim financial information, includes knowledge of the relevant aspects of the control environment, the entity's risk assessment process, control activities, information and communication, and monitoring, as those terms are defined in section 314, *Understanding the Entity and Its Environment and Assessing the Risks of Material Misstatement*. Internal control over the preparation of interim financial information may differ from internal control over the preparation of annual financial statements because certain accounting principles and practices used for interim financial information may

---

[10] The accountant also may consider reviewing the predecessor accountant's documentation related to reviews of interim period(s) in the prior year. [Footnote renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

differ from those used for the preparation of annual financial statements, for example, the use of estimated effective income tax rates for the preparation of interim financial information, which is prescribed by FASB ASC 270. [Revised, March 2006, to reflect conforming changes necessary due to the issuance of SAS No. 109. Revised, June 2009, to reflect conforming changes necessary due to the issuance of FASB ASC.]

**.14** A restriction on the scope of the review may be imposed if the entity's internal control appears to contain deficiencies so significant that it would be impracticable for the accountant, based on his or her judgment, to effectively perform review procedures that would provide a basis for communicating whether he or she is aware of any material modifications that should be made to the interim financial information for it to conform with the applicable financial reporting framework.[11] [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

## Analytical Procedures, Inquiries, and Other Review Procedures

**.15** Procedures for conducting a review of interim financial information generally are limited to analytical procedures, inquiries, and other procedures that address significant accounting and disclosure matters relating to the interim financial information to be reported. The accountant performs these procedures to obtain a basis for communicating whether he or she is aware of any material modifications that should be made to the interim financial information for it to conform with the applicable financial reporting framework. The specific inquiries made and the analytical and other procedures performed should be tailored to the engagement based on the accountant's knowledge of the entity's business and its internal control. The accountant's knowledge of an entity's business and its internal control influences the inquiries made and analytical procedures performed. For example, if the accountant becomes aware of a significant change in the entity's control activities at a particular location, the accountant may consider (*a*) making additional inquiries, such as whether management monitored the changes and considered whether they were operating as intended, (*b*) employing analytical procedures with a more precise expectation, or (*c*) both. [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.16** *Analytical procedures and related inquiries.* The accountant should apply analytical procedures to the interim financial information to identify and provide a basis for inquiry about the relationships and individual items that appear to be unusual and that may indicate a material misstatement. Analytical procedures, for the purposes of this section, should include

- comparing the interim financial information with comparable information for the immediately preceding interim period, if applicable, and with the corresponding period(s) in the previous year, giving consideration to knowledge about changes in the entity's business and specific transactions.

---

[11] See paragraph .28 of this section. [Footnote renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

- considering plausible relationships among both financial and, where relevant, nonfinancial information. The accountant also may wish to consider information developed and used by the entity, for example, information in a director's information package or in a senior committee's briefing materials.
- comparing recorded amounts, or ratios developed from recorded amounts, to expectations developed by the accountant. The accountant develops such expectations by identifying and using plausible relationships that are reasonably expected to exist based on the accountant's understanding of the entity and the industry in which the entity operates (see paragraph .17 of this section).
- comparing disaggregated revenue data, for example, comparing revenue reported by month and by product line or operating segment during the current interim period with that of comparable prior periods.

See appendix A [paragraph .54] of this section for examples of analytical procedures an accountant may consider performing when conducting a review of interim financial information. The accountant may find the guidance in section 329, *Analytical Procedures*, useful in conducting a review of interim financial information. [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.17** Expectations developed by the accountant in performing analytical procedures in connection with a review of interim financial information ordinarily are less precise than those developed in an audit. Also, in a review the accountant ordinarily is not required to corroborate management's responses with other evidence. However, the accountant should consider the reasonableness and consistency of management's responses in light of the results of other review procedures and the accountant's knowledge of the entity's business and its internal control.[12]

**.18** *Inquiries and other review procedures.* The following are inquiries the accountant should make and other review procedures the accountant should perform when conducting a review of interim financial information:

*a.* Reading the available minutes of meetings of stockholders, directors, and appropriate committees, and inquiring about matters dealt with at meetings for which minutes are not available, to identify matters that may affect the interim financial information.

*b.* Obtaining reports from other accountants, if any, who have been engaged to perform a review of the interim financial information of significant components of the reporting entity, its subsidiaries, or its other investees, or inquiring of those accountants if reports have not been issued.[13]

*c.* Inquiring of members of management who have responsibility for financial and accounting matters concerning

---

[12] See paragraph .22 of this section. [Footnote renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

[13] In these circumstances, the accountant ordinarily is in a position similar to that of an auditor who acts as principal auditor (see section 543, *Part of Audit Performed by Other Independent Auditors*) and makes use of the work or reports of other auditors in the course of an audit of financial statements. [Footnote renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

i. whether the interim financial information has been prepared in conformity with the applicable financial reporting framework consistently applied.

ii. unusual or complex situations that may have an effect on the interim financial information. (See appendix B [paragraph .55] of this section for examples of unusual or complex situations about which the accountant ordinarily would inquire of management.)

iii. significant transactions occurring or recognized in the last several days of the interim period.

iv. the status of uncorrected misstatements identified during the previous audit and interim review (that is, whether adjustments had been recorded subsequent to the prior audit or interim period and, if so, the amounts recorded and period in which such adjustments were recorded).

v. matters about which questions have arisen in the course of applying the review procedures.

vi. events subsequent to the date of the interim financial information that could have a material effect on the presentation of such information.

vii. their knowledge of any fraud or suspected fraud affecting the entity involving (1) management, (2) employees who have significant roles in internal control, or (3) others where the fraud could have a material effect on the financial information.

viii. whether they are aware of allegations of fraud or suspected fraud affecting the entity, for example, received in communications from employees, former employees, analysts, regulators, short sellers, or others.

ix. significant journal entries and other adjustments.

x. communications from regulatory agencies.

xi. significant deficiencies, including material weaknesses, in the design or operation of internal control as it relates to the preparation of both annual and interim financial information.

*d.* Obtaining evidence that the interim financial information agrees or reconciles with the accounting records. For example, the accountant may compare the interim financial information to (1) the accounting records, such as the general ledger; (2) a consolidating schedule derived from the accounting records; or (3) other supporting data in the entity's records. In addition, the accountant should consider inquiring of management as to the reliability of the records to which the interim financial information was compared or reconciled.

*e.* Reading the interim financial information to consider whether, based on the results of the review procedures performed and other information that has come to the accountant's attention, the information to be reported conforms with the applicable financial reporting framework.

*f.* Reading other information in documents containing the interim financial information[14] to consider whether such information or the manner

[14] The accountant may consider section 550, *Other Information in Documents Containing Audited Financial Statements*, which provides guidance for the auditor's consideration of other information included in such documents. [Footnote added, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

of its presentation is materially inconsistent with the interim financial information.[15] If the accountant concludes that there is a material inconsistency, or becomes aware of information that he or she believes is a material misstatement of fact, the action taken will depend on his or her judgment in the particular circumstances.

[Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.19** Many of the aforementioned review procedures can be performed before or simultaneously with the entity's preparation of the interim financial information. For example, it may be practicable to update the understanding of the entity's internal control and begin reading applicable minutes before the end of an interim period. Performing some of the review procedures earlier in the interim period also permits early identification and consideration of significant accounting matters affecting the interim financial information.

**.20** *Inquiry concerning litigation, claims, and assessments.* A review of interim financial information does not contemplate obtaining corroborating evidence for responses to inquiries concerning litigation, claims, and assessments (see paragraph .07 of this section). Consequently, it ordinarily is not necessary to send an inquiry letter to an entity's lawyer concerning litigation, claims, and assessments. However, if information comes to the accountant's attention that leads him or her to question whether the interim financial information departs from the applicable financial reporting framework[16] with respect to litigation, claims, or assessments, and the accountant believes the entity's lawyer may have information concerning that question, an inquiry of the lawyer concerning the specific question is appropriate. [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.21** *Inquiry concerning an entity's ability to continue as a going concern.* A review of interim financial information is not designed to identify conditions or events that may indicate substantial doubt about an entity's ability to continue as a going concern. However, such conditions or events may have existed at the date of prior-period financial statements.[17] In addition, in the course of performing review procedures on the current-period interim financial information, the

---

[15] The principal accountant also may request other accountants involved in the engagement, if any, to read the other information. [Footnote renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

[16] For example, in accordance with FASB ASC 270 and Article 10 of Regulation S-X, contingencies and other uncertainties that could be expected to affect the fairness of the presentation of financial data at an interim date should be disclosed in interim financial information in the same manner required for annual financial statements. Such disclosures should be repeated in interim financial information and annual financial statements until the contingencies have been removed, resolved, or become immaterial. The significance of a contingency or uncertainty should be judged in relation to annual financial statements. [Footnote revised and renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. Footnote revised, June 2009, to reflect conforming changes necessary due to the issuance of FASB ASC. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

[17] For purposes of this section, "conditions or events that existed at the date of prior-period financial statements" include (*a*) substantial doubt about the entity's ability to continue as a going concern that existed at the preceding year end, regardless of whether the substantial doubt was alleviated by the auditor's consideration of management's plans, or (*b*) conditions and events disclosed in the immediately preceding interim period. [Footnote renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

accountant may become aware of conditions or events that might be indicative of the entity's possible inability to continue as a going concern. In either case, the accountant should (*a*) inquire of management as to its plans for dealing with the adverse effects of the conditions and events and (*b*) consider the adequacy of the disclosure about such matters in the interim financial information.[18] It ordinarily is not necessary for the accountant to obtain evidence in support of the information that mitigates the effects of the conditions and events.

**.22** *Extension of interim review procedures*. If, in performing a review of interim financial information, the accountant becomes aware of information that leads him or her to believe that the interim financial information may not be in conformity with the applicable financial reporting framework in all material respects, the accountant should make additional inquiries or perform other procedures that the accountant considers appropriate to provide a basis for communicating whether he or she is aware of any material modifications that should be made to the interim financial information. For example, if the accountant's interim review procedures lead him or her to question whether a significant sales transaction is recorded in conformity with the applicable financial reporting framework, the accountant should perform additional procedures, such as discussing the terms of the transaction with senior marketing and accounting personnel, reading the sales contract, or both, to resolve his or her questions. [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.23** *Coordination with the audit*. The accountant performing the review of interim financial information ordinarily will also be engaged to perform an audit of the annual financial statements of the entity. Certain auditing procedures associated with the annual audit may be performed concurrently with the review of interim financial information. For example, information gained from reading the minutes of meetings of the board of directors in connection with the review also may be used for the annual audit. Also, there may be significant or unusual transactions occurring during the interim period under review for which the auditing procedures that would need to be performed for purposes of the audit of the annual financial statements could be performed, to the extent practicable, at the time of the interim review, for example, business combinations, restructurings, or significant revenue transactions. [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

## Written Representations From Management

**.24** Written representations from management should be obtained for all interim financial information presented and for all periods covered by the review. Specific representations should relate to the following matters:[19]

---

[18] Information that might be disclosed is set forth in section 341, *The Auditor's Consideration of an Entity's Ability to Continue as a Going Concern*, paragraph .10. If the accountant determines that the disclosure about the entity's possible inability to continue as a going concern is inadequate, a departure from generally accepted accounting principles exists. [Footnote revised and renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

[19] For additional guidance regarding written management representations, see section 333, *Management Representations*, paragraphs .08–.12. [Footnote renumbered, January 2009, to reflect

*(continued)*

*Interim Financial Information*

*a.* Management's acknowledgement of its responsibility for the fair presentation of the interim financial information in conformity with the applicable financial reporting framework.

*b.* Management's belief that the interim financial information has been prepared and presented in conformity with the applicable financial reporting framework applicable to interim financial information.

*Internal Control*

*c.* Management's acknowledgement of its responsibility to establish and maintain controls that are sufficient to provide a reasonable basis for the preparation of reliable interim financial information in accordance with the applicable financial reporting framework.

*d.* Disclosure of all significant deficiencies and material weaknesses in the design or operation of internal control as it relates to the preparation of both annual and interim financial information.

*e.* Acknowledgment of management's responsibility for the design and implementation of programs and controls to prevent and detect fraud.

*f.* Knowledge of fraud or suspected fraud affecting the entity involving (1) management, (2) employees who have significant roles in internal control, or (3) others where the fraud could have a material effect on the interim financial information.

*g.* Knowledge of any allegations of fraud or suspected fraud affecting the entity received in communications from employees, former employees, analysts, regulators, short sellers, or others.

*Completeness of Information*

*h.* Availability of all financial records and related data.

*i.* Completeness and availability of all minutes of meetings of stockholders, directors, and committees of directors or summaries of actions of recent meetings for which minutes have not yet been prepared.

*j.* Communications with regulatory agencies concerning noncompliance with or deficiencies in financial reporting practices.

*k.* Absence of unrecorded transactions.

*Recognition, Measurement, and Disclosure*

*l.* Management's belief that the effects of any uncorrected financial statement misstatements aggregated by the accountant during the current review engagement and pertaining to the interim period(s) in the current year are immaterial, both individually and in the aggregate, to the interim financial information as a whole. (A summary of such items should be included in or attached to the letter.)[20]

*m.* Plans or intentions that may materially affect the carrying value or classification of assets or liabilities.

---

*(footnote continued)*

conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

[20] If a summary of uncorrected misstatements is unnecessary because there were no uncorrected misstatements identified, this representation should be eliminated. [Footnote renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

*n.* Information concerning related-party transactions and amounts receivable from or payable to related parties.

*o.* Guarantees, whether written or oral, under which the entity is contingently liable.

*p.* Significant estimates and material concentrations known to management that are required to be disclosed in accordance with FASB ASC 275, *Risks and Uncertainties*.

*q.* Violations or possible violations of laws or regulations whose effects should be considered for disclosure in the interim financial information or as a basis for recording a loss contingency.

*r.* Unasserted claims or assessments that are probable of assertion and must be disclosed in accordance with FASB ASC 450, *Contingencies*.

*s.* Other liabilities or gain or loss contingencies that are required to be accrued or disclosed by FASB ASC 450.

*t.* Satisfactory title to all owned assets, liens or encumbrances on such assets, and assets pledged as collateral.

*u.* Compliance with aspects of contractual agreements that may affect the interim financial information.

*Subsequent Events*

*v.* Information concerning subsequent events.

The representation letter ordinarily should be tailored to include additional representations from management related to matters specific to the entity's business or industry. Appendix C [paragraph .56] of this section presents illustrative representation letters. [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. Revised, June 2009, to reflect conforming changes necessary due to the issuance of FASB ASC. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

## Evaluating the Results of Interim Review Procedures

**.25** A review of interim financial information is not designed to obtain reasonable assurance that the interim financial information is free of material misstatement. However, based on the review procedures performed, the accountant may become aware of *likely misstatements*. In the context of an interim review, a likely misstatement is the accountant's best estimate of the total misstatement in the account balances or classes of transactions on which he or she has performed review procedures. The accountant should accumulate for further evaluation likely misstatements identified in performing the review procedures. The accountant may designate an amount below which misstatements need not be accumulated, based on his or her professional judgment. However, the accountant should recognize that aggregated misstatements of relatively small amounts could have a material effect on the interim financial information.

**.26** Misstatements identified by the accountant or brought to the accountant's attention, including inadequate disclosure,[21] should be evaluated individually and in the aggregate to determine whether material modification

[21] For example, Rule 10-01 of Regulation S-X states

The interim financial information shall include disclosures either on the face of the financial statements or in accompanying footnotes sufficient so as to make the interim information presented not misleading. Registrants may presume that users of the interim financial information have read or have access to the audited financial

*(continued)*

should be made to the interim financial information for it to conform with the applicable financial reporting framework.[22] The accountant should use his or her professional judgment in evaluating the materiality of any likely misstatements that the entity has not corrected. The accountant should consider matters such as (*a*) the nature, cause (if known), and amount of the misstatements; (*b*) whether the misstatements originated in the preceding year or interim periods of the current year; (*c*) materiality judgments made in conjunction with the current or prior year's annual audit; and (*d*) the potential effect of the misstatements on future interim or annual periods.[23] [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.27** When evaluating whether uncorrected likely misstatements, individually or in the aggregate, are material, the accountant also should (*a*) consider the appropriateness of offsetting a misstatement of an estimated amount with a misstatement of an item capable of precise measurement and (*b*) recognize that an accumulation of immaterial misstatements in the balance sheet could contribute to material misstatements in future periods.

**.28** When an accountant is unable to perform the procedures he or she considers necessary to achieve the objective of a review of interim financial information, or the client does not provide the accountant with the written representations the accountant believes are necessary, the review will be incomplete.

---

*(footnote continued)*

> statements for the preceding fiscal year and that the adequacy of additional disclosure needed for a fair presentation, except in regard to material contingencies, may be determined in that context. Accordingly, footnote disclosure which would substantially duplicate the disclosure contained in the most recent annual report to security holders or latest audited financial statements, such as a statement of significant accounting policies and practices, details of accounts which have not changed significantly in amount or composition since the end of the most recently completed fiscal year, and detailed disclosures prescribed by Rule 4-08 of this Regulation, may be omitted. However, disclosure shall be provided where events subsequent to the end of the most recent fiscal year have occurred which have a material impact on the registrant. Disclosures should encompass for example, significant changes since the end of the most recently completed fiscal year in such items as: accounting principles and practices; estimates inherent in the preparation of the financial statements; status of long-term contracts; capitalization including significant new borrowings or modification of existing financing arrangements; and the reporting entity resulting from business combinations or dispositions. Notwithstanding the above, where material contingencies exist, disclosure of such matters shall be provided even though a significant change since year end may not have occurred.

[Footnote revised and renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

[22] FASB ASC 270 describes the applicability of generally accepted accounting principles to interim financial information and indicates the types of disclosures necessary to report on a meaningful basis for a period of less than a full year. FASB ASC 270-10-45-16 provides guidance on assessing materiality in interim periods. For example, FASB ASC 270-10-45-16 states, "In determining materiality for the purpose of reporting the correction of an error, amounts shall be related to the estimated income for the full fiscal year and also to the effect on the trend of earnings." [Footnote revised and renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. Footnote revised, June 2009, to reflect conforming changes necessary due to the issuance of FASB ASC. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

[23] Section 312 paragraph .60 provides guidance with respect to the auditor's qualitative considerations in evaluating whether the misstatements are material. [Footnote revised, March 2006, to reflect conforming changes necessary due to the issuance of SAS No. 107. Footnote revised and renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

An incomplete review is not an adequate basis for issuing a review report. If the accountant cannot complete the review, the accountant should communicate that information in accordance with the guidance in paragraphs .29–.31 of this section. Nevertheless, if the accountant has become aware of material modifications that should be made to the interim financial information for it to conform with the applicable financial reporting framework, such matters should be communicated pursuant to paragraphs .29–.31 of this section. [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

## Communications to Management and Those Charged With Governance

**.29** As a result of conducting a review of interim financial information, the accountant may become aware of matters that cause him or her to believe that (*a*) material modification should be made to the interim financial information for it to conform with the applicable financial reporting framework or (*b*) that the entity issued the interim financial information before the completion of the review, in those circumstances in which a review is required. In such circumstances, the accountant should communicate the matter(s) to the appropriate level of management as soon as practicable. [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.30** If, in the accountant's judgment, management does not respond appropriately to the accountant's communication within a reasonable period of time, the accountant should inform those charged with governance of the matters as soon as practicable. This communication may be oral or written. If information is communicated orally, the accountant should document the communication. [Revised, April 2007, to reflect conforming changes necessary due to the issuance of SAS No. 114.]

**.31** If, in the accountant's judgment, those charged with governance do not respond appropriately to the accountant's communication within a reasonable period of time, the accountant should evaluate whether to resign from the engagement to review the interim financial information and as the entity's auditor. The accountant may wish to consult with his or her attorney when making these evaluations. [Revised, April 2007, to reflect conforming changes necessary due to the issuance of SAS No. 114.]

**.32** When conducting a review of interim financial information, the accountant may become aware of fraud or possible illegal acts. If the matter involves fraud, it should be brought to the attention of the appropriate level of management. If the fraud involves senior management or results in a material misstatement of the interim financial information, the accountant should communicate the matter directly to those charged with governance as described in section 316, *Consideration of Fraud in a Financial Statement Audit*, paragraphs .79–.82. If the matter involves possible illegal acts, the accountant should assure himself or herself that those charged with governance are adequately informed, unless the matter is clearly inconsequential.[24] (See section 317, *Illegal Acts by*

[24] The accountant may have additional communication responsibilities pursuant to section 317, *Illegal Acts by Clients*, and section 316, *Consideration of Fraud in a Financial Statement Audit*. [Footnote revised and renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

*Clients*, paragraph .17.) [Revised, April 2007, to reflect conforming changes necessary due to the issuance of SAS No. 114. Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.33** When conducting a review of interim financial information, the accountant may become aware of significant deficiencies or material weaknesses in internal control as it relates to the preparation of annual and interim financial information that should be communicated to management and those charged with governance. Section 325, *Communicating Internal Control Related Matters Identified in an Audit*, defines *significant deficiency* as a deficiency, or combination of deficiencies, in internal control over financial reporting, that is less severe than a material weakness, yet important enough to merit attention by those charged with governance.[25] Section 325 defines *material weakness* as a deficiency, or combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the entity's financial statements will not be prevented, or detected and corrected on a timely basis. A reasonable possibility exists when the likelihood of the event is either reasonably possible or probable as those terms are used in FASB ASC 450. The accountant also may wish to submit recommendations related to other matters that come to the accountant's attention.[26] [Revised, May 2006, to reflect conforming changes necessary due to the issuance of SAS No. 112. Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. Revised, June 2009, to reflect conforming changes necessary due to the issuance of FASB ASC. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.34** When conducting a review of interim financial information, the accountant also should determine whether any of the matters described in section 380, *The Auditor's Communication With Those Charged With Governance*, as they relate to the interim financial information, have been identified. If such matters have been identified, the accountant should communicate them to those charged with governance. For example, the accountant should communicate with those charged with governance about a change in a significant accounting policy affecting the interim financial information; about adjustments that, either individually or in the aggregate, could have a significant effect on the entity's financial reporting process; and about uncorrected misstatements aggregated by the accountant that were determined by management to be immaterial, both individually and in the aggregate, to the interim financial information taken as a whole.[27] [Revised, April 2007, to reflect conforming changes necessary due

---

[25] [Footnote deleted, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116.]

[26] Section 325, *Communicating Internal Control Related Matters Identified in an Audit*, provides guidance on communicating significant deficiencies and material weaknesses in internal control. [Footnote renumbered and revised, May 2006, to reflect conforming changes necessary due to the issuance of SAS No. 112. Footnote renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

[27] The presentation to those charged with governance should be similar to the summary of uncorrected misstatements included in or attached to the management representation letter that is described in paragraph .24*l* of this section. [Footnote renumbered to reflect conforming changes necessary due to the issuance of SAS No. 112. Footnote revised, April 2007, to reflect conforming changes necessary due to the issuance of SAS No. 114. Footnote revised and renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

to the issuance of SAS No. 114. Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.35** The objective of a review of interim financial information differs significantly from that of an audit. Therefore, any communication the accountant may make about the quality, not just the acceptability, of the entity's accounting principles as applied to its interim financial reporting generally would be limited to the effect of significant events, transactions, and changes in accounting estimates that the accountant considered when conducting the review of interim financial information. Further, interim review procedures do not provide assurance that the accountant will become aware of all matters that might affect the accountant's judgments about the quality of the entity's accounting principles that would be identified as a result of an audit.

**.36** If the accountant has identified matters to be communicated to those charged with governance, the accountant should attempt to make such communications with those charged with governance, or at least the chair of its audit committee (or a similar subgroup with a different name), on a sufficiently timely basis to enable those charged with governance to take appropriate action. The communications may be oral or written. If information is communicated orally, the accountant should document the communications. [Revised, April 2007, to reflect conforming changes necessary due to the issuance of SAS No. 114. Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

# The Accountant's Report on a Review of Interim Financial Information[28]

## Form of Accountant's Review Report

**.37** Pursuant to paragraph .03 of this standard, an accountant is not required to issue a report on a review of interim financial information; however, if the accountant is engaged to issue a written report or, based upon the guidance in paragraph .03, determines to issue a written report, the accountant's review report accompanying interim financial information should consist of the following:

*a.* A title that includes the word *independent*.

*b.* A statement that the interim financial information identified in the report was reviewed.

*c.* A statement that the interim financial information is the responsibility of the entity's management.

*d.* A statement that the review of interim financial information was conducted in accordance with standards established by the AICPA.

*e.* A description of the procedures for a review of interim financial information.

*f.* A statement that a review of interim financial information is substantially less in scope than an audit conducted in accordance with auditing standards generally accepted in the United States, the objective of

[28] [Footnote deleted, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116.]

which is an expression of an opinion regarding the financial information taken as a whole, and accordingly, no such opinion is expressed.

*g.* A statement about whether the accountant is aware of any material modifications that should be made to the accompanying interim financial information for it to conform with the applicable financial reporting framework. The statement should include an identification of the country of origin of those accounting principles (for example, accounting principles generally accepted in the United States of America or U.S. generally accepted accounting principles).

*h.* The manual or printed signature of the accountant's firm.

*i.* The date of the review report. (Generally, the report should be dated as of the date of completion of the review procedures.[29])

In addition, each page of the interim financial information should be clearly marked as unaudited.

**.38** The following is an example of a review report:[30]

<u>Independent Accountant's Report</u>

We have reviewed the accompanying [*describe the interim financial information or statements reviewed*] of ABC Company and consolidated subsidiaries as of September 30, 20X1, and for the three-month and nine-month periods then ended. This interim financial information is the responsibility of the company's management.

We conducted our review in accordance with standards established by the American Institute of Certified Public Accountants. A review of interim financial information consists principally of applying analytical procedures and making inquiries of persons responsible for financial and accounting matters. It is substantially less in scope than an audit conducted in accordance with auditing standards generally accepted in the United States, the objective of which is the expression of an opinion regarding the financial information taken as a whole. Accordingly, we do not express such an opinion.

Based on our review, we are not aware of any material modifications that should be made to the accompanying interim financial information for it to be in conformity with [*identify the applicable financial reporting framework; for example, accounting principles generally accepted in the United States of America*].

[*Signature*]

[*Date*]

[Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial

---

29 Other reporting issues related to the dating of reports or subsequent events are similar to those encountered in an audit of financial statements. See sections 530, *Dating of the Independent Auditor's Report*, and 560, *Subsequent Events*. [Footnote renumbered to reflect conforming changes necessary due to the issuance of SAS No. 112. Footnote renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

30 If interim financial information of a prior period is presented with that of the current period and the accountant has conducted a review of that information, the accountant should report on his or her review of the prior period. An example of the first sentence of such a report follows: "We have reviewed ... of ABC Company and consolidated subsidiaries as of September 30, 20X1 and 20X2, and for the three-month and nine-month periods then ended...." [Footnote renumbered to reflect conforming changes necessary due to the issuance of SAS No. 112. Footnote renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.39** An accountant may be engaged to report on a review of comparative interim financial information.[31] The following is an example of a review report on a condensed balance sheet as of March 31, 20X1, the related condensed statements of income and cash flows for the three-month periods ended March 31, 20X1 and 20X0, and a condensed balance sheet derived from audited financial statements as of December 31, 20X0.[32]

Independent Accountant's Report

We have reviewed the condensed consolidated balance sheet of ABC Company and subsidiaries as of March 31, 20X1, and the related condensed consolidated statements of income and cash flows for the three-month periods ended March 31, 20X1 and 20X0. This condensed financial information is the responsibility of the company's management.

We conducted our reviews in accordance with standards established by the American Institute of Certified Public Accountants. A review of interim financial information consists principally of applying analytical procedures and making inquiries of persons responsible for financial and accounting matters. It is substantially less in scope than an audit conducted in accordance with auditing standards generally accepted in the United States, the objective of which is the expression of an opinion regarding the financial information taken as a whole. Accordingly, we do not express such an opinion.

Based on our reviews, we are not aware of any material modifications that should be made to the condensed financial information referred to above for them to be in conformity with [*identify the applicable financial reporting framework; for example, accounting principles generally accepted in the United States of America*].

We have previously audited, in accordance with auditing standards generally accepted in the United States of America, the consolidated balance sheet of ABC Company and subsidiaries as of December 31, 20X0, and the related consolidated statements of income, retained earnings, and cash flows for the year then ended (not presented herein); and in our report dated February 15, 20X1, we expressed an unqualified opinion on those consolidated financial statements. In our opinion, the information set forth in the accompanying condensed consolidated balance sheet as of December 31, 20X0, is fairly stated, in all material respects, in relation to the consolidated balance sheet from which it has been derived.[33]

[*Signature*]

[*Date*]

---

[31] As interim financial reporting is intended to be an update to year end reporting, balance sheet information as of the most recent year end ordinarily would be presented for comparative purposes with the corresponding information as of the latest interim period. Likewise, the comparative presentation for income statement and cash flow information presented for the current interim period would be that of the corresponding interim period of the prior year. [Footnote added, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

[32] [Footnote deleted, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116.]

[33] If the auditor's report on the preceding year-end financial statements was other than unqualified, referred to other auditors, or included an explanatory paragraph because of a going-concern matter or an inconsistency in the application of accounting principles, the last paragraph of the illustrative report in paragraph .39 should be appropriately modified. [Footnote renumbered to reflect

*(continued)*

[Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.40** The accountant may use and make reference to another accountant's review report on the interim financial information of a significant component of a reporting entity. This reference indicates a division of responsibility for performing the review.[34] The following is an example of report including such a reference:

Independent Accountant's Report

> We have reviewed the accompanying [*describe the interim financial information or statements reviewed*] of ABC Company and consolidated subsidiaries as of September 30, 20X1, and for the three-month and nine-month periods then ended. This interim financial information is the responsibility of the company's management.
>
> We were furnished with the report of other accountants on their review of the interim financial information of DEF subsidiary, whose total assets as of September 30, 20X1, and whose revenues for the three-month and nine-month periods then ended, constituted 15 percent, 20 percent, and 22 percent, respectively, of the related consolidated totals.
>
> We conducted our review in accordance with standards established by the American Institute of Certified Public Accountants. A review of interim financial information consists principally of applying analytical procedures and making inquiries of persons responsible for financial and accounting matters. It is substantially less in scope than an audit conducted in accordance with auditing standards generally accepted in the United States, the objective of which is the expression of an opinion regarding the financial information taken as a whole. Accordingly, we do not express such an opinion.
>
> Based on our review and the report of other accountants, we are not aware of any material modifications that should be made to the accompanying interim financial information for it to be in conformity with [*identify the applicable financial reporting framework; for example, accounting principles generally accepted in the United States of America*].
>
> [*Signature*]
>
> [*Date*]

[Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

---

*(footnote continued)*

conforming changes necessary due to the issuance of SAS No. 112. Footnote revised and renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

[34] See section 543, *Part of Audit Performed by Other Independent Auditors*. [Footnote renumbered to reflect conforming changes necessary due to the issuance of SAS No. 112. Footnote revised and renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

## Modification of the Accountant's Review Report

**.41** The accountant's report on a review of interim financial information should be modified for departures from the applicable financial reporting framework,[35] which include inadequate disclosure and changes in accounting principle that are not in conformity with the applicable financial reporting framework. The existence of substantial doubt about the entity's ability to continue as a going concern or a lack of consistency in the application of accounting principles affecting the interim financial information would not require the accountant to add an additional paragraph to the report, provided that the interim financial information appropriately discloses such matters. Although not required, the accountant may wish to emphasize such matters in a separate explanatory paragraph of the report. See paragraphs .44–.45 of this section for examples of paragraphs that address matters related to an entity's ability to continue as a going concern. [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.42** *Departure from the applicable financial reporting framework.* If the accountant becomes aware that the interim financial information is materially affected by a departure from the applicable financial reporting framework, he or she should modify the report. The modification should describe the nature of the departure and, if practicable, should state the effects on the interim financial information. Following is an example of such a modification of the accountant's report.

> [*Explanatory paragraph*]
>
> Based on information furnished to us by management, we believe that the company has excluded from property and debt in the accompanying balance sheet certain lease obligations that we believe should be capitalized to conform with [*identify the applicable financial reporting framework; for example, accounting principles generally accepted in the United States of America*]. This information indicates that if these lease obligations were capitalized at September 30, 20X1, property would be increased by $____, long-term debt by $____, and net income and earnings per share would be increased (decreased) by $______, $______, $______, and $______, respectively, for the three-month and nine-month periods then ended.
>
> [*Concluding paragraph*]
>
> Based on our review, with the exception of the matter(s) described in the preceding paragraph(s), we are not aware of any material modifications that should be made to the accompanying interim financial information for it to be in conformity with [*identify the applicable financial reporting framework; for example, accounting principles generally accepted in the United States of America*].

[Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

---

[35] If the circumstances contemplated by Rule 203, *Accounting Principles* [ET sec. 203 par. 01], are present, the accountant should refer to the guidance in section 508, *Reports on Audited Financial Statements*, paragraph .15. [Footnote renumbered to reflect conforming changes necessary due to the issuance of SAS No. 112. Footnote revised and renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.43** *Inadequate disclosure*. The information necessary for adequate disclosure is influenced by the form and context in which the interim financial information is presented. For example, the disclosures considered necessary for interim financial information presented in accordance with the minimum disclosure requirements of FASB ASC 270-10-50-1, which is applicable to summarized financial statements of public companies, are considerably less extensive than those necessary for annual financial statements that present financial position, results of operations, and cash flows in conformity with the applicable financial reporting framework.[36] If information that the accountant believes is necessary for adequate disclosure in conformity with the applicable financial reporting framework[37] is not included in the interim financial information, the accountant should modify the report and, if practicable, include the necessary information in the report. The following is an example of such a modification of the accountant's report:

> [*Explanatory paragraph*]
>
> Management has informed us that the company is presently defending a claim regarding [*describe the nature of the loss contingency*] and that the extent of the company's liability, if any, and the effect on the accompanying information is not determinable at this time. The information fails to disclose these matters, which we believe are required to be disclosed in conformity with [*identify the applicable financial reporting framework; for example, accounting principles generally accepted in the United States of America*].
>
> [*Concluding paragraph*]
>
> Based on our review, with the exception of the matter(s) described in the preceding paragraph(s), we are not aware of any material modifications that should be made to the accompanying interim financial information for it to be in conformity with [*identify the applicable financial reporting framework; for example, accounting principles generally accepted in the United States of America*].

[Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. Revised, June 2009, to reflect conforming changes necessary due to the issuance of FASB ASC. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.44** *Going-concern paragraph was included in the prior year's audit report; conditions giving rise to the paragraph continue to exist.* If (*a*) the auditor's report for the prior year end contained an explanatory paragraph indicating the existence of substantial doubt about the entity's ability to continue as a

---

[36] For example, FASB ASC 270-10-50-3 states that "there is a presumption that users of summarized interim financial data will have read the latest published annual report, including the financial disclosures required by generally accepted accounting principles and management's commentary concerning the annual financial results, and that the summarized interim data will be viewed in that context." See footnote 21 of this section for additional disclosure requirements. [Footnote renumbered to reflect conforming changes necessary due to the issuance of SAS No. 112. Footnote revised and renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. Footnote revised, June 2009, to reflect conforming changes necessary due to the issuance of FASB ASC. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

[37] Such disclosures include those set forth in section 341A, *The Auditor's Consideration of an Entity's Ability to Continue as a Going Concern*, paragraph .10. If the accountant determines that disclosure about the entity's possible inability to continue as a going concern is inadequate, a departure from generally accepted accounting principles exists. [Footnote renumbered to reflect conforming changes necessary due to the issuance of SAS No. 112. Footnote renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

going concern, (*b*) the conditions that raised such doubt continued to exist as of the interim reporting date covered by the review, and (*c*) there is adequate and appropriate disclosure about these conditions in the interim financial information, the accountant is not required to modify his or her report. However, the accountant may add an explanatory paragraph to the review report, after the concluding paragraph, emphasizing the matter disclosed in the audited financial statements and the interim financial information. The following is an example of such a paragraph.

> Note 4 of the Company's audited financial statements as of December 31, 20X1, and for the year then ended discloses that the Company was unable to renew its line of credit or obtain alternative financing at December 31, 20X1. Our auditor's report on those financial statements includes an explanatory paragraph referring to the matters in Note 4 of those financial statements and indicating that these matters raised substantial doubt about the Company's ability to continue as a going concern. As indicated in Note 3 of the Company's unaudited interim financial information as of March 31, 20X2, and for the three months then ended, the Company was still unable to renew its line of credit or obtain alternative financing as of March 31, 20X2. The accompanying interim financial information does not include any adjustments that might result from the outcome of this uncertainty.

[Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.45** *Going-concern paragraph was not included in the prior year's audit report; conditions or events exist as of the interim reporting date covered by the review that might be indicative of the entity's possible inability to continue as a going concern.* If (*a*) conditions or events exist as of the interim reporting date covered by the review that might be indicative of the entity's possible inability to continue as a going concern, and (*b*) there is adequate and appropriate disclosure about these conditions or events in the interim financial information, the accountant is not required to modify his or her report. However, the accountant may add an explanatory paragraph to the review report, after the concluding paragraph, emphasizing the matter disclosed in the interim financial information. The following is an example of such a paragraph.

> As indicated in note 3, certain conditions indicate that the Company may be unable to continue as a going concern. The accompanying interim financial information does not include any adjustments that might result from the outcome of this uncertainty.

## Subsequent Discovery of Facts Existing at the Date of the Accountant's Report or Completion of the Interim Review Procedures

**.46** Subsequent to the date of the accountant's review report or the completion of the interim review procedures, if a report is not issued, the accountant may become aware that facts existed at the date of the review report (or the completion of the review procedures) that might have affected the accountant's report (or conclusion, if a report is not issued) had he or she then been aware of those matters. Because of the variety of conditions that might be encountered, the specific actions to be taken by the accountant in a particular case may vary with the circumstances. In any event, the accountant should consider the guidance in section 561, *Subsequent Discovery of Facts Existing at the Date of the Auditor's Report*.

## Client's Representation Concerning a Review of Interim Financial Information

**.47** If a client represents in a report, document, or written communication containing the reviewed interim financial information that the accountant has reviewed the interim financial information, the accountant should advise the entity that his or her review report must be included in the report, document, or written communication. If the client will not agree to include the accountant's review report, the accountant should perform the following procedures:

- Request that the accountant's name be neither associated with the interim financial information nor referred to in the document.
- If the client does not comply with the request, advise the client that the accountant will not permit either the use of his or her name or reference to him or her.
- Communicate the client's noncompliance with the request to those charged with governance.
- When appropriate, recommend that the client consult with its legal counsel about the application of relevant laws and regulations to the circumstances.
- Consider what other actions might be appropriate.[38]

[Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

**.48** If a client represents in a document filed with a regulatory agency or issued to stockholders or third parties that the accountant has reviewed the interim financial information included in the document, and the accountant has been unable to complete the review of the interim financial information, the accountant should refer to paragraphs .28 and .47 of this section for guidance.

[Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

## Interim Financial Information Accompanying Audited Financial Statements

**.49** Interim financial information may be presented as supplementary information outside audited financial statements. In such circumstances, each page of the interim financial information should be clearly marked as unaudited. If management chooses or is required to present interim financial information in a note to the audited financial statements, the information also should be clearly marked as unaudited.

**.50** The auditor ordinarily need not modify his or her report on the audited financial statements to refer to his or her having performed a review in

---

[38] In considering what actions, if any, may be appropriate in these circumstances, the accountant should consider consulting his or her legal counsel. [Footnote renumbered to reflect conforming changes necessary due to the issuance of SAS No. 112. Footnote renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

accordance with this section or to refer to the interim financial information accompanying the audited financial statements because the interim financial information has not been audited and is not required for the audited financial statements to be fairly stated in conformity with the applicable financial reporting framework. The auditor's report on the audited financial statements should, however, be modified in the following circumstances:

*a.* The interim financial information included in a note to the financial statements, including information that has been reviewed in accordance with this section, is not appropriately marked as unaudited. (In these circumstances the auditor should disclaim an opinion on the interim financial information.)

*b.* The interim financial information accompanying audited financial statements does not appear to be presented in conformity with the applicable financial reporting framework (see paragraphs .42–.43 of this section). However, the auditor need not modify his or her report on the audited financial statements if his or her separate review report, which refers to those circumstances, is presented with the information.

[Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

## Documentation

**.51** The accountant should prepare documentation in connection with a review of interim financial information, the form and content of which should be designed to meet the circumstances of the particular engagement. Documentation is the principal record of the review procedures performed and the conclusions reached by the accountant in performing the review.[39] Examples of documentation are review programs, analyses, memoranda, and letters of representation. Documentation may be in paper or electronic form, or other media. The quantity, type, and content of the documentation are matters of the accountant's professional judgment.

**.52** Because of the different circumstances in individual engagements, it is not possible to specify the form or content of the documentation the accountant should prepare. However, the documentation should include any findings or issues that in the accountant's judgment are significant, for example, the results of review procedures that indicate that the interim financial information could be materially misstated, including actions taken to address such findings, and the basis for the final conclusions reached. In addition, the documentation should (*a*) enable members of the engagement team with supervision and review responsibilities to understand the nature, timing, extent, and results of the review procedures performed; (*b*) identify the engagement team member(s) who performed and reviewed the work; and (*c*) identify the evidence the accountant obtained in support of the conclusion that the interim financial information being reviewed agreed or reconciled with the accounting records (see paragraph .18*d* of this section).

---

[39] However, an accountant would not be precluded from supporting his or her conclusions by other means in addition to the review documentation. [Footnote renumbered to reflect conforming changes necessary due to the issuance of SAS No. 112. Footnote revised and renumbered, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

## Effective Date

**.53** This section is effective for reviews of interim financial information for interim periods beginning after December 15, 2009. Earlier application of the provisions of this section is permitted. [Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

.54

# Appendix A

## Analytical Procedures the Accountant May Consider Performing When Conducting a Review of Interim Financial Information

A1. Analytical procedures are designed to identify relationships and individual items that appear to be unusual and that may reflect a material misstatement of the interim financial information. These procedures may consist of comparing interim financial information with prior period information, actual interim results with anticipated results (such as budgets or forecasts), and recorded amounts or ratios with expectations developed by the accountant. Examples of analytical procedures an accountant may consider performing in a review of interim financial information include

- comparing current interim financial information with anticipated results, such as budgets or forecasts (for example, comparing tax balances and the relationship between the provision for income taxes and pretax income in the current interim financial information with corresponding information in (*a*) budgets, using expected rates, and (*b*) financial information for prior periods).[1]
- comparing current interim financial information with relevant nonfinancial information.
- comparing ratios and indicators for the current interim period with expectations based on prior periods, for example, performing gross profit analysis by product line and operating segment using elements of the current interim financial information and comparing the results with corresponding information for prior periods. Examples of key ratios and indicators are the current ratio, receivable turnover or days' sales outstanding, inventory turnover, depreciation to average fixed assets, debt to equity, gross profit percentage, net income percentage, and plant operating rates.
- comparing ratios and indicators for the current interim period with those of entities in the same industry.
- comparing relationships among elements in the current interim financial information with corresponding relationships in the interim financial information of prior periods, for example, expense by type as a percentage of sales, assets by type as a percentage of total assets, and percentage of change in sales to percentage of change in receivables.
- comparing disaggregated data. The following are examples of how data may be disaggregated:
  - — By period, for example, financial statement items disaggregated into quarterly, monthly, or weekly amounts.

---

[1] The accountant should exercise caution when comparing and evaluating current interim financial information with budgets, forecasts, or other anticipated results because of the inherent lack of precision in estimating the future and susceptibility of such information to manipulation and misstatement by management to reflect desired interim results.

— By product line or operating segment.
— By location, for example, subsidiary, division, or branch.

A2. Analytical procedures may include such statistical techniques as trend analysis or regression analysis and may be performed manually or with the use of computer-assisted techniques.

.55

# Appendix B

## Unusual or Complex Situations to Be Considered by the Accountant When Conducting a Review of Interim Financial Information

B1. The following are examples of situations about which the accountant would ordinarily inquire of management:

- Business combinations
- New or complex revenue recognition methods
- Impairment of assets
- Disposal of a segment of a business
- Use of derivative instruments and hedging activities
- Sales and transfers that may call into question the classification of investments in securities, including management's intent and ability with respect to the remaining securities classified as held to maturity
- Computation of earnings per share in a complex capital structure
- Adoption of new stock compensation plans or changes to existing plans
- Restructuring charges taken in the current and prior quarters
- Significant, unusual, or infrequently occurring transactions
- Changes in litigation or contingencies
- Changes in major contracts with customers or suppliers
- Application of new accounting principles
- Changes in accounting principles or the methods of applying them
- Trends and developments affecting accounting estimates,[1] such as allowances for bad debts and excess or obsolete inventories, provisions for warranties and employee benefits, and realization of unearned income and deferred charges
- Compliance with debt covenants
- Changes in related parties or significant new related-party transactions
- Material off-balance-sheet transactions, special-purpose entities, and other equity investments
- Unique terms for debt or capital stock that could affect classification

---

[1] The accountant may wish to refer to the guidance in section 342, *Auditing Accounting Estimates*, paragraphs .05–.06.

.56

# Appendix C

## Illustrative Management Representation Letters for a Review of Interim Financial Information

C1. The following illustrative management representation letters, which relate to a review of interim financial information prepared in conformity with an applicable financial reporting framework, are presented for illustrative purposes only. The first letter is designed to be used in conjunction with the representation letter provided by management in connection with the audit of the financial statements of the prior year. The second illustrative representation letter may be used independently of any other representation letter.

C2. The introductory paragraph of the letters should specify the financial information and periods covered by the accountant's report, for example, "condensed balance sheets of XYZ Company as of June 30, 20X1 and 20X2, and the related condensed statements of income and retained earnings and cash flows for the three-month and nine-month periods then ended." The written representations to be obtained should be based on the circumstances of the engagement and the nature and basis of presentation of the interim financial information being reviewed. Appendix B, "Additional Illustrative Representations," of section 333, *Management Representations*, presents examples of such representations. Illustrative representations for specialized industries are presented in AICPA Audit and Accounting Guides.

C3. If matters exist that should be disclosed to the accountant, they should be indicated by modifying the related representation. For example, if an event subsequent to the date of the balance sheet has been disclosed in the interim financial information, the final paragraph could be modified as follows: "To the best of our knowledge and belief, except as discussed in note X to the interim financial information, no events have occurred. . . ." In appropriate circumstances, item 10 of the second illustrative representation letter could be modified as follows: "The company has no plans or intentions that may materially affect the carrying value or classification of assets and liabilities, except for our plans to dispose of segment A, as disclosed in note X to the interim financial information, which are discussed in the minutes of the June 7, 20X2, meeting of the board of directors (or disclosed to you at our meeting on June 15, 20X2)." Similarly, if management has received a communication regarding an allegation of fraud or suspected fraud, item 7 of the first illustrative representation letter and item 9 of the second illustrative representation letter could be modified as follows: "Except for the allegation discussed in the minutes of the December 7, 20X1, meeting of the board of directors (or disclosed to you at our meeting on October 15, 20X1), we have no knowledge of any allegations of fraud or suspected fraud affecting the company received in communications from employees, former employees, analysts, regulators, short sellers, or others."

C4. The qualitative discussion of materiality used in the illustrative letters is adapted from the Financial Accounting Standards Board Statement of Financial Accounting Concepts No. 2, *Qualitative Characteristics of Accounting Information*.

C5. Certain terms are used in the illustrative letters that are described elsewhere in authoritative literature. Examples are *fraud*, in section 316, *Consideration of Fraud in a Financial Statement Audit*, and *related parties*, in

section 334, *Related Parties*, footnote 1). To avoid misunderstanding concerning the meaning of such terms, the accountant may wish to furnish those definitions to management or request that the definitions be included in the written representations.

C6. The illustrative letters assume that management and the accountant have reached an understanding on the limits of materiality for purposes of the written representations. However, it should be noted that a materiality limit would not apply for certain representations, as explained in section 333 paragraph .08.

### 1. Illustrative Short-Form Representation Letter for a Review of Interim Financial Information

[*This representation letter is to be used in conjunction with the representation letter for the audit of the financial statements of the prior year. Management confirms the representations made in the representation letter for the audit of the financial statements of the prior year end as they apply to the interim financial information, and makes additional representations that may be needed for the interim financial information.*]

[*Date*]

To [*Independent Accountant*]:

We are providing this letter in connection with your review of the [*identification of interim financial information*] of [*name of entity*] as of [*dates*] and for the [*periods*] for the purpose of determining whether any material modifications should be made to the [*consolidated*] interim financial information for it to conform with [*identify the applicable financial reporting framework; for example, accounting principles generally accepted in the United States of America, including, if appropriate, an indication as to the appropriate form and content of interim financial information (for example, Article 10 of SEC Regulation S-X)*]. We confirm that we are responsible for the fair presentation of the [*consolidated*] interim financial information in conformity with [*identify the applicable financial reporting framework; for example, generally accepted accounting principles*] and that we are responsible for establishing and maintaining controls that are sufficient to provide a reasonable basis for the preparation of reliable interim financial information in accordance with [*identify the applicable financial reporting framework; for example, generally accepted accounting principles*].

Certain representations in this letter are described as being limited to matters that are material. Items are considered material, regardless of size, if they involve an omission or misstatement of accounting information that, in the light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would be changed or influenced by the omission or misstatement.

We confirm, to the best of our knowledge and belief, [*as of (date of accountant's report or completion of review)*,] the following representations made to you during your review:

1. The interim financial information referred to above has been prepared and presented in conformity with [*identify the applicable financial reporting framework; for example, generally accepted accounting principles*] applicable to interim financial information.
2. We have made available to you
    *a.* all financial records and related data.

*b.* all minutes of the meetings of stockholders, directors, and committees of directors, or summaries of actions of recent meetings for which minutes have not yet been prepared. All significant board and committee actions are included in the summaries.

3. We believe that the effects of any uncorrected financial statement misstatements aggregated by you during the current review engagement and pertaining to the interim period(s) in the current year, as summarized in the accompanying schedule, are immaterial, both individually and in the aggregate, to the interim financial information taken as a whole.[1]
4. There are no significant deficiencies or material weaknesses in the design or operation of internal controls as it relates to the preparation of both annual and interim financial information.
5. We acknowledge our responsibility for the design and implementation of programs and controls to prevent and detect fraud.
6. We have no knowledge of any fraud or suspected fraud affecting the company involving
   *a.* management;
   *b.* employees who have significant roles in internal control; or
   *c.* others where the fraud could have a material effect on the interim financial information.
7. We have no knowledge of any allegations of fraud or suspected fraud affecting the company received in communications from employees, former employees, analysts, regulators, short sellers, or others.
8. We have reviewed our representation letter to you dated [*date of representation letter relating to most recent audit*] with respect to the audited financial statements for the year ended [*prior year-end date*]. We believe that representations A, B, and C within that representation letter do not apply to the interim financial information referred to above. We now confirm those representations 1 through X, as they apply to the interim financial information referred to above, and incorporate them herein, with the following changes:

[*Indicate any changes.*]

9. [*Add any representations related to new accounting or auditing standards that are being implemented for the first time.*]

To the best of our knowledge and belief, no events have occurred subsequent to the balance-sheet date and through the date of this letter that would require adjustment to or disclosure in the aforementioned interim financial information.

______________________________

[*Name of chief executive officer and title*]

______________________________

[*Name of chief financial officer and title*]

______________________________

[*Name of chief accounting officer and title*]

---

[1] If a summary of uncorrected misstatements is unnecessary because no uncorrected misstatements were identified, this representation should be eliminated.

## 2. Illustrative Representation Letter for a Review of Interim Financial Information

[*This representation letter is similar in detail to the management-representation letter used for the audit of the financial statements of the prior year and thus need not refer to the written management representations received in the most recent audit.*]

[*Date*]

To [*Independent Accountant*]:

We are providing this letter in connection with your review of the [*identification of interim financial information*] of [*name of entity*] as of [*dates*] and for the [*periods*] for the purpose of determining whether any material modifications should be made to the [*consolidated*] interim financial information for it to conform with [*identify the applicable financial reporting framework; for example, accounting principles generally accepted in the United States of America, including, if appropriate, an indication as to the appropriate form and content of interim financial information (for example, Article 10 of SEC Regulation S-X)*]. We confirm that we are responsible for the fair presentation of the [*consolidated*] interim financial information in conformity with [*identify the applicable financial reporting framework; for example, generally accepted accounting principles*] and that we are responsible for establishing and maintaining controls that are sufficient to provide a reasonable basis for the preparation of reliable interim financial information in accordance with [*identify the applicable financial reporting framework; for example, generally accepted accounting principles*].

Certain representations in this letter are described as being limited to matters that are material. Items are considered material, regardless of size, if they involve an omission or misstatement of accounting information that, in the light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would be changed or influenced by the omission or misstatement.

We confirm, to the best of our knowledge and belief, [*as of* (*date of accountant's report or the completion of the review*)], the following representations made to you during your review:

1. The interim financial information referred to above has been prepared and presented in conformity with [*identify the applicable financial reporting framework; for example, generally accepted accounting principles*] applicable to interim financial information.
2. We have made available to you
   *a.* all financial records and related data.
   *b.* all minutes of the meetings of stockholders, directors, and committees of directors, or summaries of actions of recent meetings for which minutes have not yet been prepared. All significant board and committee actions are included in the summaries.
3. There have been no communications from regulatory agencies concerning noncompliance with or deficiencies in financial reporting practices.
4. There are no material transactions that have not been properly recorded in the accounting records underlying the interim financial information.
5. We believe that the effects of any uncorrected financial statement misstatements aggregated by you during the current review engagement

and pertaining to the interim period(s) in the current year, as summarized in the accompanying schedule, are immaterial, both individually and in the aggregate, to the interim financial information taken as a whole.[2]

6. There are no significant deficiencies or material weaknesses in the design or operation of internal control as it relates to the preparation of both annual and interim financial information.
7. We acknowledge our responsibility for the design and implementation of programs and controls to prevent and detect fraud.
8. We have no knowledge of any fraud or suspected fraud affecting the company involving
   *a.* management;
   *b.* employees who have significant roles in internal control; or
   *c.* others where the fraud could have a material effect on the interim financial information.
9. We have no knowledge of any allegations of fraud or suspected fraud affecting the company received in communications from employees, former employees, analysts, regulators, short sellers, or others.
10. The company has no plans or intentions that may materially affect the carrying value or classification of assets and liabilities.
11. The following have been properly recorded or disclosed in the interim financial information:
    *a.* Related-party transactions, including sales, purchases, loans, transfers, leasing arrangements, and guarantees, and amounts receivable from or payable to related parties.
    *b.* Guarantees, whether written or oral, under which the company is contingently liable.
    *c.* Significant estimates and material concentrations known to management that are required to be disclosed in accordance with Financial Accounting Standards Board (FASB) *Accounting Standards Codification* (ASC) 275, *Risks and Uncertainties*. [*Significant estimates are estimates at the balance sheet date that could change materially within the next year. Concentrations refer to volumes of business, revenues, available sources of supply, or markets or geographic areas for which events could occur that would significantly disrupt normal finances within the next year.*]
12. There are no
    *a.* violations or possible violations of laws or regulations whose effects should be considered for disclosure in the interim financial information or as a basis for recording a loss contingency.
    *b.* unasserted claims or assessments that are probable of assertion and must be disclosed in accordance with FASB ASC 450, *Contingencies*.
    *c.* other liabilities or gain or loss contingencies that are required to be accrued or disclosed by FASB ASC 450.

---

[2] If a summary of uncorrected misstatements is unnecessary because no uncorrected misstatements were identified, this representation should be eliminated.

13. The company has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets; nor has any asset been pledged as collateral.
14. The company has complied with all aspects of contractual agreements that would have a material effect on the interim financial information in the event of noncompliance.
15. [*Add additional representations that are unique to the entity's business or industry. See section 333,* Management Representations, *paragraph .17).*]
16. [*Add any representations related to new accounting or auditing standards that are being implemented for the first time.*]

To the best of our knowledge and belief, no events have occurred subsequent to the balance-sheet date and through the date of this letter that would require adjustment to or disclosure in the aforementioned interim financial information.

______________________________

[*Name of chief executive officer and title*]

______________________________

[*Name of chief financial officer and title*]

______________________________

[*Name of chief accounting officer and title*]

[Revised, January 2009, to reflect conforming changes necessary due to the issuance of SAS No. 116. Revised, June 2009, to reflect conforming changes necessary due to the issuance of FASB ASC. As amended, effective for reviews of interim financial information for interim periods beginning after December 15, 2009, by SAS No. 116.]

# Exhibit 50

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

In re:

LEHMAN BROTHERS SECURITIES AND ERISA LITIGATION

Civil Action No. 09-MD-2017(LAK)

This Document Applies To:

Mary A. Zeeb, Monterey County Treasurer, on Behalf of the Monterey County Investment Pool v. Fuld, et al., No. 1:09-cv-01944-LAK

VIDEOTAPED DEPOSITION OF

MARY A. ZEEB

AUGUST 22, 2013

11:14 A.M.

505 Montgomery Street, Suite 2200

San Francisco, California

Reported by Mona M. Russo, CSR No. 8771, RDR, CRR

investment pool?
A. Yes.
Q. And so, again, this -- the management of the investment pool was delegated to the treasurer-tax collector by the board of supervisors, correct?
A. Correct.
Q. And during the period from the middle of 2007 through June 2008, that function was practically delegated by Mr. Solton to Mr. Buyers, correct?
A. Correct.
THE REPORTER: 1148.
(Exhibit 1148 marked)
BY MR. TURNER:
Q. Ms. Zeeb, I have asked the court reporter to mark as Exhibit 1148 a document that was produced to us in the context of this litigation. It bears the Bates labels LEH_MONTEREY_001509 and runs through 001516.
Have you seen this document before?
A. Yes.
Q. What is this document?
A. This is our Monterey County investment policy.
Q. And it states at the top of the document "Treasurer-Tax Collector County of Monterey Investment Policy," correct?
A. Yes.

are on our authorized lists, but we don't utilize those.
Q. Okay. Well, then, I won't ask about them.
Below "Triparty Repurchase Agreements," the -- Appendix A lists "Medium-term notes issued by domestic corporations and depository institutions rated A or better."
Did I read that correctly?
A. Yes.
Q. And those are included among the authorized investments?
A. Yes.
Q. But there were restrictions on the investments in those notes, correct?
A. Yes.
Q. First, as evidenced by that title, they had to be rated A or better, correct?
A. Correct.
Q. Is that a rating from a major rating agency?
A. Yes.
Q. Okay. What did the county consider major rating agencies?
A. Moody's, Fitch, S&P.
Q. Would it have to hold an A rating from all three of those agencies or just from one?
A. Just from one.

Q. Did Monterey require that it come from any specific agency, or it could have been any one of the three?

A. It could have been from any one of the three, but at that time, in 2007, we were looking at things that were rated much higher than A.

Q. And was the county looking at -- looking at ratings from all three rating agencies, or was there --

A. Yes.

Q. -- was there any rating agency that the county favored over others?

A. Not that I'm aware of.

Q. But to be rated A, just so I understand -- strike that.

My understanding is that credit ratings also have -- strike that.

My understanding is that there are subranges within a letter range for credit ratings. This is to say, for Moody's, a credit rating may be A1, A2, or A3, and those are all within the A range.

Is that your understanding?

A. Yes.

Q. Does the restriction on notes that requires them to be rated A or better simply require them to hold a rating in that A range?

A. Legally, yes, but we would look at the highest grade. We would look at A1.
Q. Okay. Did the -- so Monterey County wouldn't invest in any security that was A2?
A. I'm -- because I didn't do the investments in 2007 and '8, I'm not sure that I can answer that.
Q. Okay. But as you presently oversee the investment function, since you've become treasurer, Monterey has, well, made a number of changes in its policies, but among them is that -- is that you no longer invest in A2 or A3 corporate bonds, correct?
A. That is correct.
Q. But at the time, pursuant to the policy, it was permissible to invest in A2 or A3 bonds, correct?
A. Yes. There were several things on the policy it was permissible to invest in that we didn't take advantage of.
Q. That you do not take advantage of presently or that you did not take advantage of in the 2007-2008 --
A. Both, both.
Q. Okay. Did -- so what was the functional baseline for ratings for corporate bonds in which the county investment pool would invest?
MR. EDLING: Objection to form, asked and answered.

BY MR. TURNER:
Q. Assuming for the moment that Monterey didn't make any SEC filings, did Mr. Buyers rely on Lehman's SEC filings in making this purchase?
MR. EDLING: Asked and answered.
THE WITNESS: Mr. Buyers would normally look at multiple pieces of information. A lot of filings I believe he considered to be stale-dated and that the news was more accurate, the current news.
BY MR. TURNER:
Q. Okay. And when he looked at filings, to the extent he looked at filings, he would look at the most recent filing, correct?
A. Absolutely.
THE REPORTER: 1150.
(Exhibit 1150 marked)
BY MR. TURNER:
Q. Ms. Zeeb, I have asked the court reporter to mark as Exhibit 1150 a document that I will represent to you is a public document that we acquired from the SEC's EDGAR Website. It's titled "United States Securities and Exchange Commission Form 10-Q." It is for the quarterly period ended May 31, 2007, and the issuer is Lehman Brothers Holdings Incorporated.
Are you familiar with the general format of a

Form 10-Q?
A. The general format, yes.
Q. Is this roughly consistent with the general format of a Form 10-Q?
A. Yes.
Q. Do you have any reason to believe that this isn't the Form 10-Q that was issued by Lehman Brothers for the quarterly period ending May 31, 2007?
A. No.
Q. If you look at the back -- the second to last page of the filing, which is page 87 in the filing, but in the printout, since pages sometimes run across multiple pages, it is page 141 of 142, you will see a signature page, correct?
A. Yes.
Q. And the document is signed by Christopher O'Meara, CFO, on behalf of Lehman Brothers Holdings Incorporated, correct?
A. Yes.
Q. And it's dated July 10, 2007?
A. Yes.
Q. And I will represent to you that is the date that this document was filed with the SEC, as it's customary for it to be signed and filed on the same day.
Is that consistent with your understanding of

Q. Do you know what net leverage is?
A. No.
Q. Below that discussion there is a table that is titled "Tangible Equity Capital and Net Leverage Ratio," correct?
A. Yes.
Q. And the final line in that table purports to report the net leverage ratio as of two different dates and time, correct?
A. Yes.
Q. It's -- for November 30, 2006, it reports a net leverage ratio of 14.5x, correct?
A. Yes.
Q. And for May 31, 2007, it reports a net leverage ratio of 15.4x, correct?
A. Yes.
Q. And so -- so Monterey purchased its notes in September or October of 2007, notwithstanding the fact that Lehman's net leverage had increased by 0.9x over the prior six months, correct?
A. Correct.
Q. You noted that Mr. Buyers sometimes reviewed analyst reports in the context of purchasing securities; is that correct?
A. Yes.

A. Monterey no longer has standing.

Q. Did Monterey obtain any proceeds before losing standing to seek proceeds in the bankruptcy proceedings?

A. None.

Q. Okay.

THE REPORTER: 1152.

(Exhibit 1152 marked)

BY MR. TURNER:

Q. Ms. Zeeb, I have asked the court reporter to mark as Exhibit 1152 a one-page document bearing the Bates label LEH_MONTEREY_000038.

Have you seen this document before?

A. Yes.

Q. What is it?

A. It's a trade ticket for a sell.

Q. And it's specifically for the sale of the $10 million in face value of Lehman notes bearing the CUSIP 52517PG21, correct?

A. Yes.

Q. And these are the notes that are at issue in this litigation, correct?

A. Yes.

Q. The trade date is listed as July 30, 2010, and the settlement date is listed as August 4, 2010?

A. Yes.

Q. The ratings listed for Moody's are A1 and -- I'm sorry. The ratings listed are A1 for Moody's and A+ for S&P, correct?
A. Yes.
Q. Are those the ratings as of the date that this security was purchased?
A. Yes. It's a regurgitation of the purchase.
Q. Okay. The par amount here is listed as $10 million, correct?
A. Yes.
Q. So it is a sale of the entirety of the holdings that are at issue in this litigation, correct?
A. Yes.
Q. The price is 20.875, correct?
A. Yes.
Q. And so the principal obtained through sale was $2,087,500, correct?
A. Yes.
Q. And the notes indicate that the securities were, quote, "Sold per request of treasurer," correct?
A. Yes.
Q. The trade was executed by an E. Mahar, correct?
A. Yes.
Q. And that's Eamonn Mahar?

would have considered selling the Lehman securities?
A. No.
Q. What are other reasons?
A. Well, we talked about the prudent investor standard. If there was a problem and we saw that something was happening with Lehman, it would have been appropriate to make plans to sell it.
Q. What would have been indications of those kinds of problems, something like a credit downgrade?
A. Definitely a credit downgrade, talk in the news about problems, issues arising, the stock price dropping dramatically. There's lots of things that, in the market conditions overall, in the financials, could have affected this.
Q. And any one of those events would have been sufficient for Bob Buyers to take a look at the security and determine whether selling was appropriate?
A. Yeah. That would be done on a daily basis.
Q. Okay.
A. The entire portfolio is reviewed on a daily basis.
THE REPORTER: 1153.
(Exhibit 1153 marked)
BY MR. TURNER:
Q. Ms. Zeeb, I have asked the court reporter to

mark as Exhibit 1153 a document that actually starts with the Bates label LEH_MONTEREY_001153.

MR. EDLING: Did you plan that?

THE WITNESS: What are the odds?

BY MR. TURNER:

Q. It runs through LEH_MONTEREY_001164 and bears the heading "Monterey County Board of Supervisors," at least on the first page.

Ms. Zeeb, have you seen this set of documents before?

A. Yes.

Q. What is this set of documents?

A. This is a quarterly board report to the board of supervisors.

Q. And it appears to have four discrete parts in the packet; is that correct?

I can run through them if you would like.

A. Okay.

Q. The first two pages --

A. I would say three, but --

Q. -- are a form reflecting a July 31, 2007, meeting of the Monterey County Board of Supervisors, correct?

A. The first three pages, actually.

Q. That's inclusive of the draft --

A. Order.
Q. -- order --
A. Yeah.
Q. -- on a motion.
A. Yes.
Q. Then the next five pages, Bates labeled 1156 through 1160, are a memo from the treasury manager to the assistant treasurer-tax collector and others, correct?
A. Yes.
Q. And then the last four pages of the package, 1161 through 1164, are spreadsheets listing the inventory of the pooled funds, correct?
A. As of June 30th, 2007, correct.
Q. So let's start with the first three pages.
Are these minutes reflecting what occurred at the July 31, 2007, meeting?
A. No. This is a board report that is given to the board for talking points if it's so warranted.
Q. So just so I understand, is this provided to the board in advance of the meeting, or does this reflect what occurred at the meeting?
A. It is provided to the board and the public in advance.
Q. Okay. So this entire packet -- was this

A. There was typically no discussion of the report whatsoever.

Q. Page 2 of the memo, which is at Bates Number 1157, the bottom of the page includes a section titled "Safety: Credit Risk."

Do you see that?

A. Yes.

Q. In the second paragraph it says, "Credit risk is minimized by investing the bulk of the portfolio in AAA/Aaa rated U.S. Treasuries and federal agencies."

Do you see that?

A. Yes.

Q. Did I read that correctly?

A. Yes.

Q. And these treasuries and agencies were backed by the full faith and credit of the U.S. Government, correct?

A. Yes.

Q. So they created virtually no credit risk?

A. Yes.

Q. And that's why credit risk was minimized by investing in those securities, correct?

A. Yes.

Q. And in addition to being safe, those assets were liquid, correct?

A. Yes.
Q. Below that paragraph, next to two asterisks is the language "Note A2/BBB+ asset class was created due to the downgrade of SLMA bonds previously purchased."
Did I read that correctly?
A. Yes.
Q. Do you know to what downgrade this sentence is referring?
A. Yes. Sallie Mae was downgraded, and we were watching it.
Q. And Sallie Mae was downgraded to BBB+; is that correct?
A. I believe so, yes.
Q. And the county was watching it because it held Sallie Mae securities, correct?
A. Correct.
Q. And the county continued to hold Sallie Mae securities notwithstanding the fact that it was rated BBB+, correct?
A. It was evaluated on a daily basis. That's correct.
Q. But this is to say that Monterey continued to hold the securities notwithstanding the fact that they were now rated below A level, correct?
A. Yes.

investment policy in November 2007 that were practically obsolete at that time?

A. Not that I know of.

Q. The memo also recommends reducing the maximum investment exposure to a single issuer from 10 percent to 5 percent of the portfolio's book value; is that right?

A. Yes.

Q. This is to make sure that the portfolio was more diversified, right?

A. I would guess so, yes.

Q. And in November 2007, Monterey thought it prudent to limit to 5 percent of the portfolio the amount invested in a single issuer, right?

MR. EDLING: Objection to form.

THE WITNESS: Yes.

BY MR. TURNER:

Q. Do you know if that was -- if that was a provision that was directed by California law?

A. I don't know.

Q. Okay.

A. It's possible.

Q. If you turn to the order on the subsequent page, 1167, it is a draft order to accept the treasurer's report of investments for the quarter ending

Q. But he did not in February of 2008 have any authority with respect to the investment function, correct?

A. No.

Q. And you were still CC'd on this memorandum, correct?

A. Yes.

Q. Okay. On page 1181, under the section titled "B. Safety: Credit Risk," the note in the third paragraph states, "Note: The Baa asset class increased from 4 percent to 6 percent due to the downgrade of Washington Mutual bonds previously purchased. The portfolio's total Baa1 exposure is $55 million: Washington Mutual: $20 million; SLMA: $35 million."

Did I read that correctly?

A. Yes.

Q. So Monterey continued to hold these Washington Mutual securities even though their ratings had been downgraded below A level?

A. Correct.

Q. And Monterey continued to hold the Sallie Mae securities even though they were downgraded below A level at least two quarters prior?

A. Correct.

Q. Do you know whether Monterey was making an

Did I read that correctly?
A. Yes.
Q. Then the policy is attached at pages 1205 through 1212, correct?
A. Yes.
Q. And this is the policy that was in effect during fiscal year 2008 to 2009?
A. Yes.
THE REPORTER: 1158.
(Exhibit 1158 marked)
BY MR. TURNER:
Q. Ms. Zeeb, I have asked the court reporter to mark as Exhibit 1158 a three-page document produced to us in this litigation bearing the Bates labels LEH_MONTEREY_260 through LEH_MONTEREY_262.
Have you seen this document before?
A. Yes.
Q. It bears the heading "Monterey County Investment Portfolio/Lehman Brothers"; under that, "Lou Solton, Treasurer-Tax Collector, September 16, 2008."
What is this document?
A. If I recall correctly, it's a series of talking points for the public and the press.
Q. Okay. Was this prepared by Mr. Solton?
A. Yes.

Q. And it was prepared on September 16, 2008, the day after Lehman declared bankruptcy?
A. It appears so, yes.
Q. Was this document circulated externally?
A. Possibly.
Q. But at the very least, you understand it to be a set of talking points that Mr. Solton used when discussing the Lehman investment with the press?
A. With the press and the pool participants, board members, usually the people that were on this list, yes.
Q. Did -- so Mr. Solton faced inquiry regarding the Lehman investment shortly after the Lehman bankruptcy?
A. Yes.
Q. Do you remember the nature of that inquiry?
A. Everything, I guess, the press, pool participants, the schools that had lost money, the board of supervisors.
Q. So the county faced scrutiny for having invested in Lehman when Lehman went bankrupt, correct?
A. Yes.
Q. The third bullet on the first page states, "The bankruptcy filing was precipitated by an emerging lack of confidence that Lehman could raise capital,

maintain liquidity and service their debt. The primary cause for these concerns is centered on that portion of Lehman's assets secured by poor-performing real estate loans."

Did I read that correctly?

A. Yes.

Q. Was this Monterey's understanding of the causes of the Lehman bankruptcy at the time that these talking points were prepared?

A. I'm going to assume so, yes.

Q. What was the source for Mr. Solton's understanding of the causes of Lehman's bankruptcy?

A. I don't know.

Q. Does it remain Monterey's understanding of the causes of Lehman's bankruptcy today?

MR. EDLING: Calls for a legal conclusion.

BY MR. TURNER:

Q. You can answer.

A. I would stick with that.

Q. Okay. The fifth bullet, which is the bottom bullet on page 260, notes that over the weekend prior -- I'll quote it: "Over the weekend prior to September 15, Secretary of the Treasury Henry Paulson emphatically announced the U.S. Treasury would not assist Lehman with any federal funds (contrary to what occurred the

previous week with Fannie Mae and Freddie Mac mortgage lenders)."

So is it your understanding that during the prior week, the federal government had stepped in to rescue Fannie Mae and Freddie Mac when the solvency of each lender was threatened?

MR. EDLING: Objection to form.

She Mary or she 30(b)(6)?

BY MR. TURNER:

Q. 30(b)(6).

MR. EDLING: Same objection.

THE WITNESS: Yes.

BY MR. TURNER:

Q. And you noted earlier that you, as a 30(b)(6) witness, were familiar with the March 2008 Bear Stearns buyout by JP Morgan, correct?

A. Yes.

Q. And that the federal government had stepped in to help facilitate and negotiate that buyout, correct?

A. Yes.

Q. So in March of 2008, Bear Stearns faced a liquidity event and was rescued by the federal government, correct?

A. Yes.

Q. And in September of 2008, the week before

Lehman's bankruptcy, Fannie Mae and Freddie Mac were similarly facing solvency concerns and were bailed out by the federal government, correct?

A. Yes.

Q. Did Monterey expect that Lehman facing financial concerns would be treated similarly to Bear Stearns and Fannie and Freddie and bailed out by the federal government?

A. I think everybody expected that.

Q. And under those circumstances -- well, strike that.

When the federal government came to the aid of Bear Stearns and facilitated its purchase by JP Morgan, did you understand that Bear Stearns' bonds maintained their value?

MR. EDLING: Objection to form.

THE WITNESS: I don't know.

THE REPORTER: 1159.

(Exhibit 1159 marked)

BY MR. TURNER:

Q. Ms. Zeeb, I have asked the court reporter to mark as Exhibit 1159 a document that was produced to us in this litigation bearing the Bates labels LEH_MONTEREY_327 through LEH_MONTEREY_333. It is a seven-page memorandum.

Q. And it considered sale of its holdings when the credit ratings of the largest banks were lowered, correct?

A. It considered sales on a regular basis, yes.

MR. TURNER: Can we take a two-minute break?

THE VIDEOGRAPHER: Okay. We are going off the record. The time is 3:17 p.m.

(Recess)

(Exhibit 1161 marked)

THE VIDEOGRAPHER: We're back on the record. The time is 3:22 p.m.

BY MR. TURNER:

Q. Ms. Zeeb, I have asked the court reporter to mark as Exhibit 1161 a document produced to us in this litigation bearing the Bates label LEH_MONTEREY_1225 through LEH_MONTEREY_1234.

Have you seen this document before?

A. Yes.

Q. And this is another report prepared for the Monterey County Board of Supervisors?

A. Yes.

Q. For a meeting on January 27, 2009?

A. Yes.

Q. With the treasurer-tax collector department?

A. Yes.

Q. Under the term "Discussion," under the heading midway down the first page, 1225, it states, "During the second quarter of fiscal year 2008-2009, the investment portfolio was subject to continued downward pressure on interest rates. This was due to the global economic crisis where investors sought refuge in U.S. Treasuries, which are considered to be the safest liquid asset."

Did I read that correctly?

A. Yes.

Q. Does that reflect the thinking of the treasurer's office in January 2009?

A. Yes.

Q. Does it reflect the understanding of Monterey today?

A. Yes.

Q. So as the financial crisis of 2008 deepened, investor demand for U.S. Treasuries increased, correct?

A. Yes.

Q. Because they were considered the safest liquid asset, correct?

A. Yes.

Q. And so during the financial crisis, investors similarly flocked toward those assets, correct?

A. Flight to quality, yes.

Q. And quality included U.S. Treasuries, correct?

A. Yes.
Q. Quality also included U.S. Agencies?
A. Possibly.
Q. But not like subprime mortgages?
A. Correct.
Q. Okay. Turn to page 1228, if you would.
This is a page that bears the heading "Exhibit B, Investment Portfolio Review, Quarter Ending December 31, 2008."
Did I read that correctly?
A. Yes.
Q. And Number 2 under the "Overview" is a paragraph titled "Credit Risk," correct?
A. Yes.
Q. It states, "National credit rating agencies lowered the ratings on a substantial amount of corporate debt. However, the accelerated pace of financial failures during the period raised questions concerning the credit rating agencies' willingness or ability to accurately assess the financial strength of many financial institutions."
Did I read that correctly?
A. Yes.
Q. Did this statement accurately reflect the thinking of the treasurer's office in January of 2009?