# EXHIBIT C

Circuit

IN THE ~~DISTRICT~~ COURT OF SALINE COUNTY
STATE OF ARKANSAS

GLEN DEATHROW, BARBARA KATTELL,
MADELINE DIMODICA, on behalf of themselves
and all others similarly situated,

Civ. No. CV2008-1022-2

4:08CV004149 JLH

**Plaintiffs,**

**CLASS ACTION**

v.

RICHARD S. FULD, JR., CHRISTOPHER M.
O'MEARA, MICHAEL L. AINSLIE, JOHN F.
AKERS, ROGER S. BERLIND, THOMAS H.
CRUIKSHANK, MARSHA JOHNSON EVANS,
SIR CHRISTOPHER GENT, ROLAND A.
HERNANDEZ, HENRY KAUFMAN, JOHN D.
MACOMBER, A.G. EDWARDS & SONS, INC.,
BANC OF AMERICA SECURITIES, LLC,
CHARLES SCHWAB & CO., L.P., CITIGROUP
GLOBAL MARKETS, INC., EDWARD D.
JONES & CO., L.P., FIDELITY CAPITAL
MARKETS SERVICES, MORGAN STANLEY
& CO., INC., MURIEL SIEBERT & CO., INC.,
RAYMOND JAMES & ASSOCIATES, INC.,
UBS SECURITIES, LLC and WACHOVIA
SECURITIES, LLC.

FILED
SALINE COUNTY
CIRCUIT CLERK
2008 OCT 21   PM 4:04
BY:

**JURY TRIAL DEMANDED**

**Defendants.**

---

<u>**COMPLAINT**</u>

1.      This is a class action lawsuit asserting absolute liability and negligence claims on

behalf of all persons who purchased, exchanged, or otherwise acquired the Bonds of Lehman Bros.

Holdings Inc. ("Lehman" or the "Company") in or traceable to the offering of such Bonds pursuant

to the Registration Statement and Prospectus dated May 30, 2006 and various Prospectus Supplements dated October 22, 2006 and thereafter (the "Prospectus" or the "Offering"). In a matter of months following the Offering, the price of the Bonds had crumbled as a result of the revelation of new and previously undisclosed adverse information regarding Lehman that ultimately led to the collapse of the Company and the Company defaulting on payment of the Bonds.

2.    The Securities Act of 1933 (the "1933 Act") imposes strict liability upon the issuer of a securities offering for any material misrepresentations or omissions contained in the Prospectus. The Prospectus's signatories, as well as the Underwriters, have a duty to make a reasonable and diligent investigation of the statements contained in the Prospectus and ensure their accuracy. While the Prospectus is not required to reveal all *potential* risks, it must set forth all material *known* risks at the time of the Offering.   As set forth below, the Prospectus contained untrue statements of material fact and omitted to state material facts necessary to make the statements therein not misleading.

3.    To the reader of the Prospectus, in the fall of 2007 Lehman was a well-capitalized investment bank seeking to raise additional capital to pursue business opportunities.  In reality and as later admitted by the Company, at the time of the Offering Lehman's balance sheet was filled with combustible Collateralized Debt Obligations ("CDOs") and related exposure to the subprime debacle which dramatically increased the risk inherent in lending money to the Company, but which were undisclosed by the Company.

4.    The slowdown in housing market and the resulting tightening in the credit markets lit the fuse on the CDOs in Lehman's balance sheet.  The ultimate devastation was fully revealed on September 15, 2008 when Lehman filed a voluntary petition to reorganize under Chapter 11 of the

2

Federal Bankruptcy Code in the largest bankruptcy filing in United States history. At that same time, Lehman defaulted on its obligations to make semi-annual interest payments on the Bonds. As a result, the value of the Bonds has plummeted to less than 10% of the offering price and Plaintiffs and the Class have suffered serious financial damage resulting from the misrepresentations and omissions contained in the Prospectus. Plaintiffs bring this action to recover damages incurred as a result as well as costs and expenses of this litigation and any further relief as may be just and proper.

## JURISDICTION AND VENUE

5.      The claims alleged herein arise under §11 of the 1933 Act, 15 U.S.C. §77k. Jurisdiction is conferred by §22 of the 1933 Act, 15 U.S.C. §77v, and venue is proper pursuant to §22 of the 1933 Act. In connection with the Offering, Defendants used the instrumentalities of interstate commerce and the U.S. mails. Section 22 of the 1933 Act explicitly states that "[t]he district courts of the United States . . . shall have jurisdiction . . . **concurrent with State and Territorial courts**" of actions filed under the 1933 Act. The statute also states that "[e]xcept as provided in section 16©), no case arising under this title and brought **in any State** court of competent jurisdiction shall be removed to any court in the United States." Section 16©) refers to "covered class actions," which are defined as lawsuit brought as class actions or brought on behalf of more than 50 persons asserting claims under **state or common law**. This is a class action asserting federal law claims. Thus, it does not fall within the definition of a "covered class action" under §16©) and therefore is not removable to federal court under the Securities Litigation Uniform Standards Act of 1998. *See, e.g., Higginbotham v. Baxter Int'l, Inc.*, No. 04 C 4909, 04 C 7096, 2005 WL 1272271, at 2 (N.D. Ill. May 25, 2005) (remanding a case containing only Section 11 claim

because statutory language unambiguously limits removal to "certain class actions containing state law claims"); *Zia v. Medical Staffing Network, Inc.*, 336 F. Supp. 2d 1306, 1310 (S.D. Fla. 2004) (remanding a case comprising only 1933 Act claims because removal requires plaintiff's claims to be based in state law); *In re Tyco Int'l, Ltd.*, 322 F. Supp. 2d 116, 121 (D.N.H. 2004) (finding that SLUSA's text and legislative history do not support removal of 1933 Act claims under Section 77p©)); *Haw. Structural Ironworkers Pension Trust Fund v. Calpine Corp.*, No. 03CV0714BTM, 2003 WL 23509312, at 2 (S.D. Cal. Aug. 27, 2003) (holding that "the plain language of section 77p©) limits removal to class actions that are based upon state claims."); *Nauheim v. Interpublic Group of Cos.*, No. 02-C-9211, 2003 WL 1888843, at 3-4 (N.D. Ill. Apr. 16, 2003) (deciding that the 1933 Act clearly permits the removal of only class actions based on state law); *Martin v. Bellsouth Corp.*, No. 03-CV-728-WBH, slip op. at 5 (N.D. Ga. July 7, 2003) (remanding 1933 Act claim based on SLUSA's plain language despite express legislative intent to prevent plaintiffs from abusively litigating by filing in state court); *In re Waste Mgmt. Inc. Sec. Litig.*, 194 F. Supp. 2d 590, 593 (S.D. Tex. 2002) (concluding that SLUSA's amendment to the non-removal provision only applies to class actions asserting state statutory or common law claims and not to those based solely on federal law like the 1933 Act).

6.      The violations of law complained of herein occurred in this County, including the dissemination of materially false and misleading statements complained of herein into this County. Certain of the members of the Class, including Plaintiff Glen Deathrow, reside in this County. Prior to filing for bankruptcy, Lehman conducted business in this County.

## PARTIES

7.      Plaintiff Glen Deathrow ("Deathrow") bought $20,000 of the Bonds in or traceable

4

to the Offering and was damaged thereby.   Specifically, Deathrow purchased the 6.50%
Subordinated Notes due June 21, 2037. Deathrow is a resident of Saline County, Arkansas.

8.     Plaintiff Barbara Kattell ("Kattell") bought $10,000 of the Bonds in or traceable to
the Offering and was damaged thereby.   Specifically, Kattell purchased the 6.625% Senior
Unsecured Bonds due July 27, 2027. Kattell is a resident of Benton County, Arkansas.

9.     Plaintiff Madeline Dimodica ("Dimodica") bought $125,000 in or traceable to the
Offering and was damaged thereby.   Specifically, Dimodica purchased the 6.75% Bonds due
November 22, 2027 pursuant to a Prospectus Supplement dated August 2, 2007 (the "August 2, 2007
Offering"). Dimodica is a resident of Queens County, New York.

10.     Non-party Lehman is an Delaware corporation. At the time of the Bond Offering,
Lehman operated as an investment bank firm which included capital raising for clients through
securities underwriting and direct placements, corporate finance, merchant banking, securities sales
and trading, research services and private client services. On September 15, 2008, Lehman filed
bankruptcy in the Southern District of New York.   Lehman's operated worldwide, and was
headquartered at 745 Seventh Avenue, New York, New York 10019.

11.     Defendant A.G. Edwards & Sons Inc. ("A.G. Edwards") was an underwriter of the
August 2, 2007 Offering.   A.G. Edwards is headquartered at One North Jefferson, St. Louis,
Missouri 63103.

12.     Defendant Banc of America Securities, LLC ("Banc of America") was an underwriter
of the August 2, 2007 Offering.   Banc of America is a subsidiary of Banc of America Corp, a
Delaware corporation headquartered at 100 North Tryon Street, Charlotte, North Carolina, 28255.

13.     Defendant Charles Schwab & Co., Inc. ("Charles Schwab") was an underwriter of

5

the August 2, 2007 Offering. Charles Schwab is headquartered at 101 Montgomery Street, San Francisco, California 94104.

14.     Defendant Citigroup Global Markets Corp. ("Citigroup") was an underwriter of the August 2, 2007 Offering. Citigroup is headquartered at 388 Greenwich Street, New York, New York 10013.

15.     Defendant Edward D. Jones & Co., L.P. ("Edward Jones") was an underwriter of the August 2, 2007 Offering. Edward Jones is headquartered at 12555 Manchester Road, Des Peres, Missouri 63131.

16.     Defendant Fidelity Capital Markets Services ("Fidelity") was an underwriter of the August 2, 2007 Offering. Fidelity is a division of National Financial Services, LLC, and is headquartered at 200 Seaport Boulevard, Suite 630, Boston, Massachusetts 02110.

17.     Defendant Morgan Stanley & Co., Inc. ("Morgan Stanley") was an underwriter of the August 2, 2007 Offering. Morgan Stanley is headquartered at 1585 Broadway, New York, New York 10036.

18.     Defendant Muriel Siebert & Co., Inc. ("Siebert") was an underwriter of the August 2, 2007 Offering. Siebert is headquartered at 885 Third Avenue, 17th Floor, New York, New York 10022.

19.     Defendant Raymond James & Associates, Inc. ("Raymond James") was an underwriter of the August 2, 2007 Offering. Raymond James is headquartered at 880 Carillon Parkway, St. Petersburg, Florida 33716.

20.     Defendant UBS Securities, LLC ("UBS") was an underwriter of the August 2, 2007 Offering. UBS is headquartered at 1285 Avenue of the Americas, New York, New York 10019.

21.    Defendant Wachovia Securities, LLC ("Wachovia") was an underwriter of the August 2, 2007 Offering. Wachovia is headquartered at One North Jefferson, St. Louis, Missouri 63103.

22.    Defendants A.G. Edwards, Banc of America, Charles Schwab, Santander, Edward Jones, Fidelity, Morgan Stanley, Siebert, Raymond James, UBS and Wachovia are collectively referred to hereinafter at the "Underwriter Defendants."

23.    Each of the Underwriter Defendants participated in the drafting, preparation, or approval of various false and misleading statements contained in the Prospectus. Each of the Underwriter Defendants was responsible for ensuring the truth and accuracy of the statements contained in the Prospectus, and owed to Plaintiff Dimodica and the Class the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus at the time it became effective. Each of the Underwriter Defendants violated these specific duties and obligations, causing injury to Plaintiff Dimodica and the Class.

24.    The Underwriter Defendants are investment banking firms which specialize, *inter alia*, in underwriting public offerings of securities and making markets in the stock of public companies. These firms each served as underwriters of the Offering. Each of these firms participated in the preparation and issuance of the false and misleading Prospectus used by them in underwriting the Offering. In connection with the Offering, the Underwriter Defendants had access to Lehman and its top executives and thus had access to Lehman's internal corporate information, including the adverse information omitted and/or misrepresented, as alleged herein.

25.    Defendant Richard S. Fuld, Jr. ("Fuld") was, at all relevant times hereto, the Chief Executive Officer and Chairman of Lehman. Because of Fuld's positions with the Company, he had access to the adverse undisclosed information about its business, operations, financial statements,

7

business practices, finances and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to him in connection therewith. Fuld signed the Prospectus.

26.     Defendant Christopher M. O'Meara ("O'Meara") was, at all relevant times hereto, the Chief Financial Officer of Lehman. Because of O'Meara's positions with the Company, he had access to the adverse undisclosed information about its business, operations, financial statements, business practices, finances and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to him in connection therewith. O'Meara signed the Prospectus.

27.     Defendant Michael L. Ainslie ("Ainslie") was, at all relevant times hereto, a member of the Company's Board of Directors. Because of Ainslie's positions with the Company, he had access to the adverse undisclosed information about its business, operations, financial statements, business practices, finances and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and

8

via reports and other information provided to him in connection therewith. Ainslie signed the Prospectus.

28.    Defendant John F. Akers ("Akers") was, at all relevant times hereto, a member of the Company's Board of Directors. Because of Akers's positions with the Company, he had access to the adverse undisclosed information about its business, operations, financial statements, business practices, finances and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to him in connection therewith. Akers signed the Prospectus.

29.    Defendant Roger S. Berlind ("Berlind") was, at all relevant times hereto, a member of the Company's Board of Directors. Because of Berlind's positions with the Company, he had access to the adverse undisclosed information about its business, operations, financial statements, business practices, finances and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to him in connection therewith. Berlind signed the Prospectus.

30.    Defendant Thomas H. Cruikshank ("Cruikshank") was, at all relevant times hereto, a member of the Company's Board of Directors. Because of Cruikshank's positions with the

Company, he had access to the adverse undisclosed information about its business, operations, financial statements, business practices, finances and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to him in connection therewith. Cruikshank signed the Prospectus.

31.    Defendant Marsha Johnson Evans ("Evans") was, at all relevant times hereto, a member of the Company's Board of Directors. Because of Evans's positions with the Company, he had access to the adverse undisclosed information about its business, operations, financial statements, business practices, finances and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to him in connection therewith. Evans signed the Prospectus.

32.    Defendant Sir Christopher Gent ("Gent") was, at all relevant times hereto, a member of the Company's Board of Directors. Because of Gent's positions with the Company, he had access to the adverse undisclosed information about its business, operations, financial statements, business practices, finances and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and

10

employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to him in connection therewith.  Gent signed the Prospectus.

33.    Defendant Roland A. Hernandez ("Hernandez") was, at all relevant times hereto, a member of the Company's Board of Directors. Because of Hernandez's positions with the Company, he had access to the adverse undisclosed information about its business, operations, financial statements, business practices, finances and present and future business prospects _via_ access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to him in connection therewith.  Hernandez signed the Prospectus.

34.    Defendant Henry Kaufman ("Kaufman") was, at all relevant times hereto, a member of the Company's Board of Directors. Because of Kaufman's positions with the Company, he had access to the adverse undisclosed information about its business, operations, financial statements, business practices, finances and present and future business prospects _via_ access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to him in connection therewith.  Kaufman signed the Prospectus.

35.    Defendant John D. Macomber ("Macomber") was, at all relevant times hereto, a

11

member of the Company's Board of Directors. Because of Macomber's positions with the Company, he had access to the adverse undisclosed information about its business, operations, financial statements, business practices, finances and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to him in connection therewith. Macomber signed the Prospectus.

36.    Fuld, O'Meara, Ainslie, Akers, Berlind, Cruikshank, Evans, Gent, Hernandez, Kaufman and Macomber are sometimes collectively referred to hereinafter as the "Individual Defendants."

37.    Each of the Individual Defendants participated in the drafting, preparation, and/or approval of various untrue and misleading statements contained in the Prospectus filed by the Company with the Securities and Exchange Commission ("SEC") in connection with the Offerings. Because of their Board memberships, executive and managerial positions, and/or extensive holdings of Lehman's securities, each of the Individual Defendants was responsible for ensuring the truth and accuracy of the various statements contained in the Company's Prospectus in connection with the Offerings.

38.    Each of the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to the Company and to promptly correct any previously disseminated untrue or misleading information. As a result of their failure to do so with respect to the preparation and filing with the SEC of the Company's Prospectus in connection with the Offering, as complained of herein, the market price of Lehman's Bonds were artificially inflated

12

causing injury to Plaintiffs and the other members of the class.

39.    The Individuals Defendants, because of their management positions and membership on the Lehman Board of Directors, had the power and influence to direct the management and activities of Lehman and its employees. Accordingly, the Individual Defendants were able to, and did, control the contents of the Company's Prospectus complained of herein that was filed with the SEC in connection with the Offerings. Each such defendant, as a signatory to the Prospectus, was provided copies of the allegedly untrue and misleading Prospectus prior to their respective issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.

40.    A due diligence investigation was required of the Underwriter Defendants in order to engage in the August 2, 2007 Offering. In the course of the investigation, the Underwriter Defendants directly, and indirectly via their counsel, met with the Individual Defendants and other representatives, employees, and/or agents of Lehman prior to the Prospectus being filed, and reached an understanding as to: (i) the strategy  to best accomplish the Offering; (ii) the terms of the Offering; (iii) the language to be used in the Prospectus; and (iv) what disclosures about the Company's investment in CDO's would be made in the Prospectus. Each of the Underwriter Defendants caused the Prospectus and other written and/or oral statements to be delivered to potential and actual purchasers of the Bonds in connection with offers to sell and sales thereof. As a result of their "due diligence" investigation of Lehman, purportedly undertaken in connection with the Offering, the Underwriter Defendants knew or should have known that the Prospectus and the oral and written statements made by them in connection with the Offering were false and misleading as a result of the omissions and/or misstatements alleged herein.

41.    The Underwriter Defendants also had knowledge of and/or access to the true facts regarding Lehman because the Underwriter Defendants had been providing investment banking,

commercial lending, and financial advisory services to Lehman in the ordinary course of business before the Offering.  In connection with providing these financial services to Lehman, the Underwriter Defendants have had conversations with corporate officers and employees, attended meetings, and had access to the Company's internal accounts, records, and operating plans and results of actual operations compared thereto, which provided them access to the true condition of Lehman's portfolio composition including its exposure to CDOs.

42.    The Underwriter Defendants and the Individual Defendants are all liable for making misleading statements and failing to disclose material adverse facts which artificially inflated the price of the Bonds issued to class members in the Offering and caused class members to purchase the Bonds in the Offering at inflated prices.

## CLASS ACTION ALLEGATIONS

43.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Arkansas Rules of Civil Procedure on behalf of a Class, consisting of all persons who purchased, exchanged or otherwise acquired the Bonds in and/or traceable to the Offering.  Excluded from the Class are defendants, members of the immediate family of the Individual Defendants, any subsidiary or affiliate of Lehman and the directors, officers and employees of Lehman or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

44.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plainitffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of members of the Class located throughout the United States.  Record owners and other members of the Class may be identified from records maintained by Lehman and/or its transfer agents and may

be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

45.    Plaintiffs' claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

46.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

47.    Common questions of law or fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law or fact common to the Class are:

a)    Whether §§11 and 15 of the 1933 Act were violated by defendants' acts and omissions as alleged herein;

b)    Whether the Prospectus filed with the SEC in connection with the Bond Offering contained untrue statements of material fact or omitted to state material facts necessary in order to make the statements made not misleading;

c)    Whether the market price of Lehman's Bonds sold in or traceable to the Bond Offering were artificially inflated due to the non-disclosures and/or untrue statements complained of herein; and

d)    To what extent the members of the Class have sustained damages and the proper measure of damages.

48.    A class action is preferable to all other available methods for the fair and efficient adjudication of this controversy. Because the joinder of all individual claim members is impracticable and the damages suffered by individual Class members may be relatively small, the

expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this case as a class action.

### False and Misleading Statements

49.    On May 30, 2006, Lehman filed a shelf Registration Statement with the SEC registering to file a series of securities including "Debt Securities, Warrants, Purchase Contracts, Preferred Stock, Depositary Shares, Common Stock and Units." Thereafter, Lehman issued Prospectus Supplements that disclosed the size, coupon for each offering. The Prospectus Supplements incorporated the Prospectus by reference.

50.    The Registration Statement and Prospectus Supplements were materially false and misleading because they failed to reveal the Company's significant exposure to the subprime market as one of the United States' largest underwriters of mortgage bonds. The Prospectus also failed to disclose as the U.S. housing market began to fall, it created a cascading effect throughout the financial markets that directly impacted Lehman's financial viability in a negative manner.

51.    While the Prospectus provided "Risk Factors" that purported to inform prospective investors of he relevant perils of investing in the Offering. In reality, the "Risk Factors" laid out were boilerplate language that did not instruct as to the actual crisis the Company faced. In effect, the Prospectus diverted the reader to the possibility of a proverbial potential jellyfish sting while ignoring the fact that the Company was already being pulled under in a riptide of a financial torrent. For example, at the time the Prospectus was issued the value of the commercial and residential mortgage and real estate assets was inflated by billions of dollars on the Company's balance sheet.

52.    The Prospectus did not reveal that Lehman owned hundreds of millions of dollars of CDOs. These CDOs are complicated financial products created by Investment Banks by dividing

16

a basket of fixed-income assets into a series of tranches. There is not an active market or exchange upon which CDOs are priced or traded, so applicable accounting rules require the CDO holder to "mark to market" to accurately value the products on their balance sheets. Despite significant exposure resulting from its CDO holdings at the time of the Prospectus, Lehman did not disclose that it owned any CDOs. In fact, the term "CDO" is not found in the Prospectus.

53.    The first time Lehman revealed its CDO vulnerability was on March 18, 2008 when it released its results for the quarter ended February 29, 2008. In that announcement, the Company reported that net revenues in its Fixed Income Capital Markets division had decreased 88% in part due to "continued deterioration in the broader credit markets . . . " At that same time, the Company first revealed that it had significant CDO holdings. The 10-Q provides,

> A collateralized debt obligation ("CDO") transaction involves the purchase by an SPE of a diversified portfolio of securities and/or loans that are then managed by an independent asset manager. Interests in the SPE (debt and equity) are sold to third-party investors. The Company's primary role in a CDO is to act as structuring and placement agent, warehouse provider, underwriter and market maker in the related CDO securities. In a typical CDO, at the direction of a third party asset manager, the Company will temporarily warehouse securities or loans on the Company's balance sheet pending the sale to the SPE once the permanent financing is completed. At February 29, 2008 and November 30, 2007, the Company owned approximately $626.8 million and $581.2 million of equity securities in CDOs, respectively. Because the Company's investments do not represent a majority of the CDOs' equity, the Company is not exposed to the majority of the CDOs' expected losses. Accordingly, the Company is not the primary beneficiary of the CDOs and therefore the Company does not consolidate them.

Offering additional information relating to the actual investment in CDO's, the first quarter 2008 10-Q further reveals,

> Mortgage-related positions are reflected in the Company's financial inventory as Mortgage and asset-backed securities. At February 29, 2008 and November 30, 2007, the Company's exposure to residential and commercial mortgage-related assets was generally:

| In billions | February 29, 2008 | November 30, 2007 |
|---|---|---|
| Residential mortgages: | | |
| Securities | $ 18.2 | $ 16.7 |
| Whole loans | 11.9 | 14.2 |
| Servicing and other | 1.7 | 1.2 |
| | $ 31.8 | $ 32.1 |
| Commercial mortgages: | | |
| Whole loans | $ 24.9 | $ 26.2 |
| Securities and other | 11.2 | 12.7 |
| | $ 36.1 | $ 38.9 |
| Other asset-backed securities (1) | $ 6.5 | $ 6.2 |
| Total (2) | $ 74.4 | $ 77.2 |

(1) The Company purchases interests in and enters into derivatives with collateralized debt obligation securitization entities ("CDOs"). The CDOs to which the Company has exposure are primarily structured and underwritten by third parties. The collateralized asset or lending obligations held by the CDOs are generally related to franchise lending, small business finance lending, or consumer lending. Approximately 25% of the positions held at February 29, 2008 and November 30, 2007 were rated BB+ or lower (or equivalent ratings) by recognized credit rating agencies. In determining the fair value interests in CDOs, the Company considers prices observed for similar transactions and data for relevant benchmark instruments, such as swap obligations for similar obligations referenced by the instrument. In both reference periods, the value in the benchmark instruments as well as market developments caused a decline in the fair value of interests in CDOs, not actual defaults on swap obligations.

(2) Balances shown exclude those for which the Company transferred mortgage-related loans to securitization vehicles where such transfers were accounted for as secured financings rather than sales. The securitization vehicles issued securities that were distributed to investors. The Company does not consider itself to have economic exposure to the underlying assets in those securitization vehicles beyond the Company's retained interests.

54.    Despite Lehman knowing of its CDO exposure at the time of the Offering, this

18

information was not disclosed until after the Offering, and was publicly unavailable prior thereto. As a result, Plaintiffs and the Class did not and could not know of the tremendous risks they were taking in purchasing Bonds in the Offering which eventually directly led to the losses they have sustained.

55.    In this same vein, the Prospectus does not reveal the fact that Lehman was leveraged an astonishing 30:1. As a result, a relatively small downturn in the housing or credit markets had the very real potential to produce catastrophic results on Lehman's revenue, earnings and viability to survive.

**FIRST CLAIM**
**(For Violations of Section 11 Of The 1933 Act**
**Against All Defendants)**

56.    Plaintiffs incorporate herein ¶¶ 1-55 by reference. This Count is brought by Plaintiffs pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of all persons who purchased, exchanged or otherwise acquired Lehman's Bonds traceable to the Offering and/or pursuant to the Registration Statement and Prospectus, and against all defendants. Plaintiffs do not assert that defendants are liable for fraudulent or intentional conduct and disavow and disclaim any allegation of fraud for purposes of this claim.

57.    The Prospectus was inaccurate and misleading, contained untrue statements of material facts, and omitted to state material facts necessary to make the statements made not misleading. Specifically, as set forth in ¶¶ 49-55, the Prospectus was untrue and misleading in that it did not disclose the fact that Lehman was overvaluing its assets and was vulnerable to small swings in the market as a result of its significant leveraging and CDO holdings.

58.    All defendants owed to persons who purchased, exchanged or otherwise acquired the Bonds, including Plaintiffs and the other members of the Class, the duty to make a reasonable and

19

diligent investigation of the statements contained in the Prospectus at the time it became effective, to assure that those statements were true and that there was no omission to state material facts required to be stated in order to make the statements contained therein not misleading.  As such, these defendants are liable to Plaintiffs and the other members of the Class.

59.    Each of the Individual Defendants signed the Prospectus and was a director or officer of Lehman at the time the Prospectus was filed with the SEC.  Further, none of the Individual Defendants made a reasonable investigation or possessed reasonable grounds for believing that the statements contained in the Prospectus were true and devoid of any misstatements or omissions of material fact.  Therefore, each of the Individual Defendants is liable to Plaintiffs and the other members of the Class who purchased, exchanged or otherwise acquired the Lehman Bonds pursuant to the Prospectus for the various misstatements and omissions contained therein under §11 of the 1933 Act.

60.    Plaintiffs and the other members of the Class purchased, exchanged or otherwise acquired Lehman Bonds in or traceable to the Prospectus.  At the time each purchased the Bonds, Plaintiffs and the other members of the Class were without knowledge of the facts concerning the inaccurate and misleading statements and omissions alleged herein.

61.    By reason of the conduct alleged herein, each defendant violated §11 of the 1933 Act. As a direct and proximate result of defendants' conduct, Plaintiffs and the other members of the Class suffered substantial damage in connection with the purchase of the securities covered by the Prospectus.

## SECOND CLAIM
## VIOLATIONS OF SECTION 12(A)(2) OF THE 1933 ACT
## AGAINST THE INDIVIDUAL AND UNDERWRITER DEFENDANTS

62.    Plaintiffs incorporates herein ¶¶ 1-55 by reference.  Plaintiffs do not assert that

defendants are liable for fraudulent or intentional conduct and disavow and disclaim any allegation of fraud for purposes of this claim.

63.    This Claim is brought by Plaintiffs pursuant to §12(a)(2) of the 1933 Act on behalf of those purchasers of Lehman Bonds issued in the Offerings.

64.    This Claim is asserted against only the Individual Defendants and the Underwriter Defendants. The defendants named in this Cause of Action were sellers, offerors and/or solicitors of sales of the shares offered pursuant to the Prospectus.

65.    The actions of solicitation taken by the defendants named in this Cause of Action included participation in the preparation and dissemination of the false and misleading Prospectus and/or the Roadshow presentations. The written and oral communications made in connection with Roadshow presentations contained untrue statements of material facts, and omitted to state other facts necessary to the investing public.

66.    The Underwriter Defendants offered for sale and sold the securities purchased by Plaintiff Dimodica and the members of the class and received substantial fees and other compensation in connection with the August 2, 2007 Offering.

67.    Each defendant named in this Cause of Action solicited and/or was a substantial factor in the purchase by each member of the class of Lehman Bond purchasers. But for the participation by these defendants, including the solicitation by these defendants as set forth herein, the Offering could not and would not have been accomplished. These defendants were motivated, at least in part, by a desire to serve their own financial interests. Said defendants participated in the acts detailed herein in furtherance of the sale of Lehman Bonds.

68.    The defendants named in this Cause of Action were obligated to make a reasonable and diligent investigation of the written and oral statements made in the Prospectus, selling sheets

21

and roadshow presentations, to insure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. These defendants knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the Offering materials as set forth above.

69.    Plaintiffs and other members of the Class purchased or otherwise acquired the Lehman Bonds pursuant to the defective Prospectus. Plaintiffs did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Prospectus or selling sheets or made in connection with the Roadshow presentations.

70.    Plaintiffs representatively tender to defendants those securities which members of the Class continue to own, on behalf of all members of the Class who continue to own such securities, in return for the consideration paid for those securities together with interest thereon.

71.    By reason of the conduct alleged herein, these defendants violated, and/or controlled a person who violated, §12(a)(2) of the 1933 Act. As a direct and proximate result of these violations of §12(a)(2), Plaintiffs and other members of the Class sustained substantial damage in connection with their purchases of Lehman Securities. On behalf of all members of the Class who still hold their Lehman Securities, Plaintiffs seeks rescissory damages. Accordingly, Plaintiffs, on behalf of all members of the Class who continue to own such securities, seeks to exercise his right to rescind and recover the consideration paid for his Lehman Bonds.

72.    Less than two years have elapsed from the time when Plaintiffs discovered or reasonably could have discovered the facts upon which this Cause of Action is based to the time of the filing of this complaint.

73.    By virtue of the conduct alleged above, the Individual Defendants are liable to the Plaintiffs and the other members of the Class for substantial damages that they suffered in

22

connection with their purchases of Lehman's Bonds during the Class Period.

## THIRD CLAIM
## (FOR VIOLATIONS OF SECTION 15 OF THE 1933 ACT
## AGAINST THE INDIVIDUAL DEFENDANTS)

74.     Plaintiffs incorporate ¶¶ 1- 55 by reference.  This Count is brought pursuant to §15

of the 1933 Act on behalf of all persons who purchased, exchanged or otherwise acquired Lehman's

Bonds traceable to the Bond Offering.

75.     Each of the Individual Defendants was a controlling person of the Company within

the meaning of §15 of the 1933 Act at the time the Prospectus became effective and during the

Offering period.  At the time the Prospectus was filed with the SEC and declared effective, each of

the Individual Defendants had the power and authority to control the Company by reason of the

following:

(a)     Defendant Fuld had the power and authority to control Lehman by virtue of

his position as Chief Executive Officer and Chairman of the Board of Directors of Lehman.

(b)     Defendant O'Meara had the power and authority to control Lehman by virtue

of his position as the Chief Financial Officer of Lehman.

(c)     Defendants Ainslie, Akers, Berlind, Cruikshank, Evans, Gent, Hernandez,

Kaufman and Macomber had the power and authority to control Lehman by virtue of their respective

positions as members of Lehman's Board of Directors..

76.     None of the Individual Defendants made a reasonable investigation or possessed

reasonable grounds for the belief that the statements contained in the Prospectus were true and

devoid of any misstatements or omissions of material fact.  Therefore, by reason of his or her

position of control over the Company, as alleged herein, each of the Individual Defendants is liable

jointly and severally with and to the same extent that Lehman is liable to Plaintiffs and the other

members of the Class as a result of the conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the other members of the

Class, pray for judgment as follows:

1.    Declaring this action to be a class action properly maintainable pursuant to Rule 23

of the Arkansas Rules of Civil Procedure on behalf of the Class, and declaring Plaintiffs to be proper

Class representatives;

2.    Awarding Plaintiffs and the other members of the Class compensatory damages as

a result of the wrongs complained of herein, including interest thereon;

3.    Awarding Plaintiffs and the other members of the Class their costs and expenses of

this litigation, including reasonable attorneys' and experts' witness fees and other costs and

disbursements; and

4.    Awarding Plaintiffs and the other members of the Class such other and further relief

as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

DATED:  October 21, 2008                    Respectfully submitted,

                                            *Randall K. Pulliam*

                                            J. Allen Carney, (AR Bar No. 94122)
                                            Randall K. Pulliam, (AR Bar No. 98105)
                                            **CAULEY BOWMAN CARNEY
                                              & WILLIAMS, PLLC**
                                            11311 Arcade Drive, Suite 200
                                            Little Rock, AR 72222
                                            Tel - (501) 312-8500
                                            Fax - (501) 312-8505

24

 **CT Corporation**

**Service of Process Transmittal**
10/30/2008
CT Log Number 514030552

TO: Louis R Branz, ASST GEN CSL
Edward Jones & Co.
12555 MANCHESTER RD.
Saint Louis, MO 63131-3729

RE: Process Served in Arkansas

FOR: EDWARD D. JONES & CO., L.P. (Domestic State: MO)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Glen Deathrow, et al., Pltfs. vs. Richard S. Fuld, Jr., et al., including Edward D. Jones & Co., L.P., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Notice and Acknowledgment for Service by Mail, Cover Sheet, Complaint |
| **COURT/AGENCY:** | Saline County Circuit Court, AR<br>Case # CV200810222 |
| **NATURE OF ACTION:** | Class Action - All persons who purchased, exchanged, otherwise acquired the Bonds of Lehman Bros. Holdings Inc. |
| **ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Little Rock, AR |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/30/2008 at 01:15 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days from the date of service |
| **ATTORNEY(S) / SENDER(S):** | Randall K. Pulliam<br>Cauley Bowman Carney & Williams, PLLC<br>11311 Arcade Drive<br>Suite 200<br>Little Rock, AR 72222<br>501-312-8500 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 790617000374<br>Email Notification, Christina England christina.england@edwardjones.com<br>Email Notification, Donna Stuhlman donna.stuhlman@edwardjones.com<br>Email Notification, Lois Pearce lois.pearce@edwardjones.com |
| **SIGNED:** | CT Corporation System |
| **ADDRESS:** | 124 West Capitol Avenue<br>Suite 1900<br>Little Rock, AR 72201-3736 |
| **TELEPHONE:** | 501-244-9034 |

Page 1 of  1 / KM

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

## Official Form of Summons

The Supreme Court of Arkansas has adopted the following form of summons for use in all cases in which personal service is to be had pursuant to Rule 4(c), (d) and (e) of the Arkansas Rules of Civil Procedure. The form may be modified as needed in special circumstances. Additional notices, if required, should be inserted in the appropriate space. This form is not for use in cases of constructive service pursuant to Rule 4(f). The adoption of this form is in compliance with Rule 4(b) and does not modify or amend any part of that rule.

### IN THE CIRCUIT COURT OF SALINE COUNTY, ARKANSAS

### SUMMONS

Plaintiffs: Glen Deathrow, Barbara Kattell,
Madeline Dimodica, on behalf of themselves
and all others similarly situated,
vs.

Defendants: Richard S. Fuld, Jr., Christopher M. O'Meara, Michael L. Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman, John D. Macomber, A.G. Edwards & Sons, Inc., Banc of America Securities, LLC, Charles Schwab & Co., Citigroup Global Markets Corp., Edward D. Jones & Co., L.P., Fidelity Capital Markets Services, Morgan Stanley & Co., Inc., Muriel Siebert & Co., Inc., Raymond James & Associates, Inc., UBS Securities, LLC and Wachovia Securities, Inc.

Case Number: CV2008-1022-2

Plaintiff's attorney:   J. Allen Carney
Randall K. Pulliam
Cauley Bowman Carney & Williams, PLLC
11311 Arcade Dr., Ste 200
Little Rock, AR 72212

THE STATE OF ARKANSAS TO DEFENDANT:       Edward D. Jones & Co., L.P.
                                          12555 Manchester road
Registered Agent:                         Des Peres, MO 63131
The Corporation Company
124 West Capitol Ave, Ste 1980     NOTICE   Served 1:15
Little Rock AR 72201

1. You are hereby notified that a lawsuit has been filed against you; the relief asked is stated in the attached complaint.

2. The attached complaint will be considered admitted by you and a judgment by default may be entered against you for the relief asked in the complaint unless you file

a pleading and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:

A. It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.

B. It must be filed in the court clerk's office within 30 days from the day you were served with this summons.

3. If you desire to be represented by an attorney you should immediately contact your attorney so that an answer can be filed for you within the time allowed.

4. Additional notices:

Witness my hand and the seal of the court this _____ 10/21/08 _____.

(date)

Address of Clerk's Office:

DOUG KIDD BY:
Clerk    Mega Juch

[SEAL]

## NOTICE AND ACKNOWLEDGEMENT
## FOR SERVICE BY MAIL

### NOTICE

To:    Edward D. Jones & Co., L.P.
       12555 Manchester road
       Des Peres, MO 63131

The enclosed summons and complaint are served pursuant to Rule 4(d)(8)(B) of the Arkansas Rules of Civil Procedure.

You must complete the acknowledgment part of this form and return one copy of the completed form to the sender within 30 days.

You must sign and date the acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within 30 days, you (or the party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons and complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the complaint within the time specified in the summons. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

I declare, under penalty of perjury, that this Notice and Acknowledgment of Receipt of Summons and Complaint will have been mailed on (insert date).


_____
Signature


_____
Date of Signature

## ACKNOWLEDGMENT OF RECEIPT
## OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the summons and of the complaint in the above-captioned matter at (insert address).

_____

Signature

_____

Relationship to Entity/
Authority to Receive Service
of Process

_____

Date of Signature