**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:                                                       :
                                                             :
LEHMAN BROTHERS SECURITIES               :         09 MD 2017 (LAK)
AND ERISA LITIGATION                             :
                                                             :
This document applies to:                            :         ECF CASE
                                                             :
*In re Lehman Brothers Mortgage-Backed Securities* :
*Litigation*, No. 08-CV-6762 (LAK)              :
-------------------------------------------------------------x


# REPLY MEMORANDUM OF LAW IN
# SUPPORT OF THE PUBLIC EMPLOYEES' RETIREMENT
# SYSTEM OF MISSISSIPPI'S MOTION TO INTERVENE

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | | Miss PERS's Claims Are Not Time Barred.......................................................................... | 1 |
| | A. | The *American Pipe* Doctrine Applies When Prior Plaintiffs Lacked Standing...... | 1 |
| | B. | The Individual Defendants' Article III Standing Argument Cannot Prevail.......... | 6 |
| | C. | The *American Pipe* Doctrine Squarely Applies To Miss PERS's Motion to Intervene ................................................................................................................. | 8 |
| II. | | Under Rule 24(a) Miss PERS Has An "Interest" In This Action .................................... | 10 |
| III. | | Conclusion ....................................................................................................................... | 10 |

# **TABLE OF AUTHORITIES**

*Am. Pipe and Constr. Co. v. Utah*,
    414 U.S. 538 (1974) .................................................................................................... *Passim*

*Arivella v. Lucent Techs., Inc.*,
    623 F. Supp. 2d 164 (D. Mass. 2009) ................................................................................ 3

*Auscape Int'l v. Nat'l Geog. Soc.*,
    409 F. Supp. 2d 235 (S.D.N.Y. 2004) ................................................................................ 5

*CalPERS v. Chubb Corp.*,
    2002 WL 33934282 (D.N.J. June 26, 2002) ........................................................... 1, 2, 5, 6

*In re Colonial Ltd. P'ship Litig.*,
    854 F. Supp. 64 (D. Conn. 1994) ....................................................................................... 6

*In re Crazy Eddie Sec. Litig.*,
    747 F. Supp. 850 (E.D.N.Y. 1990) .................................................................................... 5

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983) ........................................................................................................... 8

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ........................................................................................................... 1

*In re Elscint, Ltd. Sec. Litig.*,
    674 F. Supp. 374 (D. Mass. 1987) ............................................................................... 2, 4, 7

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    529 F. Supp. 2d 644 (S.D. Tex. 2006) ............................................................................ 3, 5

*Escott v. Barchris Construction Corp.*,
    340 F.2d 731 (2d Cir. 1965) ............................................................................................... 8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    352 F. Supp. 2d 429 (S.D.N.Y. 2005) ....................................................................... *Passim*

*Haas v. Pittsburgh Nat'l Bank*,
    526 F.2d 1083 (3d Cir. 1975) ......................................................................................... 3, 4

*Hobbs v. Police Jury of Morehouse*,
    49 F.R.D. 176 (W.D. La. 1970) (per curiam) .................................................................... 8

*In re IPO Sec. Litig.*,
    2004 WL 3015304 (S.D.N.Y. Dec. 27, 2004) .................................................................... 5

*Korwek v. Hunt*,
 827 F.2d 874 (2d Cir. 1987)..........................................................................................5

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
 501 U.S. 350 (1991).......................................................................................................3

*In re Lehman Bros. Sec. & ERISA Litig.*,
 2010 WL 337997 (S.D.N.Y. Feb. 1, 2010).....................................................................3

*Mastercard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
 471 F.3d 377 (2d Cir. 2006)..........................................................................................10

*McKowan Lowe & Co. v. Jasmine, Ltd.*,
 295 F.3d 380 (3d Cir. 2002).......................................................................................4, 5

*Palmer v. Stassinos*,
 236 F.R.D. 460 (N.D. Cal. 2006)...................................................................................8

*Popoola v. MD-Individual Practice Assoc. Inc.*,
 230 F.R.D 424 (D. Md. 2005)................................................................................5, 6, 7

*Rose v. Ark. Valley Envtl. & Util. Auth.*,
 562 F. Supp. 1180 (W.D. Mo. 1983) ...................................................................2, 6, 7, 9

*Trief v. Dun & Bradstreet Corp.*,
 144 F.R.D. 193 (S.D.N.Y. 1992) ...................................................................................2

*Walters v. Edgar*,
 163 F.3d 430 (7th Cir. 1998) .....................................................................................7, 8

*In re WorldCom Sec. Litig.*,
 496 F.3d 245 (2d Cir. 2007).................................................................................1, 8, 9

Miss PERS's[1] proposed intervention satisfies the requirements of either Rule 24(a) or 24(b) of the Federal Rules of Civil Procedure. Recognizing this, the Individual Defendants attempt to avoid liability by asserting that Miss PERS's claims in intervention are time-barred under Section 13 of the Securities Act.

## I.     Miss PERS's Claims Are Not Time Barred

Miss PERS's claims are timely because, pursuant to *American Pipe*, both the one-year statute of limitations and three-year statute of repose were tolled at the time the original Plaintiffs in this Action filed the Consolidated Complaint, which included those claims.

### A.     The *American Pipe* Doctrine Applies When Prior Plaintiffs Lacked Standing

In *American Pipe*, the Supreme Court "established that commencement of a class action tolls the applicable statute of limitations as to all members of the class." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 n.13 (1974) (citing *Am. Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974)). "[T]he Supreme Court has repeatedly stated [the *American Pipe* tolling rule] . . . [and] [w]e see no reason not to take this statement at face value." *In re WorldCom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007) ("Because members of the asserted class are treated for limitations purposes as having instituted their own actions, at least so long as they continue to be members of the class, the limitations period does not run against them during that time.").

"Several courts have held that *American Pipe* is appropriately applied to motions to intervene or amended complaints filed to substitute a proper class representative with standing prior to a [final] decision on class certification." *CalPERS v. Chubb Corp.*, 2002 WL 33934282, at *29 (D.N.J. June 26, 2002) *aff'd*, 394 F.3d 126 (3d Cir. 2004) (citing cases). In *CalPERS*, the original class representative, CalPERS, filed a securities class action complaint on behalf of

---

[1] All capitalized terms used herein shall have the meanings assigned in Movant's March 18, 2010 Memorandum of Law [Docket No. 116, in 08-cv-6762] ("Miss PERS's Br.").

1

holders of stock issued by two defendant companies, Chubb and Executive Risk. *Id*. at *1. The original complaint, which was filed 15 days prior to the expiration of the limitations period, listed CalPERS as sole named plaintiff even though it did not own any Executive Risk shares. *Id*. at *26-27. After the limitations period ended, John Teeple, an Executive Risk stock holder, moved to become a named plaintiff in the action. *Id*. at *27. As here, the defendants argued that "the assertion of [the claims against Executive Risk] by CalPERS, which did not have standing to raise those claims, did not toll the statute of limitations for putative class members such as Teeple, who would have standing to bring such a claim." *Id*. The court rejected defendants' argument, and held that *American Pipe* tolling applied:

> This Court can conceive of little difference between the situation here and that in *American Pipe*. Here, Teeple was a putative class member as defined in the Complaint and thus, his inclusion protects the interests of all other putative class members as *American Pipe* intended. To rule otherwise would create a situation similar to that which the Supreme Court sought to eliminate in *American Pipe*, that is putative class members would be forced to file motions to intervene prior to the expiration of the statute of limitations and in advance of the decision on class certification to protect their interests.

*Id*. at *30 (citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 203 (S.D.N.Y. 1992)); *see also In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 377 (D. Mass. 1987) ("[T]he fact that a class action is disallowed because the class representative lacks 'standing' does not, *per se*, prevent application of the *American Pipe* tolling rule.") (quoting *Rose v. Ark. Valley Envtl. & Util. Auth.*, 562 F. Supp. 1180, 1193 (W.D. Mo. 1983)).

Under similar circumstances, the court in *In re Flag Telecom Holdings, Ltd. Securities Litigation* also rejected defendants' argument that *American Pipe* tolling does not apply where the original plaintiff lacked standing.[2]  352 F. Supp. 2d 429, 454-46 (S.D.N.Y. 2005), *abrogated*

---

[2]  Not surprisingly, because *Flag*'s holding is contrary to the Individual Defendants' position, they urge this Court to ignore the case. *See* The Individual Defendants' Memorandum of Law in Opposition to the Public Employees' Retirement System of Mississippi's Motion to Intervene ("Opp. Br.") at 9-10 ("[T]he decision in *Flag* is flawed and

*on other grounds*, 574 F.3d 29 (2d Cir. 2009).  In *Flag*, the original plaintiff's claim for violation of Section 12(a)(2) of the Securities Act of 1933 was dismissed because that plaintiff had purchased Flag securities in the secondary market and thus did not have §12(a)(2) standing.  *Id*. at 454.  After being granted leave to replead, the original plaintiff filed a new complaint naming a new plaintiff, Norman Hunter, who had purchased securities directly in Flag's initial public offering.  *Id*. at 455.  The defendants argued that, although naming Hunter "may have . . . cured the defect" with the original plaintiff's standing, Hunter's claims were time barred by the three year statute of repose and tolling under *American Pipe* should not apply.  *Id*. at 454-55.  The court rejected this argument, holding that "the failure to apply the *American Pipe* rule to cases where a class action complaint was dismissed for lack of standing undermines the policies underlying Rule 23 and is inconsistent with the Court's reasoning in *American Pipe*."  *Id*. at 455 n.19.[3]

In *Haas v. Pittsburgh National Bank*, 526 F.2d 1083 (3d Cir. 1975), the original plaintiff, Mary Haas, brought a class action challenging the methods by which three banks, Pittsburgh National Bank, Mellon Bank, and Equibank, computed interest on their customers' credit card accounts.  Although Haas represented in her initial and amended complaints that she held credit

---

should not be followed by this Court.").  However, the Individual Defendants cite no case that questions or criticizes *Flag*'s application of *American Pipe*.  *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 529 F. Supp. 2d 644, 709 (S.D. Tex. 2006) (explicitly following *Flag* to allow *American Pipe* tolling when the original plaintiff lacked standing); *cf. In re Lehman Bros. Sec. & ERISA Litig.*, 2010 WL 337997, at *12-13 (S.D.N.Y. Feb. 1, 2010) (Kaplan, J.) (this Court relied on *Flag* to support a separate point).

[3]  The Individual Defendants suggest, based on *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991), that there is "some dispute" about whether tolling under *American Pipe* applies to statutes of repose.  Opp. Br. at 6 n.2.  However, "all lower federal courts . . . to examine whether *American Pipe* tolling applies to statutes of repose have found *Lampf* limited exclusively to the [distinct] concept of equitable tolling and have held that *American Pipe* requires the tolling of statutes of repose."  *Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 178 (D. Mass. 2009) (collecting cases from various districts, including this one, and noting that "[c]opious research has not unearthed a single case in which a court recognized the distinction between legal and equitable tolling and still concluded that *Lampf* precluded the application of *American Pipe* to statutes of repose.") (footnote omitted); *see Flag*, 352 F. Supp. 2d at 455-56 (applying *American Pipe* tolling to the same three-year statute of repose at issue here, Section 13 of the Securities Act).

3

cards issued by two of the banks, she never alleged that she had an Equibank credit card. *Id*. at 1095. Nevertheless, the district court certified a class consisting of all holders of credit cards issued by the three banks and named Haas as class representative. *Id*. After later determining that Haas lacked standing to maintain a claim against Equibank, the district court reconsidered its class certification order and decertified the Equibank portion of the class. *Id*. Rather than entering summary judgment for Equibank, the district court allowed the complaint to be amended to add a new plaintiff, Mitchell, who had standing to assert claims against Equibank but ruled that such amendment was untimely. *Id*. at 1095-96.

In reviewing the district court's decision, the U.S. Court of Appeals agreed with plaintiffs "that when Haas filed the original class action complaint . . . the limitations period was tolled for all members of the class Haas purported to represent," including Mitchell:

> [W]e believe the broad tolling principle [*American Pipe*] enunciated should also apply to the instant case where the district court determined after its original certification of the class action that Haas could not represent cardholders at Equibank since she did not hold a card issued by it. Haas' timely action against all three banks provided Equibank with notice within the statutory period of the substantial nature of the claims against which they would be required to defend and also "the number and generic identities of the plaintiffs." These plaintiffs were in existence at the time the action was originally brought and were described as claimants in the complaint. The only change effectuated by the district court's order was the prompt addition of a nominal plaintiff who held an Equibank card.

*Id*. at 1096-97 (quoting *Am. Pipe*, 414 U.S. at 555) (footnote omitted).[4]

---

[4] The court in *In re Elscint*, 674 F. Supp. at 377, relied on by the Individual Defendants, Opp. Br. at 9, conceded that "in interpreting *American Pipe*, federal courts have applied the tolling rule in circumstances in which certification was denied or terminated for . . . lack of standing." However, because the *Elscint* court "had not yet ruled on plaintiffs' class [certification] motion," it found *Haas* and cases like it "distinguishable" and declined to follow them. *Id*. at 377-78. Years later, the Third Circuit, which originally decided *Haas*, found the argument that *Haas* was distinguishable on this basis "[un]persuasive," and concluded that there is "no good reason why class claims should not [also] be tolled when the district court had not yet reached the issue of the validity of the class." *McKowan Lowe & Co. v. Jasmine, Ltd*., 295 F.3d 380, 389 (3d Cir. 2002). *Elscint* also distinguished *Haas* because "the original nominal plaintiff[] [in *Haas*] had standing to litigate at least some of the claims [she] brought, even though not all of them," while the original plaintiff in *Elscint* did not have standing to litigate any of the asserted claims. 674 F. Supp. at 379. To the extent that is a valid distinction, it serves to more closely align the instant situation with that in *Haas*, because the original Plaintiffs have standing to litigate claims as to nine of the Trusts.

4

The Individual Defendants rely on *Korwek v. Hunt*, 827 F.2d 874 (2d Cir. 1987), and a line of cases that limit *American Pipe* tolling where plaintiffs seek to serially file identical complaints. However,

> *Korwek* . . . stands only for the proposition that once class certification is denied, putative class members may not rely on the *American Pipe* rule to commence a new, substantially identical class action because this would allow the putative class members to "argue and reargue the question of class certification by filing new but repetitive complaints."

*Flag*, 352 F. Supp. 2d at 455 n.20 (quoting *Korwek*, 827 F.2d at 879); *see also Auscape Int'l v. Nat'l Geog. Soc.*, 409 F. Supp. 2d 235 (S.D.N.Y. 2004). *Korwek* is inapplicable where, as here, prior to a class certification decision, a class member seeks to intervene to assert the same claims that the original class representative brought prior to the expiration of the limitations period. "[T]he instant matter is distinguishable from those cases," such as *Korwek,* "refusing to apply *American Pipe* to successive class actions" because they are concerned that plaintiffs will "re-litigate the propriety of class certification." *CalPERS*, 2002 WL 33934282, at *28-29 ("There is no such risk where *American Pipe* is applied prior to a decision on class certification and thus, those decisions are inapplicable to the case at bar.").[5]

The other two cases that the Individual Defendants rely on are similarly inapplicable. While *In re Crazy Eddie Sec. Litig.*, 747 F. Supp. 850 (E.D.N.Y. 1990) followed *Korwek*, "[b]y now it should be clear that *Korwek* and *Crazy Eddie* are inapposite" where the substitute class

---

[5] *See also McKowan*, 295 F.3d at 386-88 (drawing a distinction between the "*Korwek* line of cases," which prohibit *American Pipe* tolling to "successive attempts to certify a previously rejected class," with those cases that allow *American Pipe* tolling after finding "the original certified class representative . . . wanting," but not rejecting the propriety of the class action itself); *Enron*, 529 F. Supp. 2d at 711 (declining to follow *Korwek* and its progeny in a substantially similar situation, because "[t]his is not a case where class certification was previously denied and where the propriety of a class action is being relitigated, which the Second Circuit in *Korwek* and . . . others, have barred.") (citations omitted); *In re IPO Sec. Litig.*, 2004 WL 3015304, at *5 n.47 (S.D.N.Y. Dec. 27, 2004) ("*Korwek* . . . involved a denial of 'class certification mainly because of overwhelming manageability difficulties,' not lack of standing. Thus, *Korwek* addressed the unsuitability of tolling class *claims*, not the inadequacy of proposed *lead plaintiffs*, and prohibits the repetitious filing of purported class actions for which class certification has already been denied." (Emphasis in original)).

5

representative "[does] not file a subsequent class action, but [i]s added as a named plaintiff in the instant, pending case" and "there has been no 'definitive' denial of class certification." *Popoola v. MD-Individual Practice Assoc. Inc.*, 230 F.R.D 424, 430 (D. Md. 2005). *In re Colonial Ltd. Partnership Litigation*, which applies *Korwek* to prevent *American Pipe* tolling in a situation similar to the instant one. 854 F. Supp. 64 (D. Conn. 1994). However, subsequent courts have "disagree[d] with this interpretation of the law" because it "undermines the policies underlying Rule 23 and is inconsistent with the Court's reasoning in *American Pipe*." *Flag*, 352 F. Supp. 2d at 455 n.20; *see Enron*, 529 F. Supp. 2d at 709 (explicitly "agree[ing]" with *Flag*'s criticism of *Colonial* for "misinterpreting *Korwek*"); *see also CalPERS*, 2002 WL 33934282, at *29 (refusing to follow *Colonial* because "it is clear that such a generalized rejection of *American Pipe* in the standing context is not the law in this [the Third] circuit").

### B. The Individual Defendants' Article III Standing Argument Cannot Prevail

The Individual Defendants' closing argument that tolling should not be permitted because this Court never had jurisdiction under Article III over claims on behalf of the Intervenor Class is similarly meritless. Several courts have specifically rejected the "nonexistent claim" argument and found that claims are tolled when the prior representative plaintiff lacked standing. In *Rose v. Arkansas Valley Environmental*, bondholders had originally filed a complaint seeking recovery on two series of bonds in a prior action, but an earlier opinion had found that the named plaintiffs lacked standing for the second series of bonds. 562 F. Supp. 1180 (W.D. Mo. 1983). In the later action, defendants argued that the lack of standing prevented tolling under *American Pipe*. *Id.* Denying the motion to dismiss, the court found that:

> [I]t can hardly be said that a suit commenced by one who lacks standing is in any literal sense a "nonexistent" suit. It may be a defective suit, subject to a motion to dismiss or perhaps even to the court's dismissal *sua sponte*, but it is for all that no less the judicial assertion of a claim, functioning to give a defendant notice of whatever causes of action are asserted therein. And where such a claim is

6

> asserted by way of a class action, and in fact covers the causes of action which a class member himself could properly bring, a defendant has received just as much notice as might have been imparted if the proceeding had been instituted by that class member. In fact, if one were to deal only in generalities, a class action which is denied or terminated because the class representative lacks "standing" might often be more likely to give a defendant actual notice of the claims of individual class members than one where denial or termination was based upon a lack of "typicality" or "commonality."

*Id.* at 1193. Similarly, in *Popoola v. MD-Individual Practice Assoc.*, the District Court of Maryland found that the claims asserted by a new named plaintiff and added to an amended complaint in order to cure defective standing were tolled under *American Pipe*. 230 F.R.D. 424.

The Individual Defendants rely on the Seventh Circuit's opinion in *Walters v. Edgar*, where the court dismissed the entire action after finding that the inmate plaintiffs did not suffer an unconstitutional restriction on their access to Federal court. 163 F.3d 430 (7th Cir. 1998). Recognizing that it was "dealing with a class of cases in which the issue of standing and the merits of the plaintiffs' claims are inseparable," *id.* at 435, the court found that "there is no indication that any member of the plaintiff class in the present case sustained any greater injury by reason of the alleged unconstitutional blockage of access to the courts than the two named plaintiffs," *id.* at 433. Accordingly, the court denied the motion to intervene and dismissed the entire action without addressing the issue of tolling.[6] Unlike the result in *Walters*, the court in *In re Elscint* noted that, in cases where tolling was allowed, "the original nominal plaintiffs had standing to litigate at least some of the claims they brought, even though not all of them." 674 F. Supp. at 379.

---

[6] *Walters'* legal and factual circumstances cannot be squared with those presented in this motion, nor does that court's holding dictate the result urged by the Individual Defendants. In fact, the court in *Walters* contemplated that there would be subsequent actions brought with plaintiffs alleging violations of their constitutional rights. *Id.* at 437. Despite the Individual Defendants' assertion that *Walters* considered whether "new plaintiffs could be substituted to maintain a **stale** class action claim" and held that the "filing of the action did not **toll** the statute of limitations," Opp. Br. at 11 (emphasis added), the Seventh Circuit's opinion did not address those questions directly and the words "toll" or "tolling" do not even appear.

7

The Individual Defendants also rely on *Palmer v. Stassinos* for the inference that a class action claim filed by a plaintiff without standing will not toll a later claim. 236 F.R.D. 460 (N.D. Cal. 2006). In *Palmer*, the district court relied on *Walters* after noting that it was unaware of any relevant Supreme Court decisions, and that the Ninth Circuit Court of Appeals had specifically reserved the question. *Id.* at 465. The only other relevant decision that the *Palmer* court relied on was *Hobbs v. Police Jury of Morehouse*, 49 F.R.D. 176 (W.D. La. 1970) (per curiam). As *Palmer* noted, the holding in *Hobbs* was dictated by Louisiana law, which did not allow for tolling of statutes of limitations and is clearly inapposite.[7]

### C. The *American Pipe* Doctrine Squarely Applies To Miss PERS's Motion to Intervene

This situation necessitates tolling of Miss PERS's claims. The motion to intervene was promptly filed after this Court's opinion dismissing the claims on behalf of purchasers from the Eighty-Five Trusts that had previously been part of the putative class as defined in the Consolidated Complaint. The instant motion does not involve "new claims." *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354-55 (1983) (J. Powell, *concurring*) ("[T]he defendant normally is not prejudiced by tolling of the statute of limitations. It is important to make certain, however, that *American Pipe* is not abused by the *assertion of claims that differ from those raised in the original class suit*.") (emphasis added). Tolling these claims poses no prejudice to the the Individual Defendants who have been on notice since the filing of the Consolidated Complaint. "As the Supreme Court has repeatedly emphasized, the initiation of a class action puts the defendants on notice of the claims against them." *WorldCom*, 496 F.3d at 255. To the contrary, Miss PERS's timely motion to intervene ensures that claims included in the

---

[7] The Individual Defendants' reliance on *Escott v. Barchris Constr. Corp.* does not advance their argument. In *Escott*, the Second Circuit stated in a footnote the straightforward proposition that if the first-filed action is time-barred it cannot toll the statute of limitations for any later-filed action. 340 F.2d 731, 733 n.3 (2d Cir. 1965).

8

Consolidated Complaint on behalf of investors who purchased certificates issued by the Three Trusts will be prosecuted. Given that the great weight of applicable authority supports intervention and tolling under these circumstances, and the absence of any prejudice to the Individual Defendants, Miss PERS's motion for intervention should be granted.

The Individual Defendants claim that Miss PERS should not get the benefit of *American Pipe* tolling because the original Plaintiffs' lack of standing was "clear on the face" of the complaints and other court filings. Opp. Br. at 1, 10 n. 3. Apparently, according to the Individual Defendants, class members have the obligation to immediately investigate the basis of the original plaintiffs' standing and seek intervention or file a separate complaint prior to the expiration of the limitations period to protect their stakes in the litigation should the original plaintiffs ever lose standing. That is exactly the *opposite* of what *American Pipe* and subsequent cases discussing it have required or desired.[8]

Moreover, even if Miss PERS was required to anticipate that the original Plaintiffs would lack standing to assert their claims – which it was not – Miss PERS was justified in its reliance on the representations in the Consolidated Complaint and further arguments made in the motions to dismiss, which demonstrated that the issue of standing was in dispute and had not been resolved adverse to Miss PERS's interests. Specifically, the question of whether purchasers of

---

[8] *See, e.g., Am. Pipe*, 414 U.S. at 553 ("A contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure. Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable."); *Flag*, 352 F. Supp. 2d at 456 ("Rule 23 and the PSLRA tend to encourage investors who might otherwise bring lawsuits to refrain from filing a complaint or intervening in an action when those investors feel their interests are adequately protected in a proposed class action that has already been filed. . . . . [A class member] should not be punished simply because he failed to anticipate that [the original] plaintiff's § 12(a)(2) claims would be dismissed because none of the named plaintiffs in the action had standing to sue on those claims."); *cf. WorldCom*, 496 F.3d at 253 (quoting *Am. Pipe*, 414 U.S. at 552) ("Just as class members need not actively participate in order to profit from the class action's eventual outcome, they may also benefit passively from the suit's tolling effect on the statute of limitations. Even class members who were unaware of the class action – indeed, even those who 'demonstrably did not rely' on it – should benefit from the tolling.").

securities issued pursuant to a common shelf registration statement have standing to represent purchasers of other securities issued pursuant to that registration was not determined until the Court provided a ruling on this disputed issue.[9]

## II. Under Rule 24(a) Miss PERS Has An "Interest" In This Action

Miss PERS's claims are identified in the Consolidated Complaint and are part of this Action but for the standing deficiencies identified by the Court in its February 17, 2010 Memorandum Opinion. Those standing deficiencies will be rectified by Miss PERS's intervention.

Denying the motion to intervene will clearly "impair or impede" Miss PERS's ability to protect its interests and the interest of the Class. *See* Opp. Br. at 4. This Court has determined that the allegations in the Consolidated Complaint are adequately pled and present a plausible claim for relief. If intervention is denied, Miss PERS and those investors who purchased from the Three Trusts will likely be unable to obtain relief for the well-pled violations of the Securities Act contained in the Consolidated Complaint.[10]

## III. Conclusion

For the foregoing reasons and those in Miss PERS's Opening Brief, Miss PERS respectfully requests that the Court grant its Motion to Intervene.

---

[9] "Standing questions are one[s] with which both skilled counsel and skilled courts sometimes experience considerable difficulty, even after extensive discovery and when intimately acquainted with the facts . . . . I can see no more reason, as a general matter, to require a passive class member to anticipate the existence of and ultimate ruling upon that question than to require him to do so with respect to questions of 'numerosity,' 'commonality' or 'typicality.'" *Rose*, 562 F. Supp. at 1193.

[10] In support of their argument that intervention under Rule 24(a) is inappropriate here, the Individual Defendants rely exclusively on *Mastercard Int'l Inc. v. Visa Intl'l Serv. Ass'n, Inc.* 471 F.3d 377 (2d Cir. 2006), a breach of contract action. In affirming the district court's denial of Visa's Rule 24 motion to intervene, the Second Circuit confirmed that Visa's motion was untimely and further reasoned that in the absence of intervention Visa's interests would not be "impacted or impeded" by the resolution of that action because (a) the district court could provide complete relief to Mastercard without requiring anything from Visa, and (b) Visa was free to bring its own action for breach of contract against FIFA. *Id.* at 390. That is not the case here, where the motion to intervene is not challenged as untimely and the claims Miss PERS seeks to assert in intervention were already in this action and have been dismissed only for lack of standing.

Dated: April 15, 2010
       New York, New York

By:   /s/ Lester L. Levy
      LESTER L. LEVY

**WOLF POPPER LLP**
Lester L. Levy (#LL-9956)
James A. Harrod (#JH-4400)
Robert S. Plosky (#RP-7829)
845 Third Avenue, 12th Floor
New York, NY 10022
Tel:   (212) 759-4600
Fax:   (212) 486-2093
*llevy@wolfpopper.com*
*jharrod@wolfpopper.com*
*rplosky@wolfpopper.com*

-and-

**POND, GADOW & TYLER, P.A.**
John Gadow
Blake Tyler
502 South President Street
Jackson, MS 39201

*Counsel for Movant Public Employees' Retirement System of Mississippi*

11