UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:

LEHMAN BROTHERS SECURITIES AND ERISA
LITIGATION

09 MD 02017 (LAK)

This document applies to:

*In re Lehman Brothers Mortgage-Backed
Securities Litigation*, No. 08 Civ. 6762 (LAK)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM OPINION

Appearances:

| | |
|---|---|
| Joel Laitman | Lester Levy |
| Christopher Lometti | James Harrod |
| Michael Eisenkraft | Robert Plosky |
| Daniel Rehns | WOLF POPPER LLP |
| Kenneth Rehns | |
| Steven Toll | John Gadow |
| Julie Reiser | Blake Tyler |
| Joshua Devore | POND, GADOW & TYLER, P.A. |
| COHEN MILSTEIN SELLERS & TOLL, PLLC | |
| *Attorneys for Plaintiffs and Movant IPERS* | *Attorneys for Movant PERSM* |

Michael Chepiga
Mary McGarry
Michael Ledley
Nicholas Cohen
Ihsan Dogramaci
SIMPSON THATCHER & BARTLETT LLP
*Attorneys for Individual Defendants*

LEWIS A. KAPLAN, *District Judge.*

        This putative class action concerns the issuance, distribution and sale of numerous offerings of mortgage pass-through certificates (the "Certificates") issued between September 2005

and July 2007. The Court assumes familiarity with its prior opinions.[1]  The matter is before the Court on two motions to intervene pursuant to FED. R. CIV. P. 24.

*Facts*

I.  *The Securities at Issue*

The Certificates are a form of mortgage-backed security. In a mortgage securitization, mortgage loans are acquired, pooled together, and then sold to a trust which in turn issues certificates to purchasers who become the beneficiaries of the trust and who then receive distributions from the trustee from the cash flow generated by the pool of mortgages and in accordance with the specification of the rights of the respective classes of certificate holders set out in the trust instrument.

In this case, the Certificates were registered with the SEC under two shelf registration statements with base prospectuses filed by an affiliate of Lehman Brothers Holdings, Inc.[2] in August 2005 (amended in September 2005) and August 2006, pursuant to Rule 415 of the Securities Act. For each offering, Lehman filed also a pricing supplement to the relevant base prospectus which amended or updated the original shelf registration statement to which it pertained and provided additional information about the particular pools of mortgages underlying the Certificates offered pursuant to that prospectus supplement, including the types of loans and the descriptions of

---

[1]  *In re Lehman Brothers Sec. & ERISA Litig.*, 681 F. Supp.2d 495 (S.D.N.Y. 2010) ("*Lehman MBS I*"); *In re Lehman Brothers Sec. & ERISA Litig.*, 684 F. Supp.2d 485 (S.D.N.Y. 2010) ("*Lehman MBS II*").

[2]  As used herein, "Lehman" refers to Lehman Brothers Holdings, Inc. and its subsidiaries and affiliates.

3

underwriting guidelines for those loans that were provided by the originators. The shelf registration statements and the prospectus supplements are referred to here as the "Offering Documents."

II.     *The Action and Motions*

Plaintiffs are purchasers of certain Certificates who allege that the Offering Documents contained a number of misrepresentations and omissions in violation of federal securities laws. They brought two actions in June and July 2008 in the New York Supreme Court, New York County. Defendants removed them to this Court, where they were consolidated. The complaint asserts claims under the Securities Act in connection with 94 offerings.[3] As it alleges that plaintiffs purchased Certificates in only nine of those offerings, the Court dismissed the claims arising out of the other 85 offerings for lack of standing in *Lehman MBS II*.[4]

These motions aim to cure that standing deficiency as to eight of those 85 offerings. Movant Public Employees' Retirement System of Mississippi ("PERSM") alleges that it purchased securities pursuant to three offerings in connection with which the original plaintiffs lack standing to sue.[5] Movant Iowa Public Employees' Retirement System ("IPERS") alleges that it purchased securities pursuant to five such offerings.[6] They seek to intervene as representatives of a class,

---

[3]  *See* Complaint [DI 32] ("Cpt.").

[4]  684 F. Supp.2d at 489-92.

[5]  PERSM alleges that it purchased Certificates in LXS 2005-8, LXS 2006-16N, and FFMLT 2006-FFB. *See* DI 116, at 1.

[6]  IPERS alleges that it purchased Certificates in SARM 2007-6, SARM 2006-4, SASC 2007-BC1, SASC 2007-EQ1, and SASC 2007-OSI. *See* DI 139, at 1. IPERS's motion to intervene was filed jointly by IPERS and plaintiffs.

4

members of which purchased Certificates in those offerings. The Individual Defendants[7] contend, *inter alia*, that the statutes of limitations and repose for the claims that movants[8] seek to assert against them have expired and that the motions therefore should be denied.

*Discussion*

Movants seek to assert claims against the Individual Defendants under Sections 11 and 15 of the Securities Act.[9] Section 13 of that act sets forth two timeliness requirements for such claims: a one-year statute of limitations and a three-year statute of repose. That is, claims must be asserted (1) "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence," and (2) "[i]n no event . . . more than three years after the security was bona fide offered to the public."[10] The Individual Defendants contend that movants' claims against them are untimely under both

---

[7] The Individual Defendants are Lana Franks Harber, Edward Grieb, Richard McKinney, Kristine Smith, James J. Sullivan, Samir Tabet, and Mark L. Zusy.

[8] Notwithstanding that plaintiffs joined in IPERS's motion to intervene, as used herein, "movants" refers to PERSM and IPERS.

[9] Movants did not submit proposed pleadings setting forth the claims that they seeks to assert here, despite FED. R. CIV. P. 24(c)'s requirement of such pleadings. Nonetheless, the Court construes the motions as adopting all of the complaint's allegations and claims relating to the offerings in which movants purchased Certificates. *See* DI 116, at 3; DI 139, at 4.

Section 15 imposes vicarious liability for persons controlling violators of Sections 11 or 12. 15 U.S.C. § 77o. The only remaining Section 15 claims against the Individual Defendants are for Section 11 violations. Although Section 12(a)(2) claims remain against the defendant issuing trusts, the Court in *Lehman II* held that "[t]he complaint . . . is completely devoid of factual allegations suggesting that the Individual Defendants controlled . . . the issuing trusts," 684 F. Supp.2d at 495.

[10] 15 U.S.C. §77m. *See also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 (1976).

5

requirements.

I.  *The Claims That Movants Seek to Assert Against the Individual Defendants*

It is undisputed that the *latest* offerings upon which PERSM and IPERS seek to sue occurred on November 28, 2006, and June 28, 2007, respectively[11] – more than three years before each movant filed its motion to intervene.[12]  The claims that movants seek to assert against the Individual Defendants therefore appear to be untimely.  Movants argue, however, that the three-year statutes of repose have been tolled and that these claims therefore are timely.

   A.  *The Statutes of Repose Have Not Been Tolled*

Movants base their argument on *American Pipe & Construction Co. v. Utah*,[13] where the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."[14]  There, the respondents moved to intervene in a civil antitrust action in which they had been putative class members after the named plaintiff – the State

---

[11] The dates of the offerings in which PERSM purchased Certificates were: LXS 2005-8 (November 29, 2005), LXS 2006-16N (September 28, 2006), and FFMLT 2006-FFB (November 28, 2006).  Cpt. ¶¶ 30-31.  The dates of the offerings in which IPERS purchased Certificates were: SARM 2006-4 (April 27, 2006), SASC 2007-BC1 (February 26, 2007), SASC 2007-EQ1 (April 20, 2007), SASC 2007-OSI (May 25, 2007), and SARM 2007-6 (June 28, 2007).  *Id.*

[12] PERSM moved to intervene on March 18, 2010.  IPERS did so on August 11, 2010.

[13] 414 U.S. 538 (1974).

[14] *Id.* at 554.

of Utah – failed to win class certification for lack of numerosity. The Court held that the statute of limitations for the respondents' claims had been tolled for the period between the filing of Utah's complaint and the denial of class certification. The motion to intervene therefore was timely. "A contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure. Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable."[15] The Court stated that this rule was "in no way inconsistent with the functional operation of a statute of limitations" – protection from the assertion of stale claims – as it tolls only claims of which defendants are put on notice in a timely fashion by virtue of the putative class complaint.[16]

The Individual Defendants counter, *inter alia*, that *American Pipe* dealt only with statutes of limitations and argue that statutes of repose, including the three-year period established by Section 13 of the Securities Act, are not tolled by the pendency of putative class actions. Judge Castel, in a particularly persuasive decision, recently adopted this view.[17] For the reasons discussed below, this Court agrees.[18]

---

15  *Id.* at 553.

16  *Id.* at 554-55.

17  *Footbridge Limited Trust v. Countrywide Financial Corp.*, ___ F. Supp.2d ____, 2011 WL 907121 (S.D.N.Y. Mar. 16, 2011) ("*Footbridge*").

18  The Individual Defendants raised this issue in a footnote. *See* DI 127, at 6 n.2. Ordinarily, the Court would not decide a motion on an issue so raised. However, PERSM responded to the argument on the merits. *See* DI 129, at 3 n.3. The Individual Defendants briefed the issue in greater detail in opposing IPERS's motion to intervene, *see* DI 141, at 5, but IPERS

7

Statutes of limitations are fundamentally different from statutes of repose. The former:

> "'bear on the availability of remedies and, as such, are subject to equitable defenses . . . , the various forms of tolling, and the potential application of the discovery rule. In contrast, statutes of repose affect the availability of the underlying right: That right is no longer available on the expiration of the specified period of time. In theory, at least, the legislative bar to subsequent action is absolute, subject to legislatively created exceptions . . . set forth in the statute of repose.'"[19]

The question therefore is whether tolling under *American Pipe* reflects a judicially created amelioration of a statute of limitations or a legislatively sanctioned means of extending a statute of repose.

In the first analysis, it must be noted that *American Pipe* was a case about a statute of limitations.[20] Section 13's three-year requirement, by contrast, is a statute of repose.[21] Moreover, the Supreme Court and Second Circuit have cited *American Pipe* as an example of equitable tolling.[22] In *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, the Supreme Court held that

---

appears to have ignored the point. The Individual Defendants submitted a letter on this issue in March 2011, and plaintiffs and movants responded with one of their own shortly thereafter. In all the circumstances, the Court considers the issue fully briefed and ripe for disposition.

[19] *P. Stoltz Family Partnership L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004) (quoting CALVIN W. CORMAN, LIMITATION OF ACTIONS § 1.1, 4-5 (1991)).

[20] Indeed, in the very first sentence, the Court characterized the case as "involv[ing] an aspect of the relationship between a statute of limitations and the provisions of Fed. Rule Civ. Proc. 23 regulating class actions in the federal courts." 414 U.S. at 540.

[21] *P. Stoltz Family Partnership L.P.*, 355 F.3d at 98.

[22] *Young v. United States*, 535 U.S. 43, 49 (2002); *Veltri v. Building Service 32B-J Pension Fund*, 393 F.3d 318, 322-23 (2d Cir. 2004). *See also Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 211 (4th Cir. 2006); *Youngblood v. Dalzell*, 925 F.2d 954, 959 n.3 (6th Cir. 1991).

8

equitable tolling does not apply to statutes of repose.[23]  On the face of it, then, *American Pipe* has no bearing here.

That said, most courts that have addressed this issue have concluded that *American Pipe* does apply to toll statutes of repose.[24]  They have reasoned that *American Pipe* – despite its characterization by the Supreme Court as equitable tolling – in fact is a form of legal tolling, i.e., a toll provided for by statute that properly could be applied here.  This, the theory goes, is because the rule arises from, or is a logical corollary to, FED. R. CIV. P. 23, which governs class actions.  But while the Supreme Court had Rule 23's goals in mind when it decided *American Pipe*, the rule makes no mention whatsoever of the tolling principle announced in that case.  Furthermore, even if Rule 23 did include or imply such a tolling rule, the Federal Rules of Civil Procedure may "not abridge, enlarge or modify any substantive right."[25]

The claims sued upon here are created and defined by the words of Sections 11 and 15 of the Securities Act.  Section 13 of that act states quite clearly that "[i]n no event" shall such claims be asserted "more than three years after" the pertinent offerings.  That language is absolute.  If Congress had intended that the three-year statute of repose apply differently to securities class actions – which are not uncommon occurrences – it certainly could have provided so.  It still may.

---

[23] 501 U.S. 350, 363 (1991).

[24] *E.g.*, *Joseph v. Wiles*, 223 F.3d 1155, 1166-67 (10th Cir. 2000); *Stone Container Corp. v. United States*, 223 F.3d 1345, 1354 (Fed. Cir. 2000); *Maine State Retirement Sys. v. Countrywide Financial Corp.*, 722 F.Supp.2d 1157, 1166 (C.D. Cal. 2010); *Arivella v. Lucent Techs., Inc.*, 623 F. Supp.2d 164, 176 (D. Mass. 2009); *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 352 F. Supp.2d 429, 455 n. 19 (S.D.N.Y. 2005); *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 31 (S.D.N.Y. 2002).

[25] 28 U.S.C. § 2072(b).  *See also Footbridge*, 2011 WL 907121 at *6.

9

In the absence of further legislation, this Court must apply the statute as written.

This ruling is in tension with the policies animating the *American Pipe* decision. That decision, however, spoke only of tolling statutes of limitations – something courts may do in appropriate circumstances. When it comes to statutes of repose, however, the relevant policies are those of Congress rather than any that courts might think preferable.

### B. Absent Tolling, These Claims are Untimely

IPERS contends that its claims would be timely even if *American Pipe* tolling does not apply. Its claims, it argues, "'relate back' to the filling of the Initial Complaint on July 23, 2008."[26] The argument is without merit.

FED. R. CIV. P. 15(c) enumerates certain circumstances in which amendments to pleadings are treated, for statute of limitations purposes, as if made on the date the original pleading was filed. As noted earlier, though, the Rules Enabling Act prohibits federal rules from enlarging substantive rights. In consequence, as a number of courts have stated, the Rule 15(c) relation back doctrine does not apply to statutes of repose.[27] Furthermore, this Court has serious doubts as to whether the doctrine ever applies to cases such as this one. If it did, the *American Pipe* rule would

---

[26] DI 139, at 8 n.8.

[27] *See Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1165 (9th Cir. 2002); *Nulman v. Money Warehouse Inc.*, No. 09-1503, 2011 WL 830288, at *2 (E.D. Pa. Mar. 10, 2011); *Baldain v. Am. Home Mortg. Servicing, Inc.*, No. Civ. S-09-0931 LKK/GGH, 2010 WL 2606666, at *6 n.6 (E.D. Cal. June 28, 2010); *Harris v. OSI Fin. Services, Inc.*, 595 F. Supp.2d 885, 897 (N.D. Ill. 2009); *In re Community Bank of Northern Virginia*, 467 F. Supp.2d 466, 480-82 (W.D. Pa. 2006); *ING Principal Protection Funds Derivative Litigation*, 369 F. Supp.2d 163, 170-71 (D. Mass. 2005). *But see Chumney v. U.S. Repeating Arms Co., Inc.*, 196 F.R.D. 419, 425-28 (M.D. Ala. 2000); *In re Boesky Securities Litigation*, 882 F. Supp. 1371, 1380-82 (S.D.N.Y. 1995).

be superfluous.  In other words, "[i]f in *American Pipe* the Court had believed that relation back controlled, it would not have gone into its long discussion of Rule 23."[28]

II.     *The Claims That Movants Seek to Assert Against the Other Defendants*

Only the Individual Defendants have opposed these motions to intervene.  As discussed above, all of the claims that movants seek to assert against them – Section 11 and 15 claims[29] – are barred by the three-year statute of repose requiring that such claims be asserted within three years of the pertinent offerings.  The motions to intervene therefore must be denied with respect to all claims that movants seek to assert against the Individual Defendants.

The Court's discussion respecting statutes of repose resolves also the timeliness of most of the claims that movants seek to assert against other defendants.  Naturally, the Section 11 claims that movants seek to assert against other defendants are untimely for the same reasons that those claims are untimely as against the Individual Defendants.

Certain Section 12(a)(2) claims that movants seek to assert[30] are time-barred as well. Section 12(a)(2) claims are governed by a slightly different statute of repose: they must be brought within three years of the date of *sale*.[31]  Both movants seek to assert Section 12(a)(2) claims in

---

[28] *Monarch Asphalt Sales Co., Inc. v. Wilshire Oil Co. of Texas*, 511 F.2d 1073, 1079 (10th Cir. 1975).

[29] *See Lehman MBS II*, 684 F. Supp.2d at 495-96.

[30] The complaint asserts claims under Section 12(a)(2) against the issuing trusts and rating agency defendants.  *See* Cpt. ¶¶ 296-303.  All claims against the rating agency defendants, however, were dismissed in *Lehman MBS I*.

[31] 15 U.S.C. §77m.

connection with sales allegedly completed more than three years before they moved to intervene.[32] In light of the Court's conclusion that statutes of repose are not tolled by *American Pipe*, these claims are untimely.

However, movants seek to assert also certain Section 12(a)(2) claims that are not barred by the three-year statute of repose. PERSM purchased FFMLT 2006-FFB Certificates on and after September 14, 2007[33] – less than three years before it moved to intervene. IPERS purchased SASC 2007-BC1 Certificates on October 26, 2007, and SARM 2006-4 Certificates on July 10, 2008[34] – less than three years before it moved to intervene. None of the defendants against whom movants seek to assert these claims has opposed the motions to intervene. Intervention to assert these claims is permissive under FED. R. CIV. P. 24(b)(1)(B).

*Conclusion*

Movants' motions to intervene [09 MD 2017, docket items 241, 323; 08 Civ. 6762, docket items 115, 138] are granted with respect to (1) PERSM's Section 12(a)(2) claims relating to its purchase of FFMLT 2006-FFB Certificates and (2) IPERS's Section 12(a)(2) claims relating to

---

[32] PERSM purchased LXS 2005-8 Certificates on March 9, 2006, and it purchased LXS 2006-16N Certificates on October 10, 2006. *See* DI 117, Ex. A. These sales occurred more than three years before it moved to intervene on March 18, 2010. IPERS purchased SASC 2007-EQ1 Certificates on April 20, 2007, SASC 2007-OSI Certificates on May 30, 2007, and SARM 2007-6 Certificates on July 3, 2007. *See* DI 140, Ex. A, Sched. A. These sales occurred more than three years before it moved to intervene on August 11, 2010.

[33] DI 117, Ex. A.

[34] DI 140, Ex. A, Sched. A.

12

its purchase of SASC 2007-BC1 and SARM 2006-4 Certificates. The motions are denied in all other respects.

SO ORDERED.

Dated:  April 13, 2011

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)