**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
                          :

In re:                         :      09 MD 2017 (LAK)
                          :

LEHMAN BROTHERS SECURITIES AND  :
ERISA LITIGATION            :      **STIPULATION OF SETTLEMENT**
                          :

This Document Applies to:        :
                          :

*In re Lehman Brothers Mortgage-Backed*  :
*Securities Litigation, No 08-CV-6762.*  :
                          :
-----------------------------------------------------------X

       Subject to the approval of the Court, this Stipulation of Settlement (the "Stipulation" or

the "Settlement") is entered in the above-captioned consolidated class action (the "Action")

between and among Lead Plaintiff Locals 302 and 612 of the International Union of Operating

Engineers – Employers Construction Industry Retirement Trust (the "Operating Engineers" or

"Lead Plaintiff") and Additional Named Plaintiffs New Jersey Carpenters Health Fund (the

"New Jersey Carpenters") and Boilermakers-Blacksmith National Pension Trust (the

"Boilermakers", with Operating Engineers and New Jersey Carpenters, collectively referred to as

"Plaintiffs") on behalf of themselves and the Settlement Class (as hereinafter defined), in the

action captioned *In re Lehman Brothers Mortgage-Backed Securities Litigation,* No. 08-CV-

6762 (LAK) (the "*MBS Class Action*") and proposed intervenors Iowa Public Employees'

Retirement System ("IPERS") and Public Employees' Retirement System of Mississippi

("MissPERS" and, with IPERS, the "Intervenors") and defendants Mark L. Zusy ("Zusy"), Samir

Tabet ("Tabet"), James J. Sullivan ("Sullivan"), Lana Franks Harber ("Harber"), Edward Grieb

("Grieb"), Kristine Smith ("Smith") and Richard McKinney ("McKinney") (collectively, the

"Defendants" and, with Plaintiffs and the Intervenors, the "Settling Parties").  The Settlement is

intended to fully, finally and forever resolve, discharge and settle the Settled Claims (defined below) on the terms set forth herein.

WHEREAS:

A.     All terms with initial capitalization shall have the meanings ascribed to them in paragraph 1 below.

B.     On July 23, 2008, plaintiff New Jersey Carpenters filed a complaint against Structured Asset Securities Corporation ("SASCO"), the Depositor of the Lehman MBS Offerings, and certain other defendants in the Supreme Court for the State of New York, New York County, Index No. 2008-602158 (the "*State Court Action*"), asserting claims under §§ 11, 12 and 15 of the Securities Act of 1933 (the "Securities Act").   On July 29, 2008, Defendants removed the *State Court Action* to the United States District Court for the Southern District of New York, Case No. 08-CV-06762-LAK (the "*MBS Class Action*").   On October 30, 2008, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), New Jersey Carpenters published a notice of its action to investors, which provided a deadline to seek lead plaintiff appointment by December 31, 2008.

C.     On December 31, 2008, Operating Engineers moved for appointment as lead plaintiff and for the appointment of Schoengold Sporn Laitman & Lometti, P.C. ("Schoengold Sporn") as lead counsel.  By Order dated January 9, 2009, the Court consolidated the *MBS Class Action* with *In re Lehman Brothers Securities Litigation*, Civ. No. 08-5523 (LAK)("*Lehman Debt/Equity Action*") and *In re Lehman Brothers ERISA Litigation*, Civ. No. 08-5598 (LAK) ("*Lehman ERISA Action*") under the caption *In re Lehman Brothers Securities and ERISA Litigation*, No. 09-md-2017 (LAK), and appointed Operating Engineers as Lead Plaintiff of the *MBS Class Action* and Schoengold Sporn as Lead Counsel.

D.      On February 23, 2009, Plaintiffs filed the Consolidated Class Action Securities Complaint ("Complaint") against Defendants, Moody's Corp., as a result of the activities of its division Moody's Investor Service, Inc. ("Moody's"), and The McGraw-Hill Companies, Inc., as a result of the activities of its Standard & Poor's division ("S&P" with Moody's collectively referred to herein as the "Ratings Agencies").  Plaintiffs did not name SASCO, Lehman Brothers Holding, Inc. ("LBHI") or Lehman Brothers, Inc. as defendants because on September 15, 2008, they filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code.

E.      On June 3, 2009, the Court granted Plaintiffs' motion to substitute Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Lead Counsel for Schoengold Sporn.

F.      On April 27, 2009, Defendants and the Ratings Agencies filed motions to dismiss the Amended Complaint.

G.      Following extensive briefing and argument, on February 1, 2010, the Court granted the Ratings Agencies' motions to dismiss with prejudice.  The Plaintiffs thereafter timely filed a notice of appeal on March 1, 2010 from the February 1, 2010 Order to the United States Court of Appeals for the Second Circuit.  On June 1, 2011, the Second Circuit affirmed the District Court's determination with respect to the claims against the Ratings Agencies asserted by Plaintiffs.

H.      On February 17, 2010, the Court denied in part and granted in part the Defendants' motion to dismiss, sustaining Plaintiffs' claims based on allegations regarding the systematic disregard of underwriting guidelines but dismissing certain claims for lack of standing because Plaintiffs had not purchased certificates in all ninety-four offerings identified in the Amended Complaint.  As a result, the motion to dismiss order sustained claims as to nine

Offerings, LXS 2005-5N, LXS 2005-7N, LXS 2005-6, LXS 2006-2N, LXS 2006-14N, LXS 2006-GP2, GMFT 2006-AR4, GMFT 2006-AR5 and SARM 2006-1 (the "Plaintiff Offerings").

I.        On March 18, 2010, MissPERS filed a motion to intervene as a representative plaintiff in the *MBS Class Action* to pursue claims on behalf of investors who purchased securities in the LXS 2005-8, LXS 2006-16N and FFMLT 2006-FFB Offerings (the "MissPERS Offerings"). On August 11, 2010, IPERS, filed a motion jointly with Plaintiffs, to intervene as a representative plaintiff in the *Lehman MBS Action* to pursue claims on behalf of investors who purchased securities in the SARM 2006-4, SARM 2007-6, SASCO 2007-BC1, SASCO 2007-EQ1 and SASCO 2007-OSI (the "IPERS Offerings," together with the MissPERS Offerings, the "Intervenor Offerings").

J.        On March 19, 2010, Defendants filed their Answer to the Amended Complaint.

K.        On April 13, 2011, the Court substantially denied the Intevenors' motions to intervene in the *MBS Class Action*.  Although the Court granted the motions with respect to MissPERS' Section 12(a)(2) claims relating to its purchase of FFMLT 2006-FFB Certificates and IPERS' Section 12(a)(2) claims relating to its purchase of SASC 2007-BC1 and SARM 2006-4 Certificates, it denied the motions in all other respects.  Plaintiffs and the Intervenors thereafter timely filed a notice of appeal from the April 13, 2011 intervention order to the United States Court of Appeals for the Second Circuit.  That appeal is currently pending.

L.        In a letter endorsement dated March 31, 2010, Judge Kaplan opted not to lift the PSLRA discovery stay in the *MBS Class Action* until resolution of the motions to dismiss in the *Lehman Debt/Equity Action*.  On July 27, 2011, the Court resolved the motion to dismiss the *Lehman Debt/Equity Action*, thereby lifting the stay of the *MBS Class Action*.  On September 27, 2011, the parties in the *MBS Class Action* filed a proposed Joint Scheduling Order and proposed

Confidentiality Order.   As a result, the *MBS Class Action* entered the discovery phase of litigation.

M.      Defendants expressly deny any and all allegations of wrongdoing, fault, liability or damages whatsoever, deny that they committed any violation of law and believe that the Action has no merit. This Stipulation shall in no way be construed or deemed to be evidence of, or an admission or concession on the part of any of the Defendants with respect to, any claim of fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that Defendants have, or could have, asserted.   This Stipulation shall not be construed or deemed to be a concession by Plaintiffs of any infirmity in the claims asserted in the Action and Plaintiffs believe their claims have merit and that they would prevail if the action were to go to trial.

N.      Lead Counsel has conducted an extensive analysis relating to the claims and the underlying events and transactions alleged in the Complaint. Lead Counsel has analyzed a substantial number of documents including relevant SEC filings, news reports, relevant Bankruptcy Court filings, and documents from government investigations, and has researched the applicable law with respect to the claims of Plaintiffs and the Settlement Class against Defendants, as well as the potential defenses thereto.

O.      Lead Counsel has also conducted an extensive legal and factual analysis of Defendants' applicable Directors and Officers Liability insurance coverage (the "D&O Insurance").

P.      Lead Counsel, Counsel for MissPERS, Defendants' counsel, counsel for the Insurers who issued the D&O Insurance, and counsel for the Lehman bankruptcy estate participated in an extensive mediation overseen by retired state court Judge Daniel Weinstein.

The mediation was conducted over the course of eleven months and included numerous in-person sessions, and telephonic and electronic communications ancillary thereto.

Q. Based upon its investigations and the mediation, Lead Counsel and Counsel for MissPERS have concluded that the terms and conditions of this Settlement are fair, reasonable and adequate to Plaintiffs, Intervenors and the Settlement Class, and in their best interests, and have agreed to settle the claims raised in the Action pursuant to the terms and provisions of this Stipulation, after considering (i) the substantial benefits that Plaintiffs and the members of the Settlement Class will receive from resolution of the Action as against the Defendants, (ii) the attendant risks and costs of discovery and litigation, (iii) the absence of any solvent corporate defendant in the Action and limited available funds for recovery, (iv) the difficulties confronting Plaintiffs and Intervenors in discovery given the Chapter 11 filings of SASCO and LBHI, and (iii) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.

R. The Settling Parties agree that certification of a class, for settlement purposes only, is appropriate in the *MBS Class Action*. For purposes of this Settlement only, the Settlement Class comprises all members of the Settlement Class, as defined in paragraph 1(rr) below. Nothing in this Stipulation shall serve in any fashion, either directly or indirectly, as evidence or support for certification of a class other than for settlement purposes, and the Settling Parties intend that the provisions herein concerning certification of the Settlement Class shall have no effect whatsoever in the event the Settlement does not become Final.

NOW THEREFORE, without any admission or concession on the part of Plaintiffs and Intervenors of any lack of merit of the Action whatsoever, and without any admission or concession of any liability or wrongdoing or lack of merit in the defenses whatsoever by

6

Defendants, it is hereby STIPULATED AND AGREED, by and among Plaintiffs, Intervenors and Defendants, through their respective attorneys, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the parties hereto from the Settlement, that all Settled Claims as against the Released Parties and all Released Parties' Claims shall be fully, finally and forever compromised, settled, released, discharged and dismissed with prejudice, upon and subject to the following terms and conditions:

## **DEFINITIONS**

l.       As used in this Stipulation, the following terms shall have the meanings specified below.

(a)       "Authorized Claimant" means a Class Member who submits a timely and valid Proof of Claim Form to the Claims Administrator (in accordance with the requirements established by the Court) that is approved for payment from the Net Settlement Fund.

(b)       "Bankruptcy Case" means the proceeding captioned *In re Lehman Brothers Holdings, Inc., et al,* Chapter 11 Case No. 08-13555.

(c)       "Bankruptcy Order" means the directive of the Court, pursuant to the motion filed by LBHI on or before November 9, 2011, (i) authorizing relief from the automatic stay to the extent applicable and approving, solely to the extent necessary, the use of the proceeds of the applicable D&O Policies and (ii) authorizing the LBHI Payment (s*ee infra,* ¶1(ss)) to fund the Settlement Amount.

(d)       "Claim" means a completed and signed Proof of Claim Form submitted to the Claims Administrator in accordance with the instructions on the Proof of Claim Form.

(e)       "Claim Form" or "Proof of Claim Form" means the Proof of Claim Form and Release (substantially in the form attached hereto as Exhibit A-2 to Exhibit A) that a Claimant

or Class Member must complete if that Claimant or Class Member seeks to be eligible to share in a distribution of the Net Settlement Fund.

(f)      "Claimant" means a person or entity that submits a Claim Form to the Claims Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

(g)      "Claims Administrator" means Rust Consulting, Inc. or other claims administrator selected by Lead Counsel and approved by the Court.

(h)      "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

(i)      "Class Member" or "Settlement Class Member" means a person or entity that is a member of the Settlement Class and that does not exclude himself, herself or itself by timely filing a request for exclusion in accordance with the requirements set forth in the Notice.

(j)      "Class Representatives" means Locals 302 and 612 of the International Union of Operating Engineers – Employers Construction Industry Retirement Trust; New Jersey Carpenters Fund; Boilermakers-Blacksmith National Pension Trust; Public Employees' Retirement System of Mississippi and Iowa Public Employees' Retirement System.

(k)      "Complaint" means the Consolidated Class Action Securities Complaint filed by Lead Plaintiffs in the Action on February 23, 2009.

(l)      "Court" means the United States District Court for the Southern District of New York.

(m)      "Debtors" means Lehman Brothers Holdings Inc. ("LBHI"); Lehman Brothers Special Financing Inc. ("LBSF"); Lehman Commercial Paper Inc. ("LCPI"); Lehman Brothers Commercial Corporation; Lehman Brothers Financial Products Inc.; Lehman Brothers OTC

Derivatives Inc; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IXLLC; East Dover Limited; Luxeboug Residential Properties Loan Finance S.a.r.; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC: LB 2000 Kalakaua Owners LLC; Merit LLC; LB Sommerset LLC; LB Preferred Somerset LLC; LB 745 LLC; and PAMI Statler Arms LLC.

(n)     "Defendants" means Mark L. Zusy; Samir Tabet; James J. Sullivan; Lana Franks Harber; Edward Grieb; Kristine Smith; and Richard McKinney.

(o)     "Defendants' Counsel" means the law firm of Wollmuth Maher & Deutsch LLP.

(p)     "Dismissal Order(s)" means the notices of voluntary dismissal to be entered in the following appellate proceedings upon the occurrence of all other conditions necessary to the Effective Date having occurred: *Iowa Public Employees' Retirements System v. Franks,* Civ. No. 11-1982.

(q)     "Effective Date" means the date on which all of the following shall have occurred: (i) Defendants no longer have any right under paragraph 32 below to terminate this Settlement, or if Defendants do have such right, they have given written notice to Lead Counsel that they will not exercise such right; (ii) the Court has entered the Notice Order; (iii) the Court has approved the Settlement, following notice to the Settlement Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; (iv) the Court has entered the Judgment, substantially in the form annexed hereto as Exhibit B, or the Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment") and neither Plaintiffs or Intervenors nor any Defendant elects to terminate this Settlement; (v) the Judgment

or Alternative Judgment has become Final (as defined in paragraph 1(u) below); and (vi) the Dismissal Order has been granted by the Second Circuit Court of Appeals.

(r)     "Escrow Account" means an interest-bearing escrow account maintained at the Escrow Agent, which account shall be under the exclusive control of Lead Counsel.

(s)     "Escrow Agent" means a financial institution designated by Lead Counsel.

(t)     "Escrow Agreement" means the agreement between Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

(u)     "Final" means, with respect to any order of court, including, without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise.  Without limitation, an order becomes "Final" when (i) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (ii) an appeal has been filed and either (a) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (b) the order has been affirmed in all material respects and the prescribed time, if any, for commencing any further appeal has expired. For purposes of this paragraph, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind. Any appeal or other proceeding pertaining solely to an order solely adopting or approving a Plan of Allocation or solely to any order issued with respect to an application for attorneys' fees and expenses pursuant to paragraphs 17-19 below, shall not in any way delay or preclude the Judgment from becoming Final.

(v)     "Final Approval Hearing" means the hearing set by the Court under Rule 23(e) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

(w)      "Intervenors" shall mean IPERS and MissPERS.

(x)      "Intervenors' Counsel" shall include Cohen Milstein and Wolf Popper LLP as attorneys for MissPERS.

(y)      "Judgment" means an order of judgment and dismissal approving the Settlement to be rendered by the Court substantially in the form attached hereto as Exhibit B.

(z)      "Lead Counsel" means the law firm of Cohen Milstein Sellers & Toll, PLLC.

(aa)      "Lead Plaintiff" means Locals 302 and 612 of the International Union of Operating Engineers – Employers Construction Industry Retirement Trust.

(bb)      "Lehman Entity" or "Lehman Entities" means any one or more of SASCO, Lehman Brothers Holding and Lehman Brothers, Inc.

(cc)      "Litigation Expenses" means the reasonable costs and expenses incurred by Plaintiffs' Counsel in connection with commencing and prosecuting the Action, for which Lead Counsel intends to apply to the Court for reimbursement from the Settlement Fund. Litigation Expenses may also include reimbursement of the expenses of Plaintiffs in accordance with 15 U.S.C. § 77aa.

(dd)      "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; (iv) any attorneys' fees awarded by the Court; and (v) other costs, expenses, or amounts as may be approved by the Court.

(ee)      "Notice" means the Notice of Pendency of Class Action and Proposed Settlement, Final Approval Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (substantially in the form attached hereto as Exhibit A-1 to Exhibit A), which is to be sent to members of the Settlement Class.

(ff)     "Notice and Administration Costs" means the costs, fees and expenses that are incurred by the Claims Administrator in connection with (i) providing notice to the Settlement Class; and (ii) administering the Claims process.

(gg)     "Offerings" means the following 17 offerings of mortgage pass-through certificates: the LXS 2005-5N offering, LXS 2005-7N offering, LXS 2005-6 offering, LXS 2005-8 offering, LXS 2006-2N offering, LXS 2006-14N offering, LXS 2006-16N offering, LXS 2006-GP2 offering, GMFT 2006-AR4 offering, GMFT 2006-AR5 offering, SARM 2006-1 offering, SARM 2006-4 offering, SARM 2007-6 offering, SASCO 2007-BC1 offering, SASCO 2007-EQ1 offering, SASCO 2007-OSI offering and FFMLT 2006-FFB offering.

(hh)     "Plaintiffs" means the Operating Engineers, New Jersey Carpenters and Boilermakers.

(ii)     "Plaintiffs' Counsel" means Lead Counsel and other counsel who represent Plaintiffs in this Settlement.

(jj)     "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund set forth in the Notice, or such other plan of allocation as the Court shall approve.

(kk)     "Notice Order" means the order (substantially in the form attached hereto as Exhibit A) to be entered by the Court certifying the Settlement Class and directing the form and manner of the Notice be provided to the Settlement Class.

(ll)     "Publication Notice" or "Summary Notice" means the Summary Notice, substantially in the form attached hereto as Exhibit A-3 to Exhibit A, to be published as set forth in the Notice Order.

(mm)     "Related Parties" means the Defendants' respective past or present heirs, executors, estates, administrators, predecessors, successors, assigns, attorneys, parents,

subsidiaries, affiliates, insurers and reinsurers, employers, employees, members, directors, managing directors and officers, and includes the Debtors.

(nn)    "Released Parties" means Defendants, the Debtors and any Lehman Entity, the Released Parties and the Insurers.

(oo)    "Released Parties' Claims" means any and all claims, rights, remedies, demands, liabilities, or causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, punitive damages, compensation, restitution, rescission, interest, attorneys' fees/costs, expert or consulting fees, and any other costs, expenses, losses or liabilities of any kind or nature whatsoever), whether legal, statutory or equitable in nature to the fullest extent that the law permits their release in this action, by or on behalf of Plaintiffs, Intervenors or any other Class Members against any of the Released Parties that have been alleged or could have been alleged directly or indirectly in the Complaint or in any preceding complaints by any of the Class Members (or in any forum or proceeding or otherwise), whether based on federal, state, local, statutory, or common law or any other law, rule, or regulation, whether known claims or unknown claims, whether class, representative, or individual in nature, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, whether at law or in equity, matured or unmatured, that (i) are based upon or arise from any of the allegations, transactions, facts, matters, events, disclosures, statements, occurrences, circumstances, representations, conduct, acts, or omissions or failures to act that have been alleged or asserted in the Complaint or in any preceding complaints (or in any forum or proceeding or otherwise), and (ii) are based upon the purchase or acquisition of the Certificates. Notwithstanding the foregoing, the Class will not release any claims relating to the enforcement of the settlement. Plaintiffs and Intervenors further agree, that any proofs of claims that they have filed in the Bankruptcy Case

that come within the scope of the foregoing release, including without limitation proofs of claim nos. 22023, 27760 and 22024 (collectively, all such proofs of claim the "Proofs of Claim") shall, upon the Effective Date, be disallowed with prejudice, and, within ten business days of the Effective Date, Plaintiffs and Intervenors shall file a notice on the docket in the Bankruptcy Case withdrawing the Proofs of Claim.

(pp)    "Settled Claims" means, to the fullest extent permitted by law or equity, any and all claims and causes of action of every nature and description, whether known or Unknown, whether arising under federal, state, common or foreign law, or any other law, rule, or regulation, that were asserted or could have been asserted that arise out of the same transactions or occurrences as the claims that were asserted, in the Action.

(qq)    "Settlement" means this Stipulation of Settlement and the settlement contained herein.

(rr)    "Settlement Class" or "Class" means

All persons or entities who purchased or otherwise acquired mortgage pass-through certificates pursuant or traceable to Structured Asset Securities Corporation's August 16, 2005 Registration Statement or May 10, 2006 Registration Statement, and the accompanying prospectuses and prospectus supplements in the following 17 offerings and who were damaged thereby: the LXS 2005-5N offering, LXS 2005-7N offering, LXS 2005-6 offering,  LXS 2005-8 offering, LXS 2006-2N offering, LXS 2006-14N offering, LXS 2006-16N offering, LXS 2006-GP2 offering, GMFT 2006-AR4 offering, GMFT 2006-AR5 offering, SARM 2006-1 offering, SARM 2006-4 offering, SARM 2007-6 Offering, SASCO 2007-BC1 offering, SASCO 2007-EQ1 offering, SASCO 2007-OSI offering and FFMLT 2006-FFB offering (collectively, the "Certificates") Excluded from the Class are Lehman Brothers Holdings, Inc. ("LBHI"), Lehman Brothers, Inc. ("LBI"), Structured Asset Securities Corporation ("SASCO"), Defendants and their respective officers, affiliates and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns.  Also excluded from the Class are any persons or entities who exclude themselves by filing a valid request for exclusion in accordance with the requirements set forth in the Notice.

(ss)     "Settlement Fund" means the sum of forty million dollars ($40,000,000.00) in cash, which (i) thirty-one million seven hundred thousand dollars ($31,700,000.00) shall be paid by certain insurers ("Insurers") that issued directors and officers insurance policies to LBHI, for the 2007-2008 and 2008-2009 policy periods (the "D&O Policies") and (ii) eight million three hundred thousand dollars ($8,300,000.00) shall be paid by LBHI (the "LBHI Payment").  Defendants, their Insurers or LBHI shall cause the Settlement Amount to be deposited into an interest-bearing Escrow Account on the later of (i) ten (10) business days following entry of the Bankruptcy Order or (ii) execution of this Stipulation.

(tt)     "Settling Parties" means Defendants, the Plaintiffs and Intervenors on behalf of themselves and the Class Members, and the other Class Representatives.

(uu)     "Stipulation" means this Stipulation of Settlement.

(vv)     "Taxes" means: (i) all federal, state and/or local taxes of any kind on any income earned by the Settlement Fund; and (ii) the reasonable expenses and costs incurred by Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, reasonable expenses of tax attorneys and accountants).

## STIPULATION OF CLASS CERTIFICATION

2.     The parties hereto stipulate to: (i) the certification, for settlement purposes only, of a Settlement Class (as defined above), pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (ii) the appointment of Lead Plaintiffs, Plaintiffs and Intervenors as the class representatives; and (iii) the appointment of Lead Counsel as class counsel.  The certification of the Settlement Class shall be binding only with respect to the Settlement of the

Action and only if the Judgment contemplated by this Stipulation becomes Final and the Effective Date occurs.

## **RELEASE OF CLAIMS**

3.      The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action as against Defendants, and shall *fully* and finally release any and all Settled Claims as against all Released Parties and shall also release as against Plaintiffs, and their respective attorneys, and all other Class Members any and all Released Parties' Claims.

4.      Pursuant to the Judgment, upon the Effective Date, Plaintiffs, Intervenors and each of the Class Members, on behalf of themselves and any of their personal representatives, spouses, domestic partners, trustees, heirs, executors, administrators, successors or assigns shall be deemed by operation of law to have *fully,* finally and forever released, relinquished, waived, discharged and dismissed any and all claims, rights, remedies, demands, liabilities, or causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, punitive damages, compensation, restitution, rescission, interest, attorneys' fees/costs, expert or consulting fees, and any other costs, expenses, losses or liabilities of any kind or nature whatsoever), whether legal, statutory or equitable in nature to the fullest extent that the law permits their release in this action, by or on behalf of Plaintiffs, Intervenors or any other Class Members against any of the Released Parties that have been alleged or could have been alleged directly or indirectly in the Complaint or in any preceding complaints by any of the Class Members (or in any forum or proceeding or otherwise), whether based on federal, state, local, statutory, or common law or any other law, rule, or regulation, whether known claims or unknown claims, whether class, representative, or individual in nature, whether fixed or

contingent, accrued or unaccrued, liquidated or unliquidated, whether at law or in equity, matured or unmatured, that (i) are based upon or arise from any of the allegations, transactions, facts, matters, events, disclosures, statements, occurrences, circumstances, representations, conduct, acts, or omissions or failures to act that have been alleged or asserted in the Complaint or in any preceding complaints (or in any forum or proceeding or otherwise), and (ii) are based upon the purchase or acquisition of the Certificates. Notwithstanding the foregoing, the Class will not release any claims relating to the enforcement of the settlement. Plaintiffs and Intervenors further agree, that any proofs of claims that they have filed in the Bankruptcy Case that come within the-scope of the foregoing release, including without limitation proofs of claim nos. 22023, 27760 and 22024 (collectively, all such proofs of claim the "Proofs of Claim") shall, upon the Effective Date, be disallowed with prejudice, and, within ten business days of the Effective Date, Plaintiffs and Intervenors shall file a notice on the docket in the Bankruptcy Case withdrawing the Proofs of Claim.

5.      Pursuant to the Judgment, upon the Effective Date, Defendants will release as against Plaintiffs and Intervenors, and their respective attorneys, and any other Class member, all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or related in any way to the institution, prosecution, or settlement of the claims against the Defendants, except for claims relating to the enforcement of the settlement.

6.      In connection with the Settlement of the claims in this Action, Plaintiffs, Intervenors and all Class Members release any claim they made or may have in the Lehman or SASCO Bankruptcy Proceedings related to any of the Offerings, but not as to any other claims they may have unrelated to the Offerings.

## THE SETTLEMENT CONSIDERATION

7.      In consideration of the Settlement of the Settled Claims against Defendants and the other Released Parties, Defendants, their Insurers and LBHI shall cause to be paid the total sum of $40,000,000.00 to be deposited into the Escrow Account the later of (i) ten (10) business days after entry of the Bankruptcy Order or (ii) execution of this Stipulation. Notwithstanding anything to the contrary in this Stipulation, no Defendant shall have any obligation to make any payment into the Escrow Account. The interest earned on the Settlement Fund shall be for the benefit of the Settlement Class if the Settlement becomes Final. If the Settlement does not become Final and the Settlement is terminated, the interest earned on the Settlement Fund shall be for the benefit of Defendants or their Insurers and ¶33 below shall govern.  If the $40,000,000.00 is not deposited into the Escrow Account by the later of (i) ten (10) business days after entry of the Bankruptcy Order or (ii) execution of the Stipulation, Plaintiffs reserve the right to either: (i) move to enforce the Settlement, including seeking interest on any unpaid amount; or (ii) terminate the Settlement, in which case ¶33 below shall govern.

## USE OF SETTLEMENT FUND

8.      The Settlement Fund shall be used to pay any: (i) Taxes; (ii) Notice and Administration Costs pursuant to paragraph 15 below and as otherwise approved by the Court; (iii) attorneys' fees awarded by the Court; (iv) Litigation Expenses awarded by the Court; and (v) other costs, expenses, or amounts as may be approved by the Court. No portion of the LBHI Payment may be paid or expended for any purpose prior to the Effective Date.  The balance remaining in the Settlement Fund shall be distributed to Authorized Claimants as provided below.

9.      The Net Settlement Fund shall be distributed to Authorized Claimants as provided herein.  Defendants shall have no responsibility or liability for the maintenance or distribution of the Net Settlement Fund pursuant to this Settlement.  Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date.  All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court.  The Escrow Agent shall invest any funds in excess of U.S. $250,000 in United States Treasury Bills having maturities of 180 days or less, United States Agency or Securities or other instruments backed by the Full Faith & Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof, or an account fully insured by the United States Government Federal Deposit Insurance Corporation (FDIC).  Any funds held in escrow in an amount of less than U.S. $250,000 may be held in an interest-bearing account insured by the FDIC or money market mutual funds comprised of investments secured by the full faith and credit of the United States Government or fully insured by the United States Government.  All risks related to the investment of the Settlement Fund shall be borne by the Settlement Fund.

10.      The parties hereto agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.46813-1 and that Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.46813-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.46813-2(k) for the Settlement Fund. Such returns shall be consistent

with this paragraph and in all events shall reflect that all taxes on the income earned on the Settlement Fund shall be paid out of the Settlement Fund as provided by paragraph 11 below. Lead Counsel shall also be solely responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund.  Upon written request, Defendants will provide promptly to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e). Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation §1.46813-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.46813-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

11.     All Taxes shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without prior Order of the Court.  Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes (including any interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. The Settlement Fund shall indemnify and hold all Released Parties harmless for any Taxes and related expenses of any kind whatsoever (including without limitation, taxes payable by reason of any such indemnification).  Defendants shall notify the Escrow Agent promptly if Defendants receive any notice of any claim for Taxes relating to the Settlement Fund.

12.     This is not a claims-made settlement; there will be no reversion.  Upon the occurrence of the Effective Date, Defendants shall not have any right to the return of the

Settlement Fund or any portion thereof irrespective of the number of Claims filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund. If any portion of the Net Settlement Fund remains following distribution pursuant to ¶9 above and is of such an amount that in the discretion of Lead Counsel it is not cost effective or efficient to redistribute the amount to the Settlement Class, then such remaining funds, after payment of any further Notice and Administration Costs and Taxes, shall be donated to a non-profit charitable organization selected by Lead Plaintiffs and approved by the Court.

13.     The Claims Administrator shall discharge its duties under Lead Counsel's supervision and subject to the jurisdiction of the Court.  Except as otherwise expressly provided herein, the Released Parties shall have no responsibility whatsoever for the administration of the Settlement, and shall have no liability whatsoever to any person, including, but not limited to, the Class Members, in connection with any such administration.

14.     Lead Counsel shall cause the Claims Administrator to mail the Notice and Proof of Claim to those members of the Settlement Class who may be identified through reasonable effort, including through the cooperation (where possible) of Defendants, their Insurers, LBHI and/or their agents.  Lead Counsel will cause to be published the Summary Notice pursuant to the terms of the Notice Order or whatever other form or manner might be ordered by the Court. For the purpose of identifying and providing notice to the Settlement Class, within ten (10) business days of the date of entry of the Notice Order, the Defendants shall provide or cause to be provided to the Claims Administrator (at no cost to the Settlement Fund, Lead Counsel or the Claims Administrator) any lists it or its agent(s) has that identify potential Class Members

(including names and addresses), in electronic form.  To the extent such lists have already been produced to Lead Plaintiffs, they need not be provided again.

15.    Lead Counsel may pay from the Escrow Account, without further approval from Defendants or further order of the Court, all reasonable Notice and Administration Costs in an amount not to exceed $500,000.  If any greater amount is required, Lead Counsel may apply to the Court for leave to pay such additional amount. Such costs and expenses shall include, without limitation, the actual costs of publication, printing and mailing the Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses actually incurred and fees reasonably charged by the Claims Administrator in connection with searching for Class Members and providing Notice and processing the submitted claims, and the reasonable fees, if any, of the Escrow Agent. In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs properly paid or incurred, including any related fees, shall not be returned or repaid to Defendants or the Insurers, but the full amount of the LBHI Payment shall be repaid to LBHI.

16.    Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund.  The Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the maintenance, investment or distribution of the Settlement Fund, the establishment or maintenance of the Escrow Account, the establishment or administration of the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes, the distribution of the Net Settlement Fund, the administration of the Settlement, or any losses incurred in connection with such matters. Defendants take no position with respect to the provisions of this Stipulation

governing those issues. The Released Parties shall have no further or other liability or obligations to Plaintiffs, Lead Counsel or any member of the Settlement Class with respect to the Settled Claims, except as expressly stated in this Stipulation.

### ATTORNEYS' FEES AND LITIGATION EXPENSES

17.    Lead Counsel will apply to the Court for a collective award of attorneys' fees to Plaintiffs' and Intervenors' Counsel.    Lead Counsel also will apply to the Court for reimbursement of Litigation Expenses, which will include requests for reimbursements to Plaintiffs and Intervenors in accordance with 15 U.S.C. § 77a(4), Defendants shall not take any position with respect to Lead Counsel's applications or awards discussed in this paragraph.    Such matters are not the subject of any agreement between Defendants and Lead Plaintiffs other than what is set forth in this Stipulation.

18.    Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel, with the Court's approval, immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Counsel's and Intervenors' Counsel's contractual undertaking to repay all such amounts, and interest thereon at the rate earned by the funds in the Escrow Account, if the Settlement is terminated for any reason, or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees and/or Litigation Expenses is reduced or reversed.    Lead Counsel and Intervenors' Counsel shall make the appropriate refund or repayment of their respective share no later than ten (10) business days after receiving from Defendants' Counsel or from a court of appropriate jurisdiction notice of the termination of the Settlement or notice of any reduction of

the award of attorneys' fees and/or Litigation Expenses.  An award of attorneys' fees and/or Litigation Expenses is not a necessary term of this Stipulation and is not a condition of this Stipulation. Plaintiffs, Intervenors, Lead Counsel and Intervenors' Counsel may not cancel or terminate the Stipulation or the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses.

19.    Subject to any limits imposed by the Court and/or as a matter of law, Lead Counsel shall provide for the allocation of the Court-awarded attorneys' fees and Litigation Expenses amongst Plaintiffs' and MissPERs' Counsel in a manner which Lead Counsel, in good faith, believes reflects the results achieved and the contributions of such counsel to the prosecution and settlement of the Action.  To the extent MissPERs' Counsel believes that Lead Counsel's allocation is unreasonable, MissPERs may request that the Court resolve any disagreements that cannot be resolved informally.  Defendants and the other Released Parties shall have no responsibility for the allocation among Plaintiffs' and Intervenors' Counsel, and/or any other person or entity who may assert some claim thereto, of any award of attorneys' fees or Litigation Expenses that the Court may make in the *MBS Class Action*, and Defendants take no position with respect to such matters.

## CLAIMS ADMINISTRATOR

20.    The Claims Administrator shall administer the process of receiving, reviewing and approving or denying claims under Lead Counsel's supervision and subject to the jurisdiction of the Court. Other than Defendants' obligation to provide potential Class Member information, as provided herein, none of the Released Parties shall have any responsibility for the administration of the Settlement or the claims process. Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

21.     The Claims Administrator shall receive Claims and administer them according to the Plan of Allocation, as proposed by Plaintiffs and Intervenors and approved by the Court, or according to such other Plan of Allocation as the Court approves.   The proposed Plan of Allocation is set forth in the Notice attached hereto as Exhibit A-1 to Exhibit A.

22.     The allocation of the Net Settlement Fund among Authorized Claimants is a matter separate and apart from the proposed Settlement between Defendants and Plaintiffs and Intervenors, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement.  The Plan of Allocation proposed in the Notice is not a necessary term of this Stipulation, and it is not a condition of this Stipulation that any particular plan of allocation be approved by the Court.  Plaintiffs, Intervenors, Lead Counsel or Intervenors' Counsel may not cancel or terminate the Stipulation or the Settlement based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in this Action.  Neither Defendants nor any of the Released Parties shall have any responsibility or liability whatsoever for allocation of the Net Settlement Fund, nor shall Defendants object to the Plan of Allocation proposed by Plaintiffs.

23.     Any Class Member who does not timely submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund but will nevertheless be bound by all of the terms of the Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for herein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any of the Released Parties concerning any Settled Claim.

24.     All Claim Forms must be submitted by the date set by the Court in the Notice Order and specified in the Notice, unless such deadline is extended by Order of the Court.  Any

Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless, by Order of the Court, late-filed Claim Forms are accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment and the releases provided for herein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any of the Released Parties concerning any Settled Claim.  A Claim Form shall be deemed to be submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.

25.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, including, but not limited to, the releases provided for in the Judgment, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Class Member and the validity and amount of the Claimant's Claim.  No discovery shall be allowed on the merits of this Action or this Settlement in connection with the processing of Claim Forms.

26.     Lead Counsel will apply to the Court, with reasonable advance notice to Defendants, for a Class Distribution Order: (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (ii) approving payment of any outstanding administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (iii) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

27.     Payment pursuant to the Class Distribution Order shall be final and conclusive against any and all Class Members. All Class Members whose Claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in this Action and the releases provided for therein, and will be permanently barred and enjoined from bringing any action against any and all Released Parties concerning any and all of the Settled Claims.

28.     All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

## REQUESTS FOR EXCLUSION

29.     Putative Class Members requesting exclusion from the Settlement Class shall be requested to provide the following information to the Administrator:  (i) name, (ii) address, (iii) telephone number, (iv) number and type of mortgage pass-through certificates traceable to the Offerings purchased (or otherwise acquired) or sold, (v) prices or other consideration paid or received for such mortgage pass-through certificates, (vi) the date of each purchase or sale transaction, and (vii) a statement that the person or entity wishes to be excluded from the Settlement Class. Unless otherwise ordered by the Court, any Class Member who does not submit a timely written request for exclusion as provided by this section shall be bound by the Agreement.  The deadline for submitting requests for exclusion shall be 21 days prior to the Final Approval Hearing.

30.     The Claims Administrator shall scan and send electronically copies of all requests for exclusion in PDF format (or such other format as shall be agreed) to Defendants' Counsel and to Lead Counsel expeditiously (and not more than three (3) business days) after the Claims Administrator receives such a request.  As part of the motion papers in support of the settlement of the Action, Lead Counsel will cause to be provided a list of all the persons who have requested exclusion from the Settlement Class, and shall cause to be certified that all requests for exclusion received by the Claims Administrator have been copied and provided to Defendants' Counsel.

## TERMS OF THE JUDGMENT

31.     If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form annexed hereto as Exhibit B, including, among other things, the releases provided for therein.

## WAIVER OR TERMINATION

32.     Within thirty (30) days after the latest of:  (a) the Court's entry of an order expressly declining to enter the Notice Order in any material respect without reasonable leave to amend; (b) the Court's refusal to approve this Stipulation or any material part of it without reasonable leave to amend; (c) the Court's declining to enter the Judgment in any material respect; or (d) the date upon which the Judgment is modified or reversed in any material respect and represents a Final decision on the matter, Defendants' and Plaintiffs each shall have the right to terminate the Settlement and this Stipulation, by providing written notice to the other of an election to do so.  However, any decision with respect to an application for attorneys' fees or

Litigation Expenses, or with respect to any plan of allocation, shall not be considered material to the Settlement and shall not be grounds for termination.

33.     Except as otherwise provided herein, in the event the Settlement is terminated, the Settlement termination shall be without prejudice, and none of the terms shall be effective or enforceable and the facts of the Settlement shall not be admissible for any purpose, and the Settling Parties shall be deemed to have reverted to their respective status in this Action as of November 2, 2011, and, except as otherwise expressly provided, this Stipulation shall be null and void and shall have no further force or effect, the Settling Parties shall proceed in all respects as if this Stipulation and any related orders had not been entered, and any portion of the Settlement consideration previously paid or caused to be paid by Defendants, their Insurers or LBHI, including, but not limited to, any funds disbursed in payment of Litigation Expenses and attorneys' fees, together with any interest carried or appreciation thereon, less any Taxes paid or due with respect to such income, and less Notice and Administration Costs incurred and paid or payable, shall be returned to Defendants' Insurers or, with respect to the LBHI Payment, LBHI, as agreed between Defendants, the Insurers and LBHI, within ten (10) business days after written notification of such event by Lead Counsel to the Escrow Agent, with a copy of such notice to Defendants' Counsel, pursuant to the terms of the Escrow Agreement.

## NO ADMISSION OF WRONGDOING

34.     Whether or not the Settlement is approved by the Court, and whether or not the Settlement is consummated, the fact and terms of this Stipulation, including exhibits, all negotiations, discussions, drafts and proceedings in connection with the Settlement, and any act performed or document signed in connection with the Settlement:

(a)     shall not be offered or received against any of the Released Parties as evidence of or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Released Parties with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted against any of the Released Parties in this Action or in any litigation, in this or any other court, administrative agency, arbitration forum or other tribunal, or of any liability, negligence, fault or other wrongdoing of any kind of any of the Released Parties to Plaintiffs, the Settlement Class or anyone else;

(b)     shall not be offered or received against any of the Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any of the Released Parties, or against the Released Parties, Plaintiffs, Intervenors or any Class Members) as evidence of any infirmity in the claims or defenses that have been or could have been asserted in the Action;

(c)     shall not be offered or received against any of the Released Parties; or against the Plaintiffs, Intervenors or any other Class Member(s), as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason or purpose as against any of the Released Parties, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; provided, however, that if this Stipulation is approved by the Court, any Released Party may file this Stipulation and/or the Judgment in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release and discharge, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim;

(d)      shall not be construed against any of the Released Parties, Plaintiffs or any other Class Member(s) as an admission, concession or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

(e)      shall not be construed against Plaintiffs, Intervenors or any other Class Member(s) as an admission, concession or presumption that any of their claims are without merit or that damages recoverable under the Complaint would not have exceeded the amount of the Settlement Fund.

## MISCELLANEOUS PROVISIONS

35.      All of the following exhibits attached hereto are hereby incorporated by reference as though fully set forth herein: proposed Notice Order, Notice, Proof of Claim Form, Summary Notice and proposed Judgment.

36.      If a trustee, receiver, conservator or other fiduciary is appointed under any law similar to Title 11 of the United States Code (Bankruptcy), and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of Defendants or an Insurer to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the Settlement Fund by others, then, at the election of Lead Counsel, the Settling Parties shall jointly move the Court to vacate and set aside the releases given and the Judgment entered in favor of Defendants and the other Released Parties pursuant to this Stipulation, which releases and Judgment shall be null and void, and the Settling Parties shall be restored to their respective positions in the litigation as of November 2, 2011, and any cash amounts in the Settlement Fund or paid to Lead Counsel shall be returned as provided in ¶33 above.

37.     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes asserted or that could be asserted by the Plaintiffs, Intervenors or any other Class Member(s) against all Released Parties with respect to all Settled Claims.  As soon as reasonably practicable, Plaintiffs will file a motion in the Court under Federal Rule of Civil Procedure 62.1 (to which Defendants will consent) requesting that the Court issue an "indicative ruling" regarding potential approval of the Settlement stating "either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  Once the Court issues its indicative rulings, Intervenors will promptly file a motion in the Second Circuit Court of Appeals under Federal Rule of Appellate Procedure 12.1 (to which Defendants will consent) notifying the Second Circuit Court of Appeals of the indicative rulings and requesting a limited remand of the claims in the following pending appeals for the limited purpose of permitting consideration of the Settlement by the District Court: *Iowa Public Employees' Retirement System v. Franks,* Civ. No. 11-1982.  If and when the Settlement Class is certified and Judgment is entered, Intervenors will request that the Second Circuit Court of Appeals dismiss the appeals.  If the Settlement fails for any reason, the parties to the appeals will notify the Second Circuit Court of Appeals and resume the appeals.

38.     Plaintiffs, Intervenors and Defendants agree not to assert in any forum that this Action was brought by Plaintiffs or Lead Counsel, or defended by Defendants or Defendants' Counsel, in bad faith or without a reasonable basis. The Settling Parties agree that the amount paid and the other terms of this Settlement were negotiated at arm's length and in good faith, including in connection with a mediation conducted by a professional mediator, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

39.     This Stipulation, including the exhibits to this Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all signatories hereto or their successors-in-interest. Any condition in this Stipulation may be waived by the party entitled to enforce the condition in a writing signed by that party or its counsel.  The waiver by any party of any breach of this Stipulation by any other party shall not be deemed a waiver of the breach by any other party, or a waiver of any other prior or subsequent breach of this Stipulation by that party or any other party.  Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

40.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

41.     The administration and consummation of this Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of, *inter alia*, entering orders providing for the enforcement of the terms of this Stipulation, including, but not limited to, the releases provided for herein, and awards of attorneys' fees and Litigation Expenses to Lead Counsel.

42.     Plaintiffs, Intervenors and the Defendants agree that, prior to final approval of the Settlement, the Honorable Daniel Weinstein will continue to serve as a mediator for any disputes between them arising out of the Settlement, to the extent he is available to do so.  The Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

43.     This Stipulation and its exhibits constitute the entire agreement among the Settling Parties concerning this Settlement, and no representations, warranties or inducements have been made by any Settling Party concerning this Stipulation and its exhibits other than

those contained and memorialized in such documents.  This Stipulation supersedes any and all prior statements, representations, promises or other agreements, written or oral, with respect to the subject matter of this Stipulation, including the Term Sheet executed by the parties on November 2, 2011.

44.    This Stipulation may be executed in one or more original, e-mailed and/or faxed counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

45.    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

46.    All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation.

47.    The construction, interpretation, operation, effect and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

48.    This Stipulation shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations among the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

49.    All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full

authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

50.     Plaintiffs and Intervenors represent and warrant that they have not assigned, transferred, or otherwise disposed of the claims that are the subject of this Agreement.

51.     Lead Counsel and Defendants' Counsel agree to cooperate fully in seeking Court approval of the Notice Order and the Settlement and to use reasonable efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

52.     If any party is required to give notice to the other parties under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt by hand delivery, facsimile transmission or electronic mail.   Notice shall be provided to the counsel indicated on the signature block below.

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys as of January 13, 2012.

| | |
|---|---|
| **COHEN MILSTEIN SELLERS & TOLL PLLC**<br><br>By: _____<br>Joel P. Laitman<br>Christopher Lometti<br>Michael Eisenkraft<br>Daniel B. Rehns<br>Kenneth M. Rehns<br>    88 Pine Street, Fourteenth Floor<br>    New York, NY 10005<br>    Telephone: (212) 838-7797<br>    Facsimile: (212) 838-7745<br><br>Steven J. Toll (*admitted pro hac vice*)<br>Julie Reiser (*admitted pro hac vice*)<br>Joshua Devore (*admitted pro hac vice*)<br>    1100 New York Avenue NW<br>    Suite 500 West<br>    Washington, D.C. 20005<br>    Telephone: (202) 408-4600<br>    Facsimile: (202) 408-4699<br><br>*Counsel for Plaintiffs and Intervenor IPERS and Lead Counsel for the Class*<br><br><br>**WOLF POPPER LLP**<br><br>By: _____<br>Lester L. Levy<br>James A. Harrod<br>Matthew Insley-Pruitt<br>    845 Third Avenue, 12th Floor<br>    New York, NY 10022<br>    Telephone: (212) 759-4600<br>    Facsimile: (212) 486-2093<br><br>*Counsel for Intervenor Public Employees' Retirement System of Mississippi* | **WOLLMUTH MAHER & DEUTSCH LLP**<br><br>By: _____<br>William A. Maher<br>Michael C. Ledley<br>    500 Fifth Avenue<br>    New York, New York 10110<br>    Telephone: (212) 382-3300<br>    Facsimile: (212) 382-0050<br><br>*Attorneys for Defendants Lana Franks Harber, Edward Grieb, Richard McKinney, Kristine Smith, James J. Sullivan, Samir Tabet and Mark L. Zusy* |

36