**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re LEHMAN BROTHERS SECURITIES AND ERISA LITIGATION | Case No. 09-MD-2017 (LAK) |
| This Document Applies To: | ECF CASE |
| In re Lehman Brothers Equity/Debt Securities Litigation, 08-CV-5523-LAK | |

**THE STRUCTURED PRODUCT PLAINTIFFS'**
**MOTION FOR RECONSIDERATION PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 54(b)**

## PRELIMINARY STATEMENT

In *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, the Second Circuit

held that a plaintiff has "class standing" to assert claims on behalf of purchasers of shares in

offerings in which he did not invest if the claims "implicate the same set of concerns as

plaintiffs' claims."  No. 11-2762-cv, 2012 WL 3854431, at *1 (2d Cir. Sept. 6, 2012).  Given the

Second Circuit's decision, the structured product plaintiffs request that the Court revisit its ruling

on the defendants' motion to dismiss, in which the Court held that plaintiffs did not have Article

III standing to assert claims on behalf of investors in Lehman structured products the plaintiffs

did not themselves invest in.  Because the alleged misrepresentations and omissions about

Lehman's solvency and the nature of the principal protection notes all "implicate the same set of

concerns," the Court should reinstate the structured product plaintiffs' claims based on the

offerings identified on Appendix B to the Third Amended Complaint that the Court previously

dismissed on standing grounds.

## THE COURT'S ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs filed their Third Amended Class Action Complaint on April 23, 2010.  The

structured product plaintiffs brought claims on behalf of all persons and entities who purchased

or otherwise acquired any of the UBS-underwritten and Lehman-issued structured products that

were listed on Appendix B to the complaint.  *See* Girard Decl., Ex. 1 at ¶¶ 5, 101 & App. B.

Appendix B includes 85 offerings.

On July 27, 2011, the Court issued its order granting in part and denying in part the

defendants' motions to dismiss.  *See In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d

258, 273 (S.D.N.Y. 2011).  The Court noted that plaintiffs asserted "claims based on fifty PPN

offerings in which no named plaintiff purchased a security" and that defendants challenged

plaintiffs' standing to pursue those claims. *Id.* at 273. The Court concluded that plaintiffs lacked

Article III standing to pursue the claims because "a plaintiff does not suffer an injury in fact—

and therefore has no standing to assert claims—in consequence of false or misleading statements

in offering materials for securities that it did not purchase." *Id.* at 274. As the Court recognized,

plaintiffs argued that they had standing "because each PPN was offered pursuant to 'common

prospectuses [that] incorporated the [common] SEC filings that contained the misstatements and

omissions,' 'the false and misleading statements were the same for each Offering,' and because

'all investors … were personally injured by the same false or misleading statements made by the

same defendants.'" *Id.* (alterations in original) (quoting plaintiffs' brief). The Court said "[t]his

Court and others have rejected this argument and plaintiffs have provided no authority that

undermines that conclusion." *Id.* The Court therefore dismissed plaintiffs' claims based on

offerings they had not invested in.

## THE SECOND CIRCUIT'S *NECA-IBEW* DECISION

On September 6, 2012, the Second Circuit issued its decision in *NECA-IBEW Health &*

*Welfare Fund v. Goldman Sachs & Co.*, holding that a plaintiff has "class standing" to assert

claims on behalf of purchasers of shares in offerings in which he did not invest if the claims

"implicate the same set of concerns as plaintiffs' claims." No. 11-2762-cv, 2012 WL 3854431,

at *1 (2d Cir. Sept. 6, 2012). NECA, the plaintiff, sued Goldman Sachs for violations of sections

11, 12(a)(2) and 15 of the Securities Act of 1933 on behalf of all purchasers of mortgage-backed

certificates issued under the same allegedly false and misleading shelf registration statement but

sold in separate offerings with differing prospectus supplements and free writing prospectuses.

*Id.* at *1. NECA alleged that the offering documents for the certificates contained false and

misleading information about the underwriting guidelines of the mortgage loan originators, the

2

property appraisals of the loans, and the risks associated with the certificates.  *Id.* at *3.  The district court dismissed the claims based on offerings NECA did not invest in, holding that NECA lacked standing to bring claims on behalf of purchasers of those certificates.  *Id.* at *5-6.

The Second Circuit reversed.  It distinguished NECA's Article III and statutory standing from its "class standing" to assert claims on behalf of purchasers in other offerings.  NECA had Article III standing, the Court found, "because it plausibly alleged (1) a diminution in the value of [the two certificates it purchased] (2) as a result of defendants' inclusion of misleading statements [in the registration statement] that is (3) redressable through rights of action for damages under §§ 11 and 12(a)(2)."  *Id.* at *9 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992)).  NECA also had statutory standing because it purchased the two certificates pursuant to registration statements that allegedly contained materially misleading statements directly from Goldman Sachs in a public offering.  *Id.*

The Court then clarified that NECA's class standing "does not turn on whether NECA would have statutory or Article III standing to seek recovery for misleading statements" in the offering documents for certificates it did not purchase.  *Id.* at *9.  Instead, "a plaintiff has class standing if he plausibly alleges (1) that he 'personally has suffered some actual ... injury as a result of the putatively illegal conduct of the defendant,' and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants."  *Id.* at *12 (citing *Blum v. Yaretsky*, 457 U.S. 991, 999, 102 S. Ct. 2777, 2783 (1982); *Gratz v. Bollinger*, 539 U.S. 244, 267, 123 S. Ct. 2411, 2426 (2003)).  The Court added that "in the context of claims alleging injury based on misrepresentations, the misconduct alleged will almost always be the same: the making of a false or misleading statement."  *Id.*  To determine whether a plaintiff has class standing, courts must

examine "[w]hether that conduct implicates the same set of concerns for distinct sets of

plaintiffs," an inquiry that "will depend on the nature and content of the specific

misrepresentation alleged." *Id.*

The Court examined the nature and content of the alleged misrepresentations and

concluded that NECA had class standing to assert claims on behalf of purchasers whose

certificates were backed by loans issued by the same originators as the loans backing the two

certificates NECA purchased. *Id.* at \*13.  Since NECA's claims were based on the originators'

abandonment of their underwriting guidelines, the proof would center on each originator's

guidelines and underwriting practices. *Id.*  Therefore, "to the extent certain Offerings were

backed by loans originated by originators common to those backing the [two offerings NECA

invested in], NECA's claims raise a sufficiently similar set of concerns to permit it to purport to

represent Certificate-holders from those Offerings." *Id.*

The Second Circuit held that NECA had class standing to assert claims on behalf of

purchasers of certificates NECA itself had not purchased, so long as the claims raised the same

set of concerns. *Id.* at \*13, 17.  It vacated the district court's judgment dismissing NECA's

claims on behalf of other purchasers and remanded with instructions to reinstate the claims based

on offerings that were backed by the same mortgage originators that backed the certificates

NECA purchased. *Id.* at \*17.

## THE COURT SHOULD REVISIT ITS MOTION TO DISMISS RULING

The Court has discretion to revisit its ruling on defendants' motion to dismiss under Rule

54(b) because the *NECA-IBEW* decision is an intervening change in the law.  *See Freidus v. ING

Groep N.V.*, No. 09 Civ. 1049 (LAK), 2011 WL 4056743, at \*1 (S.D.N.Y. Mar. 29, 2011); *In re

Rezulin Products Liability Litig.*, 224 F.R.D. 346, 349-50 (S.D.N.Y. 2004); *see also Plumbers' &*

*Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 08

CV 1713 (ERK) (WDW), 2012 WL 4053716, at \*1 (E.D.N.Y. Sept. 14, 2012) (following the

*NECA-IBEW* decision, modifying an order dismissing claims based on certificates the lead

plaintiff did not purchase to allow the plaintiff to assert claims of purchasers of other MBS

certificates that were backed by loans made by the same originators).

   If the *NECA-IBEW* decision had existed when the Court decided defendants' motions to

dismiss, the Court presumably would have applied Second Circuit precedent and allowed the

structured product plaintiffs to pursue claims on behalf of purchasers of all of the 85 structured

products listed on Appendix B to the Third Amended Complaint.  The analysis of plaintiffs'

class standing is much more straightforward than the Second Circuit's analysis of NECA's class

standing.  While NECA's claims arose from the underwriting practices of the various originators

of the mortgages backing the certificates, plaintiffs' claims are all based on statements the issuer,

Lehman, and the underwriter, UBS, made about Lehman and the nature of the Lehman notes.

   In fact, as part of its analysis the Second Circuit provided an example that is strikingly

similar to this case:

> Indeed, one could imagine a series of corporate debt offerings, issued over
> the course of a year, all of which contained an identical misrepresentation
> about the issuing company's impending insolvency. Sections 11 and
> 12(a)(2) claims brought by a purchaser of debt from one offering would
> raise a "set of concerns" nearly identical to that of a purchaser from another
> offering: the misrepresentation would infect the debt issued from every
> offering in like manner, given that all of it is backed by the same company
> whose solvency has been called into question. In that case, the
> inappropriateness of denying class standing on the happenstance of the
> misrepresentation's location in one offering versus another seems patent.

*Id*.  As in the example, plaintiffs are purchasers of Lehman notes who assert section 11 and

12(a)(2) claims that are based on misrepresentations and omissions about Lehman's solvency—

including Lehman's Repo 105 transactions, disregard of risk limits, exclusion of risky assets

from stress testing, frequently exceeded Value-at-Risk limits, and significant concentrations of

credit risk, as well as the notes' purported "principal protection" feature—that are nearly

identical to those in the offering documents for UBS's other Lehman structured product

offerings.  The misrepresentations and omissions infect "every offering in like manner" because

the notes are all backed by Lehman.  As in *NECA-IBEW*, the fact that the misrepresentations and

omissions appeared in separate offering documents "has no effect on a given purchaser's

assertion that the representation was misleading (the source of the injury)."  *Id.*  Plaintiffs

therefore have class standing to assert claims on behalf of purchasers of all of the Lehman

structured product offerings.

In its July 27, 2011 ruling on the motions to dismiss, the Court dismissed claims based on

the two offerings that occurred on March 30, 2007[1] as barred by the statute of repose.  The Court

recognized that "the filing of a class action suspends the running of applicable statutes of

limitations for all putative class members even where the putative class plaintiff did not have

standing to assert the claims at issue," but held that the statute of repose cannot be tolled.  *See In*

*re Lehman*, 799 F. Supp. 2d at 309-10.  As a result, the Court held, claims based on offerings that

occurred more than three years before the Third Amended Complaint was filed on April 23,

2010, were barred by the statute of repose.  When plaintiff Stephen Gott filed his initial

complaint on November 6, 2008, however, the statute of repose had not run for those offerings.

*See* Case No. 1:08-cv-09578-LAK (S.D.N.Y.), Dkt. No. 1 (copy attached as Exhibit 2).  Mr.

Gott's complaint was filed on behalf of "a Class consisting of all persons or entities who,

between May 30, 2006 and September 15, 2008 inclusive, purchased Lehman Principal

---

[1] The two offerings are the March 30, 2007 100% Principal Protection Notes Linked to a Global Index Basket (52520W564) (524908VP2) and the March 30, 2007 Performance Securities with Partial Protection Linked to a Global Index Basket (52520W556) (524908VQ0).

Protection Notes, and who were damaged thereby." *Id.*, ¶ 27. On February 23, 2009, plaintiffs filed their Second Amended Complaint on behalf of all persons and entities who "purchased or acquired Lehman securities identified in Appendix A between February 13, 2007 and September 15, 2008, inclusive, pursuant or traceable to the Shelf Registration Statement." Dkt. No. 30 (copy attached as Exhibit 3) at 117-18. Appendix A included the two March 30, 2007 offerings. *See id.* at App. A, pp. 5-6.

Since, under *NECA-IBEW*, Mr. Gott and the plaintiffs named in the Second Amended Complaint had class standing to pursue claims on behalf of investors of all of the principal protection offerings, including the two March 30, 2007 offerings, the statute of repose does not bar those claims. Plaintiffs therefore request that the Court reinstate their claims based on all offerings listed in Appendix B to the Third Amended Complaint.

## IMPACT ON CLASS CERTIFICATION

Plaintiffs' motion for class certification is fully briefed and currently pending before the Court. If the Court grants this motion for reconsideration, plaintiffs anticipate that the parties will need to file supplemental briefs to address the impact on the class certification motion of including the additional offerings. These briefs can be fairly short since the offering documents for the reinstated offerings do not add any new misrepresentations or omissions to the case. And very little additional discovery will be required. UBS has already deposed all of the plaintiffs and obtained their documents, and plaintiffs will not require any additional document discovery from UBS. All plaintiffs will request is further responses from UBS to two interrogatories that request, for each offering, the number of purchasers, the total issue price currently held, the total issue price of notes that were bought back at par value before September 15, 2008, the number of investors who initiated arbitrations, and the number of investors who claims have been resolved.

## CONCLUSION

Plaintiffs respectfully request that the Court reconsider its ruling on defendants' motion to dismiss and reinstate the claims based on all offerings identified on Appendix B to the Third Amended Class Action Complaint.

Dated: September 21, 2012          Respectfully submitted,

**GIRARD GIBBS LLP**

By:   */s/ Daniel C. Girard*
       Daniel C. Girard

Jonathan K. Levine
Amanda M. Steiner
Dena C. Sharp
601 California Street, Floor 14
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846

*Counsel for Plaintiffs Mohan Ananda, Richard Barrett, Neel Duncan, Nick Fotinos, Stephen Gott, Karin Kano, Barbara Moskowitz, Ronald Profili, Lawrence Rose, Joe Rottman, Grace Wang and Miriam Wolf, and proposed Class Counsel*

**ZWERLING, SCHACHTER**
  **& ZWERLING, LLP**
Susan Salvetti
Justin M. Tarshis
41 Madison Avenue
New York, New York 10010
Telephone: (212) 223-3900
Facsimile: (212) 371-5969

*Counsel for Plaintiffs Ed Davis, Rick Fleischman, J. Harry Pickle, Trustee Gastroenterology Associates, Ltd. Profit Sharing Plan FBO Charles M. Brooks M.D., Arthur Simons, Juan Tolosa*

**LAW OFFICES OF JAMES V. BASHIAN, P.C.**

James V. Bashian
500 Fifth Avenue, Suite 2700
New York, New York 10110
Telephone: (212) 921-4110
Facsimile: (212) 921-4229

*Counsel for Plaintiff David Kotz*

**BONNETT FAIRBOURN FRIEDMAN
   & BALINT, P.C.**
Andrew Friedman
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: (602) 274-1100
Facsimile: (602) 274 1199

**TIFFANY & BOSCO P.A.**
Richard G. Himelrick
2525 East Camelback Road
Phoenix, Arizona 85016
Telephone: (602) 255-6000
Facsimile: (602) 255-0103

*Counsel for Plaintiff Shea-Edwards Limited
Partnership*

## CERTIFICATE OF SERVICE

I, Daniel C. Girard, hereby certify that on September 21, 2012, I caused the following

document(s) to be filed electronically with the United States District Court for the Southern

District of New York through the Court's mandated ECF service:

**THE STRUCTURED PRODUCT PLAINTIFFS'
MOTION FOR RECONSIDERATION PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 54(b)**

Counsel of record are required by the Court to be registered e-filers, and as such are

automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of September, 2012 at San Francisco, California.


/s/ Daniel C. Girard
Daniel C. Girard

10