UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

LEHMAN BROTHERS SECURITIES AND
ERISA LITIGATION

This document applies to:

*Deathrow v. Fuld,* 09 Civ. 1230 (LAK)

*Meese & Caldwell v. Fuld,* 09 Civ. 1231 (LAK)

*Mease v. Fuld,* 09 Civ. 1232 (LAK)

*Shipley v. Fuld,* 09 Civ. 1235 (LAK)

*Napierala v. Fuld,* 09 Civ. 1237 (LAK)
------------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/11/12

09 MD 2017 (LAK)

**PRETRIAL ORDER NO. 47**
(Arkansas Cases – Motions to Dismiss)

LEWIS A. KAPLAN, *District Judge.*

    These five actions were filed in various Arkansas state courts, removed to federal court, and transferred here pursuant to 28 U.S.C. § 1407. They now are proceeding on a consolidated and amended class action complaint ("CAC"). The matter is before the Court on motions by several defendants to strike plaintiffs' class action allegations and to dismiss all or parts of the CAC, which asserts claims under Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "Act"), 15 U.S.C. §§ 77k, 77l(a)(2). As the background of this case is common to many others as to which the Court has written extensively, it is largely unnecessary to explicate the facts, and the issues presented by the motions may be resolved by reference to established principles without lengthy discussion.

I.  *Class Allegations*

    Although the CAC purports to sue on behalf of an alleged class, plaintiffs never have

2

sought class certification. The Bank and Individual Defendants[1] seek an order striking plaintiffs' class allegations, essentially on the ground that plaintiffs in these cases have not been appointed lead plaintiffs nor satisfied requirements of the Private Securities Litigation Reform Act. The Court repeatedly has declined to pass on this issue. Pretrial Orders ("PTO") Nos. 9, 24. As defendants' motions to dismiss these cases are granted for other reasons, the Court need not address it here.

## II.    *Securities Act Claims*

### A.    *Timeliness*

#### 1.    *Claims First Asserted in the CAC*

All of the alleged offerings and sales at issue in this case occurred by February 2008. Plaintiffs' original complaints, all filed in 2008, focused on alleged omissions relating to the exposure to collateralized debt obligations ("CDOs") of Lehman Brothers Holdings Inc. ("LBHI"). On November 29, 2011, almost four years later, however, they filed the CAC, which added entirely new allegations relating to allegedly material false statements and omissions related to Repo 105s and risk management practices.[2]

Section 13 of the Act provides that claims under Sections 11 and 12 must be asserted (1) "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence," and (2) "[i]n no event . . . more than three years after the security was bona fide offered to the public." 15 U.S.C. § 77m; *see also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 (1976).

In this case, plaintiffs obviously were on notice of potential claims based on alleged misstatements regarding Repo 105 transactions and risk management practices shortly after the bankruptcy Examiner's Report was issued March 11, 2010, and in any case no later than April 23, 2010 when the lead plaintiffs in *Equity/Debt* filed their third amended complaint, which made all of the claims of false and misleading statements that plaintiffs now rely upon here. Yet these plaintiffs did not amend their original complaints until November 29, 2011 – well over a year after the issuance of the Examiner's Report and the class plaintiffs in *Equity/Debt* filed their complaint and more than three years after the offerings and purchases upon which their Section 11 and 12 claims, respectively, rest. Thus, their claims appear to be barred by both the one-year statute of limitations and the three-year statute of repose of Section 13 of the Act.

Plaintiffs nonetheless contend their claims under the Securities Act are timely,

---

[1] The identities of the "Bank Defendants" are listed in MDL [09 MD 2017 (LAK) Dkt. 594 at 1 n.1.] Those of the "Individual Defendants" are listed in MDL Dkt.626, at 1.

[2] *See generally Equity/Debt*, 799 F. Supp.2d at 275-87.

arguing first that the statute of limitations was tolled under *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538 (1974), by the pendency of other putative class actions and, in any case, that their claims relate back to the filing of their original complaints under Fed. R. Civ. P. 15(c).

The *American Pipe* argument is without merit for two independent reasons.

First, *American Pipe* tolling, where it applies in the first place, stops the running of the statute of limitations against putative and passive class members until class certification is denied or, if it is granted, until putative class members opt out in order to pursue individual claims. Its purposes include, importantly, avoiding the need for putative class members to intervene prior to the class certification decision or otherwise to take affirmative action to protect their ability to proceed individually if class certification is denied. *See American Pipe,* 414 U.S. at 552-54. In this case, however, *American Pipe* tolling is not necessary to avoid needless and possibly burdensome intervention or other action that otherwise would be taken, purely to protect putative class members' ability to proceed individually in the event class certification were denied, as these plaintiffs sued years ago, both individually and, allegedly, on behalf of classes of persons said to have been similarly situated. Allowing *American Pipe* tolling in these circumstances would not serve the interests of "efficiency and economy of litigation which is a principal purpose of the [class action] procedure," *id.* at 553, and that underlie the tolling rule.

Second, and independently sufficient to reject plaintiffs' *American Pipe* argument, are this Court's holdings that *American Pipe* tolling, even if it otherwise were applicable in a case like this, does not toll the running of the three-year period of repose that applies to actions under Sections 11 and 12. *E.g., Equity/Debt,* 799 F. Supp. 2d 258, 308-10 (S.D.N.Y. 2012) (*American Pipe* does not toll statutes of repose).

The Rule 15(c) argument also is without merit. As this Court previously has held, the relation back provision of the rule does not apply to statutes of repose and would violate the Rules Enabling Act if it were construed to do so by abridging or modifying the right of repose that is conferred by Section 13 of the Securities Act. *Equity/Debt,* 799 F. Supp.2d at 310; *In re IndyMac Mortgage-Backed Sec. Litig.,* 793 F. Supp. 2d 637, 642-43 (S.D.N.Y. 2011); *see In re Lehman Brothers Sec. & ERISA Litig.,* 800. F. Supp. 2d 477, 483 (S.D.N.Y. 2011). It view of this conclusion, it is unnecessary to consider the further argument that the requirements of Rule 15(c), even if its application here is not foreclosed for the foregoing reasons, have not been satisfied.

Accordingly, all of plaintiffs' Securities Act claims save those asserted in their original complaints are dismissed as untimely. So too are all of the claims of plaintiff Dimodica against defendant RBC Capital Markets Corp. ("RBC"), as RBC was not a defendant named in the original complaints. It first was brought into the case in November 2011, four years after this plaintiff purchased her shares.

4

B.  *Sufficiency of Remaining Securities Act Claims*

Defendants seek the dismissal also of plaintiffs' remaining original Section 11 and 12 claims based upon LBHI's exposure to CDOs, which now appear at paragraphs 143 to 145 of the CAC. They argue that the claims are insufficient as a matter of law and, in any case, that the Section 12 claims fail because plaintiff has not sufficiently alleged that any of the defendants is a statutory seller as required by the Act.

To say that the three paragraphs of the CAC that set out plaintiffs' claim with respect to CDOs are barebones perhaps understates the matter. Paragraph 143 briefly describes what CDOs are and states in conclusory terms that "[t]he Offering Documents did not reveal that Lehman owned billions of dollars of" CDOs. Paragraph 144 says that Lehman first revealed "its CDO vulnerability" on March 18, 2008, when it disclosed that LBHI owned $626.8 million and $581.2 million of equity securities in CDOs at February 29, 2008 and November 30, 2007, respectively, but added that its investments did not represent a majority of the CDOs' equity and that it therefore was not exposed to the majority of the CDOs expected losses. Paragraph 145 then concludes by alleging that Lehman knew of its CDO exposure at the time of each offering complained of but did not disclose it until later, thus concealing the allegedly "tremendous risks" purchasers of the offered securities would be taking.

These allegations are not sufficient. Plaintiffs nowhere allege what LBHI's CDO holdings were at any time prior to November 30, 2007 beyond the once-over-lightly assertion in paragraph 143 that it was in the billions of dollars – which of course was not approached even at November 30, 2007 or February 29, 2008. They do not allege facts in the CAC nor argue any legal basis for supposing that LBHI had any obligation to disclose its CDO holdings, whether they were "billions of dollars" or something else, prior to March 2008. And they do not allege that LBHI believed at the time of the offerings in question that its CDO holdings were sufficiently large or risky to warrant disclosure at any earlier point. Thus, the Court is left to speculate as to the nature of the claim and the facts.

Giving plaintiffs the benefit of the doubt, the Court assumes in their favor that their theory must be analogous to the claim made in *Equity/Debt* with respect to the alleged non-disclosure in the offering materials of concentrations of credit risk – i.e., that the financial statements were false and misleading because they did not disclose significant risks and uncertainties arising from CDO holdings. *See Equity/Debt,* 799 F. Supp.2d at 290 *et seq.* As explained there, LBHI was required by SFAS 107 to "disclose all significant concentrations of credit risk arising from *all* financial instruments, whether from an individual counterparty or groups of counterparties." SFAS 107, at 197. The question whether a particular concentration of credit risk was "significant" within the meaning of SFAS 107," however, was "a matter of judgment." *See, e.g.,* FSP 94–6–1 ("Judgment is required to determine whether loan products have terms that give rise to a concentration of credit risk."). "Consequently, in order to state a claim that an entity's failure to disclose a concentration of credit risk violated SFAS 107, a plaintiff must plead facts that would permit findings that the entity in fact had 'significant concentrations of credit risk' *and* that the entity believed that to be so." *Equity/Debt,* 799 F. Supp.2d at 291 (emphasis added).

5

This complaint, even crediting the probably implausible and conclusory claim that LBHI held billions of dollars of CDOs at the times of the offerings in question, alleges nothing to support an inference that the terms of those CDOs gave rise to concentrations of credit risk at the times of the offerings or that LBHI so believed. Indeed, plaintiffs have not even responded to defendants' argument on this point and effectively have conceded its validity.[3] Accordingly, plaintiffs' allegations of misstatements and omissions that are predicated on the failure prior to March 2008 to disclose LBHI's CDO holdings fail to state a claim upon which relief may be granted.

In view of this conclusion, it is unnecessary to address defendants' other arguments.

*Conclusion*

For the foregoing reasons, the motions of the Bank Defendants (MDL Dkt. 594), joined in by defendant The Williams Capital Group LLP (MDL Dkt. 612), and the Individual Defendants (MDL Dkt. 625) to dismiss the consolidated amended complaint are granted in all respects. The motion of Charles Schwab & Co., Inc. (MDL Dkt. 600) is granted to the extent it seeks dismissal of the cases included in the consolidated amended complaint in this action. That motion, however, remains pending to the extent that it is directed also at other cases.

As this order disposes of all claims against all defendants, the Clerk shall enter judgment and close the case.

Dated: December 11, 2012

_____
Lewis A. Kaplan
United States District Judge

---

[3] Instead of explaining in their opposition brief how their CDO-related allegations state a claim, plaintiffs attempt to recast their risk management allegations as allegations relating to "Lehman's Actual Liquidity," arguing that the CAC "sufficiently allege[s] that the offering documents misrepresented Lehman's actual liquidity." Pls.' Opp. Br. at 33. Plaintiffs' risk management claims are, of course, time-barred, and the complaint cannot be amended in an opposition brief. Moreover, even if properly and timely asserted, plaintiffs' risk management allegations would fail for the same reasons as those plaintiffs made in *Equity/Debt*.