UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
In re:

LEHMAN BROTHERS SECURITIES AND                        09 MD 2017 (LAK)
ERISA LITIGATION

This document applies to:

*In re Lehman Brothers Equity/Debt Securities
Litigation* 08 Civ. 5523 (LAK)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 01/23/13
```

PRETRIAL ORDER NO. 59
(Class Certification Ruling)

LEWIS A. KAPLAN, *District Judge.*

    As a result of this Court's ruling on the motion to dismiss the third amended complaint and settlements with all of Lehman Brothers' former officers, directors, and with all but one of the underwriters of offerings of Lehman securities, only two defendants remain in this case: UBS Financial Services, Inc. ("UBS") and Lehman's former auditors, Ernst & Young LLP ("E&Y"). The matter now is before the Court on plaintiffs' motions to certify two classes, to appoint class representatives for both, and to appoint three law firms as class counsel. The first proposed class ("Class 1") would be a class seeking relief from E&Y for its alleged violation of Section 10(b) of the Securities Exchange Act of 1934[1] and Rule 10b-5 thereunder[2] in connection with Lehman's Second Quarter 2008 Form 10-Q. The second ("Class 2") would be seeking relief from UBS for its alleged violation of Sections 11 and 12 of the Securities Act of 1933[3] in underwriting thirty-one structured notes (the "Notes") offerings spanning the period April 30, 2007 through June 30, 2008.

    At the outset it is well to say that the Rule 23(a) prerequisites to class certification and the additional requirements of Rule 23(b)(3) for certification of classes such as those proposed are far too well established to require repetition here. Moreover, the satisfaction of almost all of those prerequisites and requirements with respect to each of the proposed classes is undisputed. The

---

[1] 15 U.S.C. § 78j(b).

[2] 17 C.F.R. § 240.10b-5.

[3] 15 U.S.C. §§ 77k(a), 77*l*(a)(2).

Court adopts as findings the parties' agreements with respect to each of those issues and confines this order to discussing the relatively few points of disagreement.

*Class 1*

        1.      The first point in dispute with respect to Class 1 is with the class definition. Plaintiffs, in relevant part, propose a class of "[a]ll persons and entities who purchased or otherwise acquired Lehman common stock, or purchased call options or sold put options referencing Lehman common stock between July 11, 2008 and September 14, 2008, inclusive, and who were damaged thereby," but excluding the usual list of insiders. E&Y contends that the proposed definition is too broad because it improperly includes "in and out" traders who both bought and sold shares prior to the first alleged corrective disclosure on September 8, 2008. While E&Y seems entirely right in saying that such "in and out" traders, at least to the extent of such trades, will be unable to establish loss causation and therefore may not recover with respect to those trades, the Court concludes that the inclusion in plaintiffs' proposed definition of the phrase "and who were damaged thereby" adequately covers the problem.

        2.      Plaintiffs propose two class plaintiffs, Alameda County Employees' Retirement Association ("ACERA") and Oklahoma Firefighters Pension and Retirement System ("Oklahoma"). E&Y argues that ACERA's claims are not typical of those of the class because ACERA is subject to a unique defense arising out of the fact that it purchased Lehman stock even after bringing a class action that alleged that Lehman's senior officers had misstated materially the company's financial condition. The argument is that it cannot possibly have relied reasonably on the misstatements and nondisclosures alleged here in view of those prior allegations of fraud by Lehman.

        It is entirely unnecessary to resolve this question, as there is "no reason to subject the class to [the effect of] this potential defense where there is another" proposed class representative that is not subject to it.[4] That is the case here, as Oklahoma is not comparably situated to ACERA in this respect.

        3.      E&Y nevertheless attacks Oklahoma, arguing that it too is subject to a unique defense, but on entirely different grounds, viz. that it delegated its investment decisions to its investment manager, which used a proprietary trading model to invest in a portfolio that tracked the S&P 500 index. E&Y argues that Oklahoma cannot have relied reasonably on Lehman's 10-Q because its investment manager relied neither on that filing nor on the integrity of the market. This Court disagrees. Tracking an index for an efficient market is sufficient reliance for the purpose of

---

[4] *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658 (SAS), 2011 WL 4444176, at *8 (S.D.N.Y. Oct. 4, 2011).

3

class certification.[5] The Court finds that Oklahoma's claims are typical of those of the absent class members.

   4. The Court finds that plaintiffs' proposed class definition is appropriate, that Oklahoma is an appropriate class representative, and that all of the other requirements of Rules 23(a) and 23(b)(3) are satisfied with respect to Class 1.

*Class 2*

   1. With respect to Class 2, UBS argues that the claims of two proposed class representatives, Stephen Gott and Mohan Ananda, are not typical of the class because their spouses purchased the Notes and they have no ownership interest in them. UBS further contends that this renders them inadequate class representatives. Both plaintiffs submitted declarations that they invested in the Notes with money they share with their wives. UBS does not point to any persuasive case law indicating that these plaintiffs, because they invested the money through account in their wives' names, would not be adequate class representatives.

   2. UBS disputes also the adequacy of proposed class representative Arthur Simons. Mr. Simons pled guilty to three felony counts of conspiracy and bank fraud over twenty years ago. Recognizing that Mr. Simons might in fact prove to be an adequate class representative, that he pled guilty to these three felonies raises significant questions about his capacity to serve as a fiduciary to the absent class members. Given the Court's obligation to protect absent class members, it declines to appoint Mr. Simons as class representative.

   Nevertheless, plaintiffs do not need to find another class representative for the investors in the two Notes offerings that Mr. Simons sought to represent. While these two Notes are the only ones in the case to have had no principal protection feature, Lehman issued them off of the same registration statement as the other offerings. Given the substantial similarity in alleged misrepresentations across the class period, the current representatives' claims are sufficiently similar to permit them to represent adequately the investors that Mr. Simons sought to represent.[6]

---

[5]  *See, e.g.*, *In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855 (RMB), 2003 WL 22077464, at *3 (S.D.N.Y. Sept. 8, 2003); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 281–82 (S.D.N.Y. 2003).

[6]  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 148–49, 165 (2d Cir. 2012). The Court recognizes that in ruling on defendant's motion to dismiss before *NECA-IBEW* was decided, it held that the plaintiffs had standing to sue only on behalf of those who invested in the notes in which plaintiffs invested. The Second Circuit subsequently decided *NECA-IBEW*, and this Court agreed to hear plaintiffs' motion for

4

3. UBS questions the adequacy of Gastroenterology Associations Profit Sharing Trust ("Trust"). That the Trust has authorized a beneficiary who chose to invest in the securities and stands to gain or lose from the law suit because of his investment does not render the Trust an inadequate representative.

4. The parties dispute whether individual questions predominate over questions common to the class with respect to the plaintiffs' allegations about the advertised principal protection feature of the Notes. UBS points to language in one of the Court's prior rulings that statements in the offering materials "would have made the nature of these securities clear to a careful and intelligent reader."[7] UBS argues that the Court made the question of whether each class member carefully read the offering materials an important part of any ultimate trial of this case. In addition, UBS claims that individual questions of knowledge of the alleged misstatements exist because nearly all of the Notes were sold to UBS customers through personalized sales efforts by 2,107 UBS financial advisors.[8] Five UBS financial advisors submitted declarations to the effect that it was their general practice to discuss the unsecured nature of the Notes. UBS further submitted several emails between UBS financial advisors and several opt-out plaintiffs who currently are arbitrating claims against UBS. These emails tend to show that some of these investors understood the principal protection feature, though only two emails demonstrate clearly that the investor understood it at the time of investment. Lastly, UBS submitted deposition testimony of the proposed class representatives to show that they relied on their financial advisors, but none of the representatives admitted to having understood the principal protection feature at the time of investment.

With respect to plaintiffs' Section 11 claims, these questions of knowledge are relevant only to UBS's affirmative defense. Under Section 11, plaintiffs need not show a lack of knowledge of the misstatement or omission. "Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the

---

reconsideration after the Supreme Court rules on the pending *NECA-IBEW* petition for certiorari. Here, the court applies *NECA-IBEW* because it currently is binding in this Circuit.

[7] *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F.Supp.2d 258, 314 (S.D.N.Y. 2011).

[8] The 1.5% of investors who purchased in the aftermarket do not have a § 12(a)(2) claim. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 578 (1995); *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F.Supp.2d 475, 484 (S.D.N.Y.).

5

class, common questions are held to predominate over individual questions."[9]  Numerous courts have held that potential affirmative defenses against individual plaintiffs do not preclude class certification for claims under Section 11.[10]

The situation is different with respect to plaintiffs' Section 12(a)(2) claims. The Second Circuit held in *New Jersey Carpenters Health Fund v. RALI Series 2006-Q1 Trust* that lack of knowledge of an alleged misstatement is part of a plaintiff's affirmative claim for Section 12(a)(2) relief.[11]  It stated also, however, that "[t]his does not change our analysis at the class certification stage."[12]

Despite the fact that *New Jersey Carpenters* is a non-precedential decision, it raises an interesting question with respect to certification of classes in Section 12(a)(2) cases.  Its clear recognition that the plaintiff in such a case must establish lack of knowledge suggests that the knowledge of each potential class member would be an individual issue, that such individual issues with respect to each class member would cut against a finding that common questions predominate, and that Section 12(a)(2) classes could be certified only or generally in circumstances in which the putative class plaintiff had evidence common to the class members generally that would permit or warrant a finding of lack of knowledge.  On the other hand, its statement with respect to the class certification analysis suggests that nothing has changed with respect to the analysis of the predominance issue as it relates to Section 12(a)(2) claims.

In view of the clear statement as to the onus of proof on the knowledge issue in Section 12(a)(2) claims, it seems to the undersigned that the former is the better view and that the somewhat cryptic statement about the class certification stage is understood properly as meaning essentially that the putative class plaintiffs remain obliged, as they always were, to establish the predominance of common questions in order to obtain certification.  As plaintiffs may be able to establish predominance even where there are individual issues as to knowledge or to carry their burden of going forward at the class certification stage with evidence common to the class members generally, there is no inconsistency in the Circuit's *New Jersey Carpenters* observations.

---

[9] *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 117 (S.D.N.Y. 2011) (citing *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981)).

[10] *See, e.g., Pub. Emps. Ret. Sys. of Miss. v. Goldman Sachs Grp.*, 280 F.R.D. 130, 137–39 (S.D.N.Y. 2012); *Merrill Lynch & Co.*, 277 F.R.D. at 110–20; *N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, No. 08 Civ. 5653 (PAC), 2011 WL 3874821, at *5–7 (S.D.N.Y. Aug. 16, 2011).

[11] 477 Fed.Appx. 809, 813 n.1 (2d Cir. 2012).

[12] *Id.*

6

In this case, plaintiffs have offered no evidence that could support a finding that putative class members lacked knowledge of the limited extent of the principal protection feature of the notes. In any case, given the evidence presented by UBS, they certainly have not carried their burden of persuasion as to the alleged predominance of common questions with respect to the Section 12(a)(2) claim.

5. Having resolved the parties' dispute over the principal protection allegations, the Court turns to their dispute with respect to the remaining allegations. UBS asserts that, throughout the class period, Lehman insiders, financial analysts, and others disseminated the truth behind the alleged misrepresentations and omissions about Lehman's risk practices and credit risk concentration. UBS argues that these disclosures raise individual questions of knowledge that preclude class certification. That argument is not persuasive.

Whether or not the offering documents and Lehman's financial statements contained material misrepresentations and omissions and whether any corrective disclosures were disseminated widely are questions susceptible of common proof. Plaintiffs who have shown the existence of common questions are not obliged to prove the non-existence of possible individual issues – in the absence of any significant evidence of such issues – in order to obtain certification.[13]

UBS has submitted a large number of articles that it claims show that the truth behind the alleged misstatements and omissions actually was disclosed. The evidence is not as clear as UBS asserts. Nor does UBS deny that the alleged manipulative use of Repo 105 transactions was not disclosed during the class period. Plaintiffs are not required to prove on the merits every misstatement and omission at the class certification stage. As another court in this district has explained in similar circumstances, "to the extent Defendants argue that actual knowledge can be

---

[13] UBS relies heavily on two decisions, *In re Initial Public Offerings Securities Litigation* and *New Jersey Carpenters Health Fund v. Residential Capital, LLC*, in support of its argument that individual questions of knowledge predominate. 471 F.3d 24 (2d Cir. 2006); 272 F.R.D. 160 (S.D.N.Y. 2011). Both of these opinions rest on their unique facts and have been persuasively distinguished by courts in this District in subsequent opinions. *See Merrill Lynch & Co., Inc.*, 277 F.R.D. at 113 (distinguishing *In re IPO*); *Goldman Sachs Group, Inc.*, 280 F.R.D. 137–39 (distinguishing *Residential Capital*). And, in affirming *Residential Capital*, the Second Circuit noted that "[p]erhaps another inference could have been drawn" regarding predominance, but that the court had not abused its discretion. *N.J. Carpenters*, 477 Fed.Appx. At 813. Just as in *Goldman Sachs* and *Merrill Lynch*, defendants are unable to rebut plaintiffs' argument that common questions predominate. There are no allegations that any of the plaintiffs participated in the alleged misconduct and no evidence that knowledge of the misstatements and omissions was as widespread as it was in *In re IPO*.

inferred from the slew of newspaper articles and public reports they have submitted to the Court, this again is an issue subject to generalized proof."[14]

6.  UBS raises one final argument against a finding of predominance, claiming that individual questions exist with respect to the materiality of the alleged false statements because the circumstances and extent of the alleged misconduct changed over the class period. UBS "overstate[s] the differences. While an analysis of the alleged falsity of the statements in the Offering Documents will of course entail some individualized inquiry, the common issues here overwhelm the individual ones."[15] Lehman allegedly perpetrated the fraudulent scheme over the entire class period and the language in the offering documents is substantially similar, thus raising common questions that predominate.

7.  Finally, the parties dispute whether a class action would be superior to individual FINRA arbitrations as a means of resolving the case. Four percent of the proposed class has sought relief through individual actions against UBS, largely in FINRA arbitrations.

That a large number of class members have sought to maintain separate actions militates against class certification. But, the "existence of large individual claims that are sufficient for individual suits is no bar to a class when the advantages of unitary adjudication exist to determine the defendant's liability."[16] Fewer than one in twenty class members have sought to maintain separate actions – the other nineteen out of twenty are entitled to the benefits of class treatment.[17]

This is not a case in which all of the investors have the means to maintain separate actions and invested large sums.[18] Nor is this a case where the harm to each investor is so

---

[14] *Merrill Lynch & Co., Inc.*, 277 F.R.D. at 119.

[15] *Id.* at 113 (rejecting same argument in case involving eighteen offerings, with eighteen prospectus supplements, issued over a seventeen month period).

[16] *Id.* at 120 (quoting *Bd. of Trustees AFTRA Ret. Fund v. JP Morgan Chase Bank, N.A.*, 269 F.R.D. 340, 355 (S.D.N.Y. 2010) (quoting in turn 2 Newberg on Class Actions, § 4.29 at 260 (4th ed. 2010))).

[17] *See In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 529 (S.D.N.Y. 1996); *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 429 (S.D.N.Y. 1986).

[18] *See, e.g., Kottler v. Deutsche Bank AG*, No. 05 Civ. 7773 (PAC), 2010 WL 1221809, at *5 (S.D.N.Y. Mar. 29, 2010).

8

highly individualized that each member has an interest in maintaining an individual action.[19] As such, plaintiffs have shown adequately superiority.

Lastly, FINRA arbitrations would not be superior due to manageability problems. There are no apparent difficulties in the management of this case beyond those that attend any large securities class action.

8. The Court finds that the proposed class representatives, except for Arthur Simons, are appropriate class representatives, that common questions predominate over individual ones, except with respect to the Section 12(a)(2) claims regarding the Notes' principal protection feature, that a class action would be superior to other methods for fairly and efficiently adjudicating the dispute, and that all of the other requirements of Rules 23(a) and 23(b)(3) are satisfied with respect to Class 2.

\* \* \*

The Court has considered UBS's additional arguments and finds them to be without merit.

*Conclusion*

Lead Plaintiffs' motion [DI 686] is granted to the extent that it seeks certification of a class consisting of:

> All persons and entities who purchased or otherwise acquired Lehman common stock, or purchased call options or sold put options referencing Lehman common stock between July 11, 2008 and September 14, 2008, inclusive, and who were damaged thereby. Excluded from the Class are Defendants and their respective officers, affiliates and directors, members of their immediate families and their legal representatives, heirs, successors or assigns of any such excluded party and any entity in which Defendants have or had a controlling interest,

appointment of Oklahoma as class representative, and appointment of Bernstein Litowitz Berger & Grossmann LLP and Kessler Topaz Meltzer & Check, LLP as class counsel, and is denied in all other respects.

---

[19] *See, e.g., In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 69 (S.D.N.Y. 2002).

Structured Product Plaintiffs' motion [DI 690] is granted to the extent it seeks certification of a class of:

> All persons who bought or otherwise acquired the Lehman Brothers-issued structured products sold by UBS Financial Services, Inc. that are identified in DI 691 Appendix A and on which this Court has held that plaintiffs have standing to sue, provided, however, that the Section 12(a)(2) claims regarding the principal protection feature may not be pursued on a class basis,

appointment of the proposed class representatives, except Arthur Simons, and appointment of Girard Gibbs LLP as class counsel, and is denied in all other respects.

SO ORDERED.

Dated:     January 23, 2013

_____
Lewis A. Kaplan
United States District Judge