UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re LEHMAN BROTHERS SECURITIES AND ERISA LITIGATION<br><br>This Document Applies To:<br><br>*In re Lehman Brothers Equity/Debt Securities Litigation*, 08-CV-5523-LAK | Case No. 09-MD-2017 (LAK)<br><br>ECF CASE |

# LEAD PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF DISTRIBUTION PLAN

Dated:  April 26, 2013

## **TABLE OF CONTENTS**

Page

BACKGROUND ................................................................................................................. 1

CLAIMS ADMINISTRATION .......................................................................................... 3

CLAIMS-IN-PROCESS ...................................................................................................... 6

FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ............................................. 7

DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUNDS .................................. 8

RELEASE OF CLAIMS ................................................................................................... 11

CONCLUSION .................................................................................................................. 12

Lead Plaintiffs, Alameda County Employees' Retirement Association, Government of Guam Retirement Fund, Northern Ireland Local Government Officers' Superannuation Committee, City of Edinburgh Council as Administering Authority of the Lothian Pension Fund, and Operating Engineers Local 3 Trust Fund, respectfully submit this memorandum in support of their motion for entry of the [Proposed] Order Approving Distribution Plan (the "Distribution Order") in the above-captioned action (the "Action"), as set forth in the accompanying Declaration of Stephen J. Cirami in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan (the "Cirami Declaration" or "Cirami Decl."), submitted on behalf of the Court-appointed Claims Administrator, The Garden City Group, Inc. ("GCG").[1]  If granted, the motion will permit the distribution of the Net Settlement Funds created by the settlements achieved in the Action to members of the Settlement Classes whose Proofs of Claim have been accepted as valid as recommended by GCG.[2]

## BACKGROUND

Lead Plaintiffs achieved two proposed settlements for a combined recovery of over $516 million – one with the Settling Underwriter Defendants for $426,218,000 (the "Underwriter Settlement") on behalf of the Underwriter Settlement Class, and another with the Lehman

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Cirami Declaration, the Stipulations (defined below), and the Settlement Notices (defined below).

[2] As discussed below and in the Cirami Declaration, there are some Claims that are still being processed ("Claims-in-Process").  Under the proposed distribution plan, reserves will be created by holding back part of the Net Settlement Funds to pay any of those Claims that are subsequently recommended for payment.  Those future payments will bring the approved Claims-in-Process Claimants into a state of parity with Claimants who will be paid in the proposed Initial Distribution.

directors and officers for $90 million (the "D&O Settlement") on behalf of the D&O Settlement Class.[3]

On December 15, 2011, this Court entered Pretrial Order Nos. 27 & 28 (ECF Nos. 548 and 549, respectively) (the "Notice Orders"), which, among other things, authorized Lead Counsel to retain GCG as the Claims Administrator for the Settlements.  As Claims Administrator, GCG has been responsible for, among other things, (i) printing and mailing copies of the Notice of Pendency of Class Action and Proposed Settlement with the Director and Officer Defendants, Settlement Fairness Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "D&O Settlement Notice"), the Notice of Pendency of Class Action and Proposed Settlement with the Settling Underwriter Defendants, Settlement Fairness Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "UW Settlement Notice" and, together with the D&O Settlement Notice, the "Settlement Notices"), the Proof of Claim Form, and a cover letter (the Settlement Notices, Proof of Claim Form and cover letter are collectively referred to herein as the "Notice Packet") to potential members of the D&O Settlement Class and the UW Settlement Class (together, the "Settlement Classes"); (ii)  publishing the Summary Notice; (iii) processing the Proofs of Claim submitted herein; and (iv) effectuating the distribution of the Net Settlement Funds.

On April 12, 2012, this Court held a hearing to consider the proposed Settlements.  On May 2, 2012, the Court entered its Judgment and Order Approving Settlement Between Lead

---

[3] The "Stipulations" are:  (i) the Stipulation of Settlement and Release dated October 14, 2011, between Lead Plaintiffs and the D&O Defendants (ECF No. 533-2) (the "D&O Stipulation"); (ii) the Stipulation of Settlement and Release dated December 2, 2011, between Lead Plaintiffs and the First Group of Settling Underwriter Defendants (ECF No. 533-3) (the "First Underwriter Stipulation"); and (iii) the Stipulation of Settlement and Release dated December 9, 2011, between Lead Plaintiffs and the Second Group of Settling Underwriter Defendants (ECF No. 541) (the "Second Underwriter Stipulation," and together with the D&O Stipulation and the First Underwriter Stipulation, the "Stipulations").

Plaintiffs and the Settling Underwriter Defendants (the "UW Judgment") (ECF No. 894), and on November 8, 2012, the Court entered its Judgment and Order Approving Settlement Between Lead Plaintiffs and the Settling Officers and Directors (the "D&O Judgment" and, together with the UW Judgment, the "Judgments") (ECF No. 1046).  Pursuant to the Judgments, the Court approved the respective Settlements and directed the parties to consummate the respective Settlements in accordance with the terms and provisions of the respective Stipulations.

The Effective Date of each of the Settlements has occurred and the Claims Administrator has completed the processing of all Proofs of Claim submitted in the Action with the exception of certain Claims-in-Process which GCG received on or after January 11, 2013, as discussed below.  Lead Plaintiffs have, upon notice to the settling defendants, filed this motion for approval of a distribution plan in order to be able to distribute the proceeds of the Settlements to respective members of the Settlement Classes whose Claims are approved for payment as expeditiously as possible.  Accordingly, pursuant to the Stipulations, Lead Plaintiffs respectfully ask the Court to enter the [Proposed] Order Approving Distribution Plan submitted herewith.

## **CLAIMS ADMINISTRATION**

As set forth in the accompanying Cirami Declaration, GCG mailed approximately 969,000 Notice Packets to potential members of the Settlement Classes or their nominees.  Cirami Decl. ¶5.  Under the terms of the Notice Orders and as set forth in the Settlement Notices, all members of the Settlement Classes wishing to participate in the distribution of the Net Settlement Funds were required to submit Proofs of Claim by mail, postmarked no later than May 17, 2012.  As detailed in the accompanying Cirami Declaration, through April 17, 2013, GCG has received 263,761 Proofs of Claim.  Cirami Decl. ¶8.

3

Many of the Proofs of Claim initially submitted were incomplete, not signed, not properly documented or were otherwise ineligible. Cirami Decl. ¶23. To the extent that a Proof of Claim was wholly deficient (for example, if the Proof of Claim was missing documentation for the entire Proof of Claim, if the Claimant did not sign the Proof of Claim or did not provide enough information to calculate the Proof of Claim, or if the Proof of Claim was determined to have no Net Recognized Loss when calculated under the Court-approved Plans of Allocation), GCG sent a rejection letter to the Claimant describing the defect(s) with his, her or its Proof of Claim and stating what, if anything, was necessary to cure the Proof of Claim. *Id*. ¶24. GCG also mailed rejection letters to each Claimant whose Proof of Claim was determined to be partially deficient (for example, if the Claimant was missing documentation for part of the Proof of Claim, or did not supply some transactional information), advising the Claimant of the defect(s) in the Proof of Claim and stating what was necessary to cure such defect(s), and informing that Claimant that, unless the defect(s) was cured, the Proof of Claim would only be eligible to the extent it was complete and calculated to a Net Recognized Loss. *Id*. ¶26. Consistent with the terms of the Stipulations, all rejection letters specifically advised the Claimant that he, she or it had the right, within twenty (20) days after the mailing of the rejection letter, to contest the rejection of the Claim and request Court review of the disposition of the Claim. Copies of sample rejection letters are attached as Exhibit A to the Cirami Declaration. Cirami Decl. ¶27 and Exhibit A thereto.

GCG carefully reviewed Claimants' responses to rejection letters and worked with Claimants to resolve deficiencies where possible. Cirami Decl. ¶¶23, 28-31. After responses to rejection letters were received and processed, GCG called Claimants with still-deficient Proofs

of Claim with potential Net Recognized Losses in excess of $500,000 to assist them in curing the deficiencies.  *Id.* ¶28.

As set forth in the Cirami Declaration, of the 263,361 Claims that GCG has fully processed (out of the total 263,761 claims received as of April 17, 2013), GCG has determined that 128,488 Claims are acceptable in whole or in part, and that 134,873 Claims should be wholly rejected because they are ineligible for recovery from the Net Settlement Funds.  Cirami Decl. ¶41.

The fully processed Proofs of Claim include Proofs of Claim that were postmarked after the Court-approved Claim filing deadline of May 17, 2012, which, but for their late submission, are otherwise eligible.  Cirami Decl. ¶38.  While these Claims were late, they were received while the processing of timely Claims was ongoing, and due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the claims administration process or the distribution of the Net Settlement Funds.  *Id*.  Lead Plaintiffs believe that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the Net Settlement Funds solely because it was submitted after the Court-approved claim filing deadline, when it was submitted while Claims were still being processed.[4]

In order to facilitate the efficient distribution of the Net Settlement Funds, however, there must be a final cut-off after which no other Proofs of Claim may be accepted.  Accordingly, Lead Plaintiffs respectfully request that the Court order that no Proof of Claim may be accepted

---

[4] Pursuant to its Order dated January 23, 2013 (ECF No. 1131), the Court directed that the Claim filed by Claimant Ernie Dusing shall be allowed or disallowed without regard to its filing after the May 17, 2012 deadline.  Mr. Dusing's claim is included on the list of "Late But Otherwise Eligible Claims" attached hereto as Exhibit B-2 which are being recommended for acceptance by the Court (*see* ¶¶44 and 46 of the Cirami Declaration).

5

and that no further adjustments may be made to Proofs of Claim for any reason after April 17, 2013.[5]

Lead Plaintiffs further request that the Court approve GCG's administrative determinations accepting and rejecting claims as set forth in the Cirami Declaration.

### CLAIMS-IN-PROCESS

As described above, GCG has spent a significant amount of time working with Claimants to complete their Claims. GCG has completed the processing of all Claims received before January 11, 2013, but has not yet completed its review of the Proofs of Claim received on or after that date through April 17, 2013. Cirami Decl. ¶39. Many of the Proofs of Claim submitted on or after January 11, 2013, are in good standing and, therefore, are included as valid Proofs of Claim; the remaining are deficient in whole or in part or are ineligible for recovery from the Net Settlement Funds. The processing of those ineligible Claims (which includes providing adequate time for Claimants to respond to rejection letters mailed to them) has not yet been completed. *Id*. In order to avoid a delay in the distribution for the 128,488 Claims that have been completely processed and are recommended for approval, Lead Counsel have proposed, and GCG agrees, that an Initial Distribution be made to those whose Claims have been completely processed and are recommended for approval. To the extent that any of the Claims-in-Process are ultimately determined to be eligible to participate in the respective Settlements, they will be paid from the Reserves that are proposed to be established as part of the distribution

---

[5] Lead Plaintiffs and Lead Counsel respectfully suggest that the Order provide one narrow exception to the bar on acceptance or modification of Proofs of Claim after April 17, 2013: if any Claims are received or modified after that date that would have been eligible for payment or additional payment under the Court-approved Plans of Allocation if timely received, then, at the time Lead Counsel and GCG agree that further redistribution to Authorized Claimants is not cost effective, such Claims may be paid the distribution amounts or additional distribution amounts on a *pro rata* basis to bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks to the extent possible. *See* Cirami Decl. ¶46(f).

plan.  *See* Cirami Decl. ¶¶46(b)(5) and 46(c).  GCG's recommendations as to the Claims-in-Process will be presented to the Court in a subsequent motion when processing of those Claims has been completed.[6]

## FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with GCG's agreement with Lead Counsel to act as the Claims Administrator for this Settlement, GCG was responsible for, among other things, mailing and publishing notice to the Settlement Classes, creating and maintaining a settlement website and toll-free telephone helpline, processing the Proofs of Claim, and allocating and distributing the Net Settlement Funds to Authorized Claimants.  Pursuant to the Court's November 20, 2012 Order Approving Payment of Claims Administrator Fees and Expenses (ECF No. 1055), GCG has received payment of fees and expenses in the amount of $4,859,571.50[7] for its work performed on behalf of the Settlement Classes through September 30, 2012.[8]  As reflected on the invoices attached as Exhibit C to the Cirami Declaration, GCG's fees and expenses for its work performed since September 30, 2012 through February 28, 2013, as well GCG's estimate of fees and expenses to be incurred in connection with the initial distribution of the Net Settlement Funds, total $677,474.46.  *Id*.  Lead Plaintiffs respectfully request that the Court approve payment of all of GCG's fees and expenses set forth on Exhibit C to the Cirami Declaration, and

---

[6] As noted above, Claimants were given the opportunity to request judicial review of GCG's administrative determinations to reject their Claim in whole or in part.  Through April 17, there remained 25 Claims with outstanding requests for judicial review.  Cirami Decl. ¶40.  Because it is possible that there may be additional disputed claims among the Claims-in-Process, all Claims as to which judicial review is requested will be presented to the Court as part of the request for approval of the Claims-in-Process Distribution.

[7] $17,620.54 of the interim payments received were Earnings Credits from the bank and not paid directly from the Settlement Fund.

[8] Cirami Decl. ¶45.  GCG's fees and expenses were paid from the respective Settlement Funds on a *pro rata* basis as follows:  17.43% from the D&O Settlement Fund and 82.57% from the UW Settlement Fund.

7

direct payment of such fees and expenses to GCG from the Settlement Funds on a *pro rata* basis as follows: 17.43% from the D&O Settlement Fund and 82.57% from the UW Settlement Fund.

## DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUNDS

Lead Plaintiffs respectfully request that the Court adopt the Distribution Plan for the Net Settlement Funds set forth in the Cirami Declaration which would, among other things: (i) authorize an Initial Distribution of the Net Settlement Funds to the Claimants listed in Exhibits B-1 and B-2 to the Cirami Declaration; (ii) provide for a distribution to any of the Claims-in-Process determined to be eligible, following a motion to the Court for approval of such Claims; and (iii) provide for a Second Distribution (and, if necessary, subsequent distributions) of any funds remaining after the Initial Distribution and Claims-in-Process Distribution. *See* Cirami Decl. ¶46.

**Initial Distribution Of Net Settlement Funds**

In the Initial Distribution, GCG will determine for each Authorized Claimant (i) a D&O Distribution Amount, if any, based on the Authorized Claimant's Net Recognized Losses for transactions in the D&O Eligible Securities as compared to the total Net Recognized Losses of all Authorized Claimants for transactions in the D&O Eligible Securities; and (ii) an UW Distribution Amount, if any, based on the Authorized Claimant's Net Recognized Losses for transactions in each type of UW Eligible Securities as compared to the total Net Recognized Losses of all Authorized Claimants for transactions in each type of UW Eligible Securities. *See* Cirami Decl. ¶46(b)(1). Authorized Claimants whose distribution amount is less than $10 will receive no payment from the applicable net settlement fund.[9]  *Id.* ¶46(b)(2).

---

[9] In the respective Orders approving the D&O Plan of Allocation and the UW Plan of Allocation, the Court reserved its determination regarding the $50 minimum payment threshold set forth in each Plan of Allocation pending its review of Lead Plaintiffs' Distribution Motion. Lead Plaintiffs propose, and GCG

8

After eliminating Claimants who would have received less than $10, Authorized Claimants whose UW Distribution Amount is greater than $10 but less than $100 will receive their full UW Distribution Amount ("UW Claims Paid in Full"), and Authorized Claimants whose UW Distribution Amount is $100 or more will receive 90% of their UW Distribution Amount, with the remaining 10% of their payments held in reserve (the "UW Reserve") to address any Claims-in-Process that ultimately are determined to be eligible to participate in the UW Settlement, and for any other contingencies that may arise. Cirami Decl. ¶¶46(b)(4)(ii) and (5)(ii).  The same process will be used for the D&O Settlement.  *Id.* ¶¶46(b)(4)(i) and 5(i).

In order to encourage Authorized Claimants to cash their checks promptly, and to avoid or reduce future expenses relating to uncashed checks, Lead Plaintiffs propose that the Initial Distribution checks (and the checks issued pursuant to the Claims-in-Process Distribution described below) bear the notation, "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE DATE]."  In an effort to have as many Authorized Claimants as possible cash their checks, GCG will perform follow up with Authorized Claimants who initially fail to cash their checks.  Cirami Decl. ¶46(b)(6) n.11.  Authorized Claimants who do not cash their Initial Distribution checks (or, as applicable, Claims-in-Process Distribution checks) within the time allotted or on the conditions set forth in paragraph 46(b)(6) footnote 11 of the Cirami Declaration will irrevocably forfeit all

---

agrees, that the minimum payment threshold should be set at $10 for each Settlement given the administrative costs involved and to prevent depletion of the Settlement Funds to pay *de minimis* claims.  *See, e.g., In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) ("Securities Lead Counsel acted reasonably in including a $10 *de minimis* threshold in the allocation plan, in order to preserve the settlement fund from excessive and unnecessary expenses in the overall interests of the class as a whole."); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *9 (E.D.N.Y. Apr. 19, 2007) ("*de minimis* thresholds for payable claims are beneficial to the class as a whole since they save the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs and courts have frequently approved such thresholds, often at $10.").

recovery from the applicable Settlements, and the funds allocated to all such stale-dated checks will be available to be redistributed to other Authorized Claimants in the "Second Distribution" described below. *Id*. ¶46(b)(7).

**Claims-In-Process Distribution**

When GCG has completed the processing of the Claims-in-Process, Lead Counsel will move the Court for approval of GCG's determinations with respect to those Claims (including those Claims as to which judicial review has been requested), and upon entry of an order by the Court approving such Claims for payment, GCG will make the Claims-in-Process Distribution to those Claimants using the same pro ration factors that were calculated in the Initial Distribution, thereby bringing those Claimants into parity with the Claimants approved for payment from the respective Net Settlement Funds pursuant to the current motion. *See* Cirami Decl. ¶46(c).

**Second/Additional Distribution(s) Of Net Settlement Funds**

Pursuant to the proposed Distribution Plan, GCG will conduct a second distribution (the "Second Distribution") of the Net Settlement Funds pursuant to which any amounts remaining in the relevant Net Settlement Fund one (1) year after the Claims-in-Process Distribution (including the applicable Reserve and the funds for all void stale-dated checks), after deducting GCG's unpaid costs and expenses incurred in connection with administering the applicable Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any estimated taxes and the costs of preparing appropriate tax returns, will be distributed to all Authorized Claimants from the Initial Distribution and the Claims-in-Process Distribution who (1) were not Claims Paid in Full and (2) cashed their Initial Distribution check or Claims-in-Process Distribution check. Cirami Decl. *Id.* ¶46(d). If cost effective, subsequent distributions of the funds remaining in the D&O Net Settlement Fund and/or the UW Net Settlement Fund will take place in six-month intervals. *Id.* ¶46(e)(1). At

10

such time as GCG and Lead Counsel determine that further redistribution of the funds remaining in the Net Settlement Funds is not cost-effective, any otherwise valid late or late adjusted claims received after April 17, 2013, will be paid in accordance with footnote 5 above. If any funds remain in a Net Settlement Fund after payment of such late or late adjusted claims, the remaining balance, after payment of unpaid claims administrator or escrow costs or fees and taxes, shall be contributed to non-sectarian, not-for-profit 501(c)(3) organizations recommended by Lead Counsel and approved by the Court. *Id.* ¶46(e)(2).

## RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Funds, it is necessary to bar any further claims against the Net Settlement Funds beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Funds or the Net Settlement Funds, be released and discharged from any and all claims arising out of such involvement. Accordingly, Lead Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Funds or the Net Settlement Funds from any and all claims arising out of such involvement, and bar all members of the Settlement Classes, whether or not they receive payment from the Net Settlement Funds, from making any further Claims against the Net Settlement Funds, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Funds or the Net Settlement Funds beyond the amounts allocated to Authorized Claimants.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that Lead Plaintiffs' Motion for Approval of Distribution Plan should be approved, and the proposed Order Approving Distribution Plan should be entered.

Dated: April 26, 2013

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

    /s/ David R. Stickney
DAVID R. STICKNEY

MAX W. BERGER
STEVEN B. SINGER
1285 Avenue of the Americas, 38th Floor
New York, NY  10019
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444
    -and-
DAVID R. STICKNEY
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:  (858) 793-0323

**KESSLER TOPAZ
  MELTZER & CHECK, LLP**

    /s/ David Kessler
DAVID KESSLER

DAVID KESSLER
JENNIFER L. ENCK
280 King of Prussia Road
Radnor, PA  19087
Telephone:  (610) 667-7707
Facsimile:  (610) 667-7056

*Co-Lead Counsel for Lead Plaintiffs
and the Settlement Classes*