UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
In re:

LEHMAN BROTHERS SECURITIES AND
ERISA LITIGATION

09 MD 2017 (LAK)


This document applies to:

*Fifty-Ninth Street Investors LLC and
Arthur N. Abbey v. Fuld, et al.*, 11 Civ. 4278 (LAK)

*Avi Schron and Adina Schron, JTWROS v. Fuld*,
11 Civ. 5112 (LAK)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**MEMORANDUM OPINION**


Appearances:


Stephen T. Rodd
Richard B. Margolies
ABBEY SPANIER, LLP
*Attorneys for Plaintiff*


Joshua Klein
Guy Petrillo
PETRILLO KLEIN & BOXER LLP
*Attorneys for Defendant Christopher M. O'Meara*


Patricia M. Hynes
Todd S. Fishman
ALLEN & OVERY LLP
*Attorneys for Defendant Richard S. Fuld, Jr.*

2

Lewis A. Kaplan, *District Judge.*

Plaintiffs, account holders at JP Morgan Securities Inc. ("JPMS"), purchased 5-Year Cash Settled Call Warrants (the "Warrants") from Lehman Brothers Holdings, Inc. ("LBHI") through an unregistered offering on June 22, 2007.[1]   Though the warrants were designed to track the performance of a JP Morgan-owned hedge fund, the payoff at the end of the Warrants' five-year term was a "general unsecured obligation[] of LBHI," thus exposing the Warrants also to LBHI's credit risk.[2]   As a result, LBHI's financial condition, plaintiffs claim, was "a material consideration in Plaintiffs' determinations to invest in the Warrants."[3]   Plaintiffs allege that the Warrants became worthless after LHBI filed for bankruptcy in September 2008.[4]

Plaintiffs bring claims against Richard S. Fuld, Jr. and Chrisopher M. O'Meara (collectively, the "defendants")[5] under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934

---

[1]   Am. Compl. ¶ 1.

[2]   *Id.* ¶ 3.

[3]   *Id.*

[4]   *Id.* ¶¶ 3-4.

[5]   Fuld was the chairman of LBHI's board of directors and the chief executive officer of the company. (*Id.* ¶ 7.)  O'Meara was the chief financial officer, controller, and executive vice president of LBHI. (*Id.* ¶ 8.)

(the "Exchange Act")[6] and for common law fraud.[7]  They claim that the offering memorandum pursuant to which plaintiffs purchased the Warrants was "false and misleading because it incorporated by reference" LBHI's 2006 Form 10-K and 2007 first quarter Form 10-Q (the "SEC Filings"), which in turn contained "misleading statements and omissions" related to particular accounting practices that allegedly concealed LBHI's financial vulnerability.[8]  Defendants allegedly "certified the veracity"of the SEC Filings.[9]  Plaintiffs allege that they would not have purchased the Warrants had they known of LBHI's use of those accounting practices to conceal the company's frailty.[10]

The defendants move to dismiss the amended complaints, contending that plaintiffs have failed adequately to allege claims under the Exchange Act and for common law fraud.  Although the Court previously has passed on the legal sufficiency of allegations similar to plaintiffs in the third amended complaint in the class action[11] and the consolidated first amended complaint in a group of

---

[6]

15 U.S.C. §§ 78j(b), 78t.

[7]

Plaintiffs assert claims under Section 10(b) of the Exchange Act against Ernst & Young as well.  Ernst & Young separately moves to dismiss this claim.

[8]

These accounting practices – referred to as "Repo 105" and "Repo 108" in plaintiffs' amended complaint – are described at length in the Court's earlier rulings in this case.  *See In re Lehman Bros. Sec. & Erisa Litig.*, 903 F. Supp. 2d 152 (S.D.N.Y. 2012) [hereinafter, the "*California Cases*"]; *In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258 (S.D.N.Y. 2011) [hereinafter,"*E/D Class Action*"].

[9]

Am. Compl. ¶¶ 7-8.

[10]

*Id.* ¶ 4.

[11]

*E/D Class Action*, 799 F. Supp. 2d 258 (S.D.N.Y. 2011) .

4

cases brought principally by California municipalities,[12] several aspects of defendants' motion bear particular mention.

*Plaintiffs' Claims Under Section 10(b) of the Exchange Act*

Defendants contend that plaintiffs' allegations fail to state a claim because they do not allege "that the [] Defendants *made* the statements in the Offering Memorandum" or "that the [] Defendants signed the Offering Memorandum or even participated in the offer or sale of the Warrants."[13]  They argue also that plaintiffs have failed adequately to plead actual reliance which they assert is required in the absence of a "fraud-on-the-market" presumption.

*1.*   *Did Defendants "Make" the Statements?*

Defendants argue that they cannot be considered to have been "makers" of the statements at issue for the purposes of Section 10(b) liability under the Supreme Court's decisions in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,[14] and *Janus Capital Group, Inc. v. First Derivative Traders*.[15]  Defendants' argument is unpersuasive.

The plaintiffs in *Janus* sued Janus Capital Group ("JCG") and Janus Capital

---

[12]

*California Cases*, 903 F. Supp. 2d 152 (S.D.N.Y. 2012).

[13]

Memorandum of Law in Support of Richard S. Fuld's and Christopher M. O'Meara's Mot. To Dismiss the Amended Complaints [DI 591], at 3.

[14]

552 U.S. 148 (2008).

[15]

__ U.S. __, 131 S. Ct. 2296 (2011).

Management ("JCM") for alleged misstatements in prospectuses issued by Janus Investment Fund, a separate legal entity owned by mutual fund investors. Though the Court acknowledged that JCM, "like a speechwriter," may have helped to draft the prospectuses, the Court held that JCM could not be considered a "maker" of the statements because the prospectuses at issue were not attributed to JCM, and JCM's "assistance" was "subject to the ultimate control of Janus Investment Fund."[16] The Court ruled that "the maker of a statement," for the purposes of Rule 10b-5, "is the person or entity with the ultimate authority over the statement, including its content and whether and how to communicate it."[17]

In *Stoneridge*, the Supreme Court declined to extend Section 10(b) liability to entities that knowingly participated in transactions that permitted another company to mislead its auditor for the purpose of inflating its financial statements. Plaintiffs argued that, had the entities not participated in the deceptive transactions, the company at issue would not have succeeded in duping the auditor, and the financial statements would have been accurate.[18] The Court held that plaintiff could not "show reliance upon any of [the defendant's] actions except in an indirect chain" that the Court found "too remote for liability" under Section 10(b) because the defendants' actions were concealed from the public.[19] As the Court later clarified in *Janus*, the operative analysis for the

---

[16] *Id.* at 2305.

[17] *Id.*

[18] 552 U.S. at 161.

[19] *Id.* at 160.

purposes of determining whether a defendant is subject to Section 10(b) liability is whether the
defendant's conduct "made it necessary or inevitable" that "any falsehood will be contained in the
statement."[20]

       Neither *Janus* nor *Stoneridge* applies here. Although defendants did not sign the
offering memorandum, the misstatements and omissions at issue in this case relate to the SEC Filings
incorporated in it, which defendants are alleged to have certified.[21] Defendants undoubtedly had
"ultimate authority" over their content as chief executive officer and chief financial officer of LBHI,
respectively,[22] and the filings were explicitly attributed to LBHI in the offering memorandum.[23] As a

---

[20]

       *Janus*, 131 S. Ct. at 2303 (quoting *Stoneridge*, 552 U.S. at 161).

[21]

       Am. Compl. ¶ 26; *see also, e.g.*, *id.* ¶¶ 84 ("The Individual Defendants . . . understood the
fraudulent effect of the omission of the Repo 105 transactions on LBHI's reported
financials, in particular the 2006 Annual Report and the 1Q 2007 Report, and certified the
2006 Annual Report and 1Q 2007 [Report]."), 86 ("Defendants' misconduct induced
Plaintiffs to acquire the Warrants in reliance on [the] accuracy of LBHI's 2006 Annual
Report and 1Q2007 Report.").

[22]

       *See, e.g.*, *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 473 (S.D.N.Y. 2012)
*aff'd*, 12-3859, 2013 WL 1982534 (2d Cir. May 15, 2013) ("In the post-*Janus* world, an
executive may be held accountable where the executive had ultimate authority over the
company's statement; signed the company's statement; ratified and approved the company's
satement; or where the statement is attributed to the executive."); *see also In re BISYS Sec.
Litig.*, 397 F. Supp. 2d 430, 438 (S.D.N.Y. 2005) (noting that, under the group pleading
doctrine, plaintiffs may rely on a presumption that written statements such as annual reports
are the "collective work of those individuals with direct involvement in the everyday
business of the company"(internal citation omitted)).

[23]

       Margolies Decl. [DI 734] Ex. A at 30.

       It is of no moment that the SEC Filings in the offering memorandum were attributed to
LBHI rather than defendants. As another court has observed, "*Janus* does not alter the well-
established rule that 'a corporation can act only through its employees and agents.' It
certainly cannot be read to restrict liability for Rule 10b-5 claims against corporate officers
to instances in which a plaintiff can plead, and ultimately prove, that those officers – as
opposed to the corporation itself – had 'ultimate authority' over the statement." *In re Merck*

result, result, defendants are appropriately considered to have been "makers" of the statements at issue under *Janus*.

      *Stoneridge* does not change this analysis.  Defendants argue that, like the defendants in *Stoneridge*, their "certification of the Relevant SEC Filings was too remote from the offering of the Warrants" for Section 10(b) liability to apply.[24]  On the contrary, it was defendants' certification of the allegedly misleading SEC Filings that made it "necessary or inevitable" that the offering memorandum would incorporate misleading indicators of LBHI's financial health, and plaintiffs allege that it was misstatements or omissions in the SEC Filings that induced them to purchase the Warrants.[25]  Accordingly, the limitations *Stoneridge* places on Section 10(b) liability do not apply to preclude defendants' liability here.

### 2.    *Did Plaintiffs Plead Adequately Reliance?*

      Defendants contend also that plaintiffs have failed adequately to plead reliance.  Because "there was no market for the Warrants,"[26] plaintiffs cannot (and do not) assert the "fraud-on-

---

      *& Co., Inc. Sec., Deriv. & ERISA Litig.*, MDL No. 1658, 2011 WL 3444199, at *25 (D.N.J. Aug. 8,  2011) (internal citation omitted).

[24]      DI 591, at 5.

[25]      Am. Compl. ¶ 86.

[26]      *Id.* ¶ 22.

8

the-market" presumption.[27]  As a result, plaintiffs must satisfy the elements of either the rebuttable

presumption afforded by *Affiliated Ute Citizens of Utah v. United States*[28] or allege actual reliance.

Under *Affiliated Ute*, actual reliance is not required to state a claim under Section 10(b)

if a plaintiff has alleged both that its claims for fraud are premised on a defendant's material

omissions.[29]  If the plaintiff sufficiently alleges that the omission was material, "the burden shifts to

the defendant to establish . . . that the plaintiff did not rely on the omission in making the investment

decision."[30]  A plaintiff does not have the benefit of the presumption afforded under *Affiliated Ute* if

the alleged omissions merely "exacerbate[] the misleading nature of [] affirmative statements,"[31] but

the presumption applies if the omissions "played an independent, or at least interdependent, role in the

alleged fraud."[32]

Distinguishing between "independent" omissions and those that would merely have

corrected an earlier, misleading disclosure is difficult because "[t]he distinction between misstatements

---

[27]

    *Erica P. John Fund, Inc. v. Halliburton Co.*, __ U.S. ___, 131 S. Ct. 2179, 2185 (2011) (noting that "plaintiffs must demonstrate . . . that the stock traded in an efficient market" in order to invoke a fraud-on-the-market rebuttable presumption of reliance).

[28]

    406 U.S. 128 (1972).

[29]

    *Id.* at 153-54.

[30]

    *duPont v. Brady*, 828 F.2d 75, 76 (2d Cir. 1987).

[31]

    *Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 n.5 (2d Cir. 2005).

[32]

    *In re Parmalat Sec. Litig.*, No. 04 MD 1653, 2008 WL 3895539, at *8 (S.D.N.Y. Aug. 21, 2008), *vacated in part on other grounds sub nom Parmalat Capital Fin. Ltd. v. Bank of Amer. Corp.*, 639 F.3d 572 (2d Cir. 2011).

and omissions is often illusory."[33]  The cornerstone of the inquiry therefore must be the rationale for

the doctrine: "reliance as a practical matter is impossible to prove" where, as in *Affiliated Ute*, "no

positive statements exist."[34]

Defendants argue that *Affiliated Ute* does not apply because the amended complaints

merely "allege a misrepresentation about the Lehman leverage ratios and omissions that would have

corrected the misrepresentation."[35]  Plaintiffs respond that, although defendants made false and

misleading statements in the SEC Filings and offering memorandum,[36] upon which they relied,[37] the

root of their claim is that the SEC Filings omitted "any mention of the Repo 105 transactions and how

those transactions materially affected the leverage ratios and other balance sheet metrics contained

within the filing."[38]

Defendants are correct.  The *Affiliated Ute* doctrine does not apply to cases where, as

here, plaintiffs could – and, indeed, did – plead reliance on certain of defendants' statements.  Plaintiffs

---

[33]    *In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 47 (S.D.N.Y. 2013).

[34]    *Wilson v. Comtech Telecomm'ns., Corp.*, 648 F.2d 88, 93 (2d Cir. 1981); *see also Titan Grp., Inc. v. Faggen*, 513 F.2d 234, 239 (2d Cir. 1975) ("[I]n instances of total non-disclosure, as in *Affiliated Ute*, it is of course impossible to demonstrate reliance.").

[35]    Reply Memorandum of Law In Support of Richard S. Fuld's and Christopher M. O'Meara's Mot. To Dismiss the Amended Complaints [DI 769], at 6.

[36]    Am. Compl. ¶ 49.

[37]    *Id.* ¶ 26.

[38]    *Id.* ¶ 57; *see also* Plaintiffs Fifty-Ninth Street Investors LLC et al. Opp. to Defendants' Mots. to Dismiss [DI 733], at 23 ("While the Amended Complaints allege fraud in terms of both misrepresentations and omissions, this case is primarily about fraudulent concealment.").

assert that they "were entitled to and did justifiably rely on the integrity of information contained in the Offering Memorandum, including the incorporated [SEC] filings."[39] That defendants did not disclose the fact that the leverage ratios upon which plaintiffs relied were premised on allegedly fraudulent transactions does not mean that plaintiffs' claims are premised on omissions for the purposes of the *Affiliated Ute* presumption.  The presumption is not intended for cases in which a party's injury was allegedly caused by reliance on an affirmative statement that, through further disclosure, would eventually be proven false.  Every misrepresentation could be characterized as  an omission if it were defined in terms of the absence of the information that would correct the misrepresentation.  Instead, the *Affiliated Ute* presumption applies only in circumstances in which there are no affirmative statements upon which plaintiffs could have relied.[40]  Because that is not the situation here, plaintiffs do not have the benefit of the doctrine for the purposes of pleading reliance.

Because plaintiffs do not have the benefit of the presumption of reliance, plaintiffs must allege that they actually relied upon the alleged misrepresentations in purchasing the Warrants in order to state a claim.  "[A] plaintiff can demonstrate reliance [] by showing that he was aware of a company's statement and engaged in a relevant transaction . . . based on that specific

---

[39]

Am. Compl. ¶ 26.

[40]

*Titan*, 513 F.2d at 238-39 ("[T]he [*Affiliated Ute*] Court, rather than abolishing reliance as a prerequisite to recovery, was recognizing the frequent difficulty in proving, a practical matter, that the alleged misrepresentation, allegedly relied upon, caused the injury. . . . Unlike instances of affirmative misrepresentation where it can be demonstrated that the injured party relied upon affirmative statements, in instances of total non-disclosure, as in *Affiliated Ute*, it is of course impossible to demonstrate reliance." (internal citations omitted)).

11

misrepresentation."[41] Plaintiffs' allegations fail to rise to the requisite level of specificity. They allege that they "reli[ed] upon the integrity" of the offering memorandum and SEC Filings in purchasing the Warrants,[42] but do not allege that they read the SEC Filings or that they purchased the Warrants in direct reliance upon the specific misrepresentations cited in the amended complaint. As a result, plaintiffs' claims under Section 10(b) are dismissed.

*Plaintiffs' Claims under Section 20(a) of the Exchange Act*

To state a claim for control person liability under Section 20(a), plaintiffs must allege an underlying primary violation, the defendant's control over the primary violator, and the defendant's culpable participation in the primary violation.[43] The plaintiffs fail to allege any primary violation; thus, they cannot establish control person liability.

*Plaintiffs' Claims for Common Law Fraud*

Plaintiffs assert claims of fraud under New York common law as well, which requires that plaintiffs allege actual reliance for misrepresentations and omissions.[44] As established above, the

---

[41]

*See Erica P. John Fund*, 131 S. Ct. at 2185.

[42]

Am. Compl. ¶¶ 27, 76.

[43]

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

[44]

Courts in this district have consistently declined to apply the *Affiliated Ute* presumption of reliance to claims for common law fraud under New York law. *See, e.g., Int'l Fund Management S.A. v. Citigroup, Inc.*, 822 F. Supp. 2d 368, 387 (S.D.N.Y. 2011); *Feinberg v. Katz*, No. 01 Civ. 2739, 2007 WL 4562930, at *5-6 (S.D.N.Y. Dec. 21, 2007).

12

plaintiffs have failed to do so. Accordingly, the plaintiffs' claims for common law fraud are dismissed.[45]

*Conclusion*

For the foregoing reasons, the defendants' motion to dismiss the amended complaints (MDL Dkt. 591) is granted. Any application for leave to amend shall be filed within 14 days.

SO ORDERED.

Dated:          October 22, 2013

_____

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[45]          Defendants do not argue that plaintiffs' common law claims are precluded by The Securities Litigation Uniform Standards Act ("SLUSA"). The Court therefore does not reach the question whether SLUSA applies here.