**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re LEHMAN BROTHERS SECURITIES AND ERISA LITIGATION | Case No. 09-MD-2017 (LAK) |
| This Document Applies To: | |
| *In re Lehman Brothers Equity/Debt Securities Litigation*, 08-CV-5523 (LAK) | ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF**
**LEAD COUNSEL'S MOTION FOR AN AWARD OF**
**ATTORNEYS' FEES AND REIMBURSEMENT OF**
**LITIGATION EXPENSES IN CONNECTION WITH THE EY SETTLEMENT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

TABLE OF ABBREVIATIONS ............................................................ v

PRELIMINARY STATEMENT ........................................................... 1

ARGUMENT ..................................................................................... 3

I.    THE REQUESTED FEE IS FAIR AND REASONABLE AND SHOULD
      BE APPROVED ........................................................................ 3

      A.    Plaintiffs' Counsel Are Entitled To An Award Of Attorneys' Fees
            From The Common Fund ..................................................... 3

      B.    The Requested Fee Is Strongly Supported By The *Goldberger*
            Factors ............................................................................ 4

            1.    The Time And Labor Expended By Plaintiffs' Counsel
                  Support The Requested Fee ........................................ 5

            2.    The Action's Magnitude And Complexity Support The
                  Requested Fee ......................................................... 9

            3.    The Risks Of The Litigation Support The Requested Fee ......... 9

            4.    The Quality Of Plaintiffs' Counsel's Representation
                  Supports The Requested Fee ...................................... 11

            5.    The Fee Request Is Fair And Reasonable In Relation To
                  The Settlement Amount ............................................ 12

            6.    Public Policy Considerations Support The Requested Fee ....... 13

      C.    The Reaction Of The Settlement Class To Date Supports The
            Requested Fee .................................................................. 14

II.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND
      WERE NECESSARILY INCURRED TO ACHIEVE THE
      SETTLEMENT ........................................................................ 15

CONCLUSION ................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*,
   No. 03 MDL 1529 LMM, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006)..............................12

*Basic Inc. v. Levinson*,
   485 U.S. 224, 108 S. Ct. 978 (1988).....................................................................................2

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299, 105 S. Ct. 2622 (1985)...................................................................................4

*In re Bisys Sec. Litig.*,
   No. 04 Civ. 3840 (JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007) ..............................7, 8

*In re Blech Sec. Litig.*,
   Nos. 94 CIV 7696 (RWS), 95 CIV 6422 (RWS), 2000 WL 661680 (S.D.N.Y.
   May 19, 2000)........................................................................................................................3

*Boeing Co. v. Van Gemert*,
   444 U.S. 472, 100 S. Ct. 745 (1980).....................................................................................3

*In re Cardinal Health Inc. Sec. Litig.*,
   528 F. Supp. 2d 752 (S.D. Ohio 2007) .................................................................................7

*In re China Sunergy Sec. Litig.*,
   No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011).............................15

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-cv-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010).......................................7, 12

*Cornwell v. Credit Suisse Grp.*,
   No. 08 Civ. 03758 (VM) Order (S.D.N.Y. July 20, 2011) ....................................................7

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02 Civ. 3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..............................7, 9, 13, 15

*Fogarazzo v. Lehman Bros., Inc.*,
   No. 03 Civ. 5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ...................................9

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ...........................................................................................4

*In re Global Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) ..........................................................................15

*Goldberger v. Integrated Resources, Inc.*,
    209 F.3d 43 (2d Cir. 2000)........................................................................1, 3, 9

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    No. 13-317, 134 S. Ct. 636, 187 L. Ed. 415 (Mem) (Nov. 15, 2013)........................2

*Hicks v. Morgan Stanley*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...............4

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009)........................................................13

*J.I. Case Co.* v. *Borak*,
    377 U.S. 426, 432, 84 S. Ct. 1555 (1964)....................................................4

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................................................8, 13

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ..........................................................12, 13

*McDaniel v. County of Schenectady*,
    595 F.3d 411 (2d Cir. 2010)...................................................................1, 9

*Missouri v. Jenkins*,
    491 U.S. 274, 109 S. Ct. 2463 (1989).............................................................7

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ...................................................................8

*In re Priceline.com, Inc. Sec. Litig.*,
    No. 00CV1884 (AVC), 2007 U.S. Dist. LEXIS 52538 (D. Conn. July 20, 2007).................13

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ...................................................................9

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    No. 01-CV-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004).................11

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................4, 7, 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308, 127 S. Ct. 2499 (2007)..........................................................4

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989) ...........................................................6, 7

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ...............................4, 7, 13

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................................................7

<u>STATUTES, RULES & REGULATIONS AND SECOND AUTHORITIES</u>

15 U.S.C. § 78u-4 ...........................................................................................................................11

Federal Rules of Civil Procedure
    Rule 23(h) ...................................................................................................................................1

Public Company Accounting Oversight Board AU § 722.07 ......................................................10

**TABLE OF ABBREVIATIONS**

| ABBREVIATION | DEFINED TERM |
|---|---|
| "ACERA" | Alameda County Employees' Retirement Association |
| "Action" | *In re Lehman Brothers Equity/Debt Securities Litigation*, 08 Civ. 5523 (LAK) |
| "Bernstein Litowitz" | Bernstein Litowitz Berger & Grossmann LLP |
| "Claim Form" or "Proof of Claim Form" | Form that claimants must complete and submit or have already submitted in connection with either the D&O Settlement or UW Settlements in order to be potentially eligible to share in the distribution of the proceeds of the Settlement |
| "Complaint" or "TAC" | The Third Amended Class Action Complaint filed with the Court on April 23, 2010 (ECF No. 212) |
| "D&O Defendants" | Former Lehman officers Richard S. Fuld, Jr., Christopher M. O'Meara, Joseph M. Gregory, Erin Callan, and Ian Lowitt; and former Lehman directors Michael L. Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman, and John D. Macomber |
| "D&O Settlement" | The $90 million dollar settlement with the D&O Defendants in this Action approved by order of the Court dated May 24, 2012 (ECF No. 414) |
| "EY" or "E&Y" | Defendant Ernst & Young LLP |
| "*Equity/Debt* Action" or "*Equity/Debt*" | *In re Lehman Brothers Equity/Debt Securities Litigation*, 08 Civ. 5523 (LAK) |
| "Examiner" | Anton R. Valukas, Esq., the court-appointed examiner in Lehman's Chapter 11 bankruptcy proceedings, *In re Lehman Brothers Holdings Inc.*, 08-13555 (JMP) (Bankr. S.D.N.Y.) |
| "Examiner's Report" | Report of Anton R. Valukas, Examiner, dated March 11, 2010 |
| "Exchange Act" | Securities Exchange Act of 1934 |
| "Fee and Expense Application" | Lead Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses on behalf of all Plaintiffs' Counsel |
| "Fee Memorandum" | The Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses in Connection with the EY Settlement |
| "GCG" | The Garden City Group, Inc., the Court-approved claims administrator for the Settlement |
| "GGRF" | Government of Guam Retirement Fund |
| "Individual Action Plaintiffs" | Plaintiffs named in the Individual Actions who do not request removal from the excluded list in accordance with the Stipulation and the Notice |

| ABBREVIATION | DEFINED TERM |
|---|---|
| "Individual Actions" | The actions listed on Appendix C to the Stipulation |
| "Joint Declaration" | Joint Declaration of David Stickney and David Kessler in Support of (A) Plaintiffs' Motion for Final Approval of Class Action Settlement with Defendant EY and Approval of Plan of Allocation and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses |
| "Kessler Topaz" | Kessler Topaz Meltzer & Check, LLP |
| "Lead Counsel" | Bernstein Litowitz and Kessler Topaz |
| "Lead Plaintiffs" | ACERA, GGRF, NILGOSC, Lothian, and Operating Engineers |
| "Lehman" or "Company" | Lehman Brothers Holdings Inc. |
| "Lothian" | The City of Edinburgh Council as Administering Authority of the Lothian Pension Fund |
| "NILGOSC" | Northern Ireland Local Governmental Officers' Superannuation Committee |
| "Notice" | Notice of Pendency of Class Action and Proposed Settlement with Defendant Ernst & Young LLP, Settlement Fairness Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses |
| "Notice Order" | Order Concerning Proposed Settlement With Defendant Ernst & Young LLP filed December 3, 2013 (ECF No. 542) |
| "Notice Packet" | The Notice, Claim Form and a cover letter, sent to potential members of the Settlement Class |
| "Oklahoma FF" | Oklahoma Firefighters Pension and Retirement System |
| "Operating Engineers" | Operating Engineers Local 3 Trust Fund |
| "Plaintiffs" or "Settlement Class Representatives" | Lead Plaintiffs and Oklahoma FF |
| "Plaintiffs' Counsel" | Lead Counsel and all other legal counsel who, at the direction and under the supervision of Lead Counsel, represent any Plaintiffs in the Action, including the following: Grant & Eisenhofer P.A.; Kirby McInerney LLP; Labaton Sucharow LLP; Law Offices of Bernard M. Gross, P.C.; Murray Frank LLP; Saxena White P.A.; and Spector Roseman Kodroff & Willis, P.C. |
| "PSLRA" | The Private Securities Litigation Reform Act of 1995 |

| ABBREVIATION | DEFINED TERM |
|---|---|
| "Repo 105" | A repurchase agreement (*i.e.*, a "repo") that Lehman accounted for as a sale instead of a financing, which removed the assets from Lehman's balance sheet. In a second step, Lehman used the cash obtained in exchange for the assets to pay down other liabilities. The Repo 105 transactions reduced the size of Lehman's balance sheet and reduced its net leverage ratio. The transactions were called Repo 105 because Lehman provided 5% overcollateralization. Repo 105 and Repo 108 are referred to collectively as "Repo 105" |
| "Repo 108" | Similar to Repo 105 transactions, except Lehman provided 8% overcollateralization instead of 5% |
| "SEC" | U.S. Securities and Exchange Commission |
| "Securities Act" | Securities Act of 1933 |
| "Settlement Amount" | $99 million in cash |
| "Settlement Class" | All investors who (a) purchased or otherwise acquired Lehman Securities identified in Appendix A to the Stipulation, (b) purchased or otherwise acquired Lehman Structured Notes identified in Appendix B to the Stipulation, and/or (c) purchased or otherwise acquired Lehman common stock or call options and/or sold Lehman put options, during the Settlement Class Period (*i.e.*, the period between June 12, 2007 and September 15, 2008, through and inclusive). Excluded from the Settlement Class are (i) the named defendants in the Complaint, (ii) Lehman, (iii) the executive officers and directors of each Defendant or Lehman, (iv) any entity in which any Defendant or Lehman have or had a controlling interest, (v) members of any Defendant's immediate families, (vi) the plaintiffs named in the actions listed on Appendix C to the Stipulation who do not request removal from the excluded list in accordance with Paragraph 34 of the Stipulation, (vii) any person or entity that has (a) litigation claims in any forum against EY arising out of the purchase of Lehman Securities during any portion of the Settlement Class Period and received a judgment, or (b) settled and released claims against EY arising out of the purchase of Lehman Securities during any portion of the Settlement Class Period (as identified on a confidential exhibit that will be produced by EY on a confidential basis to the Claims Administrator, but shall not be provided to Lead Counsel or Lead Plaintiffs or to any other person or entity), and (viii) the legal representatives, heirs, successors or assigns of any such excluded party. Also excluded from the Settlement Class |

| ABBREVIATION | DEFINED TERM |
|---|---|
| | are any persons or entities who exclude themselves by filing a timely request for exclusion in accordance with the requirements set forth in the Notice |
| "Settlement Class Period" | The period between June 12, 2007 and September 15, 2008, through and inclusive |
| "Settlement Fairness Hearing" or "Final Approval Hearing" | The hearing scheduled for April 15, 2014 at 4:30 p.m. at which the Court will consider, among other things, whether the Settlement, the Plan of Allocation and Lead Counsel's Fee and Expense Application are fair, reasonable and adequate |
| "Settlement Memorandum" | The Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement with Defendant Ernst & Young LLP and Approval of Plan of Allocation |
| "SNP Settlement" | The settlement with UBSFS for $120 million related to Lehman structured notes that was approved by order of the Court on December 13, 2013 (ECF No. 544) |
| "Stipulation" | Stipulation and Agreement of Settlement between Plaintiffs and EY dated as of November 20, 2013 |
| "Summary Notice" | Summary Notice of Pendency of Class Action and Proposed Settlement with EY, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses |
| "UBSFS" | UBS Financial Services, Inc. |
| "UW Defendants" | The underwriters named as defendants in the Action and with whom settlements were reached, as approved by the Court on May 2, 2012 (ECF No. 397) |
| "UW Settlements" | The settlements in this Action with the UW Defendants totaling $426,218,000 approved by order of the Court on May 2, 2012 (ECF No. 397) |

Court-appointed Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") (the firms together, "Lead Counsel"), respectfully submit this memorandum in support of their motion, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, for an award of attorneys' fees and reimbursement of litigation expenses that were reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the above-captioned action ("Action") against Defendant Ernst & Young LLP ("EY").[1]

## PRELIMINARY STATEMENT

Lead Counsel have successfully recovered $99,000,000 in cash from EY for the benefit of the Settlement Class.  A recovery at this level was only possible through the extensive efforts of Lead Counsel developing a compelling case over three and one-half years, after the case had reached advanced stages, and the defendant recognized its risk of continued litigation.  For their accomplishment and with the approval of the Plaintiffs, Lead Counsel, on behalf of Plaintiffs' Counsel, request a fee award in the amount of $29.7 million, and reimbursement of Plaintiffs' Counsel's litigation expenses in the amount of $4,279,706.87, to be paid out of the EY Settlement Amount.

As set forth below, the fee request is supported by the factors set forth in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000).  Furthermore, under the lodestar approach permitted by the Second Circuit, *see McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010), the fee request represents a substantial negative multiplier on Plaintiffs' Counsel's lodestar of $47,028,506.36.[2]

---

[1] Lead Counsel are simultaneously submitting the Joint Declaration of David Stickney and David Kessler in Support of (A) Plaintiffs' Motion for Final Approval of Class Action Settlement with Defendant Ernst & Young LLP and Approval of Plan of Allocation and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Joint Declaration" or "Joint Decl.").

[2] As detailed in Plaintiffs' Counsel's declarations attached to the Joint Declaration as Exhibits 2A-2I, the time and resulting lodestar included in the instant submission was not previously included in any lodestar submission in this Action.

To put the application into context of the total recovery in this Action, Plaintiffs' Counsel recovered a combined total of $615,218,000 through the D&O Settlement ($90,000,000), the UW Settlements ($426,218,000), and the EY Settlement ($99,000,000).  As demonstrated in Exhibit 4 to the Joint Declaration, if the Court approves the current application, the aggregate lodestar multiplier would be 1.02.

The parties reached settlement only after Lead Plaintiffs partially overcame EY's motion to dismiss, certified the class, consulted extensively with experts, and developed a compelling record through substantial document, written, and deposition discovery.  Lead Counsel obtained and analyzed over 26 million pages of documents from EY, the Lehman Estate, and various other third parties.  Lead Counsel also prepared for and obtained testimony from more than fifty depositions, and coordinated the discovery across multiple state and federal actions and conducted discovery both domestically and in several foreign jurisdictions.

In pursuing the claims against EY and obtaining the recovery, Lead Counsel were aware that the Settlement Class faced substantial risks in pleading, and proving, Plaintiffs' claims against EY.  As a result of motion practice, the sustained claims against EY were for an alleged false statement in a quarterly review opinion for Lehman's unaudited financial statements for the second quarter of 2008.  As set forth below, EY asserted serious defenses to liability – including the absence of loss causation, scienter and a materially false statement – that, if successful, would have resulted in no recovery.  And even if Plaintiffs established liability at trial, EY asserted proportionate fault defenses to reduce liability by assigning fault for the losses to others. In the event that Plaintiffs successfully obtained a judgment against EY for the full amount, EY's ability to pay a hypothetical future judgment for billions of dollars (after a trial and inevitable appeals) is improbable.

Moreover, in addition to these risks, the Settlement avoids the uncertainty of external developments in the securities class action landscape which could limit or negatively impact any future recovery, such as the Supreme Court's review of the fraud-on-the-market presumption of reliance recognized in *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S. Ct. 978 (1988).  *See*

*Halliburton Co. v. Erica P. John Fund, Inc.*, No. 13-317, 134 S. Ct. 636, 187 L. Ed. 415 (Mem) (Nov. 15, 2013).

In the face of these risks, Lead Counsel obtained the significant $99 million recovery for the Settlement Class. The recovery is particularly notable here because, unlike other large recoveries against auditors, there is no accounting restatement of audited financial statements; the sustained claims focused on a quarterly review report rather than an annual audit opinion. Moreover, Lead Counsel have obtained the only recovery to date on behalf of the Lehman investors against EY arising out of the Lehman bankruptcy. The Department of Justice ("DOJ") and the U.S. Securities and Exchange Commission ("SEC") declined to bring charges or claims against EY. In September 2013, *The New York Times* reported that the SEC and DOJ decided against asserting claims when "[t]hey discovered that Repo 105 had nothing to do with Lehman's failure and was technically allowed under an obscure accounting rule." *See* Ben Protess and Susanne Craig, *Inside the End of the U.S. Bid to Punish Lehman Executives*, N.Y. Times, Sept. 8, 2013 ("[P]rosecutors and the FBI lost interest in the case.). *See* Joint Decl. ¶8.

For the reasons set forth below, Lead Counsel respectfully submit that their fee and expense request is fair and reasonable, and should be approved.

## ARGUMENT

## I. THE REQUESTED FEE IS FAIR AND REASONABLE AND SHOULD BE APPROVED

### A. Plaintiffs' Counsel Are Entitled To An Award Of Attorneys' Fees From The Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 749 (1980); *see also Goldberger*, 209 F.3d at 47. Courts recognize that awards of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and therefore to discourage

future alleged misconduct of a similar nature.[3]  The Supreme Court has previously emphasized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC (if any).[4] Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

    **B.**    **The Requested Fee Is Strongly Supported By The *Goldberger* Factors**

In *Goldberger,* the Second Circuit set forth the following criteria for courts in this Circuit to consider when analyzing fee applications in a common fund case: (1) the magnitude and complexities of the action; (2) the litigation risks involved; (3) the quality of class counsel's representation; (4) the size of the requested fee in relation to the recoveries obtained; (5) the time and labor expended by class counsel; and (6) public policy considerations. 209 F.3d at 50.

Consideration of the foregoing *Goldberger* factors demonstrates the reasonableness of Lead Counsel's present fee request.

---

[3]  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *see also In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007) (same); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (an award of appropriate attorneys' fees should "provid[e] lawyers with sufficient incentive to bring common fund cases that serve the public interest" and "attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so") (citations omitted).

[4]  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 127 S. Ct. 2499, 2504 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310, 105 S. Ct. 2622, 2628 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplemental to [SEC] action'") (quoting *J.I. Case Co.* v. *Borak*, 377 U.S. 426, 432, 84 S. Ct. 1555, 1560 (1964)).

1.     **The Time And Labor Expended By
       Plaintiffs' Counsel Support The Requested Fee**

It was not until after Lead Counsel engaged in extensive fact discovery and developed a compelling record that the parties were able to reach agreement to settle the Action against EY. Among other things, Lead Counsel:

- Negotiated and obtained a tolling agreement in February 2009 to preserve claims before initiating litigation against EY, and then when appropriate, prepared the Third Amended Class Action Complaint including claims against EY, based on Lead Counsel's investigation and consultation with experts prior to and following publication of the Examiner's Report (Joint Decl. Sections II.A.-B.);

- Partially overcame EY's motion to dismiss (Joint Decl. Section II.B.);

- Successfully moved for class certification over EY's opposition (Joint Decl. Section II.C.);

- Engaged in extensive document discovery, obtaining and reviewing over 26 million pages of documents (Joint Decl. Sections II.D.-E.);

- Participated in over fifty depositions that were noticed by Defendants and Lead Plaintiffs, including, but not limited to certain of EY's audit partners, managers, and accountants in the United States and Tokyo; as well as Lehman's Head of Corporate Audit, and certain former Lehman officers, directors, and key employees[5];

- Actively prepared for trial against EY, including working with consultants and experts, and prepared to make expert disclosures in accordance with the Pretrial Order No. 61 protocol (Joint Decl. Section II.E.3.);

---

[5] Joint Decl. Sections II.D.-E.  The Examiner reportedly interviewed over 250 individuals. Plaintiffs efficiently prepared for trial by targeting certain factual and legal issues and taking substantially fewer depositions.

- Prepared detailed submissions for mediation and participated in in-person mediation with the Honorable Layn R. Phillips (Fmr.), followed by telephonic negotiations while prosecution continued; and

- Engaged in comprehensive direct telephonic and in-person negotiations, resulting in the Settlement (Joint Decl. Section III.A.).

Lead Counsel maintained daily control and monitoring of the work performed by the attorneys on this case. While Lead Counsel's senior attorneys devoted substantial time to prosecuting the claims against EY, other experienced attorneys at Lead Counsel's firms undertook particular tasks appropriate to their levels of expertise, skill and experience, and more junior attorneys and paralegals worked on matters appropriate to their experience levels. Throughout the prosecution of the claims against EY, Lead Counsel allocated work assignments among the attorneys at Lead Counsel's firms, and also among other Plaintiffs' Counsel, to avoid unnecessary duplication of effort. Teams of more junior attorneys, for example, devoted themselves to analyzing discovery and developing evidence. Such analysis included reviewing and organizing the voluminous document productions, assisting in assessing the adequacy of various document productions for meet-and-confer efforts, preparing internal memoranda on key legal and factual issues, assembling witness files for use in depositions, and supporting Plaintiffs' consulting experts. The teams held periodic meetings with more experienced attorneys in order to efficiently coordinate the prosecution. *See* Joint Decl. ¶95.

Lead Counsel are aware of this Court's preference for lodestar analyses in connection with class counsel fee requests. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paraprofessional by the timekeeper's current hourly rate, and then totaling the amounts to arrive at a "lodestar" for all timekeepers.[6]

---

[6] Both the Supreme Court and courts in this Circuit have long approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment that is inherent in class actions, inflationary losses, and the loss of access to legal and monetary capital that could otherwise have been employed had class counsel been paid on a current basis during the pendency of the litigation. *See In re Union Carbide Corp.*

In cases of this nature, fees representing multipliers above the lodestar are typically and properly awarded to reflect the contingency fee risk and other relevant factors. *See, e.g., In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar."); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 761 (S.D. Ohio 2007) ("the Court rewards [] lead counsel that takes on more risk, demonstrates superior quality, or achieves a greater settlement with a larger lodestar multiplier").

Here, Plaintiffs' Counsel collectively devoted nearly 117,000 previously un-submitted hours to performing work for the benefit of the Settlement Class, for an aggregate lodestar for all Plaintiffs' Counsel of $47,028,506.36. *See* Joint Decl., Exs. 2, 2A-2I. Thus Lead Counsel's fee request is significantly less than Plaintiffs' Counsel's total lodestar, representing a significantly negative multiplier.

The negative lodestar multiplier here falls well below the range of multipliers awarded in other complex cases, including other securities class actions. *See Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (upholding multiplier of 3.5 as reasonable on appeal); *Cornwell v. Credit Suisse Grp.*, No. 08 Civ. 03758 (VM), Order Awarding Attorneys' Fees And Expenses [EFC No. 117] at 4 (S.D.N.Y. July 20, 2011) (awarding fee representing a multiplier of 4.7); *Comverse*, 2010 WL 2653354, at *5 (awarding fee representing a 2.78 multiplier); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *In re Bisys Sec. Litig.*, No. 04 Civ. 3840

*Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Veeco*, 2007 WL 4115808, at *9; *Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S. Ct. 2463, 2469 (1989).

(JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (awarding fee representing 2.99 multiplier and finding that the multiplier "falls well within the parameters set in this district and elsewhere"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee equal to a 4.65 multiplier as "well within the range awarded by courts in this Circuit and courts throughout the country"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding 3.97 multiplier, and finding fee awards of 3 to 4.5 to be "common").

Time that Plaintiffs' Counsel included in prior applications in this Action is not included in this application.  Specifically, as reflected in Lead Counsel's individual firm declarations (Exhibits 2A and 2B), Lead Counsel excluded from prior applications the time for tasks performed prior to February 15, 2012, that exclusively related to the prosecution of the Action against EY, such as drafting accounting and auditing allegations, responding to EY's motion to dismiss, and preparing for and participating in mediation.  Such time is included in this application.  In addition, excluded from this application is time incurred by Lead Counsel between February 15, 2012 and August 8, 2013, that exclusively benefitted the SNP Class and 7.5% of the time that benefitted both the Settlement Class and the SNP Class.  Lead Counsel submitted such time in the fee application for the SNP Settlement.  Time for tasks performed after submission of the application for the SNP Settlement that relates to the SNP Settlement, such as time spent preparing for and attending the final settlement hearing in that matter, has also been excluded from the instant application.  Thus, for time between August 8, 2013, through January 15, 2014, only that time which benefitted the Settlement Class is reported in this application.

With regard to work performed by additional Plaintiffs' Counsel at the direction of Lead Counsel, Lead Counsel submit herewith as Exhibits 2C-2I declarations from other Plaintiffs' Counsel.  In accordance with paragraph 3.4 of Pretrial Order No. 1, Lead Counsel instructed the additional Plaintiffs' Counsel to submit only time for actions undertaken on behalf of any plaintiff at the direction or with the permission of the Chair and/or Executive Committee and

advised them that any services provided by Plaintiffs' Counsel to their clients without the prior approval of the Chair and/or the Executive Committee would not be compensated. Lead Counsel also instructed the additional Plaintiffs' Counsel to submit only time and expenses that were not previously included in the prior lodestar submissions in this Action.

### 2. The Action's Magnitude And Complexity Support The Requested Fee

This Court is well aware of the magnitude and complexity of securities class actions, and this Action in particular. *See, e.g.,* ECF No. 431, Pretrial Order No. 35 ("this was a big and complicated action"); *see also Fogarazzo v. Lehman Bros., Inc.*, No. 03 Civ. 5194 (SAS), 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("securities actions are highly complex"); *FLAG Telecom*, 2010 WL 4537550, at *27 (courts have long recognized that securities class litigation is "notably difficult and notoriously uncertain") (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)).

As discussed below, the claims against EY in particular raised complex and challenging issues surrounding the liability of an outside auditor for its role and for providing the unqualified quarterly review that accompanied Lehman's last report on Form 10-Q before its historic bankruptcy.

### 3. The Risks Of The Litigation Support The Requested Fee

Lead Counsel, along with Lead Plaintiffs, recognized from the outset the considerable risks they would face by pursuing claims against EY. *Telik*, 576 F. Supp. 2d at 592 ("Courts have repeatedly recognized that 'the risk of the litigation' is a pivotal factor in assessing the appropriate attorneys' fees to award to plaintiffs' counsel in class actions." (citations omitted)); *see also McDaniel*, 595 F.3d at 424 ("[t]he level of risk associated with litigation . . . is 'perhaps the foremost factor' to be considered in assessing the propriety of a multiplier") (quoting *Goldberger*, 209 F.3d at 54).

Although Lead Counsel worked diligently and succeeded in developing a compelling case sufficient to influence EY's decision to resolve the case at this level, Lead Counsel

recognized that there were significant uncertainties and risks from the outset as to whether Lead Plaintiffs would be able to prove liability and damages.  EY successfully moved to dismiss all claims against it except for an alleged untrue statement in a single quarterly review.  Thus, the sole remaining claim against EY was a § 10(b) claim related to the 2008 Second Quarter Form 10-Q in which EY reviewed Lehman's financials and represented that, "Based on our review, we are not aware of any material modifications that should be made to the consolidated financial statements referred to above for them to be in conformity with [GAAP]."  Elimination of EY's liability based on its 2007 year-end audit opinion and first quarter 2008 review report made Plaintiffs' burden of proving the existence of a false statement, and of EY's scienter, substantially more difficult.  Throughout, EY argued that it had only limited responsibilities when conducting a quarterly interim review, as contrasted with an audit of year-end financial statements.  "The objective of a review of interim financial information differs significantly from that of an audit conducted in accordance with [GAAP]."  Joint Decl. ¶71 (quoting PCAOB, AU § 722.07).

Lead Counsel were also aware of the challenges, and defenses, Plaintiffs would face in attempting to establish loss causation.  The challenge surrounding causation is reportedly one of the primary reasons that federal prosecutors and the SEC decided against pursuing claims.  *See* Joint Decl. ¶8.  By contrast, Plaintiffs developed a record through extensive discovery and expert consultation to support their assertion that EY's alleged false statement caused investor losses because it concealed risks that later materialized.  The issue, however, is complex and was hotly-contested.  Throughout, EY maintained that neither Repo 105 transactions nor its quarterly report were the cause of investor losses.  Rather, EY maintained that Lehman suffered a liquidity crisis amidst a global, financial meltdown, and that investor losses reflected the market's growing recognition of management's misjudgment that Lehman would not be allowed to fail. *See* Joint Decl. Section III.A.3.

Moreover, Lead Counsel were aware of EY's potential proportionate fault defenses. When, as here, Plaintiffs partially settled claims against co-defendants, the non-settling

defendant is entitled to a judgment credit of at least the proportionate fault of the settling defendants. *See* 15 U.S.C. § 78u-4(a)(7)(B). EY assigned all or most of the fault to others, such as Lehman's officers and directors, who arguably were more responsible for Lehman's financial statements than EY. If successful, these defenses would substantially reduce or eliminate any recovery. Joint Decl. ¶73.

The parties hotly contested the calculation of damages caused by EY's alleged untrue review opinion, as opposed to other causes. Leaving aside disputes over methodology, causation, proportionate fault, and disaggregation, EY faced a hypothetical judgment of billions of dollars due to Lehman's bankruptcy. Joint Decl. ¶70. However, EY's ability to pay a hypothetical future judgment of billions of dollars (after a trial and inevitable appeals) is improbable. *Id.* ¶74.

### 4.      The Quality Of Plaintiffs' Counsel's Representation Supports The Requested Fee

The quality of representation is another important factor that supports the reasonableness of the requested fee. Lead Counsel are highly experienced in prosecuting securities class actions, and they worked diligently and efficiently to prosecute the Action against EY. Lead Counsel respectfully submit that their efforts in the litigation, together with their experience and track record in complex securities class action litigation (as set forth in their respective firm resumes (*see* Exhibits 2A4 and 2B3 to the Joint Declaration)), provided the necessary leverage to negotiate the outstanding recovery obtained for the Settlement Class. *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *6 (S.D.N.Y. May 14, 2004) (the skill and prior experience of counsel in the field is relevant to determining fair compensation). Both Bernstein Litowitz and Kessler Topaz are consistently ranked among the top plaintiffs' firms in the country. Further, each firm has taken complex securities fraud

class action cases to trial and each is among the few firms to have done so.  The additional firms comprising Plaintiffs' Counsel also have substantial expertise in prosecuting complex litigation.[7]

The quality of the work performed by Lead Counsel in obtaining the Settlements should also be evaluated in light of the quality of opposing counsel.  *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement"); *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, No. 03 MDL 1529 LMM, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work." (citation omitted)).

Here, EY was represented by Latham & Watkins LLP, one of the country's most prestigious law firms and experienced securities litigators, who spared no effort or expense in the defense of their client.  Joint Decl. ¶103.  Lead Counsel's ability to develop a compelling case sufficient to encourage an outside auditor to reach a substantial settlement is a testament to the skill, reputation, and fortitude that Lead Counsel exhibited throughout every phase of the litigation.

### 5.   The Fee Request Is Fair And Reasonable In Relation To The Settlement Amount

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'"  *Comverse*, 2010 WL 2653354, at *3 (citation omitted). Here, as discussed above, Lead Counsel seek to recover substantially *less* than the reasonable value of their services measured by their hourly rates and the number of hours devoted to the task.  The negative multiplier represented by the fee request here falls well within the "range of

---

[7]  The other Plaintiffs' Counsel's firm biographies are also available upon request from the Court.

reasonableness" based on fees awarded by this and other Courts across the nation, in this and other large securities cases.

While Lead Counsel understand that this Court favors the lodestar approach, from the percentage standpoint, if the current application is approved, the aggregate fee percentage for all awards in the D&O Settlement, the UW Settlements and the EY Settlement would be approximately 14%. The percentage is reasonable in light of the circumstances of this case, including the exceptional recoveries obtained in the face of significant risks, and that the requested fee represents a significant discount to Plaintiffs' Counsel's lodestar incurred in pursuing the claims against EY. *See, e.g., In re Initial Pub. Offering Sec. Litig.,* 671 F. Supp. 2d 467, 515-16 (S.D.N.Y. 2009) (awarding 29% of $586 million settlement, explaining that there was "no real danger of overcompensation" given that the requested fee represented a discount to counsel's lodestar); *FLAG Telecom,* 2010 WL 4537550, at *26 (awarding 30% of $24.4 million settlement, explaining that "Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request"); *Veeco,* 2007 WL 4115808, at *10 ("Not only is Plaintiffs' Counsel not receiving a premium on their lodestar to compensate them for the contingent risk factor, their fee request amounts to a deep discount from their lodestar. Thus, the lodestar 'cross-check' unquestionably supports a percentage fee award of 30%."); *In re Blech Sec. Litig.,* Nos. 94 CIV 7696 (RWS), 95 CIV 6422 (RWS), 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000) (awarding 30% of the settlement, and confirming that the award was reasonable because it represented a fractional multiplier of lead counsel's lodestar); *see also Marsh ERISA Litig.,* 265 F.R.D. at 146 (awarding 33% of $35 million settlement, explaining that the fact that the requested 33% fee was "significantly less than the lodestar . . . strongly suggests that the requested fee is reasonable").

6.   **Public Policy Considerations Support The Requested Fee**

Courts in the Second Circuit have held that "[p]ublic policy concerns favor the award of reasonable attorneys' fees in class action securities litigation." *FLAG Telecom,* 2010 WL 4537550, at *29 (citation omitted). Public policy supports granting attorneys' fees that are

sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts (if any) of the SEC and other governmental agencies and help deter future wrongdoing. *See Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *In re Priceline.com, Inc. Sec. Litig.*, No. 00CV1884 (AVC), 2007 U.S. Dist. LEXIS 52538, at *17 (D. Conn. July 20, 2007) ("The award of the percentage requested here will encourage enforcement of the securities laws and support attorneys' decisions to take these types of cases on a contingent fee basis.").

It is worth repeating that the Settlement was achieved despite the absence of any filed charges or claims (much less convictions or civil recoveries) by the DOJ or the SEC for violations of any federal or state securities laws against EY – or anyone else – arising out of the events at issue in this Action.  Lead Counsel's willingness to assume the risks of this litigation resulted in the only recovery to date for the Settlement Class from EY.  Joint Decl. ¶8.  Thus, public policy favors granting Lead Counsel's request for attorneys' fees and expenses here.

**C.    The Reaction Of The Settlement Class
        To Date Supports The Requested Fee**

The reaction of the Settlement Class to date supports the requested fee.  As of March 5, 2014, the claims administrator has mailed over 916,000 copies of the Notice to potential members of the Settlement Class or their nominees, informing them, *inter alia,* that Lead Counsel intended to apply to the Court for an award of attorneys' fees of $29.7 million, which represents an amount substantially less than the remaining lodestar incurred by Plaintiffs' Counsel for such services on behalf of the Settlement Class.[8]  While the time to object to Lead Counsel's fee request does not expire until March 25, 2014, to date, only a single generalized

---

[8]  *See* Affidavit of Jose C. Fraga Regarding (A) Mailing of the EY Notice and EY Claim Form; (B) Publication of the EY Summary Notice; (C) Report on Requests for Exclusion Received to Date; and (D) Report on Requests for Removal from the Excluded List by Individual Action Plaintiffs (the "Fraga Aff.," attached as Exhibit 1 to the Joint Decl.), ¶¶5-8.

objection to the amount of attorneys' fees has been received, from an individual, Mr. Gao, who submitted a similar objection to the fee request in connection with the D&O Settlement. This and any additional objections (if any) received following this submission will be addressed in Lead Counsel's reply papers to be filed after the objection deadline.

## II.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT

Lead Counsel also request reimbursement of litigation expenses that were reasonably and necessarily incurred by Plaintiffs' Counsel in their prosecution and settlement of the Action against EY. "It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class." *FLAG Telecom*, 2010 WL 4537550, at *30; *see also In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys may be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'") (citation omitted).

As detailed in the Joint Declaration, Plaintiffs' Counsel incurred a total of $4,279,706.87 in litigation expenses on behalf of the Settlement Class. As with Plaintiffs' Counsel's lodestar submission, expenses that were included in prior expense applications in this Action are not included in this application. Joint Decl. ¶110; *see also* individual declarations submitted on behalf of each Plaintiffs' Counsel firm attached to the Joint Declaration as Exhibits 2A-2I. For the Court's convenience, a chart reflecting all expenses by category for which reimbursement is sought is attached to the Joint Declaration as Exhibit 3.

Reimbursement of these expenses is fair and reasonable. The expenses for which Lead Counsel seek reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.[9] These expenses include, among others, the

---

[9]   *See In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. Nov. 24, 2004) ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are

costs of experts and consultants, online legal and factual research, developing and maintaining the electronic discovery platform that counsel used to search, review and analyze documents, court fees, travel expenses and court reporting services, copying costs, facsimile charges, postage and delivery expenses, and mediation fees.   The forgoing expense items are billed separately, and such charges are not duplicated in the respective firms' billing rates.[10]

The Notice advised that Lead Counsel would be seeking reimbursement of litigation expenses in an amount not to exceed $5 million.   To date, no objections have been received regarding the maximum expense figure set forth in the Notice.   In sum, Lead Counsel respectfully submit that the expenses sought here ($4,279,706.87) were all reasonably and necessarily incurred, are of the type customarily reimbursed in securities cases, and should be approved.

<u>**CONCLUSION**</u>

For the foregoing reasons, Lead Counsel respectfully request that the Court grant their request for attorneys' fees in the amount of $29.7 million and reimbursement of Plaintiffs' Counsel's litigation expenses in the amount of $4,279,706.87, plus interest thereon.

DATED:  March 11, 2014                            Respectfully submitted,

                                        **BERNSTEIN LITOWITZ BERGER
                                        & GROSSMANN LLP**


                                        _____/s/ David R. Stickney_____
                                        DAVID R. STICKNEY

                                        MAX W. BERGER

---

the type for which 'the paying, arms' length market' reimburses attorneys [and] [f]or this reason, they are properly chargeable to the Settlement fund." (citation omitted)).

[10]  Joint Decl. Section IV.B.  Lead Counsel maintained strict control over the litigation expenses. Indeed, many of the litigation expenses were paid out of a litigation fund created by Lead Counsel and maintained by Bernstein Litowitz (the "Litigation Fund").  A schedule setting forth the contributions to the Litigation Fund and the payments from the Litigation Fund by category is attached as Exhibit 2A3 to the Joint Declaration.

1285 Avenue of the Americas, 38th Floor
New York, NY  10019
Tel.:    (212) 554-1400
Fax:    (212) 554-1444
          -and-
DAVID R. STICKNEY
NIKI L. MENDOZA
BRETT M. MIDDLETON
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel.:    (858) 793-0070
Fax:    (858) 793-0323


**KESSLER TOPAZ**
   **MELTZER & CHECK, LLP**


            */s/ David Kessler*
          DAVID KESSLER

DAVID KESSLER
GREGORY M. CASTALDO
KIMBERLY JUSTICE
JENNIFER L. ENCK
280 King of Prussia Road
Radnor, PA  19087
Tel.: (610) 667-7707
Fax: (610) 667-7056

*Co-Lead Counsel for Plaintiffs
and the Settlement Class*

17