USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/5/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:

LEHMAN BROTHERS SECURITIES AND                              09 MD 2017 (LAK)
ERISA LITIGATION

This document applies to:

*Danis v. Ernst & Young, et al.*, 11 Civ. 9001 (LAK)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PRETRIAL ORDER NO. 87**
(Motion to Dismiss, Response to Pretrial Order No. 77)

LEWIS A. KAPLAN, *District Judge*.

Plaintiff Joseph P. Danis asserts claims for negligent misrepresentation and violations of the Missouri Merchandising Practices Act ("MMPA") against Moody's Investors Service, Inc. ("Moody's"), Moody's Corporation (Moody's corporate parent), Raymond McDaniel, Michael Kanef, and Brian Clarkson (collectively, the "defendants").[1] The defendants move to dismiss Danis's complaint under Federal Rule of Civil Procedure ("FRCP") 12(b)(6).[2]

*Facts*

Danis alleges that, in 2004 and 2005, he purchased certain bonds issued by Lehman Brothers Holdings, Inc. ("LBHI"),[3] "relying in part on bond rankings published by Moody's,"[4] and

---

[1] The complaint (DI 1) asserts that "at relevant times," defendants McDaniel, Clarkson, and Kanef were, respectively, the chief executive officer, chief operating officer, and Group Managing Director of Moody's U.S. Assets Finance Group. *See* Compl. ¶¶ 23-25.

[2] The complaint asserts also claims against Ernst & Young. In his response to Pretrial Order No. 77 Danis stated that he "has no objection to the case filed against the Ernst & Young defendants being dismissed without prejudice" for failure to prosecute. DI 1356 at 1 (Master Dkt., No. 09-md-2017 (LAK)). Because Danis failed timely to respond to Ernst & Young's Motion to Dismiss, the Court dismisses his claims with prejudice.

[3] Compl. ¶ 18. Danis does not identify the debt offerings from which he purchased the bonds.

[4] *Id.* ¶ 29-32. Although Danis refers to both Moody's and its corporate parent, Moody's Corporation, when he states "Moody's," the Court declines to adopt that usage. Instead, in this

2

Moody's representations as to "its independence and integrity."[5] Danis claims that Moody's assigned high ratings to the bonds he acquired even though the "bonds were backed by risky subprime mortgages which did not merit such high ratings."[6] The reason Moody's assigned high ratings to those bonds, Danis alleges, is that the company's "independence" was undermined "by conflicts of interest[] with entities issuing the debt . . . ."[7]

Those conflicts allegedly concerned the means by which Moody's was paid for its ratings. In the case of corporate debt ratings, Moody's received payment from the corporations only *after* it issued its rating.[8] For structured finance products, however, "issuers paid a nominal amount for a pre-evaluation of the ratings, and made a full payment only if they choose to publish the pre-evaluation rating provided by Moody's."[9] According to Danis, the "issuer pays" model used in Moody's structured finance business "intensified the conflicts of interest in the ratings of corporate bonds."[10] In sum, Danis asserts that Moody's payment methods in the structured finance space compromised the company's independence and caused it to issue "excessively high rankings for debt instruments issued by . . . entities" that paid Moody's for its structured finance ratings.[11]

*Discussion*

In deciding a motion to dismiss, the Court accepts as true all well pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor.[12] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief

---

Order, "Moody's" refers only to Moody's Investors Service. Moody's Investors Service is the division of Moody's Corporation which Danis alleges is responsible for publishing rating opinions. *See id.* ¶ 20.

[5] *Id.* ¶ 83.

[6] *Id.* ¶ 35.

[7] *Id.* ¶ 55.

[8] *Id.* ¶ 47.

[9] *Id.*

[10] *Id.* ¶ 46.

[11] *Id.* ¶ 55.

[12] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

that is plausible on its face."[13] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[15] As a result, the complaint must allege more than "mere conclusory statements" or "facts that are merely consistent with a defendant's liability."[16] Danis has failed to satisfy that standard.[17]

*Negligent Misrepresentation*

The parties dispute whether Danis's claim for negligent misrepresentation is governed by Missouri or New York law.[18] The Court need not determine which state's law applies to this case, however, because Danis has failed to state a claim under either standard by failing to identify any actionable misrepresentation.[19]

---

[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

[14] *Id.*

[15] *Id.* (internal quotation marks and citation omitted).

[16] *Id.* (internal quotation marks omitted).

[17] Moody's urges the Court to apply the more stringent standard mandated by Rule 9(b) to both of Danis's claims because his claim under the MMPA sounds in fraud. *See* DI 31 (Def. Mem.) at 6 n.4. The Court need not determine whether Rule 9(b) should apply also to Danis's negligent misrepresentation claim because it determines that Danis's claims fail even to satisfy Rule 8.

[18] *See* DI 31 at 6; DI 1007 (Master Dkt., No. 09-md-2017 (LAK)) (Plf. Opp.) at 9-11.

[19] Even if Danis had alleged an actionable misrepresentation, the Court would apply the factors listed in the *Restatement (Second) Conflict of Laws* required under Missouri choice of law analysis to find that New York law applies to Danis's claim. *See Thompson ex rel. Thompson v. Crawford*, 833 S.W.2d 868, 870 (Mo. 1992); *Restatement (Second) of Conflict of Laws* (1971) §§ 6(2), 148(2). In particular, the Court notes that New York's interest, as "a state that has been the center of our country's financial markets for more than a century," in "defining the scope of negligence liability for professional conduct based in New York" is particularly strong. *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 114 (2d Cir. 2012). Moreover, the application of New York law to claims such as Danis's would best serve the interests of uniformity and predictability. *Id.*

Danis's claim ultimately would fail under New York law because he failed to allege any "relationship or contact with the Rating Agencies that could remotely satisfy the New

4

Danis's claims are premised on the credit ratings assigned to LBHI corporate bonds. Danis does not, however, identify the LBHI bonds he purchased or the bond rankings upon which he claims to have relied.

Furthermore, although Danis asserts that "[c]onflicts of interest arose under the 'issuer pays' model" used in Moody's structured finance business, causing "Moody's [to trade] on its reputation for honesty, integrity, and independence in evaluating debt instruments,"[20] he does not allege facts sufficient to support that contention.[21] Only three paragraphs of the complaint might be construed as references to conflicts in Moody's corporate bond business. The first cites a May 2008 news report, which plainly says nothing of Moody's misstatements or omissions in 2004 and 2005 (when Danis alleges he purchased the LBHI bonds).[22] The second and third – which pertain to various undated statements by Moody's chief executive officer and other financial institutions as to the integrity of Moody's ratings – do not obviously relate to the company's corporate bond ratings (as distinguished from its structured finance ratings).[23] These allegations are insufficient to support the conclusion that such problems infected Moody's ratings of LBHI corporate debt, or even its corporate debt ratings more generally, and rendered those ratings "excessively high."

In short, Danis's conclusory allegations are insufficient to defeat a motion to dismiss.

*Missouri Merchandising Practice Act*

The MMPA prohibits the use or employment of "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri . . . ."[24] Because Danis has failed to plead sufficiently his claim for negligent misrepresentation, there is no actionable misrepresentation or omission. Moreover, Danis

---

York standard," *id.* at 114-15, which requires "actual privity of contract between the parties or a relationship so close as to approach that of privity" in order to establish that Moody's owed Danis any duty. *Id.* at 115 (citation omitted).

[20] *Id.* ¶ 44.

[21] *See id.* ¶¶ 72-74.

[22] *Id.* ¶¶ 18, 72.

[23] *Id.* ¶¶ 73-74.

[24] Mo. Rev. Stat. § 407.020.1.

does not allege that Moody's acted "in connection with the sale or advertisement" of the LBHI bonds he purchased.[25]

*Conclusion*

For the foregoing reasons, the defendants' motion to dismiss the complaint (MDL Dkt. 815, Ind. Dkt. 30) is granted.[26] Danis may move for leave to replead provided any such motion is filed on or before June 19, 2014.

SO ORDERED.

Dated:       June 5, 2014

_____
Lewis A. Kaplan
United States District Judge

---

[25] *Garrett v. Cassity*, No. 09-cv-01252 (ERW), 2010 WL 5392767, at *23 (E.D. Mo. Dec. 21, 2010) (dismissing MMPA claim for absence of "a single substantive allegation . . . suggesting that [defendants] were in any way involved with the marketing or sale of the contracts themselves"); *Lavender v. Wolpoff & Abramson, L.L.P.*, No. 07-0015-cv-W-FJG, at *2 (W.D. Mo. Aug. 30, 2007) (dismissing MMPA claim because statute "is not applicable" absent an "allegation that the plaintiffs were clients or customers of the defendants," and the defendants "did not sell any goods or merchandise or provide any services to the plaintiffs").

[26] To the extent Danis's response to Pretrial Order No. 77, *see* DI 1356 (Master Dkt., No. 09-md-2017 (LAK)), might be construed as a motion to remand, the motion is denied, largely for the reasons stated in Moody's response to Danis's submission. *See* DI 66 (Def. Mem. of Law in Opposition, in Part, to Plaintiff's Response to the Court's Pretrial Order No. 77).