UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:

LEHMAN BROTHERS SECURITIES AND                          09-md-2017 (LAK)
ERISA LITIGATION

This document applies to:
*Arthur N. Abbey v. Ernst & Young LLP*, 11-cv-4278 (LAK)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

Stephen T. Rodd
Jeremy Nash
Julie Sullivan
ABBEY SPANIER, LLP
*Attorneys for Plaintiff Arthur N. Abbey*

Miles N. Ruthberg
Jamie L. Wine
Kevin M. McDonough
LATHAM & WATKINS LLP
*Attorneys for Defendant Ernst & Young LLP*

LEWIS A. KAPLAN, *District Judge.*

Plaintiff Arthur N. Abbey ("Abbey") suffered large losses as a result of the collapse

of Lehman Brothers Holdings, Inc. ("Lehman") in the 2008 financial crisis. He did not incur such

losses, however, because he purchased securities of Lehman. Rather, he purchased 3,600 five-year

cash-settled call warrants (the "Warrants") designed to track the performance of an investment fund

known as Highbridge Capital, L.P.[1] Lehman issued the Warrants and served as the redeeming

---

[1]       Second Am. Compl. [DI 1317-1] ¶ 1.

obligor,[2] meaning that Abbey was exposed to Lehman's credit risk.  Now that Lehman is bankrupt, the Warrants are worthless.[3]

Abbey initially sued Richard Fuld (Lehman's former chairman and chief executive officer), Christopher O'Meara (Lehman's former chief financial officer, comptroller, and head of risk management), and Ernst & Young LLP ("EY"), Lehman's auditor.  He asserted that (i) all three defendants violated Section 10(b) of the Securities Exchange Act of 1934[4] (the "Exchange Act") and Rule 10b-5 thereunder,[5] (ii) Fuld and O'Meara were liable under Section 20(a) of the Exchange Act,[6] and (iii) all three defendants committed fraud under New York common law.

The sole remaining defendant is EY, which now moves for summary judgment dismissing the complaint.[7]  The motion raises issues similar to those addressed in prior opinions, familiarity with which is assumed.[8]

---

[2]     Abbey's Mem. of Law Opposing EY's Mot. for Summ. J. [DI 1502] at 1, 4.

[3]     DI 1317-1 ¶ 4.

[4]     15 U.S.C. § 78j.

[5]     17 C.F.R. § 240.10b–5.

[6]     15 U.S.C. § 78t.

[7]     DI 1466.

[8]     *See In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258 (S.D.N.Y. 2011) ("*Lehman I*") (granting in part and denying in part defendants' motion to dismiss the Third Amended Class Action Complaint in the consolidated securities class action, No. 08-cv-5523).

*Facts*

Abbey purchased the Warrants as a customer of JPMorgan Securities in a private sale at a price of $279.60 per warrant (for a total purchase price of $1,006,560).  He alleges that the offering memorandum for the Warrants incorporated misstatements in Lehman's 2006 Form 10-K and 2007 first-quarter Form 10-Q and that he "reviewed and relied" on this information in entering the transaction.[9]

Abbey did not join his fellow opt-out plaintiffs in offering expert witnesses in an effort to raise an issue of fact as to loss causation.  Rather, he argues that "[e]vent studies and statistical analysis used by experts for widely held exchange traded public securities in fraud-on-the-market securities litigation are inapplicable."[10]  EY moves for summary judgment against Abbey on several grounds, including that Abbey cannot establish falsity, *scienter*, or loss causation regarding either his Section 10(b) claims or his state-law fraud claim and in any event, that the fraud claim is precluded by the Securities Litigation Uniform Standards Act.[11]  For reasons that will appear, the only issue the Court addresses is loss causation.

---

[9]     DI 1317-1 ¶ 27.

[10]    DI 1502 at 12.

[11]    15 U.S.C. § 78bb(f).

4

*Discussion*

## I.    *The Summary Judgment Standard*

Summary judgment is warranted if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.[12]  The moving party must demonstrate the absence of any genuine issue of material fact, and the Court must view the facts in the light most favorable to the nonmoving party.[13]  Where, as here, the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non-movant's claim.[14]  In that event, the non-moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.[15]

## II.    *The Loss Causation Requirement*

Section 10(b) of the Exchange Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe."[16]

---

[12]

FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir. 2000).

[13]

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

[14]

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 273 (2d Cir. 2001).

[15]

*Celotex*, 477 U.S. at 322-323; *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997).

[16]

15 U.S.C. § 78j(b).

And SEC Rule 10b-5, which implements the statute, prohibits making "any untrue statement of a material fact or [omitting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."[17]  To recover for a violation of Section 10(b) and Rule 10b-5, a private securities plaintiff must prove six elements: "(1) a material misrepresentation or omission by the defendant; (2) *scienter*; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."[18]

"It is long settled that a securities-fraud plaintiff 'must prove both transaction and loss causation.'"[19]  Transaction causation "is akin to reliance, and requires only an allegation that 'but for the claimed misrepresentations and omissions, the plaintiff would not have entered into the detrimental securities transaction.'"[20]  Loss causation is a "'causal link between the alleged

---

[17]    17 C.F.R. § 240.10b-5(b).

[18]    *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2407 (2014) (internal quotation marks omitted); *see also ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) ("[T]o succeed on a claim, a plaintiff must establish that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with *scienter*, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." (internal quotation marks omitted)).

[19]    *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005) (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994)).

[20]    *Id.* at 172 (quoting *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003)).

misconduct and the economic harm ultimately suffered by the plaintiff.'"[21]  If instead the loss "'was caused by an intervening event, like a general fall in the price of Internet stocks, the chain of causation will not have been established.'"[22]

The Court addressed loss causation in *Lehman I*.  It stated that in a "materialization of a concealed risk" case, a complaint "must allege that the loss was (1) foreseeable and (2) caused by the materialization of the concealed risk."[23]  A loss is "foreseeable" if it is "within the zone of risk concealed by the misrepresentations and omissions alleged by the disappointed investor."[24]  Applying these standards, the Court denied defendants' motion to dismiss the class plaintiffs' case on loss causation grounds.  It reached this result for two reasons.  *First*, plaintiffs "need not allege that their entire loss was caused by the misstatements and omissions" so long as they allege that an "'ascertainable portion'" of that loss was due to the fraud.[25]  *Second*, plaintiffs are not "required to allege that the particular misstatements and omissions directly caused the alleged losses."[26]  Instead, "the alleged misstatements and omissions concealed the extent of Lehman's exposure to asset

---

[21]

      *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 161 (2d Cir. 2012) (quoting *Stonepath*, 343 F.3d at 197).

[22]

      *Id.* (quoting *Stonepath*, 343 F.3d at 197).

[23]

      *Lehman I*, 799 F. Supp. 2d at 304 (citing *Lentell*, 396 F.3d at 172).

[24]

      *Id.* at 305 (citing *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009)).

[25]

      *Id.* (quoting *Lentell*, 396 F.3d at 175).

[26]

      *Id.*

7

classes, the precarious nature of which, a jury could find, was foreseeable."[27]  Moreover, Lehman's accounting manipulations arguably "overstated Lehman's financial strength generally and understated the extent to which it was leveraged."[28]

### III.    *Abbey's Arguments Regarding Loss Causation*

Abbey asserts that the "Warrants were extremely illiquid because they were not listed on any securities exchange or quotation system, there was no guarantee that a secondary market in the Warrants would develop, and [Lehman] had no obligation to make a market or undertake market-making activities for the Warrants."[29]  He therefore argues that his case is different from the other cases brought by plaintiffs who opted out of the Lehman class action in two substantive ways.

First, Abbey argues that he is entitled to rescissory damages (*i.e.*, the full price he paid for the Warrants).

Second, Abbey claims that he need not prove loss causation even at trial.  He contends that there is no "component of the value of the Warrants that was subject to the expert tools and methodology applied by the other plaintiffs' § 10(b) damages and causation experts" as the Warrants "were never publicly traded, never traded on any exchange and were as a practical matter totally illiquid" prior to Lehman's bankruptcy.[30]  He therefore asserts that his only burden regarding

---

[27]     *Id.* at 306.

[28]     *Id*.

[29]     DI 1502 at 9.

[30]     *Id*. at 12.

causation is to raise a triable issue as to whether "EY failed to disclose material facts concerning [Lehman] and that concealment of those facts induced Plaintiff to purchase an illiquid security that he would not have purchased had he known the truth."[31]

Abbey relies heavily on two dated Second Circuit precedents. In *Chasins v. Smith, Barney & Co.*,[32] the Second Circuit, in circumstances in which a stock brokerage failed to disclose that it was a "market maker" and an underwriter in respect of certain securities it had sold,[33] held that the proper measure of damages was the difference in value between the securities' prices at purchase and sale.[34] The Circuit reasoned that "the evil [was] not the price at which Chasins bought but the fact of being induced to buy and invest for some future growth in these stocks without disclosure of Smith, Barney's interest" and that "the damages granted were proper under the circumstances."[35]

A later case, *Clark v. John Lamula Investors, Inc.*,[36] reached a similar conclusion. Defendants there committed securities fraud by selling debentures to the plaintiff despite knowing that the securities were unsuited to her particular investment needs.[37] The Second Circuit upheld the

---

[31]   *Id.*

[32]   438 F.2d 1167 (2d Cir. 1970).

[33]   *Id.* at 1169.

[34]   *Id.* at 1173.

[35]   *Id.*

[36]   583 F.2d 594 (2d Cir. 1978).

[37]   *Id.* at 600 ("The jury found further that had appellant Lamula informed her of these matters, including other investment opportunities, she would not have purchased the securities. Thus, there can be no doubt but that appellant Lamula engaged in an act, practice or course of business which operated as a fraud or deceit upon [the plaintiff] and omitted to state facts

use of rescissory damages because "appellants fraudulently induced appellee to buy unsuitable securities."[38]

Abbey reads *Chasins* and *Clark* as broad (and enduring) statements about a plaintiff's ability to pursue a fraudulent inducement theory of causation in appropriate circumstances. EY disputes this view. It argues that, under *Lentell*, Abbey must prove that "the risk that caused [his] loss was within the zone of risk concealed by [EY's alleged] misrepresentations and omissions."[39] Abbey disagrees. He argues that, under *Chasins* and *Clark*, he need show only fraudulent inducement (*i.e.*, transaction causation) and that he has no obligation to identify that any proportion of his losses was a proximate result of EY's alleged misstatements.

It is helpful to begin by thinking about how Abbey conceptualizes his claim. Abbey asserts that the wrong he suffered was the fraudulent inducement to purchase the Warrants. On Abbey's view, the fact that Lehman was unable to pay the Warrants due to bankruptcy is basically happenstance. Because Abbey understands his claim to hinge on transaction causation alone, he argues that EY would be liable even if Lehman had been unable to satisfy its obligations for reasons having nothing whatsoever to do with the subject of EY's alleged misstatements. If a meteor had hit lower Manhattan and wiped Lehman off the map, Abbey still would argue that EY was liable to him—notwithstanding the absence of anything like proximate cause—because EY's alleged misstatements were what caused him to make the initial purchase. But, as we shall see, there is no

---

[38]
     material to an informed purchase by her.").

     *Id.* at 604 ("Appellants will not be permitted to avoid making appellee whole merely because upon discovery of the fraud she happened to sell the securities on a declining market.").

[39]
     396 F.3d at 173 (emphasis omitted).

way to reconcile this theory with current doctrine on loss causation, not to mention the Private Securities Litigation Reform Act (the "PSLRA"), which post-dated both *Chasins* and *Clark.*

To take the statute first, it provides in the most explicit of terms that:[40]

> "In any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages."

Abbey here seeks damages for violation of Section 10(b) and Rule 10b-5 of the Exchange Act and thus falls squarely within the statutory language.

Turning to the current doctrine with respect to loss causation, a typical securities fraud case involves a plaintiff who claims that certain misstatements or omissions led to the overvaluation of a security. In all such cases, a plaintiff could argue—as Abbey does here—that he or she was induced to buy the securities by false pretenses and that he or she should have to prove only transaction causation to establish liability. But, at least after the Supreme Court's decision in *Dura Pharmaceuticals*, that is simply not the law. In the words of the Fourth Circuit, even when a complaint is framed in terms of fraudulent inducement, a plaintiff still must "link the drop in stock price to [a] revelation of the true facts behind any alleged misrepresentations by defendants."[41] Or, as the Third Circuit put it in *McCabe v. Ernst & Young, LLP*,[42] an attempt to sidestep the requirement of loss causation by framing one's case in terms of fraudulent inducement "impermissibly conflates

---

[40]     15 U.S.C. § 78u-4(b)(4).

[41]     *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 479 (4th Cir. 2006).

[42]     494 F.3d 418 (3d Cir. 2007).

loss causation with transaction causation, rendering the loss causation requirement meaningless."[43] The Third Circuit there explicitly rejected the argument that "where the omission of collateral facts fraudulently induces a transaction that would not have otherwise taken place . . . loss causation and transaction causation effectively merge."[44]  This is essentially the same argument that Abbey makes here.

Abbey cites three cases in support of his argument that he need not raise a triable issue as to loss causation.  They are not persuasive.  The first, *Dornberger v. Metropolitan Life Insurance Co.*,[45] did not involve securities fraud at all and, in any event, predated the decisions in *Dura Pharmaceuticals* and *Lentell*.  The others, *Basis Yield Alpha Fund (Master) v. Goldman Sachs Group, Inc.*[46] and *Dodona I, LLC v. Goldman, Sachs & Co.*,[47] actually undermine Abbey's position.  Both denied motions to dismiss because the plaintiffs sufficiently had alleged *both* transaction causation *and* loss causation.[48]

---

[43]

      *Id.* at 429 (internal quotation marks omitted).

[44]

      *Id.*

[45]

      961 F. Supp. 506 (S.D.N.Y. 1997).

[46]

      37 Misc. 3d 1212(A), 961 N.Y.S.2d 356 (Sup. Ct. N.Y. Cnty. 2012), *aff'd as modified by* 115 A.D.3d 128, 980 N.Y.S.2d 21 (1st Dep't 2014).

[47]

      847 F. Supp. 2d 624 (S.D.N.Y. 2012).

[48]

      *Basis Yield*, 37 Misc. 3d 1212(A), at *7 (plaintiff alleged that "it would never have purchased the securities and suffered a loss that was foreseeably related to Goldman's representations"); *Dodona I*, 847 F. Supp. 2d at 650 (plaintiff had "made allegations sufficient to support a reasonable inference that the [alleged] omissions 'bear upon the loss suffered such that [Dodona] would have been spared all or an ascertainable portion of that loss absent the fraud'" (quoting *Lentell*, 396 F.3d at 175)).

12

Finally, the Second Circuit's recent decision in *Loreley Financing No. 3 Ltd. v. Wells Fargo Securities, LLC*,[49] reiterates the loss causation requirement under both the federal securities laws *and* New York law.[50]  The Circuit there stated that a complaint, to survive a motion to dismiss, must plead "a plausible causal link between [the alleged] loss and the alleged misrepresentations."[51]  While the plaintiffs did not need to "plead that the alleged fraud caused their losses independently of the larger financial events of 2007 and 2008," they did have to "allege enough facts regarding their loss to support the inference that they 'would have been spared all or an ascertainable portion of that loss absent the fraud.'"[52]

To all of this Abbey might respond that his case should survive absent a clear overruling of *Chasins* and *Clark*.  But courts have described the *Chasins-Clark* exception as "narrow" and questioned whether it still rests on a solid doctrinal foundation.[53]  Absent a compelling reason to treat Abbey's case differently from *Lentell* and its progeny, it seems clear that claims under both Section 10(b) and New York common law require proof of loss causation.  Abbey has offered no evidence of loss causation here.

---

[49]
--- F. 3d ---, No. 13-1476-CV, 2015 WL 4492258 (2d Cir. July 24, 2015).

[50]
*Id.* at *22 ("loss causation is required" to show fraud under New York law (citing *Greentech Research LLC v. Wissman*, 104 A.D.3d 540, 961 N.Y.S.2d 406 (1st Dep't 2013))).

[51]
*Id.*

[52]
*Id.* at *24 (quoting *Lentell*, 396 F.3d at 175).

[53]
*See, e.g.*, *McCabe*, 494 F.3d at 430 n.7 (describing "the narrowness" of the *Chasins* exception); *see also id.* at 432 (noting that commentators have read *Lentell* as overruling prior cases suggesting that a plaintiff need only show transaction causation in cases involving fraudulent inducement).

13

In the final analysis, Abbey has litigated this case on a theory of causation that simply is not tenable.  Because Abbey has failed to come forward with admissible evidence sufficient to raise a genuine issue of material fact regarding loss causation,[54] summary judgment should be granted in favor of EY.  Moreover, because loss causation is an essential element of both a securities fraud claim and Abbey's common law fraud claim, the complaint must be dismissed.[55]

*Conclusion*

Accordingly, EY's motion for summary judgment of dismissal [09-md-2017, DI 1466; 11-cv-4278, DI 65] is granted on loss causation grounds.  The Clerk shall close Case No. 11-cv-4278.

SO ORDERED.

Dated:          September 10, 2015

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[54]

See, e.g., *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123-24 (2d Cir. 2001); *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997).

[55]

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.